|  |  |
|---|---|
| | IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA |
| SOUTH SPANISH TRAIL LLC, a Florida Limited Liability Company, | CASE NO.: 50-2020-CA-002024-XXXXMB |
| Plaintiff, | DIVISION AO |
| vs. | |
| GLOBENET CABOS SUBMARINOS AMERICA, INC., a Delaware For-Profit Corporation, CARIBBEAN CROSSINGS LTD., INC., and JOHN DOES 1-100, | |
| Defendants._____/ | |
| GLOBENET CABOS SUBMARINOS AMERICA, INC., and CARIBBEAN CROSSINGS LTD., INC. | |
| Counter-Plaintiffs, | |
| vs. | |
| SOUTH SPANISH TRAIL, LLC, and BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND OF THE STATE OF FLORIDA, | |
| Counter/Third-Party Defendants,_____/ | |

**FIRST AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendants/Counter-Plaintiffs, Globenet Cabos Submarinos America, Inc. ("Globenet") and Caribbean Crossings Ltd., Inc. ("Caribbean") (collectively, "Counter-Plaintiffs"), hereby file this First Amended Counterclaim and Third-Party Complaint ("Counterclaims") through undersigned counsel against Plaintiff/Counter-Defendant, South Spanish Trial, LLC ("SST") and Third-Party Defendant Board of Trustees of the Internal Improvement Trust Fund of the State of

Florida ("Trust") who is joined pursuant to Rule 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, and allege as follows:

1.  Counter-Plaintiffs' Counterclaims consist of claims for damages in excess of $15,000, exclusive of attorneys' fees, interests and costs and a claim for equitable and declaratory relief. Counter-Plaintiffs' Counterclaims are exclusively within the subject matter jurisdiction of the Circuit Court.

2.  Counter-Plaintiffs' Counterclaims arise out of the same transaction or occurrence set forth in SST's Amended Complaint, and are compulsory counterclaims within the meaning of Rule 1.170(a) of the Florida Rules of Civil Procedure.

## Parties

3.  Defendant/Counter-Plaintiff Globenet is a Delaware corporation, with its principal place of business in Broward County, Florida. Globenet provides telecom services through subsea fiber optic cable systems that connect Latin America and the Caribbean with the United States. In fact, Globenet's fiber optic cables are considered vital to national security as it is required to advise the Department of Homeland Security of any significant changes concerning its cables.

4.  Defendant/Counter-Plaintiff Caribbean is a Bahamian corporation doing business in the State of Florida. It is a retail telecom provider that operates a fiber optic cable system linking the Bahamas with the United States. Caribbean's cable utilizes a submarine conduit owned by Co-Defendant Globenet.

5.  Plaintiff SST is a Florida limited liability company that recently purports to have acquired certain submerged lands in the Intracoastal Waterway that are described in SST's Complaint (the "Submerged Lands").

6. Third-party defendant, Board of Trustees of the Internal Improvement Trust Fund of the State of Florida ("Trust") is a legal entity comprised of the Governor of the State of Florida and the Governor's cabinet members. Pursuant to the Florida Constitution, title to lands under navigable waters, which have not been specifically alienated, is held by the State in trust for the people via the Trust. Pursuant to Rules 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, the Trust is joined as a Third-Party Defendant to the counterclaim for declaratory relief. The Trust has a direct interest in the subject matter of this case and Counter-Plaintiffs' Counterclaims, and thus the Trust's presence as a party is necessary to a complete determination of these claims.

**Facts**

*Telecommunications Project*

7. From around 1999, Globenet and its predecessors began construction of a fiber optic cable system to provide a telecommunications link (including internet service) for parts of the Southeastern United States of America and nations in the Caribbean and Latin America ("Project"). The Project involved laying a fiber optic cable linking landing stations in Tuckerton, New Jersey and Boca Raton, Florida with landing stations in Bermuda, Brazil, Colombia and Venezuela. A timeline of relevant milestones in the Project includes the following:

   a. 1999 - The Project begins.

   b. October 1999 – An engineering report for the Project was submitted to relevant federal, state and local government authorities. The Project landed a fiber optic cable in Palm Beach County, with the path of the cable beginning in the Atlantic Ocean and traveling westward towards a beach manhole located in Boca Raton, Florida. From there, the cable went underground to a cable landing station. En

route to the landing station, the cable would tunnel underneath a section of the Intracoastal Waterway.

c. December 1999 - The Project's cable landing license was issued by the Federal Communications Commission (FCC).

d. February 2000 - Third party objections to the Project's cable landing license were lodged. No objections were made by SST or its predecessors.

