IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.:   2020-CA-002024 XXXX MB
DIVISION:   AO

SOUTH SPANISH TRAIL, LLC, a Florida
limited liability company,

      Plaintiff,

v.

GLOBENET CABOS SUBMARINOS
AMERICA INC., a Delaware for-profit
corporation; CARIBBEAN CROSSINGS,
LTD., INC.; and JOHN DOES 1-100,

      Defendants.

_____/

GLOBENET CABOS SUBMARINOS
AMERICA INC. and CARIBBEAN
CROSSINGS LTD., INC.,

      Counter-Plaintiffs,

v.

SOUTH SPANISH TRAIL, LLC, BOARD OF
TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA,

      Counter/Third-Party Defendants.

_____/

SOUTH SPANISH TRAIL, LLC,

      Cross- Plaintiff,

v.

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE STATE
OF FLORDA,

      Cross-Defendant.

_____/

1

**PLAINTIFF/COUNTER-DEFENDANT, SOUTH SPANISH TRAIL, LLC'S,
ANSWER, AFFIRMATIVE DEFENSES, AND CROSS-CLAIM TO
<u>FIRST AMENDED COUNTERCLAIM</u>**

Plaintiff/Counter-Defendant/Cross-Plaintiff, South Spanish Trail, LLC ("SST"), by and through undersigned counsel, hereby serves its answer, affirmative defenses, and cross-claims to the First Amended Counterclaim filed by Defendants/Counter-Plaintiffs, Globenet Cabos Submarinos America, Inc. ("Globenet") and Caribbean Crossings, Ltd., Inc. ("Caribbean") (together, "Counter-Plaintiffs"), and states:

1.     SST admits that Counter-Plaintiffs have sought to bring an action for damages and equitable and declaratory relief, but otherwise denies the allegations.

2.     SST admits that Counter-Plaintiffs' counterclaim for declaratory relief is a compulsory counterclaim, but otherwise denies the allegations.

### Parties

3.     SST admits that Globenet's principal place of business is in Broward County, Florida, and that Globenet owns certain conduits and/or cables ("Globenet Conduits & Cables") that are occupying a portion of the subject property ("Property"), but otherwise denies the allegations.

4.     SST admits that Caribbean is a Bahamian corporation doing business in the State of Florida ("State"), and that it operates a fiber optic cable ("CC Cable") utilizing the Globenet Conduits & Cables, but is otherwise without knowledge and denies the allegations on that basis.

5.     SST admits that it is a Florida limited liability company and that it is the fee-simple owner of the Property, but otherwise denies the allegations.

6.     Denied.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

**Facts**

*Telecommunications Project*

7.     (Including all subparts).  Without knowledge, and denied on that basis.

*U.S. Easements*

8.     Denied.

9.     Denied.

10.    Denied.

11.    Denied.

*The Federal Source of Rights*
*Granted in the U.S. Easements*

12.    This is a legal conclusion to which no answer is required, but otherwise denied.

13.    This is a legal conclusion to which no answer is required, but otherwise denied.

*Florida's Title to the Submerged Lands*

14.    This is a legal conclusion to which no answer is required, but otherwise denied.

15.    This is a legal conclusion to which no answer is required, but otherwise denied.

16.    Denied.

*Florida Easements*

17.    Denied.

18.    Denied.

19.    Denied.

20.    Denied.

21.    Denied.

22.    Denied.

23.    Denied.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

*Project Completion and Ongoing Operations*

24.     Denied.

*SST's Unfounded Title Claim to Seabed of the Intracoastal Waterway*

25.     Admitted that the Globenet Conduits & Cables traverse the Property, which is in Palm Beach County, Florida, but otherwise denied.

26.     Admitted that SST is the fee-simple owner of the Property, but otherwise denied.

*Caribbean's Fiber Optics Cable*

27.     Admitted.

28.     Denied.

29.     Denied.

30.     Denied.

**COUNT I**
**DECLARATORY RELIEF**
**(By Counter-Plaintiffs against SST and The Trust)**

31.     SST incorporates by reference its responses to paragraphs 1 through 30 above.

32.     SST admits that Counter-Plaintiffs have sought to bring a claim for declaratory relief and for supplemental and equitable relief, but denies that Counter-Plaintiffs have properly done so or that Counter-Plaintiffs' claim has any merit.

33.     Admitted that SST claims to be the owner of the Property, but denies there is any controversy as the State has not claimed to own the Property.

