UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

SOUTH SPANISH TRAIL, LLC.,
a Florida limited liability corporation,    CASE NO: 9:21-CV-80728-DMM

  Plaintiff,

v.

GLOBENET CABOS SUBMARINOS
AMERICA, INC. a Delaware for-profit
corporation, CARIBBEAN CROSSINGS
LTD., INC.; and JOHN DOES 1-100,

  Defendants.
_____/

GLOBNET CABOS SUBMARINOS
AMERICA, INC. and CARIBBEAN
CROSSING LTD., INC.,

  Counter-Plaintiffs,

v.

SOUTH SPANISH TRAIL, LLC, BOARD OF
TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA,

  Counter/Third-Party Defendants,
_____/

SOUTH SPANISH TRAIL, LLC,
  Cross-Plaintiff,

v.

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA, UNITED STATES
OF AMERICA,

  Cross-Defendants.
_____/

## JOHN DOE DEFENDANTS AMAZON, TWITCH, AND MICROSOFT'S JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH PREJUDICE

Defendants John Doe # 3 n/k/a Amazon Corporate LLC*, John Doe # 4 n/k/a Twitch Interactive Inc.*, and John Doe # 20 n/k/a Microsoft Corporation (hereinafter the "John Does"), through their undersigned counsel, respectfully submit this Motion to Dismiss Plaintiff South Spanish Trail, LLC's ("SST") Amended Complaint for Damages and Injunctive Relief ("Amended Complaint" or "Am. Compl.").[1]  As the John Does demonstrate below, this case involves a serial plaintiff putting forth a shotgun pleading in a strained attempt to attach liability where it plainly does not exist and, pursuant to Fla. R. Civ. P. 1.140(b)(6) and/or Fed. R. Civ. P. 12(b)(6), the Amended Complaint must be dismissed with prejudice.[2]

### I.    INTRODUCTION

Accepting Plaintiff's theory of liability in this case would dramatically extend the scope of existing law and expose to potential liability a nearly limitless group of data users, including this Court.  To put it simply, in the information age, if an entity or individual commits a "trespass" merely by making use of data that at some point traversed cables that person or entity does not own, everyday electronic transactions would result in unwitting liability.

However, the law does not support the "gotcha" liability theory that Plaintiff advances as to the John Does.  South Spanish Trail, a serial plaintiff, allegedly acquired two plots of submerged land located in the Intracoastal Waterway ("ICW") in Palm Beach County, with the sole intent of filing the present lawsuit contending a certain cable system located in the ICW is trespassing on its newly acquired property; the same premise upon which it has pursued claims in numerous other lawsuits throughout South Florida.  Taking this a step further, SST has now named thirty-seven John Does in this suit based on the erroneous assertion that "[e]ach transmission … of bits of data/spectrum through [a] [c]able [s]ystem constitutes unauthorized entry, occupation, and/or use

---

[1] A true and correct copy of the Amended Complaint is attached hereto as **Exhibit A.**

[2] On April 9, 2021, the instant motion was previously filed in the state court before removal of the case to the United States District Court Southern District of Florida on April 16, 2021. Accordingly, this motion and supporting memorandum of law is being re-filed in accordance with Local Rules 5.1, 7.1, and 7.2. No response to the motion had been filed in state court before removal.

CASE NO: 9:21-CV-80728-DMM

of [its] [p]roperty." *See, e.g.*, Am. Compl. ¶ 125. Having suffered no injury, SST asks this Court to adjudicate a wholly new tort of Plaintiff's own creation, and award it damages under an unrecognized theory of recovery. Allowing a frivolous case like this to continue forward on the merits would set a dangerous precedent for litigation trolls statewide.

Indeed, Florida law plainly requires a *physical* intrusion in order to assert a claim for trespass, and not a single court in Florida has held otherwise. *See infra* Section (IV)(B)(i). On that basis alone, the Court should dismiss this action pursuant to Fla. R. Civ. P. 1.140(b)(6) and/or Fed. R. Civ. P. 12(b)(6).[3] But even if this Court were inclined to recognize a claim for intangible trespass without a physical intrusion, which no other Florida court has done, it should adopt the law of its sister courts, all of which would dismiss SST's claims as a matter of law because fiber-optic signal transmissions neither invade the exclusive possession of land nor cause physical injury to it. *See infra* Section (IV)(B)(ii). Under either scenario, Plaintiff's claim for trespass against the John Does necessarily fails.

So too does its claim of ejectment, which also requires a physical intrusion, and its claim for an injunction, which itself is not an independent cause of action. *See infra* Section (IV)(D). And equitable claims for unjust enrichment are disallowed when they are premised on the same factual underpinnings of redundant legal claims, such as trespass. *See infra id.* As a threshold matter, however, SST fails to identify any concrete, distinct, and redressable injury that it has suffered at the hands of the John Does. *See infra* Section (IV)(A). Any one of the aforementioned deficiencies is fatal to Plaintiff's claims, and all of them warrant dismissal with prejudice.

## II.   FACTUAL BACKGROUND

SST is a serial plaintiff, whose sole purpose is to seek out legal challenges and shake-down deep pockets.[4] Between December 2016 and March 2017, SST allegedly acquired by quitclaim

---

[3] All of SST's claims rise and fall with its claim for trespass. *See* Am. Compl. ¶ 155 (seeking ejectment because the John Does allegedly "possess the Property" by non-consensually "transmit[ting] bits of data/spectrum across the Property"); *id.* ¶ 190 (basing its injunctive relief count on the assertion that "continuing, future, and/or additional trespasses will occur unless John Does 1-100 use of the Cable System is enjoined"); *id* ¶ 213 (alleging that the John Does have been unjustly enriched "[a]s a direct and proximate result of John Does 1-100's trespass upon, occupation, and or use of the Property").

