# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT, IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO. 2020-CA-002024

DIVISION AO

SOUTH SPANISH TRAIL, LLC,
a Florida limited liability corporation,

     Plaintiff,

v.

GLOBENET CABOS SUBMARINOS
AMERICA, INC., a Delaware for-
profit corporation, CARIBBEAN CROSSINGS,
LTD., INC., and JOHN DOES 1-100,

     Defendant.

_____/

GLOBENET CABOS SUBMARINOS
AMERICA, INC., a Delaware for-profit
Corporation,

     Counter-Plaintiff,

v.

SOUTH SPANISH TRAIL, LLC,
a Florida limited liability corporation, and
BOARD OF TRUSTEES OF THE
INTERNAL IMPROVEMENT TRUST
FUND OF THE STATE OF FLORIDA

     Counter-Defendants,

_____/

## CARIBBEAN CROSSINGS' ANSWER, DEFENSES, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S AMENDED COMPLAINT

Defendant/Counter-Plaintiff, Caribbean Crossings Ltd., Inc. ("CC") hereby serves its

Answer, Defenses, Affirmative Defenses and Counterclaims to the Complaint of plaintiff, South

Spanish Trial, LLC ("SST"). As detailed below, pursuant to Rule 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida is joined as a Third-Defendant in CC's counterclaims for declaratory judgment.

## ANSWER

1.      This allegation is not directed at Caribbean. To the extent a response is required, denied.

2.      To the extent this allegation is directed at Caribbean, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law.

3.      To the extent this allegation is directed at Caribbean, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law.

4.      To the extent the allegations in Paragraph 4 are directed at Caribbean, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law.

5.      To the extent the allegations in Paragraph 5 are directed at Caribbean, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law.

6.      This allegation is not directed at Caribbean. To the extent a response is required, denied.

7.      To the extent this allegation is directed at Caribbean, denied. Caribbean further

states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law.

8.      This allegation is not directed at Caribbean. To the extent a response is required, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law.

9.      This allegation is not directed at Caribbean. To the extent a response is required, denied.

10.     This allegation is not directed at Caribbean. To the extent a response is required, Caribbean lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 10, and on that basis denies them.

11.     Denied. Caribbean further states that Plaintiff was not "forced" to do anything. Upon information and belief, Plaintiff was aware of both Globenet's conduit and Caribbean's cable before it purportedly acquired the lands at issue in the case. It specifically targeted these lands in an effort to extort Globenet and Caribbean into paying substantial sums to allow the conduit and fiber optic cables to remain in place.

**Parties, Jurisdiction, And Venue**

12.     Caribbean admits only that SST purports to bring an action for damages in excess of $250,000,000, but denies that SST has suffered any damages or that it is entitled to recover any damages.  The remaining allegations in this paragraph are denied.

13.     Caribbean admits that SST is a limited liability company with its principal place of business located in Palm Beach County, Florida.

14.     This allegation is not directed at Caribbean. To the extent a response is required,

Caribbean lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 14, and on that basis denies them.

15.     Upon information and belief, Caribbean admits only that Globenet owns the fiber optics cable system used by Caribbean. Caribbean denies that Plaintiff is the true and legitimate owner of the Property.

16.     This allegation is not directed at Caribbean and it is also a legal characterization of Globenet's business, and therefore no response is required. To the extent a response is required, Caribbean lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16, and on that basis denies them.

17.     This allegation is not directed at Caribbean and it is also a legal characterization of Globenet's corporate powers, and therefore no response is required. To the extent a response is required, Caribbean lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 17, and on that basis denies them. .

18.     This allegation is not directed at Caribbean and is a legal characterization of Globenet's business and business relationships and therefore no response is required. To the extent a response is required, Caribbean lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 18, and on that basis denies them.

19.     Paragraph 19 calls for a legal conclusion to which no response is required.  To the extent a response is required, Caribbean denies the allegations contained in Paragraph 19. Caribbean specifically denies that Plaintiff is the true and legitimate owner of the Property.

20.     Paragraph 20 calls for a legal conclusion to which no response is required.  To

the extent a response is required, Caribbean denies the allegations contained in Paragraph 20.

21.     Paragraph 21 calls for a legal conclusion to which no response is required.  To the extent a response is required, Caribbean denies the allegations contained in Paragraph 21.

22.     This allegation is unclear and therefore Caribbean is unable to admit or deny it.

23.     This allegation is not directed at Caribbean and is a legal characterization of FCC policy. To the extent a response is required, Caribbean lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 concerning Globenet's license, and on that basis denies them. Caribbean denies Plaintiff's characterization of FCC policy.

24.     Paragraph 24 calls is a legal characterization of FCC policy to which no response is required.  To the extent a response is required, Caribbean denies the allegations contained in Paragraph 24.

25.     This allegation is not directed at Caribbean. To the extent a response is required, denied.

26.     To the extent this allegation is directed at Caribbean, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

27.     Admitted.

28.     Paragraph 28 is a legal characterization of the nature of Caribbean's business, therefore no response is required.

29.     Paragraph 29 is a legal characterization of the nature of Caribbean's corporate

powers, therefore no response is required. To the extent that a response is required, Caribbean admits it has no imminent domain powers like those available to the State of Florida.

30.     Caribbean admits only that it owns a fiber optic cable which it uses to provide services to its customers at the retail level. Caribbean does not own the conduit in which its cable resides. The remaining allegations in this paragraph are denied.

31.     This allegation is unclear and therefore Caribbean is unable to admit or deny it.

32.     Caribbean admits only that the Federal Communications Commission ("FCC") issued a cable landing license. The remaining allegations in this paragraph call are a legal characterization of FCC policy to which no response is required. To the extent a response is required, the balance of the allegations in this paragraph are denied.

33.     Paragraph 33 calls for a legal conclusion and also contains a legal characterization of FCC policy, to which no response is required.  To the extent a response is required, Caribbean denies the allegations contained in Paragraph 33.

34.     Caribbean admits only that it has a fiber optic cable that runs through Globenet's cable conduit and that Caribbean has no right or authorization to move or otherwise disturb Globenet's cable system. Caribbean denies that Plaintiff is the true and legitimate owner of the Property.

35.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

36.     Denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

37.     Paragraph 37 calls for a legal conclusion, to which no response is required. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 37.

38.     To the extent this allegation is directed at Caribbean, denied. Caribbean further states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

39.     Caribbean states that the Court has dismissed all claims for "facilitation of trespass" because no such claim exists under Florida law. Caribbean denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 39.

40.     Caribbean admits only that this Court has personal jurisdiction over Caribbean. The remaining allegations in this paragraph are denied.

41.     Caribbean admits only that venue is proper in this forum because the Property is located in Palm Beach County.   The remaining allegations in this paragraph are denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

**General Allegations**

**I.      Ownership of the Property**

42.     Caribbean denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 42.

43.     Caribbean admits only that the tax folios have been assigned by the Palm Beach County Appraiser. Caribbean denies that the assignment of tax folio numbers indicates any expression of opinion by the Palm Beach County Appraiser regarding the legitimacy or validity

of SST's ownership of the Property. Caribbean denies that Plaintiff is the true and legitimate owner of the Property.

44.     Caribbean admits only that the legal description identified by Plaintiff was created by SST and did not exist in any conveyance prior to that time. Caribbean denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 44.

45.     Caribbean admits only that the legal description identified by Plaintiff was created by SST and did not exist in any conveyance prior to that time. Caribbean denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 44.

46.     Denied. To Caribbean's knowledge, information and belief, SST has not paid any property taxes relating to the Property. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

47.     Caribbean admits only that the document attached to the Amended Complaint as Exhibit E speaks for itself.  The remaining allegations in this paragraph are denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

48.     Paragraph 48 calls for a legal conclusion. To the extent a response is required, Caribbean denies the allegations of paragraph 48. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

49.     This allegation is not directed at Caribbean. To the extent a response is required, Caribbean admits only that the document attached to the Amended Complaint as Exhibit F speaks for itself. The remaining allegations of this paragraph are denied. Caribbean further denies that Exhibit F constitutes a "title report".

50.     This allegation is not directed at Caribbean. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. The Property is owned by the State of Florida.

51.     Caribbean admits only that the Intracoastal Waterway (then known as the Florida East Coast Canal) was widened as a result of the federal government's condemnation proceeding in the United States District Court for the Southern District of Florida. The remaining allegations in this paragraph are denied.

52.     Caribbean admits only that in 1935 the United States District Court for the Southern District of Florida entered a final judgment in a condemnation proceeding involving the submerged lands in the navigable waters of the Intracoastal Waterway that SST claims to own. The remaining allegations in this paragraph are denied.

## II.     Deraignment of Title

53.     Caribbean denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations contained in Paragraph 53 and subparagraphs (a)-(s).

54.     Caribbean admits only that the documents attached to the Amended Complaint as Composite Exhibit H speak for themselves.  Caribbean denies that Plaintiff is the true and legitimate owner of the Property.

55.     Caribbean denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations contained in Paragraph 55 and subparagraphs (a)-(x).

56.     Caribbean admits only that the documents attached to the Amended Complaint as Composite Exhibit I speak for themselves.  Caribbean denies that Plaintiff is the true and legitimate owner of the Property.

### III.   Installation of the Cable System

57.     This allegation is not directed at Caribbean. To the extent a response is required, and upon information and belief, Globenet is the owner of the cable system that is at issue in this litigation.

58.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

59.     Denied, based on Caribbean's information and belief.

60.     The allegations in paragraph 60 are not directed at Caribbean and therefore no response is required. To the extent a response is required, the allegations are denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 60.

61.     Upon information and belief, Caribbean admits only that the installation of Globenet's cable system was completed by 2001, as shown on as-built drawings prepared by Michael Baker, Inc.

62.     This allegation is not directed at Caribbean and therefore no response is required. To the extent a response is required, denied.

63.     This allegation is not directed at Caribbean and therefore no response is required. To the extent a response is required, denied.

64.     This allegation is not directed at Caribbean and therefore no response is required. To the extent a response is required, denied.

65.     This allegation is not directed at Caribbean and therefore no response is required. To the extent a response is required, Caribbean denies that Plaintiff, or any alleged predecessor in interest, are the true and legitimate owner of the Property and, accordingly, denies the allegations

10

in paragraph 65.

66.     This allegation is not directed at Caribbean and therefore no response is required. To the extent a response is required, denied. Caribbean further denies that Plaintiff, or any alleged predecessor in interest, are the true and legitimate owner of the Property

## IV.     Globenet's Bad Faith Trespass Upon the Property

67.     This allegation is not directed at Caribbean and also calls for a legal conclusion to which no response is required. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 67.

68.     This allegation is not directed at Caribbean. To the extent a response is required, Caribbean denies that Plaintiff, or any alleged predecessor in interest, are the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 68.

69.     This allegation is not directed at Caribbean and it also calls for a legal conclusion to which no response is required. To the extent a response is required, Caribbean denies that Plaintiff, or any alleged predecessor in interest, are the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 69.

70.     This allegation is not directed at Caribbean. To the extent a response is required, Caribbean denies that Plaintiff, or any alleged predecessor in interest, are the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 70.

71.     This allegation is not directed at Caribbean. To the extent a response is required, Caribbean denies that Plaintiff, or any alleged predecessor in interest, are the true and legitimate owner of the Property and, accordingly, denies the allegations in paragraph 71.

## V.     CC's Bad Faith Trespass Upon the Property

72.     Denied. Caribbean further denies that Plaintiff, or any purported predecessor in

interest, are or were the true and legitimate owners of the Property.

73.     Denied. Caribbean further denies that Plaintiff or any purported predecessor in interest, are or were the true and legitimate owners of the Property.

74.     Denied. Caribbean further denies that Plaintiff or any purported predecessor in interest, are or were the true and legitimate owners of the Property.

75.     Denied. Caribbean further denies that Plaintiff or any purported predecessor in interest, are or were the true and legitimate owners of the Property.

76.     Denied. Caribbean further denies that Plaintiff, or any purported predecessor in interest, are or were the true and legitimate owners of the Property. Caribbean further states that documents regarding the installation of the cable system are publicly available and/or recorded and that Plaintiff had possession of these documents before it purported to purchase the Property.

77.     Denied. Caribbean further denies that Plaintiff or any purported predecessor in interest, are or were the true and legitimate owners of the Property.

78.     Denied. Caribbean further denies that Plaintiff or any purported predecessor in interest, are or were the true and legitimate owners of the Property.

79.     Denied. Caribbean further denies that Plaintiff or any purported predecessor in interest are the true and legitimate owners of the Property.

80.     Paragraph 80 calls for a legal conclusion to which no response is required. To the extent a response is required, the allegations of paragraph 80 are denied.

81.     Caribbean admits only that it has refused SST's attempts to coerce and extort Caribbean into paying substantial amounts of money in order to protect Caribbean's rights. Caribbean further denies that Plaintiff or any predecessor in interest are the true and legitimate owner of the Property. The remaining allegations in this paragraph are denied.

82.     Caribbean admits only that it has refused SST's attempts to coerce and extort Caribbean into paying substantial amounts of money in order to protect Caribbean's rights. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean further states that it has no ability or authority to remove the cable system owned by Globenet. The remaining allegations in this paragraph are denied.

83.     These allegations are not directed at Caribbean. To the extent a response is required, the allegations of paragraph 83 are denied.

84.     These allegations are not directed at Caribbean. To the extent a response is required, the allegations of paragraph 84 are denied.

85.     Paragraph 85 calls for a legal conclusion to which no response is required.  To the extent a response is required, Caribbean denies the allegations contained in Paragraph 85.

86.     Caribbean only admits that SST purports to have hired counsel to represent it in this action.  The remaining allegations in this paragraph are denied.

87.     Denied.

## COUNT I
### Trespass and Facilitation of Trespass
### (against Globenet)

The Court has dismissed any claim in this count relating to "facilitation of trespass" because there is no such claim under Florida law. Additionally, this count is directed to Globenet and therefore no response is required from Caribbean. To the extent a response is required, Caribbean denies the allegations in paragraphs 88-105, including the Wherefore clause and its subclauses.

## COUNT II
## Trespass and Facilitation of Trespass
## (against CC)

The Court has dismissed any claim relating to "facilitation of trespass" because there is no such claim under Florida law. Accordingly, Caribbean's responses to the allegations in this count relate only to the remaining claim for trespass.

106.    Caribbean realleges and adopt its responses to Paragraphs 1 through 87 of the Amended Complaint as if fully set forth herein.

107.    Caribbean denies that Plaintiff has any legitimate claim for trespass or that it suffered any damages. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

108.    Denied.

109.    Denied. Caribbean further that Plaintiff is the true and legitimate owner of the Property.

110.    Caribbean admits only that it has refused SST's demands to coerce and extort Caribbean into paying substantial amounts of money in order to protect Caribbean's existing rights. Caribbean denies that Plaintiff is the true and legitimate owner of the Property. The remaining allegations in this paragraph are denied.

111.    Denied.

112.    Denied.

113.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

114.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

115.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

116.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

117.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

118.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

119.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

120.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

121.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

122.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property. Caribbean also states that the Court has dismissed any claim for "facilitation of trespass" because no such claim exists under Florida law.

Caribbean denies that SST is entitled to seek any of the relief requested in the unnumbered WHEREFORE clause and subclauses (a)-(f) following Paragraph 122, and further denies any of the allegations contained in the unnumbered WHEREFORE clause and subclauses (a)-(f), including SST's alleged reservation of a right to amend or to seek recovery of attorney's fees.

## COUNT III
### Trespass and Facilitation of Trespass
### (against John Does 1-100)

The Court has dismissed any claim relating to "facilitation of trespass" because there is no such claim under Florida law. Additionally, this count is directed to John Does 1-100 and therefore no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 123-131, including the Wherefore clause and its subclauses.

## COUNT IV
### Ejectment
### (against Globenet)

This count is directed to Globenet and therefore no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 132-140, including the Wherefore clause and its subclauses.

## COUNT V
### Ejectment (against CC)

141.    Caribbean realleges and adopt its responses to Paragraphs 1 through 87 of the Amended Complaint as if fully set forth herein.

142.    Caribbean admits only that SST purports to bring an action for ejectment, but denies that SST is entitled to any relief.

143.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner

of the Property and that SST has any valid title to the Property.

144.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

145.    Denied. Caribbean specifically denies that Plaintiff is the true and legitimate owner of the Property.

146.    Paragraph 146 characterize Caribbean's legal rights in and to the Property to which SST purports to own, therefore no response is required. To the extent that a response is required, Caribbean denies the allegations contained in Paragraph 146. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

147.    Plaintiff has taken the position that neither it or any alleged predecessor owner of the Property provided consent to Caribbean. Because neither Plaintiff nor any purported predecessor in interest have ever been the true and legitimate owners of the Property, no such alleged private "owner" had any right to require consent from anyone. Accordingly, because the allegations in paragraph 147 presume that SST owns the Property, the allegations in this paragraph are denied.

148.    Because neither Plaintiff nor any purported predecessor in interest have ever been the true and legitimate owners of the Property, no such alleged private "owner" had any right to require delivery of possession. Accordingly, because the allegations in paragraph 139 presume that SST (or a predecessor) owns the Property, the allegations in this paragraph are denied.

149.    Denied.

Caribbean denies that SST is entitled to seek any of the relief requested in the unnumbered WHEREFORE clause and subclauses (a)-(g) following Paragraph 149, and further denies any of the allegations contained in the unnumbered WHEREFORE clause and subclauses

(a)-(g).

## COUNT VI
### Ejectment
### (against John Does 1-100)

This count is directed to John Does 1-100 and therefore no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 150-157, including the Wherefore clause and its subclauses.

## COUNT VII
### Injunctive Relief
### (against Globenet)

This count is directed to Globenet and therefore no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 158-171, including the Wherefore clause and its subclauses.

## COUNT VIII
### Injunctive Relief
### (against CC)

172.     Caribbean realleges and adopts its responses to Paragraphs 1 through 87 of the Amended Complaint as if fully set forth herein.

173.     Caribbean admits only that SST purports to bring an action for preliminary and permanent injunctive relief, but denies that SST is entitled to any relief.

174.     Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

175.     The allegations in Paragraph 175 directed toward SST's facilitation of trespass claim were dismissed by the Court. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 175.

176.     The allegations in Paragraph 176 directed toward SST's facilitation of trespass

claim were dismissed by the Court. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 176.

177.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

178.    The allegations in Paragraph 178 directed toward SST's facilitation of trespass claim were dismissed by the Court. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 178.

179.    The allegations in Paragraph 179 directed toward SST's facilitation of trespass claim were dismissed by the Court. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 179.

180.    Denied. The allegations in Paragraph 180 also appear to be directed toward SST's facilitation of trespass claim which  dismissed by the Court. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 180.

181.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property.

182.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property and that Plaintiff has suffered any cognizable harm, irreparable or otherwise.