e. July 2000 - The Florida Department of Environmental Protection (FDEP) published a notice of intent to issue a permit for the Project in the Palm Beach Post. This did not result in inquiries or objections to the Project being lodged by SST or its predecessors.

f. August 2000 - FDEP issued a permit and intent to grant a sovereign submerged land easement for the Project. The Army Corps of Engineers also issued a permit for the Project authorizing boring under the ocean and land portions of the path of the cable, including the portion passing underneath the Intracoastal Waterway.

g. September 2000 - The United States of America, acting through the U.S. Army Corps of Engineers, issued an easement to Globenet's predecessor granting it permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over and under a portion of the Intracoastal Waterway.

h. September 2000 - The State of Florida, acting through the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, also issued an easement to Globenet's predecessor granting it permission to install four conduits and two fiber optic cables passing underneath the Intracoastal Waterway.

i. October 2000 - Site-related work on the Project commenced.

j. In March 2001, as-built drawings for the Project were prepared, which included a drawing depicting the as-built location and legal description of the portion of the cable that tunnels underneath the Intracoastal Waterway. Due to an administrative error, the legal description forwarded to FDEP for the portion of the cable that tunnels underneath the Intracoastal Waterway referenced the wrong as-built drawing.

k. October 2001 – An updated legal description was provided to FDEP reflecting the as-built location of the portion of the cable tunneling underneath the Intracoastal Waterway.

l. November 2002 - Brasil Telecom S.A. purchased all rights in the Project from its previous owners.

m. May 2003 - The federal easement for the Project was updated to identify a Brasil Telecom S.A. affiliate, Brasil Telecom of America, Inc., as the federal easement grantee.

n. September 2003 - The state easement for the Project was updated to identify Brasil Telecom of America, Inc. as the state easement grantee.

o. January 2014 - Brasil Telecom of America, Inc. changed its name to the Defendant/Counter-Plaintiff in this action, "Globenet Cabos Submarinos America Inc."

*U.S. Easements*

8. The September 2000 and May 2003 easements the United States granted rights to Globenet and its predecessor in connection with construction of the Project ("U.S. Easements"). See attached **Exhibits A and B**.

9. The U.S. Easements grant Globenet rights that are terminable only in three scenarios: (1) if the Project interferes with the Government's use of the Intracoastal Waterway; (2) if Globenet/Caribbean fails to comply with the conditions stated in the U.S. Easements, or (3) if Globenet/Caribbean abandons or fails to utilize its federal easement rights for a period of two years. None of these conditions has been triggered.

10. Due to a scrivener's error, the U.S. Easements identify the wrong federal tract numbers. The tracts are identified as nos. 908 and 909 on the first page thereof, when these should have been identified as 910 and 911. Upon information and belief, this error occurred because there were several prior re-numberings of the tracts that took place and led to the confusion along with a change in the as-built location of the cable. This error was corrected. See attached **Exhibit C**.

11. The United States has a superior interest over all others to the Submerged Lands and has the power to give Globenet a federal easement corresponding to the as-built subterranean path traversed by Globenet's cable through the Submerged Lands. Pursuant to the rights it received, Globenet has the right to authorize others (including Caribbean) to use its conduit and cable system.

*The Federal Source of Rights  
Granted in the U.S. Easements*

12. The United States derives the right to grant Counter-Plaintiffs the U.S. Easements from the constitutional and congressional mandate the United States Government has to regulate navigable waters. The Government's rights in this regard are superior to all other interests. *See Zabel v. Tabb*, 430 F.2d 199, 203-206 (5th Cir. 1970) (describing the paramount federal easement right in navigable waters of the United States deriving from Commerce Clause of the United States Constitution and Section 1314(a) of the Submerged Lands Act); 43 USC § 1314 (a) ("The United

States retains all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international affairs, all of which shall be paramount to … proprietary rights of ownership, or the rights of management, administration, leasing, use, and development of the lands and natural resources ….").

13.     The United States Government's grant of rights to Counter-Plaintiffs is also grounded in a federal judgment. The United States was specifically granted a perpetual easement in the undersea property at issue in this case via a final judgment issued by a federal court in 1935 in a condemnation proceeding.  The petition for condemnation and resulting final judgment are attached hereto as **Exhibits D and E**, respectively.  The federal condemnation judgment enabled construction of the portion of the Intracoastal Waterway at issue in this case and granted the United States perpetual easement rights to use and maintain it.