34.     Denied.

35.     Denied.

36.     Denied

37.     Denied.

4

**COUNT II**
**ABUSE OF PROCESS**
**(By Globenet against SST only)**

38.     SST has moved to dismiss this claim.

39.     SST has moved to dismiss this claim.

40.     SST has moved to dismiss this claim.

41.     SST has moved to dismiss this claim.

42.     SST has moved to dismiss this claim.

43.     SST has moved to dismiss this claim.

44.     SST has moved to dismiss this claim.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**
**Improper Declaratory Judgment Claim**

Counter-Plaintiffs have failed to state a cause of action for declaratory relief because they seek a declaration that the Property is sovereign submerged land. As a matter of law, a declaratory judgment action cannot be used to quiet title to real property, which is effectively what Counter-Plaintiffs are seeking to do. Accordingly, Counter-Plaintiffs' attempt to bring a disguised quiet title action (on behalf of the State) fails to state a cause of action.

**Second Affirmative Defense**
**Failure to Join Indispensable Parties**

Counter-Plaintiffs have failed to state a cause of action for declaratory relief because Counter-Plaintiffs have failed to join indispensable parties, including the United States of America ("U.S.") and/or the Florida Inland Navigation District ("FIND"). The U.S. is an indispensable party because its rights would be affected in the event that the Court rules, as Counter-Plaintiffs request, that the Property is sovereign land owned by the State. In such an instance, the federal

5

easement over the Property for the construction and maintenance of the Intracoastal Waterway ("ICW") would be invalid as the State has not granted an easement over that Property to the U.S. (rather, SST's predecessors in title did through the Federal Judgment in the U.S.'s condemnation proceedings). The "Federal Judgment" refers to that certain Final Judgment, dated April 12, 1935, entered in the matter of *United States of America v. Parcel 8 Sheet*, in the United States District Court for the Southern District of Florida, Case No. 793-m. Related, FIND would also be affected in the event of such a ruling because FIND is the local sponsor of the ICW, responsible under Chapter 374, Florida Statutes, for providing the property and necessary authorities for the construction and maintenance of the ICW by the U.S. Accordingly, Counter-Plaintiffs' attempt to bring a disguised quiet title action (on behalf of the State) fails to state a cause of action.

**Third Affirmative Defense**
**Lack of Standing to Argue on Behalf of State**

Counter-Plaintiffs' claim for declaratory relief is avoided because Counter-Plaintiffs lack standing to argue that the Property is sovereign land owned by the State. Under Chapter 253, Florida Statutes, only the State has the right to claim property is sovereign, and the State has not done so here, despite being aware of this dispute for years. Counter-Plaintiffs cannot prosecute a disguised quiet title claim on behalf of a third party such as the State. Related, Counter-Plaintiffs cannot ask the Court to construe an easement so as to invalidate SST's deed to the Property, as Counter-Plaintiffs are not a party to that deed.

**Fourth Affirmative Defense**
**Lack of Standing to Challenge Official Original Government Survey**

Counter-Plaintiffs' claim for declaratory relief is avoided because Counter-Plaintiffs lack standing to challenge the official 1870 original government survey ("1870 Map"). Private parties cannot challenge the 1870 Map. The Property is not within the meanders on the 1870 Map.

6

**Fifth Affirmative Defense**
**Statute of Limitations**

Counter-Plaintiffs' claim for declaratory relief is avoided because, even if Counter-Plaintiffs had standing to bring a quiet title claim on behalf of the State (which it does not), such a claim would be time-barred.  The United States has an interest in the Property by virtue of an easement granted to it by the private owners of the Property pursuant to the Federal Judgment. Under 28 U.S. Code § 2409(a) (Real property quiet title action), claims by private parties such as Counter-Plaintiffs that may affect the federal government's interest in real property are barred unless brought within twelve (12) years of the date upon which the action accrued.  Here, any claim that the Property is not privately owned accrued at the latest at the time of the Federal Judgment, when the United States obtained an easement over the Property for the construction and maintenance of the ICW, and all parties were put on notice of the United States' interest in the Property.   Moreover, because the Property was not submerged land beneath navigable waters at the time of Florida statehood, the twelve (12) year statute of limitations set forth in 28 U.S. Code § 2409(a) would apply equally to any claim by the State that the Property is sovereign submerged land.

**Sixth Affirmative Defense**
**Private Ownership**

Counter-Plaintiffs' claim for declaratory relief is avoided because SST is the record titleholder and fee simple owner of the Property.  SST has a complete chain of title to the Property going back to a root deed granted by the State to SST's predecessors in title, and the private ownership of the Property was affirmed by the Federal Judgment.  Moreover, Counter-Plaintiffs were on notice of SST's ownership by virtue of the public record, and a title commitment obtained

7

by or on behalf of Globenet.  Accordingly, the Property cannot be and is not sovereign submerged land.

### Seventh Affirmative Defense
### Res Judicata/Collateral Estoppel

Counter-Plaintiffs' claim for declaratory relief is avoided because the Federal Judgment affirmed that the Property was privately owned by SST's predecessors in title.  Under the Federal Judgment, SST's predecessors in title were compensated solely for the granting of an easement to the United States for the construction and maintenance of the ICW, and thus SST retains all other rights of ownership as to the Property, as stated in the Federal Judgment.  As such, SST is not attacking, collaterally or otherwise, the Federal Judgment.  Indeed, the Federal Judgment confirms SST's ownership of the Property, and that neither the State nor anyone else has any interest in the Property.  Thus, if anything, it is Counter-Plaintiffs who are collaterally attacking the Federal Judgment by alleging that Globenet, Caribbean, and/or the State has an interest in the Property, and/or that the United States has an interest in the Property beyond the limited easement interest granted to it through the Federal Judgment for the construction and maintenance of the ICW.