[4] Plaintiff's principal, William Swaim, has filed many similar actions in both Broward and Palm Beach County involving other properties submerged beneath and abutting the ICW.

3

deed, two parcels of real property located entirely within the boundaries of the ICW in Palm Beach County, Florida (the "Submerged Lands"). *See* Am. Compl. ¶¶ 42-45, 53(s), 55(w). Less than two months later, before the ink on its title transfers had time to dry, SST demanded compensation for certain subsea fiber-optic cables allegedly located beneath the Submerged Lands that have traversed the ICW for up to 14 years pursuant to government easements and permits. *See id.* ¶¶ 6, 9, 10, 53, 61, 62 and Ex. A. This led to a series of legal actions initiated in State Court in November and December of 2018. *See* Case Nos. 2018-CC-013927-XXXX-MB; 2018-CA-015897-XXXX-MB. On February 20, 2020, SST initiated the present lawsuit against Globenet Cabos Submarinos America Inc. ("Globenet") and Caribbean Crossings, Ltd., Inc. ("Caribbean") (collectively the "Primary Defendants"), who own and operate that fiber-optic cable system.

On July 28, 2020, SST amended its complaint to add a series of defendant John Does, which are companies that allegedly use the cable network "to transmit bits of data/spectrum." *See* Am. Compl. ¶ 4. At the time of the Amended Complaint, SST acknowledged that the identities of these companies were "as yet unidentified" and "cannot [be] confirm[ed]." *See id.* ¶¶ 4–5. Nevertheless, SST proceeded to speculate as to which companies they "could include," listing nine well-known brand names related to communications, software, social media, and entertainment. *See id.* ¶ 4. According to SST, "transmitting bits of data/spectrum through the Cable System" is a sufficient basis for the John Does to incur liability. *See id.* ¶ 5. The Amended Complaint puts forth four counts against the John Does: Trespass (Count III), Ejectment (Count VI), Injunctive Relief (IX), and Unjust Enrichment (Count XII). *See id.* ¶¶ 123–131, 150–157, 185–196, 211–217. Because SST's Amended Complaint lacks standing, and because none of its claims are cognizable under Florida law, the John Does move to dismiss.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a cause of action that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (emphasis added). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims for liability that are "legally erroneous" and "not otherwise established by statutory or common law" cannot survive a motion to dismiss. *See Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 937 (Fla. 2004).

## IV. ARGUMENT AND MEMORANDUM OF LAW

### A. SST Lacks Standing Because It Fails to Allege a Cognizable Injury-In-Fact

For standing to litigate a matter before this Court, the plaintiff's "'interest cannot be conjectural or merely hypothetical[,]' nor can it be 'indirect, inconsequential, or contingent,'" *Giuffre v. Edwards*, 226 So. 3d 1034, 1039 (Fla. 4th DCA 2017) (quoting *Sweetwater Country Club Homeowners' Ass'n v. Huskey Co.*, 613 So. 2d 936, 939 (Fla. 5th DCA 1993)). Accordingly, the Court must consider "three requirements that constitute the irreducible constitutional minimum for standing." *Id.* (quoting *State v. J.P.*, 907 So. 2d 1101, 1113 n.4 (Fla. 2004)). "First, a plaintiff must demonstrate an injury in fact, which is concrete, distinct and palpable, and actual or imminent. Second, a plaintiff must establish a causal connection between the injury and the conduct complained of. Third, a plaintiff must show a substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Id.*; *see also Disc. Sleep of Ocala, LLC v. City of Ocala*, 245 So. 3d 842, 849 (Fla. 5th DCA 2018) ("[T]he injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision.").

Here, SST's alleged injury fails to satisfy all three requirements. SST's Amended Complaint asserts that the "transmission [] of bits of data/spectrum through the Cable System" ultimately deprives SST "of the full use and enjoyment of the Property," resulting in "damages," "diminution in the value of the Property," "diminished rental value," and "deprivation of their right to determine possession and use of the Property." *See, e.g.*, Am. Compl. ¶¶ 125–127. However, the "transmission [] of bits of data/spectrum" does not and cannot result in those deprivations, let alone any actual injury to real property. SST does not allege that the electromagnetic properties of the transmitted signals have damaged its Submerged Lands or any alleged improvements thereto. SST also does not aver that the signals emit damaging effects that have harmed persons residing on the Submerged Lands—nor could it given that these are submerged lands in the ICW. Those examples of concrete harm flowing from intangible occurences, in theory, may amount to injuries-in-fact. But SST alleges nothing of the sort; its alleged injury is purely hypothetical. *See*

5

*DeSantis v. Fla. Educ. Ass'n*, 306 So. 3d 1202, 1214 (Fla. 1st DCA 2020) (distinguishing a "purely hypothetical" injury from actual allegations of a "concrete, palpable injury sufficient to confer standing").