183.    Denied.  Caribbean further denies that that there is anything unique about the Property. Further, to the extent that the allegations in Paragraph 183 are directed toward SST's facilitation of trespass claim, that claim was dismissed by the Court and no response is required. To the extent a response is required, Caribbean denies the allegations contained in Paragraph 183.

184.    Denied. Caribbean further denies that Plaintiff is the true and legitimate owner of the Property and that there is anything unique about the Property.

Caribbean denies that Plaintiff is entitled to seek any of the relief requested in the unnumbered WHEREFORE clause, including subclauses (a)-(d) following Paragraph 184.

## COUNT IX
### Injunctive Relief
### (against John Does 1-100)

This count is directed to John Does 1-100 and therefore no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 185-196, including the Wherefore clause and its subclauses.

## COUNT X
### Unjust Enrichment
### (against Globenet)

This count is directed to Globenet and therefore no response is required from Caribbean. To the extent that a response is required, Globenet denies the allegations in paragraphs 197-203, including the Wherefore clause and its subclauses.

## COUNT XI
### Unjust Enrichment
### (against CC)

204.    Caribbean realleges and adopt its responses to Paragraphs 1 through 87 of the Amended Complaint as if fully set forth herein.

205.    Caribbean admits only that SST purports to bring an action for unjust enrichment, but denies that SST is entitled to any relief.

206.    Denied.

207.    Denied.

208.    Denied.

209.    Denied.

210.    Denied.

Caribbean admits only that SST purports to seek the relief requested in the unnumbered WHEREFORE clause and subclauses (a)-(d) following Paragraph 210, but denies that SST is entitled to any relief whatsoever in this action.

### COUNT XII
### Unjust Enrichment
### (against John Does 1-100)

This count is directed to John Does 1-100 and therefore no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 211-217, including the Wherefore clause and its subclauses.

### COUNT XIII
### Declaratory Judgment
### (against Globenet)

This count is directed to Globenet and it also was dismissed by the Court. Therefore, no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 218-234, including the Wherefore clause and its subclauses.

### COUNT XIV
### Rescission
### (against Globenet)

This count is directed to Globenet and it also was dismissed by the Court. Therefore, no response is required from Caribbean. To the extent that a response is required, Caribbean denies the allegations in paragraphs 235-249, including the Wherefore clause and its subclauses.

250.    All allegations in the Amended Complaint not specifically admitted by Caribbean are expressly denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

1. The Amended Complaint, in which SST purports to be the owner of submerged lands in the navigable waters of the Intracoastal Waterway that are vertically above the underground conduit housing Globenet's fiber optic cable ("Submerged Lands"), fails to state a claim against Caribbean for trespass (Count II), ejectment (Count V), injunctive relief (Count VIII), and unjust enrichment (Count XI). SST cannot possibly establish that it has lawful legal title to the Submerged Lands because the Submerged Lands are sovereignty land of the State of Florida and there was no authority for any agency of the State of Florida to convey sovereign land prior to 1917. To the extent any instrument of conveyance relied upon by Plaintiff to support its claim of title purports to include sovereignty land of Florida, such conveyance is invalid as a matter of settled Florida law. Further, any claims for equitable relief fail as a matter of law because, assuming Plaintiff could be the owner of the Submerged Lands, there are adequate remedies at law.

2. As an alternative to Florida's sovereignty over the Submerged Lands, Florida's Marketable Record Title Act ("MRTA") bars Plaintiff's claims against CC. MRTA states that any person, either alone or with his predecessors in title, who has been vested with title for 30 years, has a marketable title free and clear of all claims, subject to certain exceptions. Under MRTA, any other claim or interest in the lands at issue is cut off unless the claimant preserves his/her claim by filing a notice within that 30-year period.  MRTA bars Plaintiff's claims because the United States Government took title to some of the property at issue here via a 1929 deed from the Florida Canal and Transportation Company. The 1929 deed conveyed to the United States Government all of the rights and title of the Florida Canal and Transportation Company, including the right to lay telecommunication cables across the length of the Intracoastal Waterway.  Such title went

unchallenged over MRTA's entire prescriptive period, vesting the United States Government and/or State of Florida with title free and clear of private claims, including Plaintiff's current claim of ownership.

3.      SST's claims are barred in whole or in part because Globenet has a valid federal easement from the United States Government that is paramount to any purported interest in the Submerged Lands, whether those lands are owned by the State of Florida or any private party. The original easements, see Exhibits A and B hereto, contained an error in the identification of the lot numbers which has now been corrected by the United States. See Exhibit C, hereto. The rights of the United States derive from the United States Constitution, by authorizing legislation by the United States Congress (43 USC § 1314 (a)), and by virtue of a 1935 final judgment entered in the United States District Court for the Southern District of Florida in a condemnation proceeding. Pursuant to those rights it received from the federal government, Globenet has the right to authorize the use of its cable system to companies like Caribbean.

4.      Ownership of the Submerged Lands lies with the State of Florida and it acquired those lands at statehood. Other documents establishing the State of Florida's ownership in the Submerged Lands which may be relied on in this case are:

(i)      the Bureau of Land Management, General Land Office, Survey of 1870, see Exhibit D;

(ii)     Deed No. 12041 from the Trustees of the Internal Improvement Fund to Arthur Williams, dated April 25, 1883, see Exhibit E; and

(iii)    the U.S. Coast and Geodatic Survey, dated 1884, see Exhibit F.

5.      SST cannot get the relief sought in this action because CC has only an interest in its cable and not the conduit; thus, any order emanating from this case would not provide Plaintiff

any form of measureable relief because the Court cannot order the removal of the conduit which houses the cable as CC neither owns it nor installed it.

6.      Plaintiff's claims are barred in whole or in part by the easements granted to Globenet by the State of Florida. Pursuant to the State of Florida's ownership of the Submerged Lands, it provided easements from the State of Florida to Globenet and its predecessors. The recorded easements contained an incorrect legal description.  The intent of the State of Florida was always to grant Globenet an easement in the Submerged Lands where the cable is located.  The location of the cable and the correct legal description to be used with the State of Florida easement were contained in publicly-available, as-built documents submitted to the State of Florida. Prior to allegedly "purchasing" the Submerged Lands, Plaintiff obtained these documents, was aware of the federal and state easements, the legal description that should have been attached to the recorded state easements and thus Plaintiff "acquired" the Submerged Lands subject to Globenet's rights. Pursuant to Globenet's easement rights, it had the right to allow companies like Caribbean to use its cable system.

7.      Upon information and belief, and assuming SST's interest in the Submerged Lands is superior to the United States and the Board of Trustees of the State of Florida (it is not), the activities of the public, Globenet and its predecessors in using, constructing and/or operating the fiber optic cable for more than 20 years create a prescriptive easement right in Globenet's favor. Pursuant to that easement, Globenet had the right to allow Caribbean to use its cable system.

8.      Plaintiff's claims are barred because the Submerged Lands are sovereignty submerged lands protected under the Public Trust Doctrine and belong to the State of Florida. The Public Trust Doctrine provides that title to lands under navigable waters within the State of Florida are held in trust for the public by the State.  Such sovereign submerged lands can only be conveyed

by the State through a grantor with express authority to convey sovereign submerged lands and through an express conveyance of sovereign submerged lands.  No agency of the Florida state government had authority to convey sovereign submerged lands until 1917.  Neither SST nor its predecessors received a conveyance of sovereign submerged lands by a grantor with authority to make such a grant. The deed(s) which form the purported root of SST's title claims are therefore invalid, and SST has no legally cognizable interest in the Submerged Lands.

9.     Plaintiff's claims are barred because Caribbean has an easement from the State of Florida.

10.     SST's claims are barred in whole or in part because it has unclean hands. SST knew of Globenet's fiber optic cable and easements or other rights prior to its alleged "purchase" of the Submerged Lands, knew of Caribbean's easement, or at a minimum was on inquiry notice to investigate these matters, and SST paid only nominal consideration for the Submerged Lands.  SST did so knowing that the Public Trust Doctrine and federal right of way easement for the Intracoastal Waterway foreclosed any development or potential use of the Submerged Lands and that Globenet and Caribbean otherwise had easement interests in the lands.  SST purchased the Submerged Lands simply to attempt to coerce Caribbean and others into paying substantial amounts of money in order to protect their rights.  In fact, SST even sued the upland property owner (Little Cardinal) and then attempted to obtain a perpetual easement on the upland property of Little Cardinal precisely in the location where Globenet's cable traverses. SST is a mere fortune hunter looking to coerce Caribbean and others into paying substantial sums of money.

11.     SST's claims are barred in whole or in part as an improper collateral attack on the prior 1935 federal condemnation judgment to the extent SST challenges that judgment in any manner. Assuming that the Submerged Lands could be privately owned, the 1935 federal

condemnation judgment establishes the illegitimacy of SST's title claim.  Among other things, that condemnation judgment established the superior rights of the United States and also resulted in payment to certain persons including those who would be claiming ownership of what would later become submerged land in the Intracoastal Waterway. This group of persons includes SST's claimed predecessors in title.  Consequently, SST, which necessarily stands in the shoes of its predecessors, has already been compensated by the United States for the federal rights acquired pursuant to the 1935 judgment. Globenet thereafter received an easement from the United States pursuant to the rights it held in accordance with the 1935 judgment. Pursuant to the rights it received, Globenet allowed companies like Caribbean to use the Globenet cable system. In the most charitable view, SST is seeking to be paid twice for a purported property interest in the Submerged Lands when the federal government already paid to acquire its interest.

12.     SST's claims are barred by the applicable statute of limitations.  Globenet's cable was installed by 2001 and has remained in place since then.  It was installed pursuant to federal and state approvals and easements, which are reflected in publicly available documents. Caribbean's fiber optic cable was installed approximately at that time. SST, and its alleged predecessors in interest, were aware of the interests of United States and Florida in the Submerged Lands, and aware of Globenet's cable and the substantial consideration paid by Globenet and were aware of Caribbean's easement from the State of Florida.  As such, any claim that SST may have had accrued at that time. SST and its predecessors could have pursued, but failed to pursue, actions for trespass, ejectment or any other claims. Those claims are now time-barred.

13.     SST's claims are barred in whole or in part by laches. Globenet's fiber optic cable has been in place since at least 2001 and it has invested substantial time and resources into the permitting, construction, maintenance and repair of its cable as necessary, including paying the

State of Florida substantial consideration for easement rights. Caribbean's fiber optic cable was installed at around that time. SST, and its alleged predecessor in interest, were aware of Globenet's cable system and Caribbean's cable and could have pursued actions in a timely manner but failed to do so.  Caribbean would suffer substantial injury and prejudice if this suit were not barred.

14.    SST's claims are barred by the doctrines of res judicata/collateral estoppel in that the 1935 judgment in the condemnation proceedings for the development of the Intracoastal Waterway fairly compensated SST's predecessor in interest (assuming the Submerged Lands could be privately owned) regarding any rights lost in the Submerged Lands and also established certain rights now inuring to Globenet for the placement of its fiber optic cable. Pursuant to those rights, Globenet has properly authorized Caribbean to use its cable system.

15.    To the extent that SST attempts to rely on the continuing tort or delayed discovery doctrines, its claims are barred by res judicata/collateral estoppel, as those doctrines have already been found by the Court not to apply in a related unlawful detainer claim asserted by SST against Caribbean.

16.    SST's claims are barred by waiver and estoppel. SST knew, or at a minimum should have known, of Globenet's fiber optic cable and easements or other property rights prior to purchasing the Submerged Lands. SST likewise knew of should have known of Caribbean's easement and interests. SST nonetheless continued with the purported "purchase" of the Submerged Lands simply to coerce Globenet and others like Caribbean into paying substantial amounts of money in order to protect their existing rights. However, SST "purchased" the Submerged Lands subject to those rights.

17.    SST's claims are barred because SST failed to join necessary and indispensable parties, the United States of America and the Board of Trustees of the Internal Improvement Trust

Fund of the State of Florida (the "Trust") as well as any entities to which SST has purported ceded any mineral or other rights (the "Mineral Interests"). SST's claim of ownership in the Submerged Lands is directly contrary to the ownership and other interests of the United States and the State. The grantor of Globenet's federal easement (United States Army Corp. of Engineers) has openly held perpetual easement and rights of way over the property since at least 1935. Similarly, the grantor of Globenet's state easement (Florida), by virtue of federal legislation, is the owner of the Submerged Lands as of the date of statehood which occurred in 1845. If the owners of any Mineral Interests have any rights, those rights likely are superior to any claimed by SST. Plaintiff's claim is predicated on a purported interest in the Subject Property which is, despite SST's dubious ownership claim, properly vested in the United States and/or the State and/or ceded at least in part to owners of the Mineral Rights. The United States, the State of Florida and the owners of the Mineral Rights have direct interests that will inevitably be affected by a judgment in this proceeding and their presence is necessary to a complete determination of SST's claims. For the Court to render a full and final judgment, these parties must be joined in this case.

18.     SST has no valid claim for trespass because SST cannot satisfy the requirement of ownership or possession at the time of Caribbean's alleged trespass. The State of Florida owns the Submerged Lands. The United States granted Globenet an easement in and to the Submerged Lands, pursuant to which Globenet authorized Caribbean to use the cable system. SST did not "acquire" the Submerged Lands until late 2016 and early 2017. With its cable well in place by then, SST cannot assert it was in possession at the time of any alleged trespass by Caribean. Nor can any predecessor to SST assert ownership or possession of the Submerged Lands prior to the installation of Caribbean's cable because the lands have been submerged and not occupied (if ever)

since the ICW was widened in the 1930s. Accordingly, SST's claim for trespass fails as a matter of law.

19.     SST has no valid claim for ejectment because SST cannot meet the requirement that SST have title to the land. Under Chapter 66, Florida Statutes, a plaintiff must specifically set forth in the complaint the chain of title that establishes its superior right to possession of the Submerged Lands. See § 66.021(7). But, SST failed to satisfy this requirement because no instrument purports to convey the Submerged Lands (since it is sovereignty land) and the legal descriptions of the Submerged Lands relied on by SST never appear in any deed in the chain of title until Plaintiff crafted those descriptions with its surveyor.

20.     SST is not entitled to disgorgement in the nature of any Defendants' profits. Mesne profits under Florida law means damages calculated as the harm or injury caused to real property.

21.     SST has no valid claim for injunctive relief.  There is no irreparable injury because any purported harmed caused by the alleged trespass or ejectment can be cured by monetary damages. Indeed, Plaintiff seeks monetary damages in excess of $250 million. Its own pleadings defeat all entitlement to injunctive relief. Plaintiff also cannot satisfy the requirement that it has no adequate remedy at law. The claims for trespass and ejectment establish it has legal remedies. *See Smith*, 497 So.2d at 986 n.1 ("Trespass is an action at law.").

22.     SST has no valid claim for unjust enrichment because SST has available legal remedies, SST did not directly confer any benefits on Caribbean, and the damages sought for unjust enrichment cannot be greater than what plaintiff may recover under SST's claims for trespass or ejectment claim.

23.     SST has no valid interest in the Submerged Lands pursuant to the doctrine of avulsion. The Submerged Lands have always been sovereign property of the State. The development of the Intercoastal Waterway was an avulsive event but did not create any form of

ownership in those lands in favor of SST or any of its alleged predecessors in interest. Alternatively, to the extent that the Submerged Lands or some portion thereof may have been privately held, and the boundary between sovereignty land and private land cannot be sufficiently determined, any private owner failed claim the Submerged Lands within a reasonable period of time.

24.     Plaintiff has no standing to challenged any alleged failure by Globenet to comply with the easements between Globenent and the United States or between Globenet and the State of Florida, and the rights acquired by Caribbean thereunder.

WHEREFORE, Caribbean prays that SST take nothing by way of this action and that the action be dismissed with prejudice, with judgment entered in favor of Caribbean and that the Court award such other relief as it may deem just and proper.

## COUNTERCLAIMS

1.     Caribbean's counterclaims consist of claims for damages in excess of $30,000, exclusive of attorneys' fees, interests and costs and a claim for equitable and declaratory relief. Caribbean's nterclaims are exclusively within the subject matter jurisdiction of the circuit court.

2.     Caribbean's counterclaims arise out of the same transaction or occurrence set forth in SST's amended complaint, and are compulsory counterclaims within the meaning of Rule 1.170(a) of the Florida Rules of Civil Procedure.

### Parties

3.     Defendant/Counter-Plaintiff Caribbean is a Bahamian corporation doing business in the State of Florida.  It is a retail telecom provider that operates a fiber optic cable system linking the Bahamas with the United States.  Caribbean's cable utilizes a submarine conduit owned by Co-Defendant Globenet Cabos Submarinos America, Inc.

4.      Plaintiff/Counter-Defendant SST is a Florida limited liability company that recently purports to have acquired certain submerged lands in the Intracoastal Waterway that are described in SST's Complaint (the "Submerged Lands").

5.      Third-party defendant, Board of Trustees of the Internal Improvement Trust Fund of the State of Florida ("Trust") is a legal entity comprised of the Governor of the State of Florida and the Governor's cabinet members. Pursuant to the Florida Constitution, title to lands under navigable waters, which have not been specifically alienated, is held by the State in trust for the people via the Trust.  Pursuant to Rules 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, the Trust is joined as a third-party defendant in CC's counterclaims for declaratory relief and easement. The Trust has a direct interest in the subject matter of this case and Caribbean's counterclaims, and thus the Trust's presence as a party is necessary to a complete determination of these claims.