*Florida's Title to the Submerged Lands*

14.     Despite SST's purported ownership claim in the Submerged Lands, the State of Florida, acting through the Trust, has been and remains the actual fee simple owner of the Submerged Lands.  At a minimum, the Trust's title interest arises pursuant to the federal equal-footing doctrine, which, upon statehood, vested title to submerged lands within Florida borders and under navigable waters to the State of Florida. *Id.*; s*ee also PPL Mont., LLC v. Montana*, 565 U.S. 576, 591 (2012) ("The title consequences of the equal-footing doctrine can be stated in summary form: Upon statehood, the State gains title within its borders to the beds of waters then navigable [or tidally influenced].  It may allocate and govern those lands according to state law subject only to 'the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce.'") (citations omitted) (reversing state supreme

7

court judgment which misapplied federal rules for determining navigability for title under the equal footing doctrine when resolving title dispute between the state and a private party).

15. The equal footing doctrine was later recognized and incorporated into the Florida Constitution. Fla. Const. Art. X, § 11 (adopted 1970) ("The title to lands under navigable waters, within the boundaries of the state, which have not been alienated … is held by the state, by virtue of its sovereignty, in trust for all the people. Sale of such lands may be authorized by law, but only when in the public interest. Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.").

16. Ownership of the Submerged Lands lies with the State of Florida and it acquired those lands at statehood. Other documents establishing the State of Florida's ownership in the Submerged Lands which may be relied on in this case are:

(i) the Bureau of Land Management, General Land Office, Survey of 1870, see **Exhibit F**;

(ii) Deed No. 12041 from the Trustees of the Internal Improvement Fund to Arthur Williams, dated April 25, 1883, see **Exhibit G**; and

(iii) the U.S. Coast and Geodatic Survey, dated 1884, see **Exhibit H**.

*Florida Easements*

17. Globenet and its predecessor also obtained the requisite permits for the Project and additionally obtained the September 2000 and September 2003 easements from the Trust ("Florida Easements") who asserted sovereign ownership of the Submerged Lands. The Florida Easements are attached as **Exhibits I and J**.

18. Globenet and its predecessor paid the Trust $185,000 for the Florida Easements to the Submerged Lands, as along with Trust approval to proceed with the portion of the Project tunneling underneath the Intracoastal Waterway.

19. Globenet's recorded Florida Easements were not updated by the State to include the corrected legal description showing the final as-built location of Counter-Plaintiffs' cables. As a consequence, there is a small discrepancy between the legal description in the Florida Easements and the actual subterranean path traversed by cables through the Submerged Lands. Globenet has initiated the process to correct these administrative errors with State authorities.

20. The records showing the construction of the Globenet's cable system are publicly available.

21. The records showing the correct legal description for the location of Globenet's cable is publicly- available.

22. Prior to purportedly "purchasing" the Submerged Lands, SST had in its possession certain as-built drawings that showed the actual location of Globenet's conduit and cable system and which contained the correct legal description for the easement to be provided by the State of Florida. SST nonetheless continued with the purported "purchase" of the Submerged Lands simply to coerce Globenet and others like Caribbean into paying substantial amounts of money in order to protect their existing rights. However, SST "purchased" the Submerged Lands subject to those rights.

23. Despite the administrative error, the actual cable path still passes under sovereign submerged lands of the State of Florida. Except for the interests of the federal government, the State of Florida has a superior ownership interest over all others to the Submerged Lands. Consequently, the Trust has the power to correct the Florida Easements to reflect the intent of the

State of Florida to give Counter-Plaintiffs a state sovereign submerged lands easement corresponding to the as-built subterranean path traversed by Counter-Plaintiffs cable through the Submerged Lands.

*Project Completion and Ongoing Operations*

24. In approximately 2001, Globenet completed the Project in the ICW. Since that time, the fiber optic cable installed by Globenet has provided telecommunication services to the Southeastern United States and to locations in the Caribbean and Latin America. Caribbean's own cable has been in place since around that time as well. The United States Government's approval of the Project, which includes a determination that the project is in the public interest, remains in place. The Department of Homeland Security also now considers Globenet's fiber optic cable to be vital to national security as Globenet must advise it of any significant matters which might affect the cable.

*SST's Unfounded Title Claim to Seabed of the Intracoastal Waterway*

25. Globenet's fiber optic cable traverses constructed tunnels underneath a portion of seabed of the Intracoastal Waterway located in Palm Beach County, Florida.

26. In 2016 and 2017, SST alleges to have acquired a fee simple interest in a portion of submerged lands in the Intracoastal Waterway that lie vertically above the path of the location of the fiber optic cable (i.e., the Submerged Lands). Estates of deceased private citizens, some closed for 20 years, were suddenly reopened for the sole purpose of purportedly conveying these interests for mere nominal value, to SST by warranty deeds. Upon information and belief, SST—or someone acting on its behalf—paid the legal fees of the attorneys representing the estate and/or heirs to obtain warranty deeds. Armed with these "warranty deeds," SST contends in its Amended Complaint to assert a title interest in the Submerged Lands.