### Eighth Affirmative Defense
### Lack of Consent

Globenet's claim for declaratory relief is avoided because, to the extent Counter-Plaintiffs rely on a Consent to Use Easement granted to Globenet by the United States ("Consent"), such Consent requires the consent of the underlying owner of the Property, SST, which Globenet does not have.

### Ninth Affirmative Defense
### Prior Grant

Counter-Plaintiffs' claim for declaratory relief is avoided because, to the extent Counter-Plaintiffs rely on an easement granted to Globenet and/or Caribbean by the State, such easement

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

is a quitclaim easement that does not warrant ownership, and that is subject to prior grants by the State, which would include the State's deed conveying the Property to SST's predecessors in title.

### Tenth Affirmative Defense
### Lack of Authority

Caribbean's claim for declaratory relief is avoided because Caribbean has no authority for the CC Cable to be occupying SST's Property.  Not only does Caribbean lack SST's consent to occupy the Property, but it lacks any agreement, easement, permit, or any similar document, from any private party or from any governmental authority, that would allow Caribbean to cross the ICW with the CC Cable.

### Eleventh Affirmative Defense
### Lack of Controversy

Counter-Plaintiffs' claim for declaratory relief fails to state a cause of action because, to the extent Counter-Plaintiffs rely on an easement granted to Globenet by the State, there is no present controversy upon which to base a claim for declaratory relief.  It is uncontroverted that the Globenet Conduits & Cables and the CC Cable are not located within the area described in the easement from the State.

### Twelfth Affirmative Defense
### Platted Land

Counter-Plaintiffs' claim for declaratory relief is avoided because, even if Counter-Plaintiffs had standing to bring a quiet title claim on behalf of the State (which they do not), the Property was platted nearly 100 years ago, and such plat, which supersedes the original 1870 survey, demonstrates that the Property was privately owned dry cultivatable land at that time.

9

**Thirteenth Affirmative Defense**
**Waiver/Failure to Plead**

Counter-Plaintiffs' claim for declaratory relief is avoided as waived because, even if Counter-Plaintiffs had standing to bring a quiet title claim on behalf of the State (which they do not), the State has failed to plead that the Property is sovereign land owned by the State.

**Fourteenth Affirmative Defense**
**Waiver**

Counter-Plaintiffs' claim for declaratory relief is avoided as waived because, even if Counter-Plaintiffs had standing to bring a quiet title claim on behalf of the State (which they do not), the State has waived any right to claim that the Property is sovereign land by virtue of:

a. SST's root deed to the Property in which the State conveyed title to the Property to SST's predecessors in title;

b. The platting of the Property nearly 100 years ago to which the State never objected;

c. The Federal Judgment in which the State never intervened or objected to the Property being affirmed as privately owned;

d. The 1942 easement in which the State conveyed sovereignty land to the United States for purposes of the construction and maintenance of the ICW, and did not convey the Property in that easement;

e. The February 10, 2017 title determination from the Florida Department of Environmental Protection ("DEP") (Rod Maddox), acting under direct delegation from the BOT, stating that proprietary authorization that normally applies to state-owned lands, not apply to the subject lands;

f. The failure of the State to claim the Property as being sovereign submerged land despite being on notice of this dispute for years;

g. Counter-Plaintiffs asserting under penalty of perjury to obtain a State (DEP) permit that the ICW (including the Property) was owned by the United States government, under the jurisdiction of the Army Corps of Engineers;

h. The BOT never having included any of the Property, or any property within the ICW right-of-way outside of the 1942 easement within Palm Beach County, in its annual inventory of all publicly owned submerged lands within the State as required (for over 40 years) by Section 253.03(8), Florida Statutes;

10

i.  The existence of at least thirty (30) deeds in the public record identifying the Property as being privately owned;

j.  The BOT's failure to respect the warranty associated with its deed to SST's predecessor in title;

k.  The BOT's declining to file suit pursuant to 253.04, Florida Statutes to quiet title to the Property.

The State has known for over 130 years  it had no right to claim ownership of the Property (or any portion) as sovereign, and took other actions and made other statements, including those above, inconsistent with a claim that the Property (or any portion) is sovereign, and thereby manifested its intent to relinquish its right to claim any of the Property as being sovereign.