It is hard to imagine how a signal transmission, like the ones at issue in this case inside a subsea conduit, could possibly result in any infringement on the use and enjoyment of the Submerged Lands or diminution in that Submerged Lands value. By way of example, pretend a person makes a call using their cellular phone, and between their phone and the nearest cell tower are a dozen property owners; would each of those property owners have standing to bring a trespass claim because the cellular signal traversed their airspace in order to reach the cell tower? Of course not, because they have suffered no actual injury. Signal transmissions are prevalent everywhere (radio waves, cellular signals, Wi-Fi, Bluetooth, GPS signals, radar, etc.); they are incorporeal and imperceptible; and they do not impact persons or property.[5] It would be irrational for the hypothetical property owners—as SST does here—to allege that their use and enjoyment has been hindered or that their property value has diminished because of the passing, invisible signal.[6] Such claims are facially absurd, and no construction of facts could adequately support them. *See McCall v. Scott*, 199 So. 3d 359, 366 (Fla. 1st DCA 2016) (explaining that standing cannot confer from erroneous legal theories or "conclusory and speculative" allegations of harm).

Likewise, the injury alleged against the John Does is not "concrete, *distinct* or palpable." *Giuffre*, 226 So. 3d at 1039 (emphasis added). SST's entire dispute revolves around the presence

---

[5] *See generally San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 936–37 (Cal. 1996) (describing "electric and magnetic fields" as "akin to television and radio waves" in that they are "wholly intangible phenomena" that "cannot be directly perceived by the senses" and cannot cause "physical damage to property" or persons because of "the low frequency and consequent[ly] low energy of such fields").

[6] By way of another analogy to illustrate the absurdity of Plaintiff's claims against the John Does, if the Court were to accept Plaintiff's untenable legal theory of liability against the John Does for their mere "transmission [] of bits of data/spectrum," then nothing would prevent Plaintiff from adding tens (if not hundreds) of thousands of vessel owners to this lawsuit merely because of their use of the ICW. Liability would attach under Plaintiff's theory of liability to vessel owners for streaming music to their boats stereo system or accessing the internet from their cellular phones while cruising over or near the Submerged Lands on the ICW. Indeed, vessels emitting sonar frequencies in the ICW (to locate, fish, bait or structure in the water column), GPS signals (to navigate) or electromagnetic marine radar waves into the atmosphere (to detect other vessels, assist navigation or monitor the weather) over or near the Submerged Lands would risk being added to this lawsuit as a John Doe Defendant. This would be an absurd result.

of a physical subsea cable system allegedly located underground beneath the Submerged Lands in the ICW. But SST cannot identify a *distinct* injury based on the presence of "bits of data/spectrum through th[at] Cable System" that exists independent of the physical cable itself. *See, e.g.*, Am. Compl. ¶ 125. Even if the cable's presence could affect the value of the Submerged Lands or infringe on SST's use and enjoyment, whether that cable system is currently transmitting data or not has no effect thereon. Indeed, signal transmissions are imperceptible, and SST offers no allegation that an individual on its Submerged Lands would even know when or if that cable system was active and transmitting signals. SST has not, and cannot, allege any concrete injury that is distinct from those alleged against the Primary Defendants. *Accord Giuffre*, 226 So. 3d at 1039.

For this same reason, the cause of SST's alleged injury cannot be reasonably traced to the John Does, nor can any judgment against the John Does independently redress that injury. *See Disc. Sleep of Ocala*, 245 So. 3d at 849. The John Does do not own, operate, or control the cable system at the heart of SST's Amended Complaint. *See DeSantis*, 306 So. 3d at 1214 (finding no causal connection or redressability in an action challenging the state's COVID-19 emergency orders when the decision to reopen schools rested with individual school districts—not the governor). Even if SST's property interests have been impacted (which they have not), any purported impact resulted from the *physical* presence of the cable system—not the *intangible* and *imperceptible* signal transmissions allegedly passing through the cable. There exists no "causal connection between the injury" and the John Does' supposed signal transmissions. *Accord Giuffre*, 226 So. 3d at 1039; *Disc. Sleep*, 245 So. 3d at 849. Likewise, enjoining the John Does from "transmitting bits of data/spectrum," cannot redress SST's injury because termination of the signal transmissions does not impact or alter the physical trespass of the cable itself. SST cannot establish "a substantial likelihood" that its injury will be remedied by "the requested relief" independent from the relief it otherwise seeks from the Primary Defendants. *Accord Giuffre*, 226 So. 3d at 1039; *Disc. Sleep*, 245 So. 3d at 849.

Accordingly, SST has failed to allege a concrete, distinct, and redressable injury caused by the John Does. Because SST lacks the constitutional minimum for standing, dismissal is warranted.

### B. All of SST's Claims Rely on Flawed Theories of Trespass that Lack Any Basis in Florida Law

SST's Amended Complaint asks this Court to adopt and adjudicate a theory of tort that has never been recognized by Florida law. Every other state court to review that theory—trespass by way of "bits of data/spectrum"—would foreclose recovery based on the facts alleged. Allowing the instant claims to proceed would violate all precepts of fairness and justice, and it would open the floodgates for frivolous litigation against every company, organization, governmental entity, and person that uses the technology to communicate.