**Facts**

*Telecommunications Project*

6.      From around 1999, Globenet and its predecessors began construction of a fiber optic cable system to provide a telecommunications link (including internet service) for parts of the Southeastern United States of America and nations in the Caribbean and Latin America ("Project").  The Project involved laying a fiber optic cable linking landing stations in Tuckerton, New Jersey and Boca Raton, Florida with landing stations in Bermuda, Brazil, Colombia and Venezuela.  A timeline of relevant milestones in the Project includes the following:

    a.   1999 - The Project begins.

    b.   October 1999 – An engineering report for the Project was submitted to relevant federal, state and local government authorities.  The Project landed a fiber optic

cable in Palm Beach County, with the path of the cable beginning in the Atlantic Ocean and traveling westward towards a beach manhole located in Boca Raton, Florida.  From there, the cable went underground to a cable landing station.  En route to the landing station, the cable would tunnel underneath a section of the Intracoastal Waterway.

c.  December 1999 - The Project's cable landing license was issued by the Federal Communications Commission (FCC).

d.  February 2000 - Third party objections to the Project's cable landing license were lodged.  None objections was made by SST or its predecessors.

e.  July 2000 - The Florida Department of Environmental Protection (FDEP) published a notice of intent to issue a permit for the Project in the Palm Beach Post.  This did not result in inquiries or objections to the project being lodged by SST or its predecessors.

f.  August 2000 - FDEP issued a permit and intent to grant a sovereign submerged land easement for the Project.  The Army Corps of Engineers also issued a permit for the Project authorizing boring under the ocean and land portions of the path of the cable, including the portion passing underneath the Intracoastal Waterway.

g.  September 2000 - The United States of America, acting through the U.S. Army Corps of Engineers, issued an easement to Globenet's predecessor granting it permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over and under a portion of the Intracoastal Waterway.

h.  September 2000 - The State of Florida, acting through the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, also issued an easement

to Globenet's predecessor granting it permission to install four conduits and two fiber optic cables passing underneath the Intracoastal Waterway.

i.   October 2000 - Site-related work on the Project commenced.

j.   In March 2001, as-built drawings for the Project were prepared, which included a drawing depicting the as-built location and legal description of the portion of the cable that tunnels underneath the Intracoastal Waterway.  Upon information and belief, due to an administrative error, the legal description forwarded to FDEP for the portion of the cable that tunnels underneath the Intracoastal Waterway referenced the wrong as-built drawing.

k.   October 2001 – An updated legal description was provided to FDEP reflecting the as-built location of the portion of the cable tunneling underneath the Intracoastal Waterway.

l.   November 2002 - Brasil Telecom S.A. purchased all rights in the Project from its previous owners.

m.   May 2003 - The federal easement for the Project was updated to identify a Brasil Telecom S.A. affiliate, Brasil Telecom of America, Inc., as the federal easement grantee.

n.   September 2003 - The state easement for the Project was updated to identify Brasil Telecom of America, Inc. as the state easement grantee.

o.   January 2014 - Brasil Telecom of America, Inc. changed its name to the "Globenet Cabos Submarinos America Inc."

*U.S. Easements*

7.      The September 2000 and May 2003 easements the United States granted rights to Globenet and its predecessor in connection with construction of the Project ("U.S. Easements") See attached Exhibits A and B.

8.      The U.S. Easements grant Globenet rights that are terminable only in three scenarios: (1) if the Project interferes with the Government's use of the Intracoastal Waterway; (2) if Caribbean fails to comply with the conditions stated in the U.S. Easements, or (3) if Caribbean abandons or fails to utilize its federal easement rights for a period of two years.  None of these conditions has been triggered.

9.      Due to a scrivener's error, the U.S. Easements identify the wrong federal tract numbers.  The tracts are identified as nos. 908 and 909 on the first page thereof, when these should have been identified as 910 and 911. Upon information and belief, this error occurred because there were several prior renumberings of the tracts that took place and led to the confusion along with a change in the as-built location of the cable. This error has been corrected. See Exhibit C.

10.      Despite the scrivener's error, the United States has a superior interest over all others to the Submerged Lands, and has the power to give Globenet a federal easement corresponding to the as-built subterranean path traversed by Caribbean's cable through the Submerged Lands. Pursuant to the rights it received, Globenet had the right to authorize Caribbean to use its cable system.

*The Federal Source of Rights*
*Granted in the U.S. Easements*

11.      The United States derives the right to grant Caribbean the U.S. Easements from the constitutional and congressional mandate the United States Government has to regulate navigable waters.  The Government's rights in this regard are superior to all other interests.  *See Zabel v.*

*Tabb*, 430 F.2d 199, 203-206 (5th Cir. 1970) (describing the paramount federal easement right in navigable waters of the United States deriving from Commerce Clause of the United States Constitution and Section 1314(a) of the Submerged Lands Act); 43 USC § 1314 (a) ("The United States retains all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international affairs, all of which shall be paramount to … proprietary rights of ownership, or the rights of management, administration, leasing, use, and development of the lands and natural resources ….").

12.     The United States Government's grant of rights to Globenet is also grounded in a federal judgment. The United States was specifically granted a perpetual easement in the undersea property at issue in this case via a final judgment issued by a federal court in 1935 in a condemnation proceeding.  The petition for condemnation and resulting final judgment are attached hereto as Exhibits G and H, respectively.  The federal condemnation judgment enabled construction of the widening of the Intracoastal Waterway at issue in this case, and granted the United States perpetual easement rights to use and maintain it.

*Florida's Title to the Submerged Lands*

13.     Despite Plaintiff's purported ownership claim in the Submerged Lands, the State of Florida, acting through the Trust, has been and remains the actual fee simple owner of the Submerged Lands.  At a minimum, the Trust's title interest arises pursuant to the federal equal-footing doctrine, which, upon statehood, vested title to submerged lands within Florida borders and under navigable waters to the State of Florida.  *Id.*; s*ee also PPL Mont., LLC v. Montana*, 565 U.S. 576, 591 (2012) ("The title consequences of the equal-footing doctrine can be stated in summary form: Upon statehood, the State gains title within its borders to the beds of waters then

navigable [or tidally influenced].  It may allocate and govern those lands according to state law subject only to 'the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce.'") (citations omitted) (reversing state supreme court judgment which misapplied federal rules for determining navigability for title under the equal footing doctrine when resolving title dispute between the state and a private party).

14.     The equal footing doctrine was later recognized and incorporated into the Florida Constitution.  Fla. Const. Art. X, § 11 (adopted 1970) ("The title to lands under navigable waters, within the boundaries of the state, which have not been alienated … is held by the state, by virtue of its sovereignty, in trust for all the people.  Sale of such lands may be authorized by law, but only when in the public interest. Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.").

*Florida Easements*

15.     Globenet and its predecessor also obtained the requisite permits for the project and additionally obtained the September 2000 and September 2003 easements from the Trust ("Florida Easements") who asserted sovereign ownership of the Submerged Lands.  The Florida Easements are attached as Exhibits I and J.

16.     Globenet and its predecessor paid the Trust $185,000 for the Florida Easements to the Submerged Lands, as along with Trust approval to proceed with the portion of the Project tunneling underneath the Intracoastal Waterway.

17.     Globenet's recorded Florida Easements were not updated by the State to include the corrected legal description showing the final as-built location of Caribbean's cable.  As a consequence, there is a small discrepancy between the legal description in the Florida Easements and the actual subterranean path traversed by Globenet's cable through the Submerged Lands.

Upon information and belief, Globenet has initiated the process to correct these administrative errors with State authorities.

18.     The records showing the  construction of the Globenet's cable system are publicly available.

19.     The records showing the correct legal description for the location of Globenet's cable is publicly- available.

20.     Prior to purportedly purchasing the Submerged Lands, SST had in its possession certain as-built drawings that showed the actual location of Globenet's cable and which contained the correct legal description for the easement to be provided by the State of Florida.

21.      Despite the administrative error, the actual cable path still passes under sovereign submerged lands of the State of Florida.  Except for the interests of the federal government, the State of Florida has a superior ownership interest over all others to the Submerged Lands. Consequently, the Trust has the power to correct the Florida Easements to reflect the intent of the State of Florida to give Caribbean a state sovereign submerged lands easement corresponding to the as-built subterranean path traversed by Caribbean's cable through the Submerged Lands

*Project Completion and Ongoing Operations*

22.     In or around 2001, Globenet completed the Project in the ICW.  Since that time, the fiber optic cable installed by Globenet has provided telecommunication services to the Southeastern United States and to locations in the Caribbean and Latin America.  Caribbean's own cable has been in place since around that time as well. The United States Government's approval of the Project, which includes a determination that the project is in the public interest, remains in place.  Upon information and belief, the Department of Homeland Security also now considers

Globenet's fiber optic cable to be vital to national security as Globenet must advise it of any significant matters affect the cable.

*SST's Unfounded Title Claim to Seabed of the Intracoastal Waterway*

23.     Globenet's fiber optic cable traverses constructed tunnels underneath a portion of seabed of the Intracoastal Waterway located in Palm Beach County, Florida.

24.     In 2016 and 2017, SST alleges to have acquired a fee simple interest in a portion of submerged lands in the Intracoastal Waterway that lie vertically above the path of the location of the fiber optic cable (i.e., the Submerged Lands).  Estates of deceased private citizens, some closed for 20 years, were suddenly reopened for the sole purpose of purportedly conveying these interests for mere nominal value, to SST by warranty deeds.  Armed with these "warranty deeds," SST contends in its amended complaint to assert a title interest in the Submerged Lands..

*Caribbean's Fiber Optics Cable*

25.     By way of Caribbean's conduit, Caribbean's fiber optics cable traverses the Submerged Lands in the intracoastal waterway (ICW) in Palm Beach County.

26.     Caribbean's fiber optics cable and Globenet's conduit system through which it passes, have been in place for two decades pursuant to easement rights granted to Caribbean by the State of Florida and the federal government.

27.     Globenet has valid federal and state easement rights over the Submerged Lands. Pursuant to those rights, Globenet had the right and authority to allows companies like Caribbean to use its cable system.

28.     All conditions precedent to the maintenance of this action have been satisfied or waived.

**Count I**
**Declaratory Relief**
**(Against SST and The Trust)**

29.     Caribbean incorporates by reference paragraphs 1 through 28 above.

30.     This is a claim for declaratory judgment against SST and the Trust pursuant to Chapter 86, Fla. Stat., and for supplemental and equitable relief.

31.     As set forth above, an actual controversy has arisen between the parties to this action regarding the ownership status of the Submerged Lands as sovereign submerged lands. SST asserts it is the owner of the Submerged Lands and that its rights are superior to all others, including the State.

32.     The Trust, through its Florida Easements in favor of Globenet, has asserted since at least 2000 that it is the owner of the Submerged Lands. In the Florida Easements, it repeatedly referred to the Submerged Lands as "sovereign submerged lands". In the easement granted to Caribbean, the Trust similarly referred to the submerged lands as "sovereign submerged lands." Additionally, the legal descriptions that were or should have been used with the Florida easements make clear that those easements extend from a point on the west seawall of the ICW to a point on the east seawall of the ICW, thus encompassing the Submerged Lands over which SST claims to own.

33.     Caribbean acquired rights to use the Globenet cable system based on the both the superior rights of the United States and the Trust's sovereignty rights in the Submerged Lands.

34.     Consequently, Caribbean is unsure of its rights. There is a bona fide, actual, present practical need for a declaration regarding Caribbean's rights to operate its fiber optic cable in the conduit that encases it.

35.     The declaration sought herein thus concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts. Such declaration will not be advisory in nature.

WHEREFORE, Caribbean seeks a declaration that:

a.   The Submerged Lands consist of sovereign submerged lands that are owned in fee by the State of Florida (acting via the Trust), subject to prior rights duly acquired by the United States via the United States Constitution, authorizing Congressional legislation, and a final judgment in the federal condemnation proceeding, thereby rendering SST's deeds null and void and without force and effect;

b.   Globenet has an interest in the Submerged Lands as a result of a valid and express easement it acquired from and the United States, and that such easement rights are paramount to the rights of any owner of the Submerged Lands and that, as a result, Globenet was authorized to allow Caribbean and others to use its cable system;

c.   Globenet has an interest in the Submerged Lands as a result of the valid express easement it acquired from the State of Florida (acting via the Trust) and that, as a result, Globenet was authorized to allow Caribbean and others to use its cable system;

d.   Even if the Submerged Lands were ever privately held, SST, through its predecessor in interest, was properly compensated for the Submerged Lands in the 1933 Condemnation Proceeding or, alternatively, SST's action is an improper collateral attack on the 1935 judgment that resulted from that proceeding;

e.   Caribbean has an interest in the Submerged Lands as a result of the valid express easement from the State of Florida (acting via the Trust), and the rights granted to it by Globenet; and

f.   And, such other relief as this Court deems just and proper.

### Count II
### Easement
### (Against SST)

36.      Caribbean incorporates by reference paragraphs 1 through 28 above.

37.      This is an action to establish an easement in favor of Caribbean in that portion of the Submerged Lands under which its fiber optic cable traverses, as reflected by its continuous use of the Submerged Lands, the U.S. Easements to Globenet pursuant to which Caribbean obtained its rights, the easement in favor of Caribbean from the Trust, and also as shown in the recorded Florida Easements (granted via the Trust) pursuant to which Caribbean also obtained its rights.

WHEREFORE, Caribbean demands judgment in its favor and against South Spanish Trail that it has an express easement over and across such part of the Subject Property that is covered by its fiber optic cable, an award of costs of this action and such other and further relief as the Court deems just and proper.

### Count III
### Prescriptive Easement
### (Against SST only)

38.      Caribbean incorporates by reference paragraphs 1 through 4, 6 and 22 through 25 above.

39.      This is an action in the alternative to establish a prescriptive easement in favor of Caribbean through that portion of the Submerged Lands under which its cable traverses.

40.      There has been actual, continuous and uninterrupted use by the public, Globenet and its predecessors in title, and Caribbean of the Submerged Lands for at least twenty years. The uses have related to a certain, limited and defined area of land.

41.     If SST has an ownership interest in the Submerged Lands superior to that of the Trust, and superior to any interest of Caribbean, the uses of the lands by the public, Globenet and its predecessors, and Caribbean have been either with the actual knowledge of SST and/or its predecessors, or were so open, notorious and visible that knowledge of the uses must be imputed to SST and/or its predecessors.  Such uses have been without the express or implied permission of SST and/or its predecessors such that for the entire period SST and/or its predecessors could have sued to prevent further use.

WHEREFORE, Caribbean demands judgment in its favor and against SST that Caribbean has a valid prescriptive easement rights over and across such part of the Submerged Lands that is covered by the Caribbean's fiber optic cable, an award of costs of this action and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Caribbean demands a trial by jury on all issues, defenses, affirmative defenses and claims so triable as a matter of right.

Dated:  October 19, 2020                      Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717

By: s/  *Humberto H. Ocariz*
     HUMBERTO H. OCARIZ
     Florida Bar No. 740860
     Email: ocarizb@gtlaw.com
          belloy@gtlaw.com
     JARED R. KESSLER
     Florida Bar No. 96020
     Email: kesslerj@gtlaw.com
          cruzm@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Florida Courts E-Filing Portal.  I also certify that the foregoing document is being served this 19th day of October, 2020, by e-mail generated by the E-Portal system on all counsel of record listed below.

s/   *Humberto H. Ocariz*
HUMBERTO H. OCARIZ

## SERVICE LIST

Ricardo A. Reyes, Esq.
Sacha A. Boegem, Esq.
TOBIN & REYES, P.A.
Mizner Park Office Tower
225 N.E. Mizner Blvd., Suite 510
Boca Raton, FL  33432
Telephone: (561) 620-0656
Facsimile:  (561) 620-0657
Email: rar@tobinreyes.com
        sboegem@tobinreyes.com
        eservice@tobinreyes.com

*Counsel for Plaintiff, South Spanish Trail, LLC*

# EXHIBIT  A

BOOK 15447   PAGE 0664

**DEPARTMENT OF THE ARMY**
**CONSENT TO EASEMENT**
**TO USE CORPS OF ENGINEERS RIGHT-OF-WAY**

Consent No. DACW17-9-00-0105
Project: Intracoastal Waterway,
Jacksonville to Miami, Palm Beach
County, Florida
Tract Nos. 908 and 909

THIS CONSENT TO EASEMENT AGREEMENT, made by and between the
UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY, hereinafter
referred to as the "Government", acting by and through the Chief,
Real Estate Division, U.S. Army Corps of Engineers, Jacksonville
District, hereinafter referred to as "said officer," and Atlantica
USA L.L.C., hereinafter referred to as the "Grantee":

WHEREAS, the Government has acquired right-of-way easements over
the above-numbered tracts of land, which easement, by the terms,
reserves to the Government, in perpetuity, the right to use said
easements for the construction, improvement, and maintenance of the
Intracoastal Waterway, Jacksonville to Miami, Palm Beach County,
Florida; and

WHEREAS, the Grantee has requested permission to construct, use,
maintain, repair and remove a fiber optic cable in, on, across, over,
and under a portion of the lands identified as Tract Nos. 908 and
909, Section 29, Township 47 South, Range 43 East, Palm Beach County,
Florida.  The area comprising 0.07 of an acre, more or less, is shown
in red on Exhibit "A" attached hereto and made a part hereof.

NOW THEREFORE, this consent is granted and accepted under the
following conditions:

1.  That it is understood that this consent is effective only insofar
as the property rights of the Government in the land to be occupied
are concerned, and that it does not relieve the Grantee from the
necessity of obtaining grants from the owners of the fee and/or other
interests, therein, nor does it obviate the requirement that the
Grantee obtain State or local assent required by law for the activity
authorized herein.

2.  That any proposed improvements or use authorized herein shall not
be commenced until appropriate rights shall have been obtained by the
Grantee from the record owners and encumbrancers of the fee title to
the lands involved, or until the Grantee has obtained all Federal,
State, or local permits required by law.

3.  That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

4.  That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 14 below.

5.  That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects.  Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

6.  That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

7.  That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

8.  That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of the Government under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to

BOOK 15447   PAGE 0666

compensation shall accrue from such damage, and if further operations of the Government require the alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

9.   That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights nor to endanger lives and safety of the public.

10.   That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

11.   That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefor, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

12.   That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

13.   That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional examination of

3

BOOK 15447   PAGE 0667

them can be made or until a clearance to proceed is authorized by the District Engineer.

14. That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference. That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

15. That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent. In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

IN WITNESS WHEREOF, I have hereunto set my hand, by authority of the Secretary of the Army, this _8th_ day of _SEPTEMBER_ 2000.

UNITED STATES OF AMERICA

BY: _____

BART J. WIVELL
Chief, Real Estate Division
U.S. Army Engineer District
Jacksonville, Florida


AGREED TO AND ACCEPTED

ATLANTICA USA L.L.C.

BY: _____


Witness

Witness

4

# EXHIBIT B

BOOK 15447   PAGE 0673

## DEPARTMENT OF THE ARMY
## CONSENT TO EASEMENT
## TO USE CORPS OF ENGINEERS RIGHT-OF-WAY

Consent No. DACW17-9-03-0084
Project:  Intracoastal Waterway,
Jacksonville to Miami, Palm Beach
County, Florida
Tract Nos. 908 and 909

THIS **CONSENT TO EASEMENT AGREEMENT**, made by and between the **UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY**, hereinafter referred to as the "Government", acting by and through the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, hereinafter referred to as "said officer," and Brasil Telecom of America. Inc., hereinafter referred to as the "Grantee":

**WHEREAS**, the Government has acquired right-of-way easements over the above-numbered tracts of land, which easement, by its terms, reserves to the Government, in perpetuity, the right to use said easements for the construction, improvement, and maintenance of the  Intracoastal Waterway, Jacksonville to Miami, Palm Beach County, Florida; and

**WHEREAS**, the Grantee has requested permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over, and under a portion of the lands identified as Tract Nos. 908 and 909, Section 29, Township 47 South, Range 43 East, Palm Beach County, Florida. The area comprising 0.07 of an acre, more or less, is shown in red on Exhibit "A" attached hereto and made a part hereof.