*Caribbean's Fiber Optics Cable*

27. By way of Globenet's conduit, Caribbean's fiber optics cable traverses the Submerged Lands in the intracoastal waterway (ICW) in Palm Beach County.

28. Caribbean's fiber optics cable and Globenet's conduit system through which it passes, have been in place for two decades pursuant to easement rights granted to Caribbean by the State of Florida and the federal government.

29. Globenet has valid federal and state easement rights over the Submerged Lands. Pursuant to those rights, Globenet had the right and authority to allows companies like Caribbean to use its conduit and cable system.

30. All conditions precedent to the maintenance of this action have been satisfied or waived.

## Count I
### Declaratory Relief
### (By Counter-Plaintiffs Against SST and The Trust)

31. Counter-Plaintiffs incorporate by reference paragraphs 1 through 30 above.

32. This is a claim for declaratory judgment against SST and the Trust pursuant to Chapter 86, Fla. Stat., and for supplemental and equitable relief.

33. As set forth above, an actual controversy has arisen between the parties to this action regarding the ownership status of the Submerged Lands as sovereign submerged lands. SST asserts it is the owner of the Submerged Lands and that its rights are superior to all others, including the State.

34. The Trust, through its Florida Easements in favor of Globenet, has asserted since at least 2000 that it is the owner of the Submerged Lands. In the Florida Easements, it repeatedly referred to the Submerged Lands as "sovereign submerged lands". In the easement granted to Caribbean, the Trust similarly referred to the submerged lands as "sovereign submerged lands."

11

Additionally, the legal descriptions that were or should have been used with the Florida Easements make clear that those easements extend from a point on the west seawall of the ICW to a point on the east seawall of the ICW, thus encompassing the Submerged Lands over which SST claims to own.

35. Caribbean acquired rights to use the Globenet conduit and cable system based on both the superior rights of the United States and the Trust's sovereignty rights in the Submerged Lands.

36. Consequently, Counter-Plaintiffs are unsure of their rights. There is a bona fide, actual, present practical need for a declaration regarding Counter-Plaintiffs' easement rights in the Submerged Lands, as well as their rights to operate their fiber optic cable in the conduit that is, at least in part, dependent on the ownership of the Submerged Lands.

37. The declaration sought herein thus concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts. Such declaration will not be advisory in nature.

WHEREFORE, Counter-Plaintiffs seek a declaration that:

a. The Submerged Lands consist of sovereign submerged lands that are owned in fee by the State of Florida (acting via the Trust), subject to prior rights duly acquired by the United States via the United States Constitution, authorizing Congressional legislation, and a final judgment in the federal condemnation proceeding, thereby rendering SST's deeds null and void and without force and effect;

b. Globenet has an interest in the Submerged Lands as a result of a valid and express easement it acquired from and the United States, and that such easement rights are paramount to the rights of any owner of the Submerged Lands and that, as a result,

        Globenet was authorized to allow Caribbean and others to use its conduit and cable system;

c. Globenet has an interest in the Submerged Lands as a result of the valid express easement from the State of Florida (acting via the Trust) and that, as a result, Globenet was authorized to allow Caribbean and others to use its conduit and cable system;

d. Even if the Submerged Lands were ever privately held, SST, through its predecessor in interest, was properly compensated for the Submerged Lands in the 1933 Condemnation Proceeding or, alternatively, SST's action is an improper collateral attack on the 1935 judgment that resulted from that proceeding;

e. Caribbean has an interest in the Submerged Lands as a result of the valid express easement from the State of Florida (acting via the Trust), and the rights granted to it by Globenet;

f. And, such other relief as this Court deems just and proper.

## Count II
### Abuse of Process
### (By Globenet Against SST only)

38. Globenet incorporates by reference paragraphs 1 through 30 above.

39. SST, through its agents, willfully and intentionally made an illegal, improper and perverted use of process by contacting the upland owner of the Submerged Lands to make intentionally false and misleading statements about Globenet and its cable system. Prior to purportedly "purchasing" the Submerged Lands, SST had in its possession certain as-built drawings that showed the actual location of Globenet's cable and which contained the correct legal description for the easement to be provided by the State of Florida. SST "purchased" the

Submerged Lands anyway simply to coerce Globenet into paying substantial amounts of money in order to protect Globenet's existing rights. SST attempted to induce the upland owner to support claims SST knew, or should have known, were specious by offering a share of settlement proceeds that SST represented it was close to reaching with Globenet when SST knew there was no imminent settlement with Globenet. After the upland owner failed to go along with SST's scheme to extort and pressure Globenet, SST then filed a separate lawsuit against the upland owner.