**Fifteenth Affirmative Defense**
**Estoppel**

Counter-Plaintiffs' claim for declaratory relief is avoided and estopped because, even if Counter-Plaintiffs had standing to bring a quiet title claim on behalf of the State (which they do not), the State is estopped from claiming that the Property is sovereign land by virtue of:

a.  SST's root deed to the Property in which the State conveyed title to the Property to SST's predecessors in title;

b.  The platting of the Property nearly 100 years ago to which the State never objected;

c.  The Federal Judgment in which the State never intervened or objected to the Property being affirmed as privately owned;

d.  The 1942 easement in which the State conveyed sovereignty land to the United States for purposes of the construction and maintenance of the ICW, and did not convey the Property in that easement;

e.  The February 10, 2017 title determination from the Florida Department of Environmental Protection ("DEP") (Rod Maddox), acting under direct delegation from the BOT, stating that proprietary authorization that normally applies to state-owned lands, not apply to the subject lands;

f.  The failure of the State to claim the Property as being sovereign submerged land despite being on notice of this dispute for years;

11

g.  Counter-Plaintiffs asserting under penalty of perjury to obtain a State (DEP) permit that the ICW (including the Property) was owned by the United States government, under the jurisdiction of the Army Corps of Engineers;

h.  The BOT never having included any of the Property, or any property within the ICW right-of-way outside of the 1942 easement within Palm Beach County, in its annual inventory of all publicly owned submerged lands within the State as required (for over 40 years) by Section 253.03(8), Florida Statutes;

i.  The existence of at least thirty (30) deeds in the public record identifying the Property as being privately owned;

j.  The BOT's failure to respect the warranty associated with its deed to SST's predecessor in title;

k.  The BOT's declining to file suit pursuant to 253.04, Florida Statutes to quiet title to the Property.

By the State's above statements and conduct, the State represented that the Property was not sovereign land.  SST relied on this representation in taking title to the Property.  To the extent Counter-Plaintiffs and/or the State now claim that the Property (or any portion) is sovereign, this is a change in position detrimental to SST.

**Sixteenth Affirmative Defense**
**MHWL Cannot Be Established**

Counter-Plaintiffs' claim for declaratory relief is avoided because, even if Counter-Plaintiffs had standing to bring a quiet title claim on behalf of the State (which they do not), there is insufficient information to determine the MHWL of the natural navigable waterway in the vicinity of the Property prior to alteration (dredging/widening of ICW), as the State has admitted, and thus the boundary of the Property is as set forth in the deeds to the Property, as confirmed by the platting of the Property and by the Federal Judgment.

12

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

### Seventeenth Affirmative Defense
### Admission of Private Ownership

Globenet's claim for declaratory relief is avoided because, by seeking to obtain the Consent, despite knowing that such Consent can only be valid if SST's predecessors in title had given the federal government an easement over the Property by virtue of the Federal Judgment, Globenet has admitted and acknowledged that the Property is privately owned.

### Eighteenth Affirmative Defense
### Unjustified Reliance on State Easement

Counter-Plaintiffs' claim for declaratory relief is avoided because their reliance on an easement granted by the State is unjustified. Such easement, as Counter-Plaintiffs know or should know, is a quitclaim easement that does not warrant title to the Property, and Counter-Plaintiffs know the State has not claimed the Property as sovereign. As such, even if the Globenet Conduits & Cables and CC Cable were located within the area described in the easement, which they are not, Counter-Plaintiffs' reliance on the easement is unjustified.

### Nineteenth Affirmative Defense
### Invalidity of State Easement

Counter-Plaintiffs' claim for declaratory relief is avoided because the easement granted by the State is invalid. The Globenet Conduits & Cables and CC Cable are not located within the area described in the easement. Even if they were, the easement requires the grantee to have evidence of sufficient upland riparian interest on each side of the ICW, otherwise the easement is immediately terminated and title to the easement immediately and automatically reverts to and vests in the grantor. Globenet does not have a sufficient upland riparian interest on either side of the ICW, as the Globenet Conduits & Cables and CC Cable are not located within the area described in the easements granted to Globenet by the City of Boca Raton and Little Cardinal, LLC ("LCL"), and/or because Globenet does not have an easement from SST, which is the true

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

riparian owner on the East side of the ICW because only SST's Property (not the property now owned by LCL) bordered a navigable waterway at Florida statehood.  As such, the easement has been automatically terminated and thus is invalid by its terms.

**Twentieth Affirmative Defense**
**Non-Assignability of Easement/Consent**

Counter-Plaintiffs' claim for declaratory relief is avoided because even if Counter-Plaintiffs could rely on the easement from the State and/or Consent from the United States, which they cannot for the reasons discussed above, such documents grant rights only to the grantee, and those rights are not assignable to other parties, such as Caribbean and/or customers of Counter-Plaintiffs.