#### i. SST's Theory of Intangible Trespass is Legally Meritless

Although Florida courts have never squarely addressed the issue of intangible trespass, the prima facie case for traditional trespass plainly requires a *physical* intrusion. "Trespass to real property has been defined as 'an unauthorized entry onto another's property.'" *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998) (quoting *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 69 (Fla. 1st DCA 1997)). As the body of Florida case law establishes, the term "entry" presupposes a physical entering of land or premises.[7] *See, e.g.*, *id.* (distinguishing the "invasion of right to privacy" from "trespass" when a tortfeasor physically entered an apartment); *Nilsson v. Hiscox*, 158 So. 2d 799, 799 (Fla. 1st DCA 1963) (involving a trespass of woodsmen who *physically* entered another's land in search of timber); *see also* 75 Am.Jur.2d, Trespass § 35 ("Because it is the right of the owner in possession to exclusive possession that is protected by an action for trespass, it is generally held that the intrusion of the property be physical and accomplished by a tangible matter. Thus, in order to be liable for trespass, one must intentionally cause some 'substance' or thing to enter upon another's land."). Of course, a physical entry is unnecessary when the tortfeasor's conduct causes a tangible injury to the land or the owner's property. *See Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. 4th DCA 1980) ("Trespass to real property is *an injury to **or*** use of the land of another by one having no right or authority.") (emphases added); *e.g.*, *Brown v. Solary*, 19 So. 161, 163 (Fla. 1896) (finding trespass for the "destructive" act of "mining and taking of phosphate from the [estate's] soil itself").

---

[7] *See also* Prosser and Keeton on the Law of Torts § 13, at 71 (5th ed. 1984) ("While it is generally assumed and held that a personal entry is unnecessary for a trespass, the defendant's act must result in an invasion of tangible matter. Otherwise, there would be no use or interference with possession.").

With respect to the John Does, SST complains about the *imperceptible* "transmission [] of bits of data/spectrum through" a subsea cable system *underground* allegedly beneath the Submerged Lands in the ICW. Am. Compl. ¶ 125. SST's Amended Complaint acknowledges that the cable system is neither owned nor operated by the John Does; SST's sole theory is that the John Does transact for their data to be transmitted across it. *See id.* But "bits of data/spectrum" are obviously not physical or tangible intrusions that can enter a property. A signal crossing a cable is not a physical entry any more than a radio wave or cellular signal traveling over the immediate airspace or through the water column. And SST does not even attempt to allege that the "bits of data/spectrum" have caused some tangible injury to its land. This case does not involve electromagnetic burning, pollution, or any other alleged physical harm. And because the "transmission [] of bits of data/spectrum" are not a physical invasion, they cannot constitute a trespass under Florida law. *Accord Guin*, 388 So. 2d at 606.

But even if "bits of data/spectrum" could constitute a trespass solely because they pass along a physical cable, public policy and the efficiencies of judicial administration would counsel holding the cable owners and operators liable, not the signal transmitters. To hold otherwise would allow a property owner to file suit against every person making a phone call, which happens to route across a telephonic cable that allegedly trespasses on the owner's property. *See generally, e.g.*, *HControl Holdings, LLC v. Bright House Networks, LLC*, No. 8:13-cv-39, 2014 WL 12573984, at *3 (M.D. Fla. July 22, 2014) (reviewing an action for trespass brought against a cable provider—not the owners of the 153 condominium units that were serviced by that provider).

      **ii.    Even if Construed as a Matter of First Impression, SST's Claim for Intangible Trespass Still Warrants Dismissal**

Trespass under Florida common law requires a physical intrusion. But, to the extent that this Court considers intangible trespass to be unsettled law, and to the extent that this Court desires to consider SST's claims as matters of first impression, those claims still fail.

SST's overarching theory against the John Does—trespass by way of "bits of data/spectrum"—is not new. This exact issue has been litigated in courts around the country. *See In re WorldCom, Inc.*, 320 B.R. 772, 776 (Bankr. S.D.N.Y. 2005), *aff'd*, 339 B.R. 836 (S.D.N.Y. 2006), *aff'd*, 546 F.3d 211 (2d Cir. 2008). A recent decision from the U.S. Court of Appeals for the Seventh Circuit is particularly instructive:

> *Information passing through a cable could not independently be a trespass*…. Information passes across [plaintiff's] land constantly: over-the-air radio and TV signals, cell phone communications (voice and data), microwaves, and more. None of that differs from laser light travelling through glass fiber.

*West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 831 (7th Cir. 2020) (emphasis added). Indeed, courts have repeatedly found that "the transmission of the light signals through [a] fiber optic cable" does not independently constitute an actionable trespass. *See WorldCom*, 320 B.R. at 777–83 (reviewing and rejecting a claim of intangible trespass involving fiber-optic signals under Kansas and Alabama common law); *West*, 951 F.3d at 831 (holding the same under Kentucky common law); *Int'l Paper Co. v. MCI WorldCom Network Servs., Inc.*, 442 F.3d 633, 636 (8th Cir. 2006) (holding the same under Arkansas common law); *Oxford v. Williams Companies, Inc.*, 137 F. Supp. 2d 756, 761 (E.D. Tex. 2001) (holding the same under Texas common law).[8]

Generally, "courts [have] only recognized tangible invasions as trespasses; intangible invasions (such as sound, odors, particles) were considered nuisances." *See WorldCom*, 320 B.R. at 776; *Maddy v. Vulcan Materials Co.*, 737 F. Supp. 1528, 1540 (D. Kan. 1990). This is because "[a] trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it," whereas "[a] nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession." *See* Restatement of Torts 2d. § 821D, cmt. d. However, the few courts that permitted intangible invasions to constitute a trespass, still required that the intangible invasions "cause[] damage to the *res*." *See WorldCom*, 320 B.R. at 776 (citing *Maddy*, 737 F. Supp. at 1540); *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 232–33 (Cal. 1982) (collecting cases). Importantly, unlike traditional physical trespasses, courts do not presume damages for trespasses arising out of intangible intrusions. *See WorldCom*, 320 B.R. at