**NOW THEREFORE**, this consent is granted and accepted under the following conditions:

1.   That effective as of the date of execution hereof on behalf of the United States, this consent shall replace and supersede Department of the Army Consent to Easement No. DACW17-9-00-0105 granted to Atlantica USA, L.L.C.

2.   That it is understood that this consent is effective only insofar as the property rights of the Government in the land to be occupied are concerned, and that it does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests, therein, nor does it obviate the requirement that the Grantee obtain State or local assent required by law for the activity authorized herein.

3.   That any proposed improvements or use authorized herein shall not be commenced until appropriate rights shall have been obtained by the Grantee from the record owners and encumbrancers of the fee title to the lands involved, or until the Grantee has obtained all Federal, State, or local permits required by law.

4.  That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

5.  That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 15 below.

6.  That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects. Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

7.  That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

8.  That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

9.  That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of the Government, under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to compensation shall accrue from such damage, and if further operations of the Government require the

2

BOOK 15447   PAGE 0675

alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

10.   That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights not to endanger lives and safety of the public.

11.   That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

12.   That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefore, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

13.   That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

14.   That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional examination of them can be made or until a clearance to proceed is authorized by the District Engineer.

3

BOOK 15447   PAGE 0676

15.  That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference.  That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

16.  That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida  32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent.  In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

        IN WITNESS WHEREOF, I have hereunto set my hand, by authority of the Secretary of the Army this _____/ st_____ day of _____MAY_____ 20 03.

                                UNITED STATES OF AMERICA

                                BY: SHARON W. CONKLIN
                                    Chief, Management and Disposal Branch
                                    Real Estate Division
                                    U.S. Army Engineer District
                                    Jacksonville, Florida


                                AGREED TO AND ACCEPTED

                                BRASIL TELECOM OF AMERICA, INC.

                                BY: SAMI ARAP SOBRINHO
                                    VICE PRESIDENT, GENERAL COUNSEL AND SECRETARY

Witness
ALINE MERONE

Witness
ALEX K. BAYER

                                    4

BOOK 15447 PAGE 0677



RECORDER'S MEMO: Legibility of document unsatisfactory when received.

EXHIBIT "A"

TRUE NORTH

ACQUISITION

TOTAL ACRES ACQUIRED

PUBLIC DOMAIN

TRANSFER

DISPOSAL

PALM BEACH COUNTY

REAL ESTATE
INTRACOASTAL WATERWAY
JACKSONVILLE TO MIAMI

AUDITED

RECORDER'S MEMO: Legibility of document
unsatisfactory when received.

EXHIBIT "A"

BOOK 15447   PAGE 0679



EXHIBIT "B"

This is not a certified copy

BOOK 15447   PAGE 0680

FOR PERMIT APPLICATION ONLY

PROFILE R/L STATION 20+25 TO STATION 24+00

MATCH LINE STATION 20+25
SEE SHEET 29 OF 40

MATCH LINE STATION 24+00
SEE SHEET 31 OF 40

INTERCOASTAL WATERWAY

Atlantica '1'

FIBER OPTIC CABLE SYSTEM
STATION 20+25 TO STATION
24+00
BOCA RATON, FLORIDA

SHEET 30 OF 40

EXHIBIT

BOOK 15447   PAGE 0681
Dorothy H. Wilken, Clerk

## CORPORATE CERTIFICATE

I, YON MOREIRA DA SILVA JR, certify that I am an officer
(other than consent signatory)

of the corporation named as grantee in the foregoing Consent to

Easement; that SAMI ARAP SOBRINHO who signed said Consent
(consent signatory)

to Easement on behalf of the Grantee was the VICE PRESIDENT, GENERAL COUNSEL AND SECRETARY

of said corporation, and that said Consent to Easement was duly

signed for and in behalf of said corporation by authority of its

governing body, and is within the scope of its corporate powers.

(Corporate Seal)

_____
(Signature)

4.25.03
(Date)

This is not a certified copy

# EXHIBIT C



**DEPARTMENT OF THE ARMY**
**JACKSONVILLE DISTRICT, CORPS OF ENGINEERS**
**701 SAN MARCO BLVD**
**JACKSONVILLE, FLORIDA 32207-8175**

July 15, 2020

Mr. Nicholas Barshel
Akerman LLP
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Sent via email only to Nicholas.barshel@akerman.com

Dear Mr. Barshel:

Enclosed please find an executed copy of Department of the Army Corrective Consent to Easement No. DACW17-9-03-0084.  This contains the correct tract numbers where the fiber optic cable is located in the Federal right-of-way of the Intracoastal Waterway, Jacksonville to Miami Project, Palm Beach County, Florida.

Should you have any questions, please contact Bertha Miller, Realty Specialist, at (904) 232-3727 or email: bertha.a.miller@usace.army.mil.

Sincerely,

MCQUILLEN.TIMOTH
Y.HART.1050583305
Digitally signed by
MCQUILLEN.TIMOTHY.HART.10505
83305
Date: 2020.07.15 14:49:13 -04'00'

Timothy H. McQuillen
Chief, Real Estate Division

Enclosure

Globenet-SST-001663

### DEPARTMENT OF THE ARMY
### CORRECTIVE CONSENT TO EASEMENT
### TO USE CORPS OF ENGINEERS RIGHT-OF-WAY

Consent No. DACW17-9-03-0084
Project: Intracoastal Waterway,
Jacksonville to Miami
Palm Beach County, Florida
Tract Nos. 910 and 911

**THIS CONSENT TO EASEMENT AGREEMENT**, made by and between the **UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY**, hereinafter referred to as the "Government", acting by and through the Real Estate Contracting Officer, Chief, Real Estate Division, hereinafter referred to as "said officer," and Globenet Cabos Submarinos America, Inc., f/k/a Brasil Telecom of America, Inc., hereinafter referred to as the "Grantee":

**WHEREAS**, the Government has acquired a right-of-way easements over the above-numbered tract of land, which easement, by its terms, reserves to the Government, in perpetuity, the right to use said easements for the construction, improvement, and maintenance of the Intracoastal Waterway, Jacksonville to Miami Project, Palm Beach County, Florida; and

**WHEREAS**, the Grantee has requested permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over, and under a portion of the lands identified as Tract Nos. 910 and 911, Section 29, Township 47 South, Range 43 East, Palm Beach County, Florida. The area is shown on Exhibits "A" and "B" attached hereto and made a part hereof.

**NOW THEREFORE**, this consent is granted and accepted under the following conditions:

1. That effective as of the date of execution hereof on behalf of the United States of America, this consent replaces the Department of the Army Consent to Easement No. DACW17-9-03-0084 to Brasil Telecom of America, Inc. recorded 27 June 2003 in the Palm Beach County Official Records, Deed Book 15447, Pages 673 – 681.

2. That it is understood that this consent is effective only insofar as the property rights of the Government in the land to be occupied are concerned, and that it does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests, therein, nor does it obviate the requirement that the Grantee obtain State or local assent required by law for the activity authorized herein.

Globenet-SST-001664

3.  That any proposed improvements or use authorized herein shall not be commenced until appropriate rights shall have been obtained by the Grantee from the record owners and encumbrancers of the fee title to the lands involved, or until the Grantee has obtained all Federal, State, or local permits required by law.

4.  That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

5.  That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 15 below.

6.  That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects.  Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

7.  That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

8.  That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

9.  That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of

2

Globenet-SST-001665

the Government, under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to compensation shall accrue from such damage, and if further operations of the Government require the alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

10.  That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights nor to endanger lives and safety of the public.

11.  That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

12.  That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefor, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

13.  That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

14.  That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional

3

Globenet-SST-001666

examination of them can be made or until a clearance to proceed is authorized by the District Engineer.

15.  That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference.  That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

16.  That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida  32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent.  In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

**IN WITNESS WHEREOF**, I have hereunto set my hand, by authority of the Secretary of the Army, this 15th day of July 2020.

UNITED STATES OF AMERICA

BY: MCQUILLEN.TIMOTHY.HART.1050583305  Digitally signed by MCQUILLEN.TIMOTHY.HART.10505833 05  Date: 2020.07.15 14:50:51 -04'00'

Timothy H. McQuillen
Real Estate Contracting Officer
Chief, Real Estate Division

AGREED TO AND ACCEPTED

GLOBENET CABOS SUBMARINOS AMERICA, INC.
f/k/a Brasil Telecom of America, Inc.

Witness
BRUNO GIOVENARDI

Eduardo Falzoni
Chief Executive Officer

4

Globenet-SST-001667

Witness

## **CORPORATE CERTIFICATE**

I, BRUNO GROVENAZZI, certify that I am an officer of the Corporation
(other than consent signatory)

named as Grantee in the foregoing Consent to Easement; that ⎯EDUARDO FALZONI⎯
(consent signatory)

who signed said Consent to Easement on behalf of the Grantee was the _____

⎯CEO⎯ of said Corporation; and that said Consent to Easement was duly

signed for and on behalf of said Corporation by authority of its governing body, and is

within the scope of its corporate powers.

_____
(Signature)

⎯07/13/20⎯_____
(Date)

5

Globenet-SST-001668

PROJECT MAP

FINAL

PALM BEACH COUNTY

INTRACOASTAL WATERWAY
JACKSONVILLE TO MIAMI

Globenet SST 001669

# BOUNDARY SURVEY FOR: Globenet Cabos Submarinos America, Inc.

Section 29, Township 47 South, Range 43 East
Palm Beach County, Florida

SURVEYORS NOTES

1. Bearings shown hereon are referenced to the South line of Section 29, Township 47 South, Range 43 East bearing South 89°27'04" West and all others are relative thereto.

2. There has been no attempt to locate any underground utilities or improvements.

3. Additions and/or deletions to this survey by other than the signing party (or parties) is prohibited without the written consent of the signing party (or parties).

4. Coordinates shown hereon are referenced to the State Plane Coordinate System, Florida East Zone, North American Datum 1983, adjustment of 2011 and are further referenced to the TRIMBLE VRSNOW Real-Time Network as verified by repeated ties to various NGS Horizontal Control Points located in the vicinity of the project.

NOTE: Following documents 5 - 11 were provided by the client.

5. Michael Baker Jr., Inc document submitted to Florida Department of Environmental Protection, ON October 25, 2001 Ref. Document No. 36597.001 File No. 50027326; PA No. 00-016325-001. Showing the As-built drawing, Easement drawing and legal descriptions of Easement Areas portions Atlantic-1 Fiber Optic Cable System within State owned submerged lands.

6. Title Search report prepared by First American Title Insurance Company; Customer File Number: South Spanish trail LLC; PATIC File Number: 1052-4318231; Date: June 3, 2019 @ 8:00 a.m. Revised August 20, 2019 @ 8:00 a.m. with an updated certification date of October 4, 2019.

7. Final Judgment for the United States of America to obtain properties in Palm Beach County. (South Palm Beach, Case No. 78141,Dated may 1, 1935.

8. Boca Ratone Par La Mar, Plat Book 11, Page 67, dated April 7, 1925. Public Records Palm Beach County, Florida.

9. Amended Plat of Portions of Sections 20 & 29, Township 47 South, Range 43 East, Plat Book 17, Page 20, Intracoastal Waterway prepared for Inland Navigation District, dated May 1932. Public Records Palm Beach County, Florida.

10. Second Amended Plat of Boca Ratone Par la Mar, amends Lots 1 to 11 on the plat Par La Mar Plat Book 11, Page 67, and Lots 212 to 16, 150, 155, 158, 159, amended plat Par La Mar Plat Book 16, Page 75, dated March 31, 1941. Public Records Palm Beach County, Florida.

11. CCR's for Section 29, Township 47 South, Range 43 East:
OCR #8551843, shows Northeast corner according to PB 17 PG 20, PB 16 PG 20, PG 20 PG 44, PB 20 PG 155, PB 11 PG 67, PB 16 PG 75 OCR #25079 Northeast corner, dated June 26, 1995. OCR #25073 Northeast corner, detail June 26, 1995.

LEGAL DESCRIPTION (from Title Search report)

Those portions of Lots 3, 4, 5, and 6, of BOCA RATONE POR LA MAR, according to the Plat thereof, recorded in Plat Book 11, Page 67, of the Public Records of Palm Beach County, Florida, lying Westerly of the Easterly right of way line of the Intracoastal Waterway Parcel 294 (East Coast Canal as established by P.L.A.N. and shown in Plat Book 17, Pages 1-29 and Plat Book 17-20 of the Public Records of Palm Beach County, Florida, being more particularly described as follows:

A parcel of land located completely within Government Lot 1, in Section 29, Township 47 South, Range 43 East, Palm Beach County, Florida. Being portions of Lots 3, 4, 5 and 6, of Boca Ratone Por Mar, as recorded in Plat Book 11, Page 67 of the Public Records of Palm Beach County, lying West of the East right of way line of the Intracoastal Waterway, as recorded in Plat Book 17, Page 20, more particularly described as follows:

CERTIFIED TO:
Globenet Cabos Submarinos America, Inc.
Akerman LLP

EXHIBIT B
CONSENT TO EASEMENT
DACW17-9-03-0084

Globenet-SST-001670



Globenet-SST-001671



SURVEYOR'S NOTES

1.   Bearings shown hereon are referenced to the North line of Section 29, Tow
East, having a bearing of South 88°57'20" West and all others are relative the

2.   There has been no attempt to locate any underground utilities or improveme

3.   Additions and or deletions to this survey by other than the signing party (or p
the written consent of the  signing party (or parties).

4. Coordinates shown hereon are referenced to the State Plane Coordinate Sys
North American Datum 1983, adjustment of 2011 and are further referenced
Real-Time Network as verified by repeated ties to various NGS Horizontal Co
vicinity of the project.

NOTE: Following documents 5 - 11 were provided by the client.

5. Michael Baker Jr., Inc document submitted to Florida Department of Environm
October 29, 2001; Ref.: Easement No. 30537; BOT File No. 500221236; P/
Showing the As-built drawing, Easement drawing and legal descriptions of



(70006)
FND P.K.W.
"AVIROM & ASSOC. LB3300"
CCR# 052575
N:734185.46 E:957567.41

20

N88°57'20"E 991.48'(M) N88°56'45"E

N88°57'20"E(M)
N88°16'56"E(D)
659.08'(M)(D)

29

P.O.C.

SE 5TH AVE

S06°01'19"E 308.17'(M)
S05°38'34"E 309.63'(P)

S02°43'03"E(M)
S03°23'27"E(D)
305.60'(M)(D)

10' WIDE ASBUILT SURVEY
OF FIBER OPTIC BORING
(BAKER ENGINEERING)

1.37'
P.O.B.
SUBJECT
PROPERTY

9.72'
9.74'

(70067)
OFFSET 6' WEST

0.54'
FND 16D N&W
"McLAUGHLIN
ENG. CO. 285"

S89°22'53"E(M)
N89°56'43"E(D)
39.91'(M)(D)

S85°04'16"
S85°44'40"
184.87'(M)

DETAIL "C"
1"=10'

10' WIDE ASBUILT SURVEY
OF FIBER OPTIC BORING
(BAKER ENGINEERING)

| | |
|---|---|
| **From:** | nicholas.barshel@akerman.com |
| **Sent:** | Monday, July 13, 2020 4:27 PM |
| **To:** | Bertha.A.Miller@usace.army.mil |
| **Cc:** | Emmanuel.J.Freeman@usace.army.mil |
| **Subject:** | RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED) |
| **Attachments:** | SIGNED CONSENT TO EASEMENT.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Due By:** | Wednesday, July 15, 2020 4:00 PM |
| **Flag Status:** | Flagged |

Good afternoon Bertha, we reviewed the Corrective Consent and our client has signed it. See attached for the executed copy. Please keep us updated on final approval and signature by USACE. Thank you very much for all your assistance,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: MILLER, Bertha A CIV USARMY CESAJ (USA)
Sent: Friday, July 10, 2020 2:16 PM
To: Barshel, Nicholas (Assoc-Mia)
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED)

Mr. Barshel,
Please find attached the Corrective Department of the Army Consent to Easement DACW17-9-03-0084 that reflects the proper Tract Numbers (910 and 911) where the buried conduit is located in the Intracoastal Waterway and includes the proper name of Globenet Cabos Submarinos America, Inc. formerly known as Brasil Telecom of America, Inc. This Corrective Consent to Easement replaces the previous Consent.

If these corrections are acceptable, your client can sign and return to me by email so we can expedite this matter. Just know that if additional changes are made by my leadership, a revised Consent may be necessary.

v/r,

Bertha A. Miller
Realty Specialist
U.S. Army Corps of Engineers
Jacksonville District
Real Estate Division
P.O. Box 4970
Jacksonville, FL 32232-0019
tel. 904-232-3727
email bertha.a.miller@usace.army.mil

Globenet-SST-001676

-----Original Message-----
From: nicholas.barshel@akerman.com [mailto:nicholas.barshel@akerman.com]
Sent: Friday, July 10, 2020 10:51 AM
To: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>; FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>
Cc: Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: [Non-DoD Source] RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED)


Following up on this. Can you all please let me know a status update. We initially sent this request on April 17 and it is very important to our client to get this corrected to ensure the easement reflects where they have a right to use federal right of way. Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com


-----Original Message-----
From: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>
Sent: Tuesday, July 7, 2020 9:01 AM
To: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>; FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>
Cc: Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>; Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED)


CLASSIFICATION: UNCLASSIFIED


Emman, Bertha - What is the status? Please let us know where this is in the queue for review.


V/r,
Timothy H. McQuillen
Chief, Real Estate Division
USACE - Jacksonville District

O: 904-232-1170
C: 904-629-7126
timothy.h.mcquillen@usace.army.mil

-----Original Message-----
From: nicholas.barshel@akerman.com [mailto:nicholas.barshel@akerman.com]
Sent: Monday, July 6, 2020 3:25 PM
To: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US)

Globenet-SST-001677

<Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>;
Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: [Non-DoD Source] RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Hello, can you please let me know if you have an update on status of this easement correction?

Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: Barshel, Nicholas (Assoc-Mia)
Sent: Monday, June 29, 2020 11:07 AM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
Cc: 'FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)' <Emmanuel.J.Freeman@usace.army.mil>; 'McQuillen, Timothy
Hart CIV USARMY CESAJ (USA)' <Timothy.H.Mcquillen@usace.army.mil>; 'Nelson, Donald G CIV USARMY CESAJ (US)'
<Donald.G.Nelson@usace.army.mil>; 'Bearce, John W CIV USARMY CESAJ (US)' <John.W.Bearce@usace.army.mil>;
'Fountain, Ashleigh H CIV USARMY CESAJ (USA)' <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning, can you please let me know if you have an update on status of this easement correction. Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: Barshel, Nicholas (Assoc-Mia)
Sent: Monday, June 22, 2020 9:53 AM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart
CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US)
<Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>;
Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning, checking in on this matter. Can you please let me know if you have an update on status of this easement
correction after last week. Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----

Globenet-SST-001678

From: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Sent: Friday, June 12, 2020 12:30 PM
To: Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Mr. Barshel,
Please allow me through next week. I have not had a chance to work on this.