40. SST also sent letters to Governor Ron DeSantis and various other State of Florida Departments on January 8, 2021 and January 14, 2021 (see attached **Exhibits K and L**), claiming, among other things, that Globenet was engaging in (or aiding and abetting) espionage which allegedly posed a national security threat. These letters went so far as to suggest that the State of Florida was a "participant" in unlawful activities that was being "conducted to circumvent the executive orders of the [former] President of the United States." SST claimed Globenet and its customers ("Big Tech")[1] were censoring the former President of the United States and Florida citizens through its cable system. SST ultimately requested that State law enforcement investigate Globenet immediately and that the State discontinue and withdraw its easements and permits with Globenet.

41. SST, through its agents, willfully and intentionally made an illegal, improper and perverted use of process by presenting, participating in presenting, facilitating, and/or threatening criminal prosecution solely to leverage and gain an advantage in its civil matters with Globenet and to harass Globenet and its customers. The criminal process was not intended, and should not

---

[1] At the time SST sent the January 8 and 14 letters it had in its possession Globenet's customer list and agreements, and yet, SST intentionally misrepresented the "Big Tech" companies that are allegedly Globenet's customers using the cable.

be used, as a means of settling private disputes or for harassment and the process is undermined when it is misused by SST in such a manner.

42. SST had an ulterior motive for its actions, as it was pursuing a scheme to coerce Globenet to pay substantial sums (initially $1 million, then $40 million and subsequently demanded $250 million) to "allow" Globenet's fiber optic cable to remain on the Property. Globenet has refused to be extorted.

43. SST's owner (William Swaim) has pursued similar "scorched-earth" tactics against other fiber optic cable companies whose cables pass through submerged lands recently acquired by Mr. Swaim through companies he owns or controls. Encountering little, if any success, in the Circuit Courts, SST devised a scheme to extort and pressure Globenet into paying money by taking the actions set forth in these Counterclaims. SST has also attempted to alienate and pressure Globenet's customers through improper means and methods in the hopes that Globenet will succumb and settle with SST.

44. As a result of SST's conduct, Globenet has suffered, and will continue to suffer, damages to be determined at trial.

WHEREFORE, Counter-Plaintiffs demand judgment against SST for compensatory damages, interest, costs and such other and further relief as the Court deems just and proper.

Dated:  February 15, 2021                                  Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**
777 S. Flagler Drive, Suite 300E
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222


By: *s/ Mark F. Bideau*
    MARK F. BIDEAU
    Florida Bar No. 564044

Email: bideaum@gtlaw.com
ROBERT R. KANE, III
Florida Bar No. 99488
Email: kaner@gtlaw.com
JESSICA J. FISHFELD
Florida Bar No. 1018904
Email: fishfeldj@gtlaw.com
       cruzm@gtlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Florida Courts E-Filing Portal. I also certify that the foregoing document is being served this 15th day of February, 2021, by e-mail generated by the E-Portal system on all counsel of record listed below.

s/  *Mark F. Bideau*
MARK F. BIDEAU

## **SERVICE LIST**

| | |
|---|---|
| Ricardo A. Reyes, Esq. <br> Sacha A. Boegem, Esq. <br> TOBIN & REYES, P.A. <br> Mizner Park Office Tower <br> 225 N.E. Mizner Blvd., Suite 510 <br> Boca Raton, FL  33432 <br> Telephone: (561) 620-0656 <br> Facsimile:  (561) 620-0657 <br> rar@tobinreyes.com <br> sboegem@tobinreyes.com <br> eservice@tobinreyes.com <br><br> *Counsel for Plaintiff/Counter-Defendant, South Spanish Trail, LLC* | Timothy L. Newhall, Esq. <br> Anita J. Patel, Esq. <br> Senior Assistant Attorney General <br> Complex Litigation <br> OFFICE OF THE ATTORNEY GENERAL <br> PL-01 The Capitol <br> Tallahassee, FL  32399 <br> Telephone: (850) 414-3300 <br> Timothy.Newhall@myfloridalegal.com <br> Anita.Patel@myfloridalegal.com <br> ComplexLitigation.eservice@myfloridalegal.com <br><br> *Counsel for Third-Party Defendant, State of Florida Board of Trustees of the Internal Improvement Trust Fund* |