**<u>CROSS-CLAIMS</u>**

***PLED IN THE ALTERNATIVE***

1.      In 1926, the Secretary of War delivered a report to Congress declaring that an inland waterway following the coastal route from Jacksonville to Miami, was deemed advisable, and recommended the approval of that project subject to the following conditions:

> (a) That local interests shall acquire the necessary rights-of-way and the privately owned waterway known as the Florida East Coast Canal and transfer them free of cost to the United States, and

> (b) That local interests shall furnish suitable areas for deposit of dredged materials in connection with the work and its subsequent maintenance.

2.      The River and Harbor Act, approved in 1927 (and amended thereafter), authorized the construction and maintenance of such an inland waterway, subject to the above conditions.

3.      The Florida Inland Navigation District ("FIND") was created by the Florida Legislature at its Session in 1927.  The Legislature authorized FIND to purchase the canals and waterway which were of the Florida Canal & Transportation Company known as the Florida East

14

Coast Canal and convey it free of cost to the United States ("U.S."), and as amended in 1931, gave FIND the responsibility of performing the conditions imposed on local interests by Congress.

4.      FIND sought and obtained the rights necessary for the U.S. to construct and maintain the waterway, which later became known as the Intracoastal Waterway ("ICW").

5.      To the extent FIND was unable to negotiate such rights from certain private landowners, it identified the lands necessary for the construction of the ICW, and the General Counsel for FIND assisted the U.S. in bringing a condemnation action which resulted in that certain Final Judgment, dated April 12, 1935, entered in the matter of *United States of America v. Parcel 8 Sheet*, in the United States District Court for the Southern District of Florida, Case No. 793-m ("Federal Judgment").  The petition for condemnation and resulting Federal Judgment are attached as Exhibits D and E, respectively, to the First Amended Counterclaim and Third-Party Complaint filed by Defendants/Counter-Plaintiffs, Globenet Cabos Submarinos America, Inc. ("Globenet") and Caribbean Crossings, Ltd., Inc. ("Caribbean"), and are incorporated herein by reference.

6.      In connection with the Federal Judgment, certain private landowners proved their ownership of certain lands, and were ordered to be compensated by FIND for an easement over their lands granted to the U.S. for the construction and maintenance of the ICW.

7.      Such compensation was part of the FIND Minutes published in local newspapers.

8.      As part of the condemnation proceedings that resulted in the Federal Judgment, the Special Assistant to the Attorney General of the United States, who was also the General Counsel of FIND, attested by affidavit that a diligent search and inquiry had been conducted to ascertain all those with any interest in the properties subject to the petition for condemnation, and that all those individuals/entities were named in the petition.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

9.      The State/BOT was not named as a party to the petition for condemnation because it was not identified as an entity with any interest in any of the properties subject to condemnation.

10.     FIND, in its 1931 survey of the Florida East Coast Canal identified the platted lots that included the Property as areas to be acquired for the expansion of the ICW.

11.     Among the lands to which private ownership was proven in connection with the condemnation proceeding that resulted in the Federal Judgment, and for which compensation was ordered to be paid by FIND to the private landowner at the time for an easement granted to the U.S. for the ICW, was the subject Property (as defined in South Spanish Trail, LLC's ("SST") operative complaint).

12.     SST owns the Property in fee simple, and SST's predecessors in title proved their ownership of the Property and were compensated by FIND for an easement granted to the U.S. for the construction and maintenance of the ICW.

13.     Accordingly, pursuant to the Federal Judgment, the U.S. has an easement over the Property, which is owned by SST, the record titleholder, in fee simple.

14.     FIND resurveyed and reset the section corners in 1932 that locate the Property, recorded same in the official records of Palm Beach County in Plat Book 17 page 28, and the BOT has never challenged the accuracy of this survey. *See* FIND Plat, attached hereto as **Exhibit "A."**

15.     In 1942, the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida ("BOT") granted an easement to the U.S. over certain lands owned by the BOT, including areas in Palm Beach County, for the construction and maintenance by the U.S. of the ICW ("1942 Easement"). A true and correct copy of the 1942 Easement is attached hereto as **Exhibit "B."**

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

16.     The 1942 Easement legally describes the sovereign submerged lands over which the BOT granted an easement to the U.S. for the ICW, and the Property is not among those legally described lands.

17.     Since 1935, the BOT has not asserted ownership or filed any claim pursuant to section 253.04, Florida Statutes, for any lands that were part of the federal condemnation lawsuit that resulted in the Federal Judgment, including the Property.

18.     The BOT has never included the Property in its annual inventory of all publicly owned submerged lands within the State, which has been required for over 40 years by Section 253.03(8), Florida Statutes.

**COUNT I**
**Declaratory Relief**
**(SST against the BOT, the U.S., and FIND)**

19.     SST realleges paragraphs 1 through 18, above.

20.     This is a claim for declaratory judgment against the BOT, the U.S., and FIND pursuant to Chapter 86, Fla. Stat., and for supplemental and equitable relief.

21.     An actual controversy has arisen between SST and the BOT regarding whether the BOT can, and/or has any basis to, claim the Property to be sovereign submerged land owned by the BOT.