---

[8] Although not involving light signals over fiber-optic cables, courts from other states have also applied this principle in analogous contexts. *See, e.g.*, *Beal v. W. Farmers Elec. Co-op.*, 228 P.3d 538, 541 (Okla. Civ. App. 2009) (rejecting a trespass claim involving electrical transmissions across a power line because "intangible intrusions on land … are not actionable as trespasses, unless they cause physical damage to the real property" under Oklahoma common law); *Barnett v. Connecticut Light & Power Co.*, 900 F. Supp. 2d 224, 246 (D. Conn. 2012) (holding the same under Connecticut common law); *see also, e.g.*, *Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 476–80 (S.C. 2013) (holding that odors could not give rise to a trespass claim because "South Carolina adheres to the traditional rule requiring an invasion by a physical, tangible thing for a trespass to exist")

776 (citing *Maddy*, 737 F. Supp. at 1540; *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 531 (Ala. 1979)).

Here, SST does not and cannot allege that the John Does' signal transmissions invade its exclusive possession of the land, nor does SST alternatively aver that fiber-optic signal transmissions cause injury to the *res*. Rather, SST alleges that the "transmission [] of bits of data/spectrum" deprives SST "of the full use and enjoyment of the Property," resulting in "damages," "diminution in the value of the Property," "diminished rental value," and "deprivation of their right to determine possession and use of the Property." *See, e.g.*, Am. Compl. ¶¶ 125–127. These claims do not pass muster as they do not implicate exclusive possession of, or physical injury to, SST's property. *See Poppler v. Wright Hennepin Co-op Elec. Ass'n*, 834 N.W.2d 527, 552 (Minn. Ct. App. 2013) (rejecting a claim for trespass arising from stray electrical current even when it "interfered with the [plaintiffs'] use and enjoyment" because "there [wa]s no evidence that it interfered with their right to exclusive possession of the [property]"); *Wilson*, 32 Cal. 3d at 233 (holding that sound waves cannot constitute a trespass because they do not amount to "an invasion of the plaintiff's interest in the exclusive possession of his land"); *Abington Ltd. P'ship v. Talcott Mountain Sci. Ctr. for Student Involvement, Inc.*, 657 A.2d 732, 734 (Conn. Super. Ct. 1994) (rejecting a claim of trespass as a matter of law because "the plaintiff has not shown, nor can it, that the passage of the electricity affects its possessory interest in the land over which the lines lie or causes it any direct injury"); *see also San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 936–37 (Cal. 1996) (finding that "electric and magnetic fields" cannot cause "physical damage to property" and thus cannot constitute a trespass).

This Court should not stray onto an island alone. Trespass under this state's common law plainly requires a physical intrusion. On that basis alone, the Court should dismiss pursuant to Fla. R. Civ. P. 1.140(b)(6) and/or Fed. R. Civ. P. 12(b)(6). But even if this Court were inclined to permit claims for intangible trespass, it should adopt the law of its sister courts, which would dismiss SST's claims as a matter of law because fiber-optic signal transmissions neither invade the exclusive possession of land nor cause physical injury to it. *Accord, e.g.*, *WorldCom*, 320 B.R. at 776–77.

### iii. If Properly Construed as a Nuisance, SST's Tort Claim Still Fails

SST actually raises a flawed nuisance claim under the guise of a trespass claim to avoid the more demanding standard this Court applies towards nuisances. Indeed, SST cannot satisfy the appropriate standard, so it instead seeks to cherry-pick elements from multiple torts to create a new, non-existent one. *See Corbett v. E. Air Lines, Inc.*, 166 So. 2d 196, 201 (Fla. 1st DCA 1964) (identifying the "problem" in a complaint where "plaintiffs in their allegations ha[d], in a sense, 'thrown the book' at the [defendants], using 'words of art' characteristic of several separate and distinct causes of action, including negligence, trespass, nuisance, and eminent domain (or 'inverse condemnation.')"). Like in *Corbett*, when evaluating the "heart" of SST's allegations for trespass, "the essence of [its] complaint is a purported cause of action for private nuisance." *See id.*

Nuisance actions typically arise out of disturbances involving noise, vibration, odors, or pollutants. *See Bunyak v. Clyde J. Yancey & Sons Dairy, Inc.*, 438 So. 2d 891, 895 (Fla. 2d DCA 1983) (quoting 58 Am.Jur.2d, Nuisance § 79). Like these disturbances, signal transmissions are intangible. But unlike these, fiber-optic signals over a cable "cannot be directly perceived by the senses." *See San Diego Gas*, 13 Cal. 4th at 936 (discussing how claims involving "electric and magnetic fields" cannot constitute a trespass and must instead be reviewed under the traditional nuisance framework).[9] All of these intangible intrusions constitute nuisances only when they "annoy[] or disturb[] … the free use, possession, or enjoyment of [] property." *See Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954) (quoting *Knowles v. Central Allapattah Properties, Inc.*, 198 So. 819, 822 (Fla. 1940)).

But SST attempts to sidestep this framework because courts apply heightened scrutiny when considering whether a nuisance is actionable. As articulated by the 1st DCA in *Corbett*:

> The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a *reasonable* use under the circumstances, and whether there is 'an appreciable, *substantial*, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure. It must be real and not fanciful or imaginary, or such as results merely in a trifling annoyance, inconvenience, or discomfort.' … It is not everything in the nature of a nuisance which is prohibited. There

---

[9] *See also, e.g.*, *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 233 (Cal. 1982) (finding, under California law, that "[a]ll intangible intrusions, such as noise, odor, or light alone, are dealt with as nuisance cases, not trespass" because "actionable trespass may not be predicated upon nondamaging noise, odor, or light intrusion").