Thank you,

Bertha A. Miller
Realty Specialist
U.S. Army Corps of Engineers
Jacksonville District
Real Estate Division
P.O. Box 4970
Jacksonville, FL 32232-0019
tel. 904-232-3727
email bertha.a.miller@usace.army.mil


-----Original Message-----
From: nicholas.barshel@akerman.com [mailto:nicholas.barshel@akerman.com]
Sent: Friday, June 12, 2020 9:04 AM
To: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: [Non-DoD Source] RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning, could you please let me know the status of this easement correction?


We would be glad to help expedite if possible, as the client is looking to get this wrapped up as soon as possible. Thank you,


Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>


From: Barshel, Nicholas (Assoc-Mia)

4

Sent: Monday, May 11, 2020 3:08 PM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
Cc: 'FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)' <Emmanuel.J.Freeman@usace.army.mil>; 'McQuillen, Timothy Hart CIV USARMY CESAJ (USA)' <Timothy.H.Mcquillen@usace.army.mil>; 'Nelson, Donald G CIV USARMY CESAJ (US)' <Donald.G.Nelson@usace.army.mil>; 'Bearce, John W CIV USARMY CESAJ (US)' <John.W.Bearce@usace.army.mil>; 'Fountain, Ashleigh H CIV USARMY CESAJ (USA)' <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)


Good afternoon Bertha, following up on the below. Please let me know if you have an update on status of this easement correction?


Thank you,


Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>


From: Barshel, Nicholas (Assoc-Mia)
Sent: Wednesday, April 29, 2020 2:36 PM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil <mailto:Bertha.A.Miller@usace.army.mil< span="">> >
Cc: 'FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)' <Emmanuel.J.Freeman@usace.army.mil <mailto:Emmanuel.J.Freeman@usace.army.mil< span="">> >; 'McQuillen, Timothy Hart CIV USARMY CESAJ (USA)' <Timothy.H.Mcquillen@usace.army.mil <mailto:Timothy.H.Mcquillen@usace.army.mil< span="">> >; 'Nelson, Donald G CIV USARMY CESAJ (US)' <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil< span="">> >; 'Bearce, John W CIV USARMY CESAJ (US)' <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil< span="">> >; 'Fountain, Ashleigh H CIV USARMY CESAJ (USA)' <Ashleigh.H.Fountain@usace.army.mil <mailto:Ashleigh.H.Fountain@usace.army.mil< span="">> >
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)


Good afternoon Bertha, just following up on the easement correction discussed below. Please let me know if you have a sense of time on when it may be issued?


Thank you,


Nicholas Barshel
Associate

5

Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131

D: 305 982 5538

nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>


From: Barshel, Nicholas (Assoc-Mia)
Sent: Friday, April 17, 2020 11:18 AM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil <mailto:Bertha.A.Miller@usace.army.mil< span="">> >
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil <mailto:Emmanuel.J.Freeman@usace.army.mil< span="">> >; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil <mailto:Timothy.H.Mcquillen@usace.army.mil< span="">> >; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil< span="">> >; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil< span="">> >; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil <mailto:Ashleigh.H.Fountain@usace.army.mil< span="">> >
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)


Thank you very much for the prompt reply. Please let me know if you have any questions while processing the revised Consent. I am very familiar with this matter and would be happy to assist as needed.


Nicholas Barshel

Associate

Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131

D: 305 982 5538

nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>


-----Original Message-----
From: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil <mailto:Bertha.A.Miller@usace.army.mil< span="">> >
Sent: Friday, April 17, 2020 10:20 AM
To: Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com< span="">> >
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil <mailto:Emmanuel.J.Freeman@usace.army.mil< span="">> >; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil <mailto:Timothy.H.Mcquillen@usace.army.mil< span="">> >; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil< span="">> >; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil< span="">> >; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil <mailto:Ashleigh.H.Fountain@usace.army.mil< span="">> >
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Globenet-SST-001681

Mr. Barshel,

Thank you for identifying this error. We will make the correction to reflect the right tract numbers based on the information you provided us. A new Consent to Easement will need to be issued and will be provided to you soon for your client's signature.

Please feel free to contact me for any questions.

Respectfully,

Bertha A. Miller

Realty Specialist

U.S. Army Corps of Engineers

Jacksonville District

Real Estate Division

P.O. Box 4970

Jacksonville, FL 32232-0019

tel. 904-232-3727

email bertha.a.miller@usace.army.mil <mailto:bertha.a.miller@usace.army.mil>

-----Original Message-----

From: nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>
[mailto:nicholas.barshel@akerman.com ]

Sent: Friday, April 17, 2020 9:42 AMto

To: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil
<mailto:Timothy.H.Mcquillen@usace.army.mil< span=""> >; MILLER, Bertha A CIV USARMY CESAJ (USA)
<Bertha.A.Miller@usace.army.mil <mailto:Bertha.A.Miller@usace.army.mil< span=""> >; Nelson, Donald G CIV
USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil< span=""> >;
Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil<

7

Globenet-SST-001682

span=""">> >; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil
<mailto:Ashleigh.H.Fountain@usace.army.mil< span=""">> >

Subject: [Non-DoD Source] Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning all,

I am reaching out to the USACE Real Estate Division on behalf of our client Globenet Cabos Submarinos America, Inc.,
f/k/a Brasil Telecom of America, Inc. ("Globenet"), who is the grantee under Consent to Easement Agreement DACW17-
9-03-0084 ("Easement"). The Easement allows use of federal right-of-way in the Atlantic Intracoastal Waterway of Palm
Beach County for buried conduit. The installation of this buried conduit was permitted by USACE under DA Permit No.
199905552 ("Permit").

There is an error in the "Tract Numbers" referenced in the Easement that results in the easement area potentially
excluding the location where the buried conduit was actually installed. The Easement states that Globenet has rights to
use federal right-of-way identified as Tracts 908 and 909 on Exhibit A, and that construction shall be in accordance with
Permit drawings in Exhibit B. The issue is that the sketched location in Exhibit B is outside of Tracts 908/909 on the
USACE "Project Map" referenced in Exhibit A. In 2001, Michael Baker Jr., Inc. prepared a legal description and survey
identifying the as-built location of the buried conduit. Globenet obtained a survey that confirms this as-built conduit is
south of Tracts 908/909 in the Easement, and instead is located within Tracts 910 and 911 on the Project Map.

At this time, we are requesting a correction to the Easement to reflect the proper Tract Numbers (910 and 911) where
the buried conduit is located in the Intracoastal Waterway. In furtherance of this Easement correction, we have attached
the following:

* Copy of the Easement;

8

* Copy of the Project Map;

* 2001 correspondence with as-built survey and the correct legal description, reflecting where the conduit was buried; and

* 2019 boundary survey confirming the relative locations of Tracts 908 to 911 and the as-built conduit.

Please let us know if you have any additional questions or need anything from us, as we would like to have this correction processed as soon as possible. Thank you for your assistance,

Nicholas Barshel

Associate

Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131

D: 305 982 5538

nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com> <mailto:nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com< span="">>> >

vCard | Profile

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly

Globenet-SST-001684

prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

CLASSIFICATION: UNCLASSIFIED

Globenet-SST-001685

**Barshel, Nicholas (Assoc-Mia)**

| | |
|---|---|
| **From:** | Barshel, Nicholas (Assoc-Mia) |
| **Sent:** | Friday, April 17, 2020 9:42 AM |
| **To:** | 'Timothy.H.Mcquillen@usace.army.mil'; 'Bertha.A.Miller@usace.army.mil'; 'Donald.G.Nelson@usace.army.mil'; 'John.W.Bearce@usace.army.mil'; 'Ashleigh.H.Fountain@usace.army.mil' |
| **Subject:** | Correction - Consent to Easement Agreement (DACW17-9-03-0084) |
| **Attachments:** | Consent to Easement Agreement.PDF; USACE Project Map.PDF; Correspondence re As-Built Conduit.PDF; Boundary Survey.PDF |

Good morning all,

I am reaching out to the USACE Real Estate Division on behalf of our client Globenet Cabos Submarinos America, Inc., f/k/a Brasil Telecom of America, Inc. ("Globenet"), who is the grantee under Consent to Easement Agreement DACW17-9-03-0084 ("Easement"). The Easement allows use of federal right-of-way in the Atlantic Intracoastal Waterway of Palm Beach County for buried conduit. The installation of this buried conduit was permitted by USACE under DA Permit No. 199905552 ("Permit").

There is an error in the "Tract Numbers" referenced in the Easement that results in the easement area potentially excluding the location where the buried conduit was actually installed. The Easement states that Globenet has rights to use federal right-of-way identified as **Tracts 908 and 909** on Exhibit A, and that construction shall be in accordance with Permit drawings in Exhibit B. The issue is that the sketched location in Exhibit B is outside of Tracts 908/909 on the USACE "Project Map" referenced in Exhibit A. In 2001, Michael Baker Jr., Inc. prepared a legal description and survey identifying the as-built location of the buried conduit. Globenet obtained a survey that confirms this as-built conduit is south of Tracts 908/909 in the Easement, and instead is located within **Tracts 910 and 911** on the Project Map.

At this time, we are requesting a correction to the Easement to reflect the proper Tract Numbers (910 and 911) where the buried conduit is located in the Intracoastal Waterway. In furtherance of this Easement correction, we have attached the following:

- Copy of the Easement;
- Copy of the Project Map;
- 2001 correspondence with as-built survey and the correct legal description, reflecting where the conduit was buried; and
- 2019 boundary survey confirming the relative locations of Tracts 908 to 911 and the as-built conduit.

Please let us know if you have any additional questions or need anything from us, as we would like to have this correction processed as soon as possible. Thank you for your assistance,

**Nicholas Barshel**
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

1

# Baker

**Engineering & Energy**

**Michael Baker Jr., Inc.**
*A Unit of Michael Baker Corporation*

4301 Dutch Ridge Road
Beaver, PA 15009
Main No. (724) 495-7711
FAX (724) 495-4082
www.mbakercorp.com

RECEIVED

NOV 0 2 2001

DEPT OF ENV PROTECTION
WEST PALM BEACH

# Letter of Transmittal

| | |
|---|---|
| **To:** Florida Department of Environmental Protection, Southeast District | **Project No.** 24068-002-BRSP-00001 |
| 400 North Congress Avenue | **Project:** Atlantica Cable Project – Boca Raton |
| West Palm Beach, FL 33401 | |
| **Attn:** Mr. Tim Rach | **Date:** October 29, 2001 |

We are forwarding the following: ☒  Attached    ☐  Under Separate Cover    ☐  _____

| Dwg. No. | No. Copies | Title or Description | Comments |
|---|---|---|---|
| --- | 1 | Copy of Revised Legal Description and Drawing for Intracoastal Waterway Crossing submitted October 29, 2001 to the Florida Bureau of Public Lands Administration for the Atlantica-1 Project in Boca Raton<br><br>Ref: DEP Permit No. 50-0163252-001 | |

## THESE ARE TRANSMITTED as checked below:

☐ As requested
☐ For your review and comment
☒ For your information

☐ No exception taken
☐ Rejected - See remarks
☐ Proceed subject to corrections noted

☐ Revise and resubmit
☐ Submit specified items

**GENERAL COMMENTS:**

**Michael Baker Jr., Inc.**

By: Wil Snyder
Title: Senior Designer
Page: 1 of 1

**Challenge**Us.

SST 000292
Globenet-SST-001687



October 29, 2001

**Michael Baker Jr., Inc.**
A Unit of Michael Baker Corporation

Florida Bureau of Public Lands Administration
3900 Commonwealth Boulevard
Mail Station No. 125
Tallahassee, FL  32399

4301 Dutch Ridge Road
Beaver, Pennsylvania  15009-0280

(724) 495-7711
FAX (724) 495-4001

Attention: Ms. Debra Trim

Subject: Atlantica-1 Fiber Optic Cable System – Boca Raton
   Submission of Easement Drawing and Revised Legal Description for ICW Crossing
   Ref.: Easement No. 30537; BOT File No. 500221236; PA No. 50-0163252-001

Dear Ms. Trim:

On July 27, 2001, Michael Baker Jr., Inc. supplied As-Built Drawings, Easement Drawings and Legal Descriptions of Easement Areas to your office for the portions of the Atlantica-1 Fiber Optic Cable System within State-owned submerged lands beneath the Atlantic Ocean and the Atlantic Intracoastal Waterway in Boca Raton.  On October 22, 2001 you notified me by telephone that the drawing referenced in the Legal Description for the Intracoastal Waterway had not been included.

Upon review of the submitted information, I realized that the incorrect drawing had been referenced in the Legal Description.  The correct drawing was actually a five-sheet set of drawings completed by Caulfield and Wheeler, Inc., which was included in the March 20, 2001 submission to Ms. Kim Dupree of your office.  In order to rectify this problem, I have revised the Legal Description to reference the correct drawing.

As per your request, please find enclosed two original signed and sealed copies of the revised Legal Description.  I am also including one original signed and sealed five-sheet set of drawings prepared by Caulfield and Wheeler, Inc.

I trust this information is acceptable for completing the necessary easement processing.  Should you have any questions, please contact me at (724) 495-4331 or Mr. John Shannon, Engineering Manager, at (724) 495-4064.  Thank you.

Sincerely,

**MICHAEL BAKER JR., INC.**

*Wil Snyder*

Wil Snyder
Senior Designer

Attachments

cc: Mr. Timothy Rach (Fl DEP, West Palm Beach)
   Mr. Roy Carryer (Alcatel Submarine Networks)
   Mr. William Flynn;  Ms. Lin Gentemann  (360 networks)

**Challenge*Us*.**

SST 000293
Globenet-SST-001688

**DESCRIPTION OF EASEMENT AREA FOR**

**INTRACOASTAL WATERWAY CROSSING**

**FOR THE ATLANTICA-1**
**FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM**

**WITHIN SOVEREIGN STATE-OWNED SUBMERGED LANDS**
**BENEATH THE ATLANTIC INTRACOASTAL WATERWAY**

A ten-foot wide easement over, across and through a portion of submerged land beneath the Atlantic Intracoastal Waterway, south of Palmetto Park Road, in the City of Boca Raton, Palm Beach County, being more particularly described as follows:

COMMENCING at the north quarter corner of Section 29, Township 47 South, Range 43 East on the centerline of Palmetto Park Road; thence N 88° 56' 45" E along the centerline of Palmetto Park Road and the north line of Section 29, a distance of 991.43 feet to a point; thence S 01° 03' 15" E, a distance of 354.85 feet to the center of a utility manhole in Silver Palm Park, having a coordinate value of North 733,848.65 feet and East 958,565.25 feet, referenced to the Florida State Plane Coordinate System, East Zone, North American Datum 1983; thence N 86° 05' 26" E, a distance of 273.47 feet to a point on the face of the seawall on the western edge of the Atlantic Intracoastal Waterway, the True Point of Beginning of the centerline of the Intracoastal Waterway Crossing Easement, having a coordinate value of North 733,867.29 feet and East 958,838.08 feet, said Easement having a total width of 10.00 feet, 5.00 feet either side of the centerline; thence along the centerline of the easement and as-built alignment of the 12-inch diameter HDPE Casing Pipe N 80° 54' 34" E, a distance of 211.73 feet, to a point on the face of the seawall on the eastern edge of the Atlantic Intracoastal Waterway, the End of the centerline of the Intracoastal Waterway Crossing Easement, having a coordinate value of North 733,900.74 and East 959,047.15 feet, said point being S 76° 53' 21" E, 115.61 feet from the center of a utility manhole on the southeast corner of the intersection of Spanish Terrace and Park Drive.

Said Easement having a total length of 211.73 feet and a total area of 2,117.3 square feet, or 0.0486 acre.

The above description is based on the asbuilt alignment shown on "Boca Raton Intracoastal Boring, Asbuilt Survey," sheets 1 through 5, dated 03/06/01 and 03/08/01, prepared by Caulfield and Wheeler, Inc.

_Earl Soeder_ _____
EARL SOEDER, P.S.M.
FLORIDA REGISTERED SURVEYOR NO. 5865

10/24/01
DATE

---

**DESCRIPTION OF EASEMENT AREA FOR INTRACOASTAL WATERWAY CROSSING**

TITLE :

2481 N.W. BOCA RATON BLVD.
BOCA RATON, FL.  33431

**COASTAL PLANNING & ENGINEERING, INC.**

DATE:
7/18/01
BY:
RI
COMM. NO.
6600.06
SHEET:
1  OF  1

**SST 000294**
Globenet-SST-001689



LOCATION MAP
NOT TO SCALE

ASBUILT LOCATIONS OF INSTALLED MANHOLES:

| | NORTHING | EASTING |
|---|---|---|
| SILVER PALM PARK | 733848.6470 | 958656.2508 |
| SPANISH TERRACE | 733926.9687 | 959159.7492 |
| BOCA RATON BEACH | 733941.8400 | 960651.6230 |

## NOTES:

1. REPRODUCTIONS OF THIS SKETCH ARE NOT VALID UNLESS SEALED WITH AN EMBOSSED SURVEYOR'S SEAL.
2. LANDS SHOWN HEREON ARE NOT ABSTRACTED FOR RIGHTS—OF—WAY, EASEMENTS, OWNERSHIP, OR OTHER INSTRUMENTS OF RECORD.
3. BEARINGS SHOWN HEREON ARE RELATIVE TO ASSUMED DATUM BASED ON THE NORTH LINE OF SECTION 29, TOWNSHIP 47 SOUTH, RANGE 43 EAST     BEARING N88°56'45"E.
4. ASBUILT BORE AND PIPE DATA SHOWN HEREON WAS COMPILED FROM DIRECTIONAL BORING INFORMATION OPTAINED BY CENTERLINE DGS, INC., AND SUPPLIED BY MASTEC NORTH AMERICA, INC.
5. COORDINATE INFORMATION SHOWN HEREON IS RELATIVE TO THE U.S. STATE PLANE 1983 COORDINATE SYSTEM, FLORIDA EAST ZONE IN FEET.

## CERTIFICATE:

I HEREBY CERTIFY THAT THE ATTACHED ASBUILT SURVEY OF THE HEREON DESCRIBED PROPERTY IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF AS PREPARED UNDER MY DIRECTION ON MARCH 8, 2001. I FURTHER CERTIFY THAT THIS SKETCH OF DESCRIPTION MEETS THE MINIMUM TECHNICAL STANDARDS SET FORTH IN CHAPTER 61G17—6 ADOPTED BY THE FLORIDA BOARD OF SURVEYORS AND MAPPERS PURSUANT TO FLORIDA STATUTES 472.027.