22.      This is because the U.S. has an easement over the Property for the construction and maintenance of the ICW, which the U.S. obtained from SST's predecessors in title through the Federal Judgment in the U.S.'s condemnation proceedings.

23.     If the Court were to rule that the BOT owns the Property, rather than SST, the federal easement over the Property for the construction and maintenance of the ICW would be invalid as the BOT has not granted an easement over that Property to the U.S.

17

24.     Accordingly, SST seeks a declaration that the BOT cannot, and has no basis to, claim that the Property is sovereign submerged land owned by the BOT.

25.     The U.S. is an indispensable party to this claim for declaratory relief as its rights may be affected by the Court's declaration.

26.     Specifically, the U.S. will not have an easement over the Property for the ICW if the Court determines that the BOT owns the Property and put into question ownership of all lands within the ICW.

27.     FIND is also an indispensable party to this claim for declaratory relief as its rights will be affected by the Court's declaration.

28.     Specifically, as the local sponsor of the ICW, FIND is responsible under Chapter 374, Florida Statutes, for obtaining, free of cost to the U.S., all necessary right-of-way property and suitable fee simple or easement areas for improving and/or constructing the ICW, and for its subsequent maintenance and/or improvement.

29.     In contrast, pursuant to section 253.03(1), the BOT does not have authority over canal right-of-ways such as the ICW, which is FIND's responsibility.  As such, the BOT has no right to claim that the Property, which is in the ICW (*i.e.*, a canal right-of-way) is sovereign submerged land owned by the BOT.

30.     Accordingly, if the BOT is permitted to allege that the Property is owned by the BOT, and if such a ruling were made, FIND and the U.S. would be found to have failed to secure the necessary easement rights required by Chapter 374, Florida Statutes, and the River and Harbor Act (as amended).

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

31.    Notably, if the BOT, either directly, or indirectly through allegations made by private parties such as Globenet and Caribbean,[1] is permitted to call into question the Federal Judgment, then the ownership of property located in all government canals, including in the South Florida Water Management District, is put in question.

32.    For example, if the Property, having been found by way of the Federal Judgment to be owned by SST's predecessors in title, can later be found to be owned by the BOT, then the successors in interest to all of the lands found to be privately owned by way of the Federal Judgment are at risk of having their land deemed owned by the BOT as well.

33.    In short, private ownership of submerged lands within the legally obtained federal easements across the State of Florida ("State") will be at risk if the BOT can allege ownership of, and be found to own, land that was previously proven to be owned by private individuals or entities by way of the Federal Judgment.

34.    This makes a declaration as requested herein all the more critical.

35.    The BOT also, through the Florida Department of Environmental Protection ("DEP"), granted a DEP Environmental Resource Permit to Globenet's predecessor in interest for the installation of certain conduits and cables across the Property ("DEP Permit to Globenet"). The DEP Permit to Globenet is attached hereto as **Exhibit "C."**

36.    The DEP Permit to Globenet should be cancelled because the BOT had and has no right to grant such a permit over property that it does not own, without the owner's consent, which

---

[1] SST denies that Globenet or Caribbean have standing to assert a sovereign land claim on behalf he BOT, or to challenge the accuracy of the official 1870 original government survey ("1870 Map") from which SST deraigns its title.  As alleged in SST's operative complaint, SST's chain of title originates from an April 9, 1886 deed from the BOT conveying government lots identified on the 1870 Map.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

SST and its predecessors in title have not given with respect to the Property. *See* correspondence to DEP, dated January 29, 2020, attached hereto as **Exhibit "D."**

37.     Furthermore, Globenet is also in violation of additional provisions of the DEP Permit to Globenet.

38.     The BOT also, through the DEP, granted a DEP Environmental Resource Permit to Caribbean for the installation of a fiber optic cable across the Property ("DEP Permit to Caribbean"). The DEP Permit to Caribbean is attached hereto as **Exhibit "E."**

39.     The DEP Permit to Caribbean should be cancelled because the BOT had and has no right to grant such a permit over property that it does not own, without the owner's consent, which SST and its predecessors in title have not given with respect to the Property. *See* correspondence to DEP, dated February 4, 2020, attached hereto as **Exhibit "F."**

40.     Furthermore, Caribbean is also in violation of additional provisions of the DEP Permit to Caribbean.

41.     Consequently, a declaration is needed as to whether the BOT can, or has any basis to, claim that the Property is sovereign submerged land owned by the BOT.

42.     The cancellation of the 130 year chain of title for the Property would also void/cancel the Consent to Use Easement recently obtained by Globenet ("Consent") for the ICW over the Property, a copy of which is attached as Exhibit C to the First Amended Counterclaim and Third-Party Complaint filed by Globenet and Caribbean, and incorporated herein by reference.

43.     Globenet's hiring of a current FIND commissioner to obtain the new Consent would be in direct conflict with Globenet's position that the State owns SST's Property.