> are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort, or injury to his neighbor, which are damnum absque injuria.

*Corbett*, 166 So. 2d at 201–02 (quoting *Antonik v. Chamberlain*, 78 N.E.2d 752 (Ohio 1947)) (emphasis added). Indeed, it is a basic tenet of nuisance law that an actionable nuisance requires a showing of substantiality and unreasonableness. *See id.*; *see, e.g.*, *Jones*, 75 So. 2d at 788 (finding that the use of an adjacent property as a cemetery "would *substantially* interfere with the comfort, repose and enjoyment of" plaintiffs' homes, making the intended use "not 'fair and *reasonable*'") (emphasis added).

Here, SST does not—nor can it—plead facts sufficient to establish that signal transmissions over a subsea fiber-optic cable are substantial and unreasonable interferences. It is hard to fathom (pun intended) how *imperceptible* "bits of data/spectrum" transmitted through a cable in an *underground* conduit could substantially interfere with an alleged owner's use and enjoyment of Submerged Lands, which lie several fathoms beneath the ICW. Certainly, SST does not proffer facts in its Amended Complaint to substantiate that (or any) degree of interference. SST also does not and cannot explain how an imperceptible signal unreasonably interferes with its alleged property rights, any more than it could adequately aver that a cellular signal traveling over the property's immediate airspace was per se unreasonable.

Therefore, even when properly recharacterized as a nuisance claim, SST's tort claim warrants dismissal because SST has failed to allege—nor can it allege—sufficient facts to establish that the "transmission [] of bits of data/spectrum" is a substantial and unreasonable interference to its property rights. *Accord Corbett*, 166 So. 2d at 203–04.

## C. SST's Request for Damages is Both Factually and Legally Erroneous

### i. The Amended Complaint Fails to Plead Facts Related to Actual Damages

As previously discussed, SST does not and cannot identify any concrete, distinct, and redressable injury caused by the "transmission [] of bits of data/spectrum through the Cable System," Am. Compl. ¶ 125. *See supra* Section (IV)(A). Indeed, even if the cable's presence could affect property values or infringe on use and enjoyment, whether that cable system is static or active—off or on—has no effect. These imperceptible signal transmissions do not possess, damage, or alter the property. For the same reasons that it cannot allege an injury-in-fact, SST

cannot prove calculable damages that are logically derived from the "transmission [] of bits of data/spectrum."

Nevertheless, SST baldly asserts that it is owed "damages in an amount to be proven at trial." *See, e.g.*, Am. Compl. ¶¶ 126–127.  SST bases its theory of recovery on vague assertions that it has "be[en] deprived of the full use and enjoyment of the Property" and its "right to determine possession and use of th[at] Property." *See, e.g.*, *id.*  Without any substantiation, SST also hypothesizes that it has suffered "diminution in the value of the Property" and "diminished rental value." *See, e.g.*, *id.*  These speculative and conclusory allegations are insufficient at this stage.  SST rests its entire case against the John Does on a new tort theory—one never before recognized under Florida law—intangible trespass.  But even in the limited jurisdictions that recognize intangible trespass under certain narrow circumstances, courts do not presume damages as they would for trespasses arising from tangible intrusions.  *See WorldCom*, 320 B.R. at 776; *Maddy*, 737 F. Supp. at 1540; *Borland*, 369 So. 2d at 531.  Accordingly, SST's generalized assertions regarding injury and damages are inadequately pled and insufficient to properly put the John Does on notice regarding the value at stake in this litigation.

But even if these generalized assertions were adequate—which they are not—the Court has "no obligation to accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party." *Shands Teaching Hosp. & Clinics, Inc. v. Est. of Lawson ex rel. Lawson*, 175 So. 3d 327, 331 (Fla. 1st DCA 2015).  Here, SST's claims of injury and damages are facially absurd.  SST strains credulity by asserting any impact to its use and enjoyment based on <u>*imperceptible*</u> "bits of data/spectrum" transmitted through a cable in an <u>*underground*</u> conduit in the ICW.  And it defies logic to infer that those same signal transmissions—which are ubiquitous in our society—diminish the sale or rental values of the Submerged Lands.  The effect on value here is no different than the diminution of value caused by cellular, WiFi, or Bluetooth signals travelling across the Submerged Lands immediate airspace (or water column in the ICW for that matter): ZERO.  SST has not suffered any cognizable injury and any award of damages would be improper.

ii. **SST's Request for Disgorgement of Profits Relies on an Improper Theory of Recovery**

Finally, SST avers a meritless theory of recovery: disgorgement of profits.  *See* Am. Compl. ¶ 157 ("SST is entitled … to disgorgement in the nature of John Does 1-100's mesne

profits."); *see also id.* ¶¶ 131(b), 157(e), 217(b). Even if SST were entitled to damages—which it is not—a demand for disgorgement of profits here is unfounded under Florida law.[10]

Regardless of whether the backbone of SST's case is characterized as a trespass or a nuisance, the value of any damages would be tied to the diminished sale or rental value of its property. *See generally Courtney Enterprises, Inc. v. Publix Super Markets, Inc.*, 788 So. 2d 1045, 1048 (Fla. 2d DCA 2001) (collecting cases; recognizing the proper value of damages for both trespass and nuisance claims to be a "diminution in property value"); *see also Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 474 (S.C. 2013) (reviewing a claim for intangible trespass under South Carolina law and noting that because "[t]he damages recoverable for trespass and nuisance [are] strictly limited to damages to one's property interests, the only proper measure of them is the value of the property").