NORTH

40  20  0  20  40

**GRAPHIC SCALE**
(IN FEET)

INTRACOASTAL
WATERWAY

SEE SHEET 5 OF 5          FACE OF SEAWALL
FOR ASBUILT PROFILE       N 733900.7443
                          E 959047.1540

ASBUILT LOCATION
12" HDPE PIPE

PROPOSED 12" DIA. HDPE
PIPE DIRECTIONALLY BORED
BENEATH INTRACOASTAL
WATERWAY

23+00                    22+00                    21+00

10' EASEMENT

ASBUILT LOCATION
12" HDPE PIPE

PROPOSED 12" DIA. HDPE
PIPE DIRECTIONALLY BORED
BENEATH INTRACOASTAL
WATERWAY

FACE OF SEAWALL
N 733867.2921
E 958838.0846

SILVER PALM
PARK

MATCH LINE
SHEET 4 OF 5

MATCH LINE
SHEET 2 O





INTRACOASTAL WATERWAY

SCALE: 1" = 100' HORIZ.
1" = 50' VERT.

| | |
|---|---|
| **From:** | nicholas.barshel@akerman.com |
| **Sent:** | Wednesday, July 15, 2020 4:16 PM |
| **To:** | Bertha.A.Miller@usace.army.mil |
| **Cc:** | Timothy.H.Mcquillen@usace.army.mil; Emmanuel.J.Freeman@usace.army.mil; Donald.G.Nelson@usace.army.mil; John.W.Bearce@usace.army.mil; Ashleigh.H.Fountain@usace.army.mil |
| **Subject:** | RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED) |

Thank you very much for this Bertha.  We really appreciate everyone's assistance in getting this done.

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Sent: Wednesday, July 15, 2020 3:50 PM
To: Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com>
Cc: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED)

Mr. Barshel,
Please see the executed Corrective Consent to Easement.  If you have any questions, feel free to let me know.

v/r,
Bertha

Bertha A. Miller
Realty Specialist
U.S. Army Corps of Engineers
Jacksonville District
Real Estate Division
P.O. Box 4970
Jacksonville, FL 32232-0019
tel. 904-232-3727
email bertha.a.miller@usace.army.mil

-----Original Message-----
From: nicholas.barshel@akerman.com [mailto:nicholas.barshel@akerman.com]
Sent: Friday, July 10, 2020 10:51 AM

Globenet-SST-001695

To: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>; FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>
Cc: Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: [Non-DoD Source] RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED)

Following up on this.  Can you all please let me know a status update.  We initially sent this request on April 17 and it is very important to our client to get this corrected to ensure the easement reflects where they have a right to use federal right of way.  Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>
Sent: Tuesday, July 7, 2020 9:01 AM
To: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>; FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>
Cc: Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>; Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084) (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Emman, Bertha - What is the status?  Please let us know where this is in the queue for review.

V/r,
Timothy H. McQuillen
Chief, Real Estate Division
USACE - Jacksonville District

O: 904-232-1170
C:  904-629-7126
timothy.h.mcquillen@usace.army.mil

-----Original Message-----
From: nicholas.barshel@akerman.com [mailto:nicholas.barshel@akerman.com]
Sent: Monday, July 6, 2020 3:25 PM
To: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: [Non-DoD Source] RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Hello, can you please let me know if you have an update on status of this easement correction?

Globenet-SST-001696

Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: Barshel, Nicholas (Assoc-Mia)
Sent: Monday, June 29, 2020 11:07 AM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
Cc: 'FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)' <Emmanuel.J.Freeman@usace.army.mil>; 'McQuillen, Timothy Hart CIV USARMY CESAJ (USA)' <Timothy.H.Mcquillen@usace.army.mil>; 'Nelson, Donald G CIV USARMY CESAJ (US)' <Donald.G.Nelson@usace.army.mil>; 'Bearce, John W CIV USARMY CESAJ (US)' <John.W.Bearce@usace.army.mil>; 'Fountain, Ashleigh H CIV USARMY CESAJ (USA)' <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning, can you please let me know if you have an update on status of this easement correction.  Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: Barshel, Nicholas (Assoc-Mia)
Sent: Monday, June 22, 2020 9:53 AM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>; Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning, checking in on this matter.  Can you please let me know if you have an update on status of this easement correction after last week.  Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com

-----Original Message-----
From: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Sent: Friday, June 12, 2020 12:30 PM
To: Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US)

Globenet-SST-001697

<Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>;
Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Mr. Barshel,
Please allow me through next week.  I have not had a chance to work on this.

Thank you,

Bertha A. Miller
Realty Specialist
U.S. Army Corps of Engineers
Jacksonville District
Real Estate Division
P.O. Box 4970
Jacksonville, FL 32232-0019
tel. 904-232-3727
email bertha.a.miller@usace.army.mil


-----Original Message-----
From: nicholas.barshel@akerman.com [mailto:nicholas.barshel@akerman.com]
Sent: Friday, June 12, 2020 9:04 AM
To: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil>
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>; McQuillen, Timothy Hart
CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil>; Nelson, Donald G CIV USARMY CESAJ (US)
<Donald.G.Nelson@usace.army.mil>; Bearce, John W CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil>;
Fountain, Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil>
Subject: [Non-DoD Source] RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good morning, could you please let me know the status of this easement correction?



We would be glad to help expedite if possible, as the client is looking to get this wrapped up as soon as possible.  Thank
you,



Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>


From: Barshel, Nicholas (Assoc-Mia)
Sent: Monday, May 11, 2020 3:08 PM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
Cc: 'FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)' <Emmanuel.J.Freeman@usace.army.mil>; 'McQuillen, Timothy
Hart CIV USARMY CESAJ (USA)' <Timothy.H.Mcquillen@usace.army.mil>; 'Nelson, Donald G CIV USARMY CESAJ (US)'

Globenet-SST-001698

<Donald.G.Nelson@usace.army.mil>; 'Bearce, John W CIV USARMY CESAJ (US)' <John.W.Bearce@usace.army.mil>;
'Fountain, Ashleigh H USARMY CESAJ (USA)' <Ashleigh.H.Fountain@usace.army.mil>
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good afternoon Bertha, following up on the below.  Please let me know if you have an update on status of this easement correction?

Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>

From: Barshel, Nicholas (Assoc-Mia)
Sent: Wednesday, April 29, 2020 2:36 PM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil
<mailto:Bertha.A.Miller@usace.army.mil> >
Cc: 'FREEMAN, Emmanuel J CIV USARMY CESAJ (USA)' <Emmanuel.J.Freeman@usace.army.mil
<mailto:Emmanuel.J.Freeman@usace.army.mil> >; 'McQuillen, Timothy Hart CIV USARMY CESAJ (USA)'
<Timothy.H.Mcquillen@usace.army.mil <mailto:Timothy.H.Mcquillen@usace.army.mil> >; 'Nelson, Donald G CIV
USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil> >; 'Bearce, John W
CIV USARMY CESAJ (US)' <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil> >; 'Fountain,
Ashleigh H CIV USARMY CESAJ (USA)' <Ashleigh.H.Fountain@usace.army.mil
<mailto:Ashleigh.H.Fountain@usace.army.mil> >
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Good afternoon Bertha, just following up on the easement correction discussed below.  Please let me know if you have a sense of time on when it may be issued?

Thank you,

Nicholas Barshel
Associate
Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131
D: 305 982 5538
nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>

Globenet-SST-001699

From: Barshel, Nicholas (Assoc-Mia)
Sent: Friday, April 17, 2020 11:18 AM
To: 'MILLER, Bertha A CIV USARMY CESAJ (USA)' <Bertha.A.Miller@usace.army.mil>
<mailto:Bertha.A.Miller@usace.army.mil> >
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil>
<mailto:Emmanuel.J.Freeman@usace.army.mil> >; McQuillen, Timothy Hart CIV USARMY CESAJ (USA)
<Timothy.H.Mcquillen@usace.army.mil <mailto:Timothy.H.Mcquillen@usace.army.mil> >; Nelson, Donald G CIV
USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil> >; Bearce, John W
CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil> >; Fountain,
Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil
<mailto:Ashleigh.H.Fountain@usace.army.mil> >
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)


Thank you very much for the prompt reply.  Please let me know if you have any questions while processing the revised
Consent.  I am very familiar with this matter and would be happy to assist as needed.



Nicholas Barshel

Associate

Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131

D: 305 982 5538

nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>



-----Original Message-----
From: MILLER, Bertha A CIV USARMY CESAJ (USA) <Bertha.A.Miller@usace.army.mil
<mailto:Bertha.A.Miller@usace.army.mil> >
Sent: Friday, April 17, 2020 10:20 AM
To: Barshel, Nicholas (Assoc-Mia) <nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com> >
Cc: FREEMAN, Emmanuel J CIV USARMY CESAJ (USA) <Emmanuel.J.Freeman@usace.army.mil
<mailto:Emmanuel.J.Freeman@usace.army.mil> >; McQuillen, Timothy Hart CIV USARMY CESAJ (USA)
<Timothy.H.Mcquillen@usace.army.mil <mailto:Timothy.H.Mcquillen@usace.army.mil> >; Nelson, Donald G CIV
USARMY CESAJ (US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil> >; Bearce, John W
CIV USARMY CESAJ (US) <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil> >; Fountain,
Ashleigh H CIV USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil
<mailto:Ashleigh.H.Fountain@usace.army.mil> >
Subject: RE: Correction - Consent to Easement Agreement (DACW17-9-03-0084)


Mr. Barshel,

Globenet-SST-001700

Thank you for identifying this error.  We will make the correction to reflect the right tract numbers based on the information you provided us.  A new Consent to Easement will need to be issued and will be provided to you soon for your client's signature.


Please feel free to contact me for any questions.


Respectfully,


Bertha A. Miller

Realty Specialist

U.S. Army Corps of Engineers

Jacksonville District

Real Estate Division

P.O. Box 4970

Jacksonville, FL 32232-0019

tel. 904-232-3727

email bertha.a.miller@usace.army.mil <mailto:bertha.a.miller@usace.army.mil>


-----Original Message-----

From: nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>
[mailto:nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com> ]

Sent: Friday, April 17, 2020 9:42 AMto

To: McQuillen, Timothy Hart CIV USARMY CESAJ (USA) <Timothy.H.Mcquillen@usace.army.mil
<mailto:Timothy.H.Mcquillen@usace.army.mil> >; MILLER, Bertha A CIV USARMY CESAJ (USA)
<Bertha.A.Miller@usace.army.mil <mailto:Bertha.A.Miller@usace.army.mil> >; Nelson, Donald G CIV USARMY CESAJ
(US) <Donald.G.Nelson@usace.army.mil <mailto:Donald.G.Nelson@usace.army.mil> >; Bearce, John W CIV USARMY
CESAJ (US) <John.W.Bearce@usace.army.mil <mailto:John.W.Bearce@usace.army.mil> >; Fountain, Ashleigh H CIV
USARMY CESAJ (USA) <Ashleigh.H.Fountain@usace.army.mil <mailto:Ashleigh.H.Fountain@usace.army.mil> >

Subject: [Non-DoD Source] Correction - Consent to Easement Agreement (DACW17-9-03-0084)

Globenet-SST-001701

Good morning all,

I am reaching out to the USACE Real Estate Division on behalf of our client Globenet Cabos Submarinos America, Inc., f/k/a Brasil Telecom of America, Inc. ("Globenet"), who is the grantee under Consent to Easement Agreement DACW17-9-03-0084 ("Easement").  The Easement allows use of federal right-of-way in the Atlantic Intracoastal Waterway of Palm Beach County for buried conduit.  The installation of this buried conduit was permitted by USACE under DA Permit No. 199905552 ("Permit").

There is an error in the "Tract Numbers" referenced in the Easement that results in the easement area potentially excluding the location where the buried conduit was actually installed.  The Easement states that Globenet has rights to use federal right-of-way identified as Tracts 908 and 909 on Exhibit A, and that construction shall be in accordance with Permit drawings in Exhibit B.  The issue is that the sketched location in Exhibit B is outside of Tracts 908/909 on the USACE "Project Map" referenced in Exhibit A.  In 2001, Michael Baker Jr., Inc. prepared a legal description and survey identifying the as-built location of the buried conduit.  Globenet obtained a survey that confirms this as-built conduit is south of Tracts 908/909 in the Easement, and instead is located within Tracts 910 and 911 on the Project Map.

At this time, we are requesting a correction to the Easement to reflect the proper Tract Numbers (910 and 911) where the buried conduit is located in the Intracoastal Waterway.  In furtherance of this Easement correction, we have attached the following:

*       Copy of the Easement;

*       Copy of the Project Map;

*       2001 correspondence with as-built survey and the correct legal description, reflecting where the conduit was buried; and

Globenet-SST-001702

\*       2019 boundary survey confirming the relative locations of Tracts 908 to 911 and the as-built conduit.

Please let us know if you have any additional questions or need anything from us, as we would like to have this correction processed as soon as possible.  Thank you for your assistance,

Nicholas Barshel

Associate

Akerman LLP | 98 Southeast Seventh Street, Suite 1100 | Miami, FL 33131

D: 305 982 5538

nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com>  <mailto:nicholas.barshel@akerman.com <mailto:nicholas.barshel@akerman.com> >

vCard <BlockedBlockedBlockedBlockedhttps://www.akerman.com/vcards/1028.vcf>  | Profile <BlockedBlockedBlockedBlockedhttps://www.akerman.com/en/people/nicholas-barshel.html>

<BlockedBlockedBlockedBlockedhttp://www.akerman.com/>

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

Globenet-SST-001703

CLASSIFICATION: UNCLASSIFIED

Globenet-SST-001704

BOOK 15447   PAGE 0673

DEPARTMENT OF THE ARMY
CONSENT TO EASEMENT
TO USE CORPS OF ENGINEERS RIGHT-OF-WAY

Consent No. DACW17-9-03-0084
Project: Intracoastal Waterway,
Jacksonville to Miami, Palm Beach
County, Florida
Tract Nos. 908 and 909

THIS CONSENT TO EASEMENT AGREEMENT, made by and between the UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY, hereinafter referred to as the "Government", acting by and through the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, hereinafter referred to as "said officer," and Brasil Telecom of America. Inc., hereinafter referred to as the "Grantee":

WHEREAS, the Government has acquired right-of-way easements over the above-numbered tracts of land, which easement, by its terms, reserves to the Government, in perpetuity, the right to use said easements for the construction, improvement, and maintenance of the Intracoastal Waterway, Jacksonville to Miami, Palm Beach County, Florida; and

WHEREAS, the Grantee has requested permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over, and under a portion of the lands identified as Tract Nos. 908 and 909, Section 29, Township 47 South, Range 43 East, Palm Beach County, Florida. The area comprising 0.07 of an acre, more or less, is shown in red on Exhibit "A" attached hereto and made a part hereof.

NOW THEREFORE, this consent is granted and accepted under the following conditions:

1.   That effective as of the date of execution hereof on behalf of the United States, this consent shall replace and supersede Department of the Army Consent to Easement No. DACW17-9-00-0105 granted to Atlantica USA, L.L.C.

2.   That it is understood that this consent is effective only insofar as the property rights of the Government in the land to be occupied are concerned, and that it does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests, therein, nor does it obviate the requirement that the Grantee obtain State or local assent required by law for the activity authorized herein.

3.   That any proposed improvements or use authorized herein shall not be commenced until appropriate rights shall have been obtained by the Grantee from the record owners and encumbrancers of the fee title to the lands involved, or until the Grantee has obtained all Federal, State, or local permits required by law.

Globenet-SST-001705

BOOK 15447   PAGE 0674

4.  That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

5.  That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 15 below.

6.  That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects. Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

7.  That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

8.  That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

9.  That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of the Government, under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to compensation shall accrue from such damage, and if further operations of the Government require the

2

Globenet-SST-001706

BOOK 15447   PAGE 0675

alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

10.   That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights nor to endanger lives and safety of the public.

11.   That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

12.   That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefore, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

13.   That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

14.   That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional examination of them can be made or until a clearance to proceed is authorized by the District Engineer.

3

Globenet-SST-001707

BOOK 15447   PAGE 0676

15. That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference. That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

16. That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent. In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

   IN WITNESS WHEREOF, I have hereunto set my hand, by authority of the Secretary of the Army this _1ST_ day of _MAY_ 20 _03_.

                    UNITED STATES OF AMERICA

                    _Sharon W. Conkle_
                    BY: SHARON W. CONKLIN
                    Chief, Management and Disposal Branch
                    Real Estate Division
                    U.S. Army Engineer District
                    Jacksonville, Florida


                    AGREED TO AND ACCEPTED

                    BRASIL TELECOM OF AMERICA, INC.

                    BY: _Sa_
                    SAMI ARAR SOBRINHO
                    VICE PRESIDENT, GENERAL COUNSEL AND SECRETARY

_Aline Méridor_
Witness
ALINE MÉRIDOR

Witness
ALEX K. BAYEN

4

Globenet-SST-001708



BOOK 15447   PAGE 0677

RECORDER'S MEMO: Legibility of document
unsatisfactory when received.



EXHIBIT "A"

Globenet-SST-001709

STATE ROADS

FEDERAL ROADS

AIR LINES

**ACQUISITION**

TOTAL ACRES ACQUIRED

FEE

PUBLIC DOMAIN (WITHDRAWAL) (USE PERMIT)

USE PERMIT (OTHER THAN FEE)

TRANSFER

LEASE

**DISPOSAL**

TRUE NORTH

BOOK 15447    PAGE 0678



PALM BEACH COUNTY

REAL ESTATE

INTRACOASTAL WATERWAY

JACKSONVILLE TO MIAMI

OFFICE, CHIEF OF ENGINEERS, WASHINGTON 25, D.C.

AUDITED

RECORDER'S MEMO: Legibility of document unsatisfactory when received.

EXHIBIT "A"

Globenet-SST-001710

BOOK 15447   PAGE 0679



EXHIBIT "B"

Globenet-SST-001711



Globenet-SST-001712

BOOK 15447   PAGE 0681
Dorothy H. Wilken, Clerk

## CORPORATE CERTIFICATE

I, YON MOREIRA DA SILVA JR, certify that I am an officer
(other than consent signatory)

of the corporation named as grantee in the foregoing Consent to

Easement; that SAMI ARAP SOBRINHO who signed said Consent
(consent signatory)

to Easement on behalf of the Grantee was the VICE PRESIDENT, GENERAL COUNSEL AND SECRETARY

of said corporation, and that said Consent to Easement was duly

signed for and in behalf of said corporation by authority of its

governing body, and is within the scope of its corporate powers.