44.     The Consent is also void for failure to comply with the condition precedent contained in the Consent, requiring permission of the underlying property owner.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

45.     The Consent also prohibits any other parties from an assignment of use of the Consent without written consent of the U.S.

46.     The declaration sought herein thus concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts.  Such declaration will not be advisory in nature.

47.     SST has retained counsel, including undersigned counsel, to represent its interests and must pay reasonable attorneys' fees for those services.

48.     All conditions precedent to the filing of this action have been satisfied, waived, or excused.

WHEREFORE, Cross-Plaintiff, South Spanish Trail, LLC, seeks a declaration:

    a.  That the BOT is prohibited from claiming, and has no basis to claim, that the Property is sovereign submerged land owned by the BOT in light of the Federal Judgment by which the Property was determined to be privately owned, and/or because the BOT has no right to claim that the Property, which is in the ICW (*i.e.*, a canal right-of-way) is sovereign submerged land owned by the BOT, as only FIND has authority over such lands;

    b.  That the DEP Permit to Globenet is void/cancelled because the BOT had no right to grant same absent the consent of the owner of the Property, which the BOT did not and does not have;

    c.  That the Consent to Use Easement is void for failure to obtain permission from the current property owner;

    d.  That the Consent to Use Easement cannot be utilized for any other party who is not signatory to the agreement;

    e.  That the DEP Permit to Caribbean is void/cancelled because the BOT had no right to grant same absent the consent of the owner of the Property, which the BOT did not and does not have; and

    f.  Granting such other relief as the Court deems just and proper.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

## COUNT II
## Slander of Title
## (SST against the BOT)

49.     This is an action by SST for slander of title against the BOT.

50.     This action is seeking damages in excess of $80,000,000.00

51.     The BOT has issued certain easements and received payment for ("Florida QC Easements"), attached as Exhibits I and J to the First Amended Counterclaim and Third-Party Complaint filed by Globenet and Caribbean, and incorporated herein by reference.

52.     The Florida QC Easements, to the extent they purport to grant rights to Globenet in the Property, suggest or imply that the Property is owned by the BOT rather than by SST.

53.     Despite being put on notice, the BOT has failed and refused to acknowledge that it sold the Property to SST's predecessors in title.

54.     Despite this specific knowledge, the BOT closed the Florida QC Easements sales and recorded the Florida QC Easements as if they, and they alone, owned and controlled the Property.

55.     The BOT did and is knowingly and wrongfully claiming title, dominion, control and dominance of estate over all other rights or claims on the Property and SST is being damaged by this conduct.

56.     The BOT has refused SST's demand to cancel the Florida QC Easements and the BOT, despite admitting to its overreach and the encumbrances on the Property, has perpetuated, prolonged and materially magnified SST's damages in inducing others not to deal with SST.

57.     The Florida QC Easements have been recorded in the public record and published to third parties by virtue of having been sent to Globenet, Caribbean, and/or publicly filed/recorded.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

58.     SST put the BOT on notice of its slanderous conduct through correspondence pursuant to section 768.28(6)(a), Florida Statutes, dated January 29, 2020, and February 4, 2020, true and correct copies of which are attached hereto as **Exhibits "G" and "H,"** respectively ("768 Letters").

59.     Receipt of the 768 Letters (one or both) was acknowledged in correspondence dated February 6, 2020 and February 14, 2020, true correct copies of which are attached hereto as **Exhibits "I" and "J,"** respectively (together, "768 Responses").

60.     Despite being put on notice by the 768 Letters, the BOT failed and refused to correct the false statements reflected by the Florida QC Easements.

61.     By issuing the Florida QC Easements, publishing those documents to third parties (via the DEP), failing to correct the false statements in those documents, and by refusing to acknowledge that it sold the Property to SST's predecessors in title, the BOT has slandered SST's title to the Property and created a cloud on SST"s title to the Property.

62.     The BOT knew or should have known that the Property is owned by SST because SST is the record titleholder of the Property and has a complete chain of title going back to the State's sale of the Property to SST's predecessors in title.

63.     Moreover, the BOT knew that the Property is not sovereign land because the BOT has been required by law, for more than forty years, to specifically identify and precisely locate with legal descriptions any submerged land claimed to be owned by the BOT pursuant to section 253.03(8), Florida Statutes.

64.     Further, even after being put on notice via the 768 Letters, the BOT failed and refused to correct the statements in the Florida QC Easements, suggesting that the Property is owned by the BOT rather than by SST.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

65.     The BOT has not cancelled the Florida QC Easements, and has in fact allowed Globenet and Caribbean to act on the BOT's behalf in asserting State ownership of the Property.

66.     Moreover, the BOT knew or should have known that its suggestion in the Florida QC Easements, and its conduct in issuing those documents and refusing to acknowledge that it sold the Property to SST's predecessors in title, would likely result in inducing others not to deal with SST.