Indeed, "the common law action of trespass for [disgorgement of] profits has had no separate existence in Florida since 1859." *Wilkerson v. Gibbs*, 405 So. 2d 1053, 1057 (Fla. 1st DCA 1981). Florida law only recognizes three theories of damages for trespass. The first, and most common, theory involves the diminution of land value. *See, e.g.*, *Nat'l Rating Bureau, Inc. v. Fla. Power Corp.*, 94 So. 2d 809, 811 (Fla. 1957); *Gasque v. Ball*, 62 So. 215, 216 (Fla. 1913); *see also Stockman v. Duke*, 578 So. 2d 831, 832 (Fla. 2d DCA 1991) ("[T]he usual measure of damages in an action for trespass to real property is the difference in value of the land before and after the trespass."). The second theory relates to a continuing trespass caused by a "structure, chattel or other thing which has been placed on the land," and its measure of damages includes "the reasonable rental value of the space occupied" and "the reasonable cost of remov[al]." *See Anchorage Yacht Haven, Inc. v. Robertson*, 264 So. 2d 57, 61 (Fla. 4th DCA 1972); *see also Kish v. McDonald's Corp.*, 564 So. 2d 1177, 1180 (Fla. 4th DCA 1990) (holding that the "proper measure of damages where a trespass has occurred and the trespasser has refused to remove itself" is "the reasonable rental value"). The third theory includes the cost of replacing property or chattels taken from the land—a circumstance not alleged here. *See, e.g.*, *Fiske v. Moczik*, 329 So.

---

[10] It is not immediately clear how any court could even apportion profits based upon the facts alleged. To the extent that the cable system crosses underground by SST's property, that distance would represent only a tiny fraction of the cable system's full length. Any value of profit proportional to that segment of cabling would be *de minimus*.

2d 35, 38 (Fla. 2d DCA 1976) (awarding in damages "the reasonable cost of replacing the trees [] removed from [the] property").

Florida law simply does not recognize disgorgement of profits as a remedy for claims of trespass; SST's assertions to the contrary are wrong. So too for its redundant claims of ejectment and unjust enrichment. *See Kester v. Bostwick*, 15 So. 2d 201, 205 (Fla. 1943) ("The general rule is that mesne profits [for an ejectment action] are measured by the *rental value of the property* or its value for use and occupation during the time defendant was shown to have been wrongfully in possession.") (emphasis added); *see also, e.g.*, *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007) (finding that damages for unjust enrichment equate to the "value of the benefit conferred").

In any event, as with SST's specious claim of intangible trespass, *see supra* Section (IV)(B), its erroneous theory on damages is nothing new. Courts have reviewed nearly identical claims on nearly identical facts elsewhere in the country. For example, in *Martin v. Comcast Cablevision Corp.*, asserting theories of trespass and unjust enrichment, a property owner sought "a portion of the profits [a cable company] earned by providing cable service while the cables ran across [his] property." 338 P.3d 107, 110 (N.M. Ct. App. 2014). The *Martin* court rejected the property owner's theory of recovery because the cable services and their "resulting income" derived from the cable company's "business enterprise and not the use of [the] land." *See id.* at 111. Moreover, that court opined that the measure of damages and the value of the benefit conferred were "better understood as the savings [] realized by using [the] property," which equated to "the rental value of the land." *See id.* Just as in *Martin*, where profits were generated from a trespassing cable, the demand for disgorgement of profits here is improper.[11]

---

[11] Moreover, liability, if any, would rest with the owner and operator of the cable—not the individual companies whose signals allegedly transmit across it. Even the litigious property owner in *Martin* implicitly understood this degree of separation and had better sense than to add frivolous claims against Time Warner, Disney, Viacom, or Fox, whose television signals all presumably broadcast across the allegedly trespassing cable. Indeed, just as attenuated and improper as a demand for the disgorgement of profits may be against the cable owner and operator, it is even more inapt for the John Does.

### D. SST's Remaining Claims Warrant Dismissal

As previously discussed, all of SST's claims rise and fall with its claim for trespass. *See supra* FN 1 (and accompanying discussion). However, the remaining claims fail for various other reasons as well.

***Count VI: Ejectment.*** The defects in SST's trespass claim overlap with those in its ejectment claim. "Generally speaking, the elements to be proven in an action for ejectment are that (1) the plaintiff has title to the land, (2) the plaintiff has been wrongfully dispossessed or ousted, and (3) the plaintiff has suffered damages." *Partridge v. Partridge*, 940 So. 2d 611, 613 (Fla. 4th DCA 2006) (internal quotations omitted). Here, not only are its conclusory allegations related to damages facially absurd, *see supra* Section (IV)(C), SST cannot establish that it has been actually dispossessed or ousted. Just as an action for trespass presupposes a *physical* intrusion, *see supra* Section (IV)(B)(i), so too does an action for ejectment, *see, e.g.*, *United States v. Causby*, 328 U.S. 256, 265 n.10 (1946). Moreover, to find dispossession or ouster by way of "bits of data/spectrum," would otherwise empower any property owner in the state to seek ejectment for every passing cellular signal or radio wave travelling across her property's immediate airspace. Accordingly, SST's claim for ejectment fails.

***Count IX: Injunctive Relief.*** For its injunctive relief count to survive, SST must prevail on some alternative claim because injunctive relief itself is not an independent cause of action. *See generally Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance."); *see also Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-cv-61019, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (collecting cases). Since none of its other claims can pass muster, SST's claim for injunctive relief necessarily fails as well.