(Corporate Seal)

_____
(Signature)

4·25·03
(Date)

Globenet-SST-001713

# CORPS OF ENGINEERS

## TRACT REGISTER OF ACQUISITION

| TRACT NO. | PARCEL or MSA NO. | LAND OWNER | A C R |
|---|---|---|---|
| 873 | 1 | Unknown | |
| 874 | 2 | " | |
| 875 | 3 | " | |
| 876 | 4 | " | |
| 877 | 5 | " | |
| 878 | 6 | H. M. N. Muhle, et ux | |
| 879 | 7 | Maurice W. Stokes, et ux | |
| 880 | 8 | J. W. Moore, et al | |
| 881 | 9 | Unknown | |
| 882 | 10 | J. W. Moore, et al | |
| 883 | 11 | H. Kobayaski Company, Inc. | |
| 884 | 12 | Frank S. Lewis, et ux | |
| 885 | 13 | E. C. Ripley | |
| 886 | MSA 690 | F. I. N. D. | |
| 887 | MSA 690-AR | " | |
| 888 | MSA 691 | " | |
| 889 | 14 | H. Kobayaski Company, Inc. | |
| 890 | 15 | Osborn Company | |
| 891 | 16 | P. D. Kinney, et al | |
| 892 | 17 | " " " " " | |
| 893 | 18 | Clara B. Muhle | |
| 894 | 19 | H. M. N. Muhle, et ux | |
| 895 | 20 | Maurice W. Stokes, et ux | |
| 896 | 21 | Charles W. Humphrey, et ux | |
| 897 | 22 | P. D. Kinney, et ux | |
| 898 | 23 | Amelia Investment Company | |
| 899 | 24 | " " " | |
| 900 | 25 | Unknown | |
| 901 | 26 | Theo. D. Luff, et ux | |
| 902 | 27 | P. D. Kinney, et al | |
| 903 | 28 | Elbeegy Holding Company | |
| 904 | 3 | First National Bank of Chicago, as Trustees | |
| 905 | 30 | E. C. Ripley | |
| 906 | 7 | Philip B. Jennings, et al | |
| 907 | 8 | First National Bank of Chicago, as Trustees | |
| 908 | 10 | J. C. Mitchell, et ux | |
| 909 | 3 | Spanish River Land Co. | |
| 910 | 11 | W. J. Southam | |
| 911 | 12 | Harry M. Chesebro, et ux | |
| 912 | 6 | First National Bank of Chicago, as Trustees | |
| 913 | 7 | Spanish River Land Co. | |
| 914 | 8 | " " " " | |
| 915 | MSA 692 | F. I. N. D. | |
| 916 | MSA 693R | A. G. Gorzo, et ux | |

# EXHIBIT I

Sep-28-2000 12:04pm 00-371721
ORB 12043 Pg 365

Return To:
Wil Snyder
Michael Baker, Jr., Inc.
4301 Dutch Ridge Road
Beaver, PA 15009

This Instrument Prepared By:
Deborah Trim
Recurring Revenue Section
Bureau of Public Land Administration
3900 Commonwealth Boulevard
Mail Station No. 125
Tallahassee, Florida 32399

BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND
OF THE STATE OF FLORIDA

SOVEREIGN SUBMERGED LANDS EASEMENT

NO. 30537
BOT FILE NO. 500221236
PA NO. 50-0163252-001

THIS EASEMENT is hereby granted by the Board of Trustees of the Internal Improvement Trust Fund of

the State of Florida, hereinafter referred to as the Grantor.

WITNESSETH: That for the faithful and timely performance of and compliance with the terms and

conditions stated herein, the Grantor does hereby grant to Atlantica USA LLC, a Delaware limited liability company,

hereinafter referred to as the Grantee, a nonexclusive easement on, under and across the sovereign lands described as follows:

A parcel of sovereign submerged land in Sections 28 and 29,
Township 54 South, Range 43 East, in the Atlantic Ocean,
Palm Beach County, as is more particularly described
and shown on Attachment A, dated April 17, 2000.

TO HAVE THE USE OF the hereinabove described premises for a period of 25 years from July 11, 2000,

the effective date of this easement. The terms and conditions of and for which this easement is granted are as

follows:

1. EASEMENT CONSIDERATION. The Grantee hereby agrees to pay to the Grantor, prior to commencement of
activities authorized herein and within 30 days of the date of receipt of the invoice, the sum of $2,389.94, based upon 419,288
square feet at $0.0057 per square foot (appraised value) as specified in paragraph 20c. of this Easement. The Grantee further
agrees to pay to the Grantor a sum of $150.75, based upon 67 cubic yards at $2.25 per cubic yard for the severance fees.
Upon installation of each cable, the Grantee agrees to pay the Grantor $5.00 per linear foot as specified in paragraph 20c. of
this Easement within 30 days of the date of receipt of the invoice. All of the foregoing subject to the remaining conditions of
this Easement.

2. USE OF PROPERTY. The above described parcel of land shall be used solely for the installation of four
conduits and two fiber optic cables and Grantee shall not engage in any activity except as described in the Department of
Environmental Protection, Environmental Resource Permit No. 50-0163252-001 , dated August 9, 2000, incorporated herein
and made a part of this easement by reference.

[53]

ORB 12043 Pg 366

3. **RIGHTS GRANTED**: The rights hereby granted shall be subject to any and all prior rights of the United States and any and all prior grants by the Grantor in and to the submerged lands situated within the limits of this easement.

4. **DAMAGE TO EASEMENT PROPERTY AND INTERFERENCE WITH PUBLIC AND PRIVATE RIGHTS**: Grantee shall not damage the easement lands or unduly interfere with public or private rights therein.

5. **GRANTOR'S RIGHT TO GRANT COMPATIBLE USES OF THE EASEMENT PROPERTY**: This easement is nonexclusive, and the Grantor, or its duly authorized agent, shall retain the right to enter the property or to engage in management activities not inconsistent with the use herein provided for and shall retain the right to grant compatible uses of the property to third parties during the term of this easement.

6. **RIGHT TO INSPECT**: Grantor, or its duly authorized agent, shall have the right at any time to inspect the works and operations of the Grantee in any matter pertaining to this easement.

7. **INDEMNIFICATION/INVESTIGATION OF ALL CLAIMS**: The Grantee shall investigate all claims of every nature at its expense, and shall indemnify, defend and save and hold harmless the Grantor and the State of Florida from all claims, actions, lawsuits and demands arising out of this easement.

8. **VENUE**: Grantee waives venue as to any litigation arising from matters relating to this easement and any such litigation between Grantor and Grantee shall be initiated and maintained only in Leon County, Florida.

9. **ASSIGNMENT OF EASEMENT**: This easement shall not be assigned or otherwise transferred without prior written consent of the Grantor or its duly authorized agent. Any assignment or other transfer without prior written consent of the Grantor shall be null and void and without legal effect.

10. **TERMINATION**: The Grantee, by acceptance of this easement, binds itself, its successors and assigns, to abide by the provisions and conditions herein set forth, and said provisions and conditions shall be deemed covenants of the Grantee, its successors and assigns. In the event the Grantee fails or refuses to comply with the provisions and conditions herein set forth or in the event the Grantee violates any of the provisions and conditions herein, this easement may be terminated by the Grantor upon 30 days written notice to Grantee. If terminated, all of the above-described parcel of land shall revert to the Grantor. All costs, including attorneys' fees, incurred by the Grantor to enforce the provisions of this easement shall be paid by the Grantee. All notices required to be given to Grantee by this easement or applicable law or administrative rules shall be sufficient if sent by U.S. Mail to the following address:

Atlantica USA LLC
c/o 360 Network
14500 Avion Parkway, Suite 130
Chantilly, Virginia 20151

The Grantee agrees to notify the Grantor by certified mail of any changes to this address at least ten (10) days before the change is effective.

11. **TAXES AND ASSESSMENTS**: The Grantee shall assume all responsibility for liabilities that accrue to the subject property or to the improvements thereon, including any and all drainage or special assessments or taxes of every kind and description which are now or may be hereafter lawfully assessed and levied against the subject property during the effective period of this easement which result from the grant of this easement or the activities of Grantee hereunder.

12. **RENEWAL PROVISIONS**: Renewal of this easement is at the sole option of the Grantor. Such renewal shall be subject to the terms, conditions and provisions of current management standards, easement fees, and applicable laws, rules and regulations in effect at that time. In the event that Grantee is in full compliance with the terms of this easement, the Grantee may apply in writing for a renewal. Such application for renewal must be received by Grantor no later than six months prior to the expiration date of this easement. The term of any renewal granted by the Grantor shall commence on the last day of the previous easement term. If the Grantee fails to apply for a renewal, or in the event the Grantor does not grant a renewal, the Grantee shall vacate the easement premises and remove all structures and equipment occupying and erected thereon at its expense.

Page _2_ of _13_ Pages
Easement No. 30537

ORB 12043 Pg 367

13. REMOVAL OF STRUCTURES/ADMINISTRATIVE FINES: If the Grantee does not remove said structures and equipment occupying and erected upon the premises after expiration or cancellation of this easement, such structures and equipment will be deemed forfeited to the Grantor, and the Grantor may authorize removal and may sell such forfeited structures and equipment after ten (10) days written notice by certified mail addressed to the Grantee at the address specified in Item 10 or at such address on record as provided to the Grantor by the Grantee. However, such remedy shall be in addition to all other remedies available to Grantor under applicable laws, rules and regulations including the right to compel removal of all structures and the right to impose administrative fines.

14. ENFORCEMENT OF PROVISIONS: No failure, or successive failures, on the part of the Grantor to enforce any provision, nor any waiver or successive waivers on its part of any provision herein, shall operate as a discharge thereof or render the same inoperative or impair the right of the Grantor to enforce the same upon any renewal thereof or in the event of subsequent breach or breaches.

15. RECORDATION OF EASEMENT: The Grantee, at its own expense, shall record this fully executed easement in its entirety in the public records of the county within which the easement site is located within fourteen (14) days after receipt, and shall provide to the Grantor within ten (10) days following the recordation a copy of the recorded easement in its entirety which contains the O.R. Book and pages at which the easement is recorded.

16. AMENDMENTS/MODIFICATIONS: This easement is the entire and only agreement between the parties. Its provisions are not severable. Any amendment or modification to this easement must be in writing and must be accepted, acknowledged and executed by the Grantee and Grantor.

17. ACOE AUTHORIZATION: Prior to commencement of construction and/or activities authorized herein, the Grantee shall obtain the U.S. Army Corps of Engineers (COE) permit if it is required by the COE. Any modifications to the construction and/or activities authorized herein that may be required by the COE shall require consideration by and the prior written approval of the Grantor prior to the commencement of construction and/or any activities on sovereign, submerged lands.

18. ADDITIONAL STRUCTURES OR ACTIVITIES/EMERGENCY STRUCTURAL REPAIRS: No additional structures shall be erected and/or activities undertaken, including but not limited to, dredging, relocation/realignment or major repairs or renovations made to authorized structures, on, in or over sovereignty, submerged lands without the prior written consent of the Grantor, with the exception of emergency repairs. Unless specifically authorized in writing by the Grantor, such activities or structures shall be considered unauthorized and a violation of Chapter 253, Florida Statutes, and shall subject the Grantee to administrative fines under Chapter 18-14, Florida Administrative Code. If emergency repairs are required to be undertaken in the interests of public health, safety or welfare, the Grantee shall notify the Grantor of such repairs as quickly as is practicable; provided, however, that such emergency activities shall not exceed the activities authorized by this easement.

19. UPLAND RIPARIAN PROPERTY INTEREST: During the term of this easement, Grantee, pursuant to section 18-21.010, Florida Administrative Code, must either be the record owner of the riparian upland property or have the written consent of the riparian upland property owner(s) to conduct the activity described in this easement. If at any time during the term of this easement, Grantee fails to comply with this requirement, use of sovereignty, submerged lands described in this easement shall immediately cease and this easement shall terminate and title to this easement shall revert to and vest in the Grantor immediately and automatically.

20. SPECIAL EASEMENT CONDITIONS:

a. The Grantee shall provide the Grantor acceptable "as-built" survey(s) and legal description(s) within sixty (60) days of completion of each phase of the project in accordance with DEP permit 50-0163252-001.

b. The Grantee shall submit an easement fee within thirty (30) days of receipt of an invoice from the Grantor for each phase of the project at the established easement rate.

c. The fee shall consist of an initial one-time easement fee to be determined by a real property appraisal provided by Atlantica and an interim "enhanced value or profit gained" fee of $5.00 per linear foot of cable.

d. In the event that the Board of Trustees revises current rules related to private easement fees, any additional fees due under the amended rule shall be assessed from the effective date of the amended rule.

Page 3 of 13 Pages
Easement No. 30537

WITNESSES:

_Evlyn A Turner_
Original Signature
(SEAL)

_Evlyn A. Turner_
Print/Type of Witness

_Lanette Radel_
Original Signature

_LANETTE RADEL_
Print/Type Name of Witness

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE STATE OF
FLORIDA

BY _Kirb B. Green III_
Kirby B. Green III, Deputy Secretary,
Department of Environmental Protection, as agent for
and on behalf of the Board of Trustees of the Internal
Improvement Trust Fund of the State of Florida

"GRANTOR"

STATE OF FLORIDA
COUNTY OF LEON

The foregoing instrument was acknowledged before me this __25__ day of _September_, 20 _00_, by Kirby B. Green III, Deputy Secretary, Department of Environmental Protection, as agent for and on behalf of the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida. He is personally known to me.

APPROVED AS TO FORM AND LEGALITY:

_Joseph L. Vlm_
DEP Attorney

_Katherine Hadi Goletz_
Notary Public State of Florida
MY COMMISSION # CC939286 EXPIRES
May 22, 2004
BONDED THRU TROY FAIN INSURANCE, INC.

Printed, Typed or Stamped Name

My Commission Expires:
_May 22, 2004_
Commission/Serial No _CC 939286_

WITNESSES:

_ML_
Original Signature

_PETER MARTIN_
Typed/Printed Name of Witness

_Rody_
Original Signature

_MICHELLE RODY_
Typed/Printed Name of Witness

Atlantica USA LLC,
a Delaware limited liability company        (SEAL)

BY: Atlantica Network (Bermuda) Ltd., a Bermuda company,
as Managing Member

BY: _signature_
Original Signature of Executing Authority

Lin Gentemann
Typed/Printed Name of Executing Authority

Vice President
Title of Executing Authority

STATE OF _HAMILTON_

COUNTY OF _BERMUDA_

"GRANTEE"

The foregoing instrument was acknowledged before me this __15th__ day of _SEPTEMBER_, 2000, by Lin Gentemann as Vice President of Atlantica Network (Bermuda) Ltd., a Bermuda company, Managing Member for and on behalf of Atlantica USA LLC, a Delaware limited liability company. He is personally known to me or who has produced _____, as identification.

My Commission Expires

_UNLIMITED_

Commission/Serial No _____

Notary Public, State of _BERMUDA_

_PETER MARTIN_
Printed, Typed or Stamped Name

Page __4__ of _13_ Pages
Easement No. _30537_



ORB 12043 Pg 370

## DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
## FOR THE ATLANTICA-1
## FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

### BENEATH THE ATLANTIC INTRACOASTAL WATERWAY

Located in the waters of the Atlantic Intracoastal Waterway, east of Silver Palm Park, City of Boca Raton, County of Palm Beach, State of Florida and being more particularly described as follows:

Commencing at the north quarter corner of Section 29, Township 47 South, Range 43 East; thence N 88° 16' 56" E along the north line of said section and the centerline of Palmetto Park Road, a distance of 659.08 feet to a point of intersection with the centerline Southeast 5th Avenue; thence S 03° 23' 27" E along said centerline, a distance of 305.60 feet; thence N 89° 56' 43" E, a distance of 39.91 feet, to a point of intersection with the east right-of-way line of Southeast 5th Avenue; thence continuing along the easement through Silver Palm Park between the City of Boca Raton and Atlantica USA LLC at a bearing of S 85° 44' 40" E, a distance of 184.87 feet to a point of intersection; thence S 78° 49' 12" E, a distance of 201.86 feet to a point of intersection; thence N 83° 29' 23" E, a distance of 169.55 feet to a point on the seawall on the western edge of the Atlantic Intracoastal Waterway, the True Point of Beginning of the Easement; said Easement Area extending 5 feet on either side of the centerline; thence N 83° 29' 23" E, a distance of 187.09 feet to a point of intersection; thence N 71° 06' 53" E, a distance of 24.24 feet to a point on the seawall on the eastern edge of the Atlantic Intracoastal Waterway, the Terminus of the Easement.

Said lands situate in the City of Boca Raton, Palm Beach County, Florida.

Said Easement being 211.33 feet in length and containing 2,113.3 square feet or 0.05 acre, more or less.

Subject to easements, restrictions, reservations, covenants, and rights-of-way of record.

ORB 12943 Pg 372

## DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
## FOR THE ATLANTICA-1
## FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

### CONDUIT 1 / SEGMENT 1 CABLE

### FROM THE MEAN HIGH WATER LINE OF THE ATLANTIC OCEAN TO THE THREE NAUTICAL MILE LIMIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line, the True Point of Beginning of Atlantica-1, Conduit 1/Cable Segment 1 Easement Area having a coordinate value of North 733,961.38 feet and East 960,917.76 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet; thence continuing along the centerline of Conduit 1/Segment 1 S 86° 01' 38.85" E, a distance of 2,433.30 feet to the end of Conduit 1, said point having a coordinate value of North 733, 801.87 feet and East 963,453.42 feet; thence continuing along the centerline of Segment 1 S 89° 08' 50.80" E for a distance of 3,821.87 feet, said point having a coordinate value of North 733,745.00 feet and East 967,274.87 feet; thence continuing along the centerline of

Segment 1 N 78° 03' 53.07" E for a distance of 12,133.58 feet to the Three Nautical Mile Limit, said point having a coordinate value of North 736,254.30 feet and East 979,146.15 feet.

Said Easement Area being 18,497.55 feet in length and containing an area of 184,975.50 square feet or 4.25 acres, more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit – Geometric Layout".

## DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
### FOR THE ATLANTICA-1
### FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

#### CONDUIT 2 / SEGMENT 2 CABLE

#### FROM THE ANGLE POINT OF CONDUITS TO THE THREE NAUTICAL MILE LIMIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True Point of Beginning of Atlantica-1, Conduit 2/Segment 2 Cable Easement Area said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along the centerline S 82° 12' 44.32" E, a distance of 2,451.25 feet to the end of Conduit 2, said point having a coordinate value of North 733,638.29 feet and East 963,454.61 feet; thence continuing along the centerline of Segment 2 S 84° 21' 18.02" E for a distance of 3,842.47 feet, said point having a coordinate value of North 733,260.33 feet and East 967,278.44 feet; thence continuing along the centerline of Segment 2 N 84° 15' 41.97" E for a distance of 11,927.48 feet to the Three Nautical Mile Limit, said point having a coordinate value of North 734,452.90 feet and East 979,146.15 feet.