67.     The BOT's above-referenced conduct did in fact induce Globenet, Caribbean, and the City of Boca Raton not to deal with SST, and to instead assert that the Property is owned by the BOT rather than by SST.

68.     The BOT's conduct has caused a cloud on SST's title to the Property, and SST has incurred damages as a result of the BOT's slanderous conduct, including depriving SST of its full use of the Property, devaluing the Property, making it impossible for SST to monetize the Property, having to defend/vindicate its rights in the Property in litigation, including with Globenet, Caribbean, and others, causing the presence of easements in the public record, causing competing claims to the right to use the Property as a result of the easements, and causing continuing trespasses upon the Property purportedly justified by the easements.

69.     SST has been damaged by the clouds on its title caused by: a) the presence of the Easements in the public record; b) competing claims of the right to use the Property caused by the Easements; c) the continuing trespasses on the Property by Defendants under the Easements and others; d) delays in developing the Property; and e) attorney's fees associated with the need to clear title on the Property.

70.     SST's title is uninsurable and unmarketable without exception for the Easements and SST is being deprived of its use of the Property for its intended purposes.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

71.    SST has retained counsel, including undersigned counsel, to represent its interests and must pay reasonable attorneys' fees for those services.

72.    All conditions precedent to the filing of this action have been satisfied, waived, or excused.

WHEREFORE, Cross-Plaintiff, South Spanish Trail, LLC, demands judgment in its favor against Defendant, Board of Trustees of the Internal Improvement Trust Fund of the State of Florida:

      a.  Awarding damages;

      b.   Awarding special damages under the wrongful act doctrine;

      c.  Cancelling the Florida QC Easements;

      d.  Ordering that the Florida QC Easements be removed from the public record;

      e.  Awarding SST its attorney's fees and costs; and

      f.  Granting such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was this 18th day of March, 2021, served through the E-Filing Portal on Humberto H. Ocariz, Esq., Elisa H. Baca, Esq., Jessica Fishfeld, Esq., and Jared R. Kessler, Esq., Greenberg Traurig, PA., **Counsel for Globenet Cabos Submarinos America, Inc., Caribbean Crossings, Ltd., Inc., and certain John Does**, 333 S.E. 2nd Avenue, Suite 4400, Miami, FL 33131; email: OcarizB@gtlaw.com; belloy@gtlaw.com;   flservice@gtlaw.com;   fishfeldj@gtlaw.com;   KesslerJ@gtlaw.com; CruzM@gtlaw.com;  BacaE@gtlaw.com;  OrizondoL@gtlaw.com;  MiaLitDock@gtlaw.com; Mark F. Bideau, Esq. and Robert R. Kane, III, Esq., **Counsel for Globenet Cabos Submarinos America, Inc., Caribbean Crossings, Ltd., Inc., and certain John Does**, 777 S. Flagler Dr.,

25

Suite 300E, West Palm Beach, FL 33401; email: bideaum@gtlaw.com; kaner@gtlaw.com; thomasd@gtlaw.com; chalkleyt@gtlaw.com; flservice@gtlaw.com; Timothy L. Newhall, Esq., Senior Assistant Attorney General, Complex Litigation, Office of the Attorney General, **Counsel for Board of Trustees of Internal Improvement Trust Fund of the State of Florida**, PL-01 The Capitol, Tallahassee, FL 32399, email: Timothy.Newhall@myfloridalegal.com; complexlitigation.eservice@myfloridalegal.com; Alec H. Schultz, Esq. and Carly A. Kligler, Esq., Hilgers Graben PLLC, **Counsel for certain John Does**, 777 South Flagler Drive, Suite 800 – West Tower, West Palm Beach, FL 33401; email: aschultz@hilgersgraben.com; ckligler@hilgersgraben.com; paralegals@hilgersgraben.com; Scott M. Dimond, Esq. and Michelle R. Suskauer, Esq., Dimond Kaplan & Rothstein, P.A., **Counsel for CenturyLink Communications, LLC f/k/a Qwest Communications Company, LLC**, Offices at Grand Bay Plaza, 2665 South Bayshore Drive, PH-2B, Miami, FL 33133, email: sdimond@dkrpa.com; vceballos@dkrpa.com; michelle@dkrpa.com; kelly@dkrpa.com.

Respectfully submitted,

s/Sacha A. Boegem
Ricardo A. Reyes, FBN 864056
Sacha A. Boegem, FBN 0024930
Carrie S. Robinson, FBN 354030
TOBIN & REYES, P.A.
*Attorneys for South Spanish Trail, LLC*
Mizner Park Office Tower
225 N. E. Mizner Blvd., Suite 510
Boca Raton, FL 33432
Phone: (561) 620-0656
Fax:    (561) 620-0657
eservice@tobinreyes.com
rar@tobinreyes.com
sboegem@tobinreyes.com
csrobinson@tobinreyes.com