***Count XII: Unjust Enrichment.*** Finally, because it has an adequate legal remedy, SST is plainly barred from raising any "theory of unjust enrichment [because that claim] is equitable in nature." *See Bowleg v. Bowe*, 502 So. 2d 71, 72 (Fla. 3d DCA 1987); *Fulton v. Brancato*, 189 So. 3d 967 (Fla. 4th DCA 2016). Moreover, unjust enrichment cannot be used as a fallback claim in the alternative—as SST's Amended Complaint does here—when "the factual allegations underlying the [legal claim] and the unjust enrichment claims are exactly the same." *See Guerrero*

CASE NO: 9:21-CV-80728-DMM

*v. Target Corp.*, 889 F. Supp. 2d 1348, 1357, n.7 (S.D. Fla. 2012); *see, e.g.*, *Edd Helms Elec. Contracting, Inc. v. Barnett Bank of S. Fla.*, N.A., 531 So. 2d 238, 238 (Fla. 3d DCA 1988).

Regardless, to state a cause of action for unjust enrichment, SST must establish that: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Servs., LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009). Here, SST does not, and cannot, sufficiently allege that it <u>directly</u> conferred any benefit on the John Does. *See, e.g.*, *id.* (affirming a dismissal of an unjust enrichment claim where the plaintiff could not "establish that it conferred a *direct* benefit" on the defendant) (emphasis added); *GVB MD v. Aetna Health Inc.*, No. 19-cv-22357, 2019 WL 6130825, at *7 (S.D. Fla. Nov. 19, 2019) (finding that any benefit conferred on the defendant was "indirect at best" and the plaintiff therefore "c[ould ]not state a claim for unjust enrichment under Florida law"). SST's threadbare allegation of a conferred benefit, *see* Am. Compl. ¶ 215, fails to identify any specific benefit conferred by SST at all—let alone directly so. Any benefit the John Does may have obtained as a result of their use of the cables necessarily came from the Primary Defendants as the owners and operators of the cables, not from SST. Further, SST does not, and cannot, allege that the John Does had the requisite knowledge of any supposed benefit conferred by SST because it cannot establish that the John Does knew the fiber-optic cables were allegedly traversing privately owned land or that SST was conveying any benefit. *See, e.g.*, *Extraordinary Title Servs.*, 1 So. 3d at 404. For these reasons, SST's claim for unjust enrichment fails.

## V. CONCLUSION

SST has failed to aver any concrete, distinct, and redressable injury caused by the John Does. And SST has erroneously fabricated its claims and theory of recovery. For the aforementioned reasons, this Court should grant the John Does' Motion to Dismiss and dismiss SST's Amended Complaint with prejudice.

Dated: April 23, 2021                                                                Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**
777 S. Flagler Drive, Suite 300E
West Palm Beach, Florida 33401
Telephone: (561) 650-7900
Facsimile: (561) 655-6222

CASE NO: 9:21-CV-80728-DMM

By: *s/ Robert R. Kane III*
MARK F. BIDEAU
Florida Bar No. 564044
Email: bideaum@gtlaw.com
ROBERT R. KANE, III
Florida Bar No. 99488
Email: kaner@gtlaw.com
JESSICA J. FISHFELD
Florida Bar No. 1018904
Email: fishfeldj@gtlaw.com
       cruzm@gtlaw.com

CASE NO: 9:21-CV-80728-DMM

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case listed below.

s/ *Robert R. Kane III*
ROBERT R. KANE III

| | |
|---|---|
| Ricardo A. Reyes, Esq.<br>Sacha A. Boegem, Esq.<br>TOBIN & REYES, P.A.<br>Mizner Park Office Tower<br>225 N.E. Mizner Blvd., Suite 510<br>Boca Raton, FL 33432<br>Telephone: (561) 620-0656<br>Facsimile: (561) 620-0657<br>rar@tobinreyes.com<br>sboegem@tobinreyes.com<br>eservice@tobinreyes.com<br><br>*Counsel for Plaintiff/Counter-Defendant, South Spanish Trail, LLC* | Timothy L. Newhall, Esq.<br>Anita J. Patel, Esq.<br>Senior Assistant Attorney General<br>Complex Litigation<br>OFFICE OF THE ATTORNEY GENERAL<br>PL-01 The Capitol<br>Tallahassee, FL 32399<br>Telephone: (850) 414-3300<br>Timothy.Newhall@myfloridalegal.com<br>Anita.Patel@myfloridalegal.com<br>ComplexLitigation.eservice@myfloridalegal.com<br><br>*Counsel for Third-Party Defendant, State of Florida Board of Trustees of the Internal Improvement Trust Fund* |
| Carly A. Kligler Esq.<br>Alec H. Schultz, Esq.<br>HILGERS GRABEN PLLC<br>777 S. Flagler Dr., STE 800W<br>West Palm Beach, FL 33401<br>Telephone: (561) 485-1325<br>ckligler@hilgersgraben.com<br>aschultz@hilgersgraben.com<br><br>*Counsel for John Doe Defendants* | Anthony Erickson-Pogorzelski, Esq.<br>ASSISTANT U.S. ATTORNEY<br>99 N.E. 4th Street, 3rd Floor<br>Miami, Florida 33132<br>Tel: (305) 961-9296<br>Email: anthony.pogorzelski@usdoj.gov<br><br>*Counsel for the United States of America* |