ORB 12043 Pg 375

Said Easement Area being 18,221.20 feet in length and containing an area of 182,212.00 square feet or 4.18 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 11 of 13 Pages
Easement No. 30537

ORB 12043 Pg 376

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 3

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic

Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat

thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm

Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of

Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range

43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;

thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N

85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along

said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True

Point of Beginning of Atlantica-1, Conduit 3 Easement Area said point having a coordinate value

of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate

System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on

either side of centerline; thence continuing along the centerline S 78° 28' 08.17" E, a distance of

2,479.89 feet to the end of Conduit 3, said point having a coordinate value of North 733,474.71

feet and East 963,455.80 feet.

Said Easement Area being 2,479.89 feet in length and containing an area of 24,798.90 square feet

or 0.57 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001,

A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

ERD #24344 PB 3921
DOROTHY H. WILKEN, CLERK PB COUNTY, FL

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 4

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True Point of Beginning of Atlantica-1, Conduit 4 Easement Area said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along the centerline S 74° 49' 34.11" E, a distance of 2,518.84 feet to the end of Conduit 4, said point having a coordinate value of North 733,311.14 feet and East 963,456.99 feet.

Said Easement Area being 2,518.84 feet in length and containing an area of 25,188.40 square feet or 0.58 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 13 of 13 Pages
Easement No. 30537



I hereby certify the foregoing is a true copy of the record in my office with redactions, if any as required by law as of this day, Feb 27, 2020. Sharon R. Bock, Clerk and Comptroller, Palm Beach County, Florida BY _____ Deputy Clerk

# EXHIBIT J

This Instrument Prepared By:
Jeff Gentry
Recurring Revenue Section
Bureau of Public Land Administration
3900 Commonwealth Boulevard
Mail Station No. 125
Tallahassee, Florida 32399

*118-778*
Please Return To:
BRIDGE SERVICE CORP.
800-225-2736
277 Broadway #510
New York, NY 10007-2001

10/27/2003  14:35:12  20030660733
OR BK 16090 PG 1241
Palm Beach County, Florida

## BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND
## OF THE STATE OF FLORIDA

### SOVEREIGN SUBMERGED LANDS EASEMENT
### MODIFICATION TO REFLECT CHANGE IN OWNERSHIP

NO. 30537
BOT FILE NO. 500221236
PA NO. 50-0163252-001

THIS EASEMENT is hereby granted by the Board of Trustees of the Internal Improvement Trust Fund of

the State of Florida, hereinafter referred to as the Grantor.

WITNESSETH:  That for the faithful and timely performance of and compliance with the terms and

~~conditions~~ stated herein, the Grantor does hereby grant to Brasil Telecom of America Inc., a Delaware corporation,

hereinafter ~~referred to as the~~ Grantee, a nonexclusive easement on, under and across the sovereign lands described as

follows:

A parcel of sovereign submerged land in Sections 28 and 29,
Township 54 South, Range 43 East, in Atlantic Ocean,
Palm Beach, as is more particularly described
and shown on Attachment A, dated April 17, 2000.

TO HAVE THE USE OF the hereinabove described premises from June 25, 2003, the effective date of this

modified easement, through July 11, 2025, the expiration date of this modified easement.  The terms and conditions

on and for which this easement is granted are as follows:

1.  EASEMENT CONSIDERATION:  The Grantee has hereby paid to the Grantor, a one-time negotiated
sum of $185,706.55 .

2.  USE OF PROPERTY:  The above described parcel of land shall be used solely for the installation of four
conduits and two fiber optic cables and Grantee shall not engage in any activity except as described in the Department
of Environmental Protection, Consolidated Environmental Resource Permit No. 50-0163252-001, dated August 9,
2000, and Modified Permit No 50-0163252-002, dated June 25, 2003, incorporated herein and made a part of this
easement by reference.  All of the foregoing subject to the remaining conditions of this Easement.

3.  RIGHTS GRANTED:  The rights hereby granted shall be subject to any and all prior rights of the
United States and any and all prior grants by the Grantor in and to the submerged lands situated within the limits of
this easement.

4.  DAMAGE TO EASEMENT PROPERTY AND INTERFERENCE WITH PUBLIC AND PRIVATE
RIGHTS:  Grantee shall not damage the easement lands or unduly interfere with public or private rights therein.

5.  GRANTOR'S RIGHT TO GRANT COMPATIBLE USES OF THE EASEMENT PROPERTY:  This
easement is nonexclusive, and the Grantor, or its duly authorized agent, shall retain the right to enter the property or
to engage in management activities not inconsistent with the use herein provided for and shall retain the right to grant
compatible uses of the property to third parties during the term of this easement.

6.  RIGHT TO INSPECT:  Grantor, or its duly authorized agent, shall have the right at any time to inspect
the works and operations of the Grantee in any matter pertaining to this easement.

[53]

7. INDEMNIFICATION/INVESTIGATION OF ALL CLAIMS:  The Grantee shall investigate all claims of every nature at its expense, and shall indemnify, defend and save and hold harmless the Grantor and the State of Florida from all claims, actions, lawsuits and demands arising out of this easement.

8. VENUE:  Grantee waives venue as to any litigation arising from matters relating to this easement and any such litigation between Grantor and Grantee shall be initiated and maintained only in Leon County, Florida.

9. ASSIGNMENT OF EASEMENT:  This easement shall not be assigned or otherwise transferred without prior written consent of the Grantor or its duly authorized agent.  Any assignment or other transfer without prior written consent of the Grantor shall be null and void and without legal effect.

10. TERMINATION:  The Grantee, by acceptance of this easement, binds itself, its successors and assigns, to abide by the provisions and conditions herein set forth, and said provisions and conditions shall be deemed covenants of the Grantee, its successors and assigns.  In the event the Grantee fails or refuses to comply with the provisions and conditions herein set forth or in the event the Grantee violates any of the provisions and conditions herein, this easement may be terminated by the Grantor upon 30 days written notice to Grantee.  If terminated, all of the above-described parcel of land shall revert to the Grantor.  All costs, including attorneys' fees, incurred by the Grantor to enforce the provisions of this easement shall be paid by the Grantee.  All notices required to be given to Grantee by this easement or applicable law or administrative rules shall be sufficient if sent by U.S. Mail to the following address:

> Brasil Telecom of America, Inc.
> 500 South Dixie Highway
> Boca Raton, Florida 33432

The Grantee agrees to notify the Grantor by certified mail of any changes to this address at least ten (10) days before the change is effective.

11. TAXES AND ASSESSMENTS:  The Grantee shall assume all responsibility for liabilities that accrue to the subject property or to the improvements thereon, including any and all drainage or special assessments or taxes of every kind and description which are now or may be hereafter lawfully assessed and levied against the subject property during the effective period of this easement which result from the grant of this easement or the activities of Grantee hereunder.

12. RENEWAL PROVISIONS:  Renewal of this easement is at the sole option of the Grantor.  Such renewal shall be subject to the terms, conditions and provisions of current management standards, easement fees, and applicable laws, rules and regulations in effect at that time.  In the event that Grantee is in full compliance with the terms of this easement, the Grantee may apply in writing for a renewal.  Such application for renewal must be received by Grantor no later than six months prior to the expiration date of this easement.  The term of any renewal granted by the Grantor shall commence on the last day of the previous easement term.  If the Grantee fails to apply for a renewal, or in the event the Grantor does not grant a renewal, the Grantee shall vacate the easement premises and remove all structures and equipment occupying and erected thereon at its expense.

13. REMOVAL OF STRUCTURES/ADMINISTRATIVE FINES:  If the Grantee does not remove said structures and equipment occupying and erected upon the premises after expiration or cancellation of this easement, such structures and equipment will be deemed forfeited to the Grantor, and the Grantor may authorize removal and may sell such forfeited structures and equipment after ten (10) days written notice by certified mail addressed to the Grantee at the address specified in Item 10 or at such address on record as provided to the Grantor by the Grantee.  However, such remedy shall be in addition to all other remedies available to Grantor under applicable laws, rules and regulations including the right to compel removal of all structures and the right to impose administrative fines.

14. ENFORCEMENT OF PROVISIONS:  No failure, or successive failures, on the part of the Grantor to enforce any provision, nor any waiver or successive waivers on its part of any provision herein, shall operate as a discharge thereof or render the same inoperative or impair the right of the Grantor to enforce the same upon any renewal thereof or in the event of subsequent breach or breaches.

15. RECORDATION OF EASEMENT:  The Grantee, at its own expense, shall record this fully executed easement in its entirety in the public records of the county within which the easement site is located within fourteen (14) days after receipt, and shall provide to the Grantor within ten (10) days following the recordation a copy of the recorded easement in its entirety which contains the O.R. Book and pages at which the easement is recorded.

16. AMENDMENTS/MODIFICATIONS:  This easement is the entire and only agreement between the parties.  Its provisions are not severable.  Any amendment or modification to this easement must be in writing and must be accepted, acknowledged and executed by the Grantee and Grantor.

17. ACOE AUTHORIZATION: Prior to commencement of construction and/or activities authorized herein, the Grantee shall obtain the U.S. Army Corps of Engineers (COE) permit if it is required by the COE. Any modifications to the construction and/or activities authorized herein that may be required by the COE shall require consideration by and the prior written approval of the Grantor prior to the commencement of construction and/or any activities on sovereign, submerged lands.

18. ADDITIONAL STRUCTURES OR ACTIVITIES/EMERGENCY STRUCTURAL REPAIRS: No additional structures shall be erected and/or activities undertaken, including but not limited to, dredging, relocation/realignment or major repairs or renovations made to authorized structures, on, in or over sovereignty, submerged lands without the prior written consent of the Grantor, with the exception of emergency repairs. Unless specifically authorized in writing by the Grantor, such activities or structures shall be considered unauthorized and a violation of Chapter 253, Florida Statutes, and shall subject the Grantee to administrative fines under Chapter 18-14, Florida Administrative Code. If emergency repairs are required to be undertaken in the interests of public health, safety or welfare, the Grantee shall notify the Grantor of such repairs as quickly as is practicable; provided, however, that such emergency activities shall not exceed the activities authorized by this easement.

19. UPLAND RIPARIAN PROPERTY INTEREST: During the term of this easement, Grantee must have satisfactory evidence of sufficient upland interest as defined in subsection 18-21.003(49), Florida Administrative Code, to the extent required by paragraph 18-21.004(3)(b), Florida Administrative Code, in order to conduct the activity described in this easement. If at any time during the term of this easement, Grantee fails to comply with this requirement, use of sovereignty, submerged lands described in this easement shall immediately cease and this easement shall terminate and title to this easement shall revert to and vest in the Grantor immediately and automatically.

20. SPECIAL EASEMENT CONDITIONS:

a. The Grantee shall provide the Grantor acceptable as-built survey(s) and legal description(s) within sixty (60) days of completion of each phase of the project in accordance with DEP permit 50-0163252-001.

b. The Grantee shall submit an easement fee within thirty (30) days of receipt of an invoice from the Grantor for each phase of the project at the established rate.

c. In the event that the Grantor revises current rules related to private easement fees, any additional fees due under the amended rule shall be assessed from the effective date of the amended rule.



Page _3_ of _13_ Pages
Easement No. 30537

WITNESSES:

_____
Original Signature

Glen Teal
Print/Type Name of Witness

_____
Original Signature

Brent Branning
Print/Type Name of Witness

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE STATE
OF FLORIDA

(SEAL)

BY: _____
Ralph M. Perkins, Operations and Management Consultant
Manager, Bureau of Public Land Administration,
Division of State Lands, Department of Environmental
Protection, as agent for and  on behalf of the Board of Trustees of
the Internal Improvement Trust Fund of the State of Florida

"GRANTOR"

STATE OF FLORIDA
COUNTY OF LEON

The foregoing instrument was acknowledged before me this 29th day of September , 20 03 by Ralph
M. Perkins, Operations and Management Consultant Manager, Bureau of Public Land Administration, Division of State Lands,
Department of Environmental Protection, as agent for and on behalf of the Board of Trustees of the Internal Improvement Trust Fund
of the State of Florida.  He is personally known to me.

APPROVED AS TO FORM AND LEGALITY:

_____
DEP Attorney

_____
Notary Public, State of Florida

_____
Printed, Typed or Stamped Name

My Commission Expires:

Florence L. Davis
MY COMMISSION # CC974560 EXPIRES
October 11, 2004
BONDED THRU TROY FAIN INSURANCE, INC.

Commission/Serial No. _____

---

WITNESSES:

_____
Original Signature

SAMI ARAP SOBRINHO ✗
Typed/Printed Name of Witness

_____
Original Signature

MARINA LACERDA CAYNES ✗
Typed/Printed Name of Witness

Brasil Telecom of America Inc.
a Delaware corporation                    (SEAL)

BY: _____
Original Signature of Executing Authority

Carla Cico
Typed/Printed Name of Executing Authority

President
Title of Executing Authority

"GRANTEE"

STATE OF_____

COUNTY OF_____

The foregoing instrument was acknowledged before me this _____ day of _____, 20 ____, by
Carla Cico as President of Brasil Telecom of America Inc., a Delaware corporation, for and  on behalf of the corporation.  She is
personally known to me or who has produced _____ as identification.

My Commission Expires_____

Commission/Serial No. _____

_____ ed Name

Page  4  of 13 Pages
Easement No. 30537



Attachment A
Page 5 of 13 Pages
Easement No. 30537

DUNE
8/33

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

BENEATH THE ATLANTIC INTRACOASTAL WATERWAY

Located in the waters of the Atlantic Intracoastal Waterway, east of Silver Palm Park, City of Boca Raton, County of Palm Beach, State of Florida and being more particularly described as follows:

Commencing at the north quarter corner of Section 29, Township 47 South, Range 43 East; thence N 88° 16' 56" E along the north line of said section and the centerline of Palmetto Park Road, a distance of 659.08 feet to a point of intersection with the centerline Southeast 5th Avenue; thence S 03° 23' 27" E along said centerline, a distance of 305.60 feet; thence N 89° 56' 43" E, a distance of 39.91 feet, to a point of intersection with the east right-of-way line of Southeast 5th Avenue; thence continuing along the easement through Silver Palm Park between the City of Boca Raton and Atlantica USA LLC at a bearing of S 85° 44' 40" E, a distance of 184.87 feet to a point of intersection; thence S 78° 49' 12" E, a distance of 201.86 feet to a point of intersection; thence N 83° 29' 23" E, a distance of 169.55 feet to a point on the seawall on the western edge of the Atlantic Intracoastal Waterway, the True Point of Beginning of the Easement; said Easement Area extending 5 feet on either side of the centerline; thence N 83° 29' 23" E, a distance of 187.09 feet to a point of intersection; thence N 71° 06' 53" E, a distance of 24.24 feet to a point on the seawall on the eastern edge of the Atlantic Intracoastal Waterway, the Terminus of the Easement.

Said lands situate in the City of Boca Raton, Palm Beach County, Florida.

Attachment A
Page 6 of 13 Pages
Easement No. 30537

Said Easement being 211.33 feet in length and containing 2,113.3 square feet or 0.05 acre, more or less.

Subject to easements, restrictions, reservations, covenants, and rights-of-way of record.

Attachment A
Page 7 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 1 / SEGMENT 1 CABLE

FROM THE MEAN HIGH WATER LINE OF THE ATLANTIC OCEAN TO THE
THREE NAUTICAL MILE LIMIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic

Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat

thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm

Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of

Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range

43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;

thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N

85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line, the True Point of Beginning

of Atlantica-1, Conduit 1/Cable Segment 1 Easement Area having a coordinate value of North

733,961.38 feet and East 960,917.76 feet based on the Florida State Plane Coordinate System,

East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of

centerline; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the

Angle Point of Conduits, said point having a coordinate value of North 733,970.44 feet and East

961,025.96 feet; thence continuing along the centerline of Conduit 1/Segment 1 S 86° 01' 38.85"

E, a distance of 2,433.30 feet to the end of Conduit 1, said point having a coordinate value of

North 733, 801.87 feet and East 963,453.42 feet; thence continuing along the centerline of

Segment 1 S 89° 08' 50.80" E for a distance of 3,821.87 feet, said point having a coordinate value

of North 733,745.00 feet and East 967,274.87 feet; thence continuing along the centerline of

Attachment A
Page 8 of 13 Pages
Easement No. 30537

Segment 1 N 78° 03' 53.07" E for a distance of 12,133.58 feet to the Three Nautical Mile Limit, said point having a coordinate value of North 736,254.30 feet and East 979,146.15 feet.

Said Easement Area being 18,497.55 feet in length and containing an area of 184,975.50 square feet or 4.25 acres, more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003; "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 9 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10 FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 2 / SEGMENT 2 CABLE

FROM THE ANGLE POINT OF CONDUITS TO THE THREE NAUTICAL MILE LIMIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic
Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat
thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm
Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of
Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range
43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;
thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N
85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along
said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True
Point of Beginning of Atlantica-1, Conduit 2/Segment 2 Cable Easement Area said point having a
coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State
Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area
extending 5 feet on either side of centerline; thence continuing along the centerline S 82° 12'
44.32" E, a distance of 2,451.25 feet to the end of Conduit 2, said point having a coordinate value
of North 733,638.29 feet and East 963,454.61 feet; thence continuing along the centerline of
Segment 2 S 84° 21' 18.02" E for a distance of 3,842.47 feet, said point having a coordinate value
of North 733,260.33 feet and East 967,278.44 feet; thence continuing along the centerline of
Segment 2 N 84° 15' 41.97" E for a distance of 11,927.48 feet to the Three Nautical Mile Limit,
said point having a coordinate value of North 734,452.90 feet and East 979,146.15 feet.

Attachment A
Page 10 of 13 Pages
Easement No. 30537

Said Easement Area being 18,221.20 feet in length and containing an area of 182,212.00 square feet or 4.18 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 11 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 3

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic

Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat

thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm

Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of

Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range

43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;

thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N

85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along

said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True

Point of Beginning of Atlantica-1, Conduit 3 Easement Area said point having a coordinate value

of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate

System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on

either side of centerline; thence continuing along the centerline S 78° 28' 08.17" E, a distance of

2,479.89 feet to the end of Conduit 3, said point having a coordinate value of North 733,474.71

feet and East 963,455.80 feet.

Said Easement Area being 2,479.89 feet in length and containing an area of 24,798.90 square feet

or 0.57 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001,

A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 12 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 4

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True Point of Beginning of Atlantica-1, Conduit 4 Easement Area said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along the centerline S 74° 49' 34.11" E, a distance of 2,518.84 feet to the end of Conduit 4, said point having a coordinate value of North 733,311.14 feet and East 963,456.99 feet.

Said Easement Area being 2,518.84 feet in length and containing an area of 25,188.40 square feet or 0.58 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 13 of 13 Pages
Easement No. 30537

I hereby certify the foregoing is a true copy of the record in my office with redactions, if any as required by law as of this day, Feb 27, 2020. Sharon R. Bock, Clerk and Comptroller, Palm Beach County, Florida BY _____ Deputy Clerk