UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CV-80728-AMC

SOUTH SPANISH TRAIL, LLC,

     Plaintiff,

v.

GLOBENET CABOS SUBMARINOS
AMERICA INC., CARIBBEAN CROSSINGS,
LTD., INC., and JOHN DOES 1-100,

     Defendants.

_____/

GLOBENET CABOS SUBMARINOS
AMERICA INC.,

     Counter-Plaintiff,

v.

SOUTH SPANISH TRAIL, LLC and BOARD
OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA,

     Counter/Third-Party Defendants.

_____/

SOUTH SPANISH TRAIL, LLC,

     Cross-Plaintiff,

v.

BOARD OF TRUSTEES OF THE
INTERNAL IMPROVEMENT TRUST FUND
OF THE STATE OF FLORIDA, and UNITED
STATES OF AMERICA (ARMY CORPS OF
ENGINEERS),

     Cross-Defendants.

_____/

## **FIRST AMENDED CROSS-CLAIMS**

Plaintiffs/Counter-Defendants/Cross-Plaintiffs, South Spanish Trail, LLC ("SST"), Coastal Energy Resources LLC ("Coastal"), and Palm Beach County ICW Land, LLC ("PBC ICW") (collectively, "Cross-Plaintiffs"), by and through undersigned counsel, hereby file their First Amended Cross-Claims[1] against the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida ("BOT,") the Florida Inland Navigation District ("FIND"), and the United States of America ("United States") – specifically, the U.S. Army Corps of Engineers ("ACOE") (collectively, "Cross-Defendants"), and allege:

## I.    JURISDICTION AND VENUE

1.      SST, Coastal, and PBC ICW[2] assert these cross-claims ("Cross-Claims") to the First Amended Counterclaim and Third-Party Complaint filed by Globenet and Caribbean.[3]

2.      The Cross-Claims consist of claims for damages in excess of $75,000, exclusive of attorneys' fees, interest, and costs, and claims for equitable, declaratory, and injunctive relief.

3.      The Cross-Claims arise out of the same transaction or occurrence set forth in the First Amended Counterclaim and Third-Party Complaint filed by Globenet and Caribbean.

4.      FIND and ACOE are joined pursuant to Rules 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, and Rules 13(h), 19(a), and 20(a) of the Federal Rules of Civil Procedure.

5.      The Cross-Claims also arise under, and/or this Court has subject matter jurisdiction pursuant to, the Constitution and Laws of the United States, including: 42 U.S.C. § 1983 (Civil action for deprivation of rights); 28 US.C. § 1331 (Federal question); 28 U.S.C. § 1343 (Civil

---

[1] SST's Answer, Affirmative Defenses, and Cross-Claim to First Amended Counterclaim is attached to the United State of America's Notice of Removal [DE 1] and filed with this Court as Docket Entry 1-5.
[2] Pursuant to Orders, dated November 17, 2020, Coastal and PBC ICW intervened in and were joined to this case as party defendants to the counterclaim for declaratory relief filed by Defendants/Counter-Plaintiffs, Globenet Cabos Submarinos America, Inc. ("Globenet") and Caribbean Crossings, Ltd., Inc. ("Caribbean").
[3] Globenet's and Caribbean's First Amended Counterclaim and Third-Party Complaint is attached to the United State of America's Notice of Removal [DE 1] and filed with this Court as Docket Entry 1-4.

2

rights and elective franchise); 28 U.S.C. § 1346(f) (United States as defendant); 28 U.S.C. § 1402 (United States as defendant); 28 U.S.C. § 2409a (Real property quiet title action); 5 U.S.C. § 702 (Right of review (per the Administrative Procedure Act ("APA"))); the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. §§ 401 et seq.; 33 U.S.C. § 408 (Taking possession of, use of, or injury to harbor or river improvements (per the RHA)); 36 C.F.R. § 327.20 (Unauthorized structures); 33 C.F.R. § 320.2 (Authorities to issue permits); 33 C.F.R. § 320.4 (General policies for evaluating permit applications); 33 C.F.R. § 320.4(g) (Consideration of property ownership); 33 C.F.R. § 320.4(j) (Other Federal, state, or local requirements); 33 C.F.R. § 322.5(i) (Power transmission lines); 47 C.F.R. § 1.767 (Cable landing licenses); Section 1237 of the National Defense Authorization Act of 1999 (112 Stat. 1920) (Public Law 105-261); Section 214 of the Communications Act of 1934 (as amended, 47 U.S.C. § 214 (Extension of lines or discontinuance of service; certificate of public convenience and necessity); Presidential Executive Order 13913 (signed by President Trump) (Establishing the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector); Presidential Executive Order 13925 (signed by President Trump) (Preventing Online Censorship); Presidential Executive Order 13959 (signed by President Trump) (Addressing the Threat From Securities Investments That Finance Communist Chinese Military Companies) (including as amended and expanded June 3, 2021, by President Biden); the First, Fourth, and/or Fifth Amendment of the U.S. Constitution, and/or 28 U.S.C § 1367 (Supplemental jurisdiction).

6.     This Court also has jurisdiction and is authorized to grant the declaratory relief requested herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

7.     Related, this Court has subject matter jurisdiction over the Cross-Claims and related defenses because their disposition requires resolving contested and substantial federal issues, including the scope of a federal easement over, and ACOE's interest in, the Intracoastal Waterway ("ICW") (a federally authorized project), ACOE's authority to grant consents to use such federal easement, ACOE's alleged breach of such federal easement, ACOE's violation of SST's civil and due process rights through issuing illegal consents to use and overburden such federal easement, and ACOE's unauthorized taking of SST's property without compensation to SST.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.  The subject real property/real property interest is located in this district, a substantial part of the events or omissions giving rise to the Cross-Claims occurred in this district, SST resides in this district, and an agency of the United States (*i.e.*, ACOE) is a defendant to the Cross-Claims.

## II.     PARTIES

9.     SST is a Florida limited liability company with its principal place of business located in Palm Beach County, Florida.

10.     SST is also the fee-simple record titleholder of the subject real property ("SST Property"), located in Palm Beach County, Florida, as defined in SST's Amended Complaint for Damages and Injunctive Relief ("Amended Complaint").[4]

11.     SST is also the successor-in-interest to grantors of the subject federal easement granted to the United States/ACOE pursuant to a certain federal condemnation action and federal judgment, as referenced in the Amended Complaint and as discussed herein.

---

[4] *See* Cross-Defendant United States of America's Notice of Filing South Spanish Trail, LLC's Amended Complaint [DE 66 and DE 66-1].  The exhibits to SST's Amended Complaint [DE 66-1] (such as SST's Warranty Deeds and chain of title to the SST Property) and to Globenet's and Caribbean's First Amended Counterclaim and Third-Party Complaint [DE 1-4] referenced herein are deemed a part of this pleading and these Cross-Claims by reference.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

12.     SST is also an intended third-party beneficiary to a certain consent to use the subject federal easement illegally granted by ACOE to Globenet, as discussed herein.

13.     Coastal is the grantee from SST of a Minerals, Resources and Groundwater Deed ("Minerals Deed"), which gives Coastal a perpetual, exclusive right to all subsurface rights in the SST Property ("Mineral and Resource Subsurface Rights").   A true and correct copy of the Minerals Deed is attached hereto as **Exhibit "A."**

14.     Coastal has an interest in this matter because SST conveyed the Mineral and Resource Subsurface Rights to Coastal, and that conveyance is dependent upon SST's rights in the SST Property at the time of the conveyance.

15.     Coastal therefore has a material interest in the outcome of this matter.

16.     PBC ICW is the grantee from SST of a Drainage, Flowage and Storage Easement ("Easement Agreement"), which gives PBC ICW a perpetual, exclusive easement for the purposes of permitting the drainage, discharge, flowage, retention and/or detention of surface water and/or stormwater into, on, over, across, under and/or through the SST Property ("Drainage Easement"). A true and correct copy of the Easement Agreement is attached hereto as **Exhibit "B."**

17.     PBC ICW has an interest in this matter because SST conveyed the Drainage Easement to PBC ICW, and that conveyance is dependent upon SST's rights in the SST Property at the time of the conveyance.

18.     PBC ICW therefore has a material interest in the outcome of this matter.

19.     BOT is a state agency comprised of Florida's Governor, Attorney General, Chief Financial Officer, and the Commissioner of the Florida Department of Agriculture and Consumer Services.   Pursuant to Article X, Section 11 of the Florida constitution, BOT holds title to all sovereign submerged lands in Florida in trust for all the people of the state.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

20.     FIND is a special taxing district authorized by Section 374.982, Florida Statutes. FIND is charged with "comply[ing] with the requirements and conditions imposed upon a 'local interest' by the Congress of the United States in the several acts authorizing and directing the improvement and maintenance of the Intracoastal Waterway (ICW) from St. Mary's River to the southernmost boundary of Miami-Dade County . . . ."  *See* Fla. Stat. § 374.984.  FIND consists of the counties along Florida's Atlantic Coast from Nassau to Miami-Dade. *See* Fla. Stat. § 374.982.

21.     FIND was created by the Florida legislature in 1927 to act as the State's local sponsor for the construction and maintenance of the ICW.  *See* Ch. 12026, Laws of Fla. (1927).

22.     As a local sponsor, FIND was charged with obtaining the rights necessary for construction and maintenance of the ICW and conveying those assets to the United States free of charge. *Id.*

23.     ACOE is a federal regulatory agency that is organized under the United States Department of Defense, Department of the Army.

24.     ACOE, on behalf of the United States, holds and administers a federal easement granted to the United States/ACOE pursuant to a certain federal condemnation action and federal judgment, as referenced in the Amended Complaint and discussed herein.

25.     ACOE is also the grantor (through the Department of the Army, acting by and through the Real Estate Contracting Officer, Chief, Real Estate Division, Timothy H. McQuillen) of a certain consent to use the subject federal easement granted to Globenet, as discussed herein.

## III.     FACTUAL BACKGROUND

### A.     The ICW, Federal Judgment, and SST Property

26.     The SST Property was cultivatable (*i.e.*, dry, not submerged) land at the time of Florida statehood in 1845.

27.     The SST Property has been privately owned since it was conveyed by the BOT to SST's predecessors in title through a deed issued by the BOT, without reservation, to Arthur T. Williams, dated April 25, 1883 (recorded April 9, 1886).

28.     This conveyance by the BOT to Arthur T. Williams was prior to the construction of the Florida East Coast Canal ("FEC Canal"), which later became (and is now) the ICW.

29.     In 1926, the Secretary of War delivered a report to Congress declaring that an inland waterway following the coastal route from Jacksonville to Miami, was deemed advisable, and recommended the approval of that project subject to the following conditions:

> (a) That local interests shall acquire the necessary rights-of-way and the privately owned waterway known as the Florida East Coast Canal and transfer them free of cost to the United States, and

> (b) That local interests shall furnish suitable areas for deposit of dredged materials in connection with the work and its subsequent maintenance.

30.     The U.S. Congress, by the River and Harbor Act of 1927, approved in 1927 (and amended thereafter) (Chapter 47, 44 Stat. 1010), authorized, *inter alia*, the construction and maintenance of such an inland waterway, which is now the ICW, subject to the above conditions.

31.     FIND sought and obtained the rights necessary for the United States/ACOE to construct and maintain the waterway, which is now the ICW.

32.     Initially, FIND sought a conveyance from the Florida Canal & Transportation Company to the United States of the area traversed by the FEC Canal.

33.     A quit claim deed for such a conveyance was issued in 1929, but it contained no legal description, making it a legal nullity.[5]

---

[5] *See* recorded and certified April 17, 2020 Order on Plaintiff's Motion, Pursuant to Section 66.021(8), Florida Statutes, to Test Legal Sufficiency of Certain 1929 Quit Claim Deed Relied Upon by Defendant, the State of Florida, entered in that certain matter styled *NE 32nd Street, LLC v. State of Florida et al.*, Case No. 50-2016-CA-003800 (15th Jud. Cir., Palm Beach County, Florida), a true and correct copy of which is attached hereto as **Exhibit "C."**

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

34.     FIND also sought and obtained easements from private property owners for their land which the ICW would traverse after further dredging and widening by the United States/ACOE.

35.     Because FIND was unable to obtain all necessary rights by voluntary conveyance, it surveyed and identified the lands necessary for the construction of the ICW, which was all privately owned, and FIND's General Counsel assisted the United States in bringing a condemnation action ("Condemnation Action") which resulted in that certain Final Judgment, dated April 12, 1935, entered in the matter of *United States of America v. Parcel 8 Sheet*, in the U.S. District Court for the Southern District of Florida, Case No. 793-m ("Federal Judgment").

36.     True and correct copies of the subject petition for condemnation ("Petition") and resulting Federal Judgment are attached hereto as **Exhibits "D"** and **"E,"** respectively.

37.     Moreover, as part of the Condemnation Action, the Special Assistant to the United States Attorney General, who was also the General Counsel of FIND, attested by affidavit that a diligent search and inquiry had been conducted to ascertain all those with any interest in the properties subject to the Petition, and that all those individuals/entities were named in the petition.

38.     In connection with the Condemnation Action, those private landowners who proved their ownership of lands being condemned were ordered to be compensated by FIND for a limited easement over their lands granted to the United States for the construction and maintenance of the ICW ("Federal Easement").

39.     Pursuant to the Federal Judgment, the Federal Easement granted the United States a limited easement for the construction and maintenance of the ICW, but otherwise reserved to the private owners of the condemned properties all other rights in those properties that did not interfere with the Federal Easement.

8

40.     The Federal Judgment specifically states that it grants a perpetual right and easement to the United States for the "construction and maintenance" of the ICW, and "for such other purposes as may be needful in the preservation and maintenance" of the ICW, "RESERVING, HOWEVER, to the owner or owners, his or their heirs and assigns, all such rights and privileges in said tracts or tracts of land as may be used or enjoyed without interfering with or abridging the rights and easements hereby condemned, fixed and declared" in favor of the United States.  *See* Federal Judgment, pp. 45-46 (Section II).

41.     The Federal Judgment also confirms that the Condemnation Action "create[]" public "navigable waters of the United States" over the land owned by the subject private parties by cutting away and converting such land "into public navigable waters."   *See id.* at p. 45.

42.     Accordingly, there is no dispute that the SST Property over which the Federal Easement was condemned was, in fact, dry land at the time of the Condemnation Action.

43.     Indeed, FIND, in 1932, completed a survey for the purposes of locating certain tracts of land with the proposed rights of way and to facilitate the description of said land for conveyance ("FIND Map"), one page of which clearly depicts the SST Property as dry land and as part of a platted subdivision.  *See* Amended Plat of Portions of Sections 20 and 29, Township 47 South, Range 43 East (Page 30 of the Find Map), a true and correct copy of which is attached hereto as **Exhibit "F."**

44.     By way of the FIND Map, and as reflected on Page 30 thereof, FIND identified and developed legal descriptions for the platted lots of the 1925 Por La Mar Plat (which was a platted subdivision 10 years before the Condemnation Action) that included the SST Property as areas that were needed for the expansion of the waterway that is now the ICW.

9

45.     Among the lands to which private ownership was proven in connection with the Condemnation Action, and for which compensation was paid by FIND to the private landowners for the Federal Easement, was the SST Property.

46.     Such compensation is also confirmed in the official FIND Minutes which were published in local newspapers.

47.     The SST Property was confirmed in the Federal Judgment to be privately owned by Harry M. Chesebro and Ethyl B. Chesebro, and by William J. Southam.

48.     SST's chain of title to the SST Property emanates from the deeds held by the Chesebros and Southam at the time of the Federal Judgment.

49.     The SST Property became submerged only as a result of the Federal Judgment and Federal Easement, which allowed the widening of the waterway which is now the ICW.

50.     While the State of Florida/BOT caused the Condemnation Action to be filed and FIND's General Counsel served as counsel for the United States, the State of Florida/BOT was not named as a party to the Petition because FIND and the United States Attorney General determined that the State of Florida/BOT did not have any interest in any of the properties subject to the Condemnation Action.

51.     Indeed, FIND performed abstracts of title and all surveys for the land to be condemned for the ICW right-of-way easement in the Condemnation Action.

52.     Based upon the abstracts and surveys, FIND and the United States identified the Chesebros and Southam as the owners of the SST Property in both the Petition and Federal Judgment.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

53.     Additionally, notices were published in various newspapers for any party who may have in interest in any of the properties to be condemned for the Federal Easement through the Condemnation Action.

54.     While the State of Florida/BOT was clearly on notice of the Condemnation Action (having brought the action for the United States), it never claimed ownership of any of the land identified in the Petition and Final Judgment.

55.     Regardless, the Federal Judgment entered judgment against not only the named defendants/respondents, but also against "all other persons and corporations, known or unknown, whether specifically named; and all other persons and corporations, known or unknown, whether specifically named or not named, and not appearing, who own any right, title, interest or estate in, or lien, encumbrance, servitude, easement, charge, demand or covenant, upon or in respect to any of the lands embraced in this proceeding, excepting only those as to which this cause is continued." *See* Federal Judgment, pp. 44-45.

56.     As such, no party, including the State of Florida/BOT and the United States/ACOE, can claim an interest in the SST Property inconsistent with the Federal Judgment absent seeking to re-open/collaterally attack the Federal Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure.

57.     No party (not FIND, the BOT, or ACOE) has sought to re-open/collaterally attack the Federal Judgment since it was entered more than 85 years ago.

58.     Separate from the Condemnation Action to obtain the Federal Easement over exclusively privately owned land, FIND was required to obtain an easement from the State of Florida for those areas needed for the ICW which were owned by the State of Florida.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

59.     In 1942, pursuant to Chapter 13664, Laws of Florida, 1929, the BOT granted an easement to the United States over certain lands owned by the State of Florida, including areas in Palm Beach County, for the construction and maintenance by the United States of the ICW ("1942 Easement").  A true and correct copy of the 1942 Easement is attached hereto as **Exhibit "G."**

60.     The 1942 Easement legally describes the lands over which the BOT granted an easement to the United States for the ICW, and the SST Property is not anywhere within the legal description of the 1942 Easement.

61.     Since 1935, the BOT has not asserted ownership or filed any claim pursuant to Section 253.04, Florida Statutes, for lands which were adjudicated as privately owned lands in the Federal Judgment, including the SST Property.

62.     The BOT has never included the SST Property in its annual inventory of all publicly owned submerged lands within the State of Florida, which has been required for over 40 years by Section 253.03(8), Florida Statutes.

**B.     The 2020 Consent**

63.     On July 15, 2020, ACOE issued a "Corrective Consent to Easement to Use Corps of Engineers Right-of-Way" ("2020 Consent") to Globenet, purportedly authorizing Globenet to use the Federal Easement over the SST Property in connection with the construction, use, maintenance, repair, and/or removal of certain fiber optic conduits and cables that traverse the SST Property ("Globenet Cable System").   A true and correct copy of the 2020 Consent is attached hereto as **Exhibit "H."**

64.     The 2020 Consent could not be issued to Globenet unless and until Globenet first obtained the consent of SST, the record titleholder, to place any facility on the SST Property,

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

including the Globenet Cable System, and as such, SST is an intended third-party beneficiary of the 2020 Consent.

65.     No such consent was sought by Globenet or given by SST.

66.     Caribbean has no consent from ACOE to allow it to use the Federal Easement, and moreover has no consent from SST to use the SST Property.

67.     As such, Caribbean's license from the Federal Communications Commission ("FCC"), as well as its RHA permit from ACOE, are invalid and should be revoked.

68.     SST does not consent to Globenet, Caribbean or anyone claiming by or through Globenet or Caribbean being on the SST Property.

69.     The Globenet Cable System is used, directly and/or indirectly, by Globenet, Caribbean and  other private entities to send and receive data and information across the SST Property, including in and for interstate and international commerce.

70.     The 2020 Consent was executed on July 15, 2020 by the United States, and agreed to and accepted on or about the same day by Eduardo Falzoni, Chief Executive Officer of Globenet.

71.     Globenet (and Caribbean derivatively) relies on the 2020 Consent as purported authorization for the Globenet Cable System to occupy the SST Property.

72.     The 2020 Consent is the first time that ACOE has issued a consent to use the Federal Easement over the SST Property for the Globenet Cable System, as the consent that the 2020 Consent purportedly replaced involved different land (with different Tract Numbers), not the SST Property.

73.     In violation of SST due process rights, SST was not given notice, or a right to be heard, in connection with ACOE's decision to issue the 2020 Consent.

Tobin & Reyes, P.A.
Mizner Park Office Tower • 225 N. E. Mizner Boulevard, Suite 510 • Boca Raton, Florida • 33432

74.     This is despite the fact that, prior to issuance of the 2020 Consent, SST put ACOE on notice that SST had not given Globenet consent to use the SST Property for the Globenet Cable System and thus objected to ACOE's issuance of any such consent.  *See* correspondence to ACOE, dated May 17, 2017, a true and correct copy of which is attached hereto as **Exhibit "I."**

75.     SST has not been compensated in connection with the use of the SST Property by Globenet and Caribbean (and others) for the Globenet Cable System in purported reliance on the 2020 Consent.

76.     Further, upon information and belief, ACOE did not comply with 33 U.S.C. § 408 (taking possession of, use of, or injury to harbor or river improvements (per the RHA)) in issuing the 2020 Consent to Globenet.

77.     By its express terms, the 2020 Consent, among other things:

a.  Is effective as of July 15, 2020;

b.  Is effective only insofar as the property rights of the United States in the land to be occupied by the Globenet Cable System (as is concerned here, the SST Property);

c.  Requires Globenet (*i.e.*, the Grantee) to obtain the consent of the owner of the SST Property (*i.e.*, SST) for the Globenet Cable System to occupy the SST Property prior to construction/installation of the system on the SST Property;

d.  Requires Globenet to obtain State and local assent required by law for the activity authorized in the 2020 Consent (*i.e.*, the installation of the Globenet Cable System);

e.  Requires that any proposed improvements or use authorized in the 2020 Consent not be commenced until appropriate rights have been obtained by Globenet from the record owners and encumbrancers of the fee title to the land involved, here SST, or until Globenet has obtained all Federal, State, or local permits required by law;

f.  Requires that the proposed improvements or use authorized in the 2020 Consent be consistent with the terms of the 2020 Consent;

g.  States that any improvements or use not specifically identified and authorized shall constitute a violation of the 2020 Consent;

14

     h.   States that Globenet shall hold the United States harmless from any and all claims (including for damages to property or injuries to persons) which may arise from or be incident to the exercise of the privileges granted by the 2020 Consent; and

     i.   States that the 2020 Consent may not be transferred to a third party without the prior written notice to ACOE.

78.    Globenet is in violation of the 2020 Consent, and has been since it was issued, because, among other reasons, Globenet does not have now, nor has it ever had, the consent of the owner of the SST Property for the Globenet Cable System to be on the SST Property, or the consent of ACOE to transfer rights to Caribbean or any other entities.[6]

79.    Moreover, the 2020 Consent is a nullity as the condition precedent of consent of the private landowner prior to construction/installation of the Globenet Cable System on the SST Property could never have been met.

80.    Globenet is also in violation of the 2020 Consent because, as discussed below, it has entered into agreements with third parties that effectively seek to assign Globenet's purported rights under the 2020 Consent to those third parties in violation of the terms of the 2020 Consent, which prohibits any transfer of rights to a third party absent ACOE's prior written consent.

81.    SST has demanded that ACOE revoke the 2020 Consent as an unauthorized and illegal taking of its property rights, and even prior to the issuance of the 2020 Consent, had made ACOE aware that Globenet did not have SST's consent for the Globenet Cable System to be on the SST Property.

---

[6] Related, Globenet and/or other Defendants also appear to be in violation of a number of federal statutes/regulations, including but not limited to, for example: 36 C.F.R. § 327.20 (Unauthorized structures); 33 C.F.R. § 320.2 (Authorities to issue permits); 33 C.F.R. § 320.4 (General policies for evaluating permit applications); 33 C.F.R. § 320.4(g) (Consideration of property ownership); 33 C.F.R. § 320.4(j) (Other Federal, state, or local requirements); 33 C.F.R. § 322.5(i) (Power transmission lines); 33 U.S. Code § 408 (Taking possession of, use of, or injury to harbor or river improvements); Section 1237 of the National Defense Authorization Act for Fiscal Year 1999; and 47 C.F.R. § 1.767 (Cable landing licenses).

TOBIN & REYES, P.A.

MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

82.     Despite ACOE being aware that Globenet does not have SST's consent to occupy the SST Property with the Globenet Cable System, ACOE has not revoked the 2020 Consent or otherwise sought to enforce the terms of the 2020 Consent against Globenet.

83.     Similarly, despite ACOE being aware of Globenet's violation of the 2020 Consent because Globenet does not have consent to occupy the SST Property with the Globenet Cable System, ACOE has not revoked any RHA permits used by Globenet or Caribbean.

84.     Moreover, ACOE's actions in issuing the 2020 Consent, and failing to enforce its terms, has allowed Globenet to enter into agreements ("Agreements" ) with third parties (*i.e.*, the John Does) to allow them to use the Globenet Cable System to conduct commerce across the SST Property, without such parties being required by ACOE to obtain their own consent to use the Federal Easement, let alone the consent of SST to use the SST Property.

85.     Many, if not all, of these third parties (John Does) have been utilizing the Federal Easement for the ICW without any authorization from ACOE in violation of the RHA.

86.     As such, by allowing the use of the ICW and the Federal Easement by parties that do not have ACOE's consent, let alone the consent of the underlying property owner(s), ACOE is violating the terms of, exceeding the scope of, and/or overburdening the Federal Easement.

87.     Related, ACOE is violating the terms of, exceeding the scope of, and/or overburdening the Federal Easement by granting consents to use, or otherwise allowing the use of, the Federal Easement for purposes well beyond the limited scope of the easement.

88.     Specifically, whereas the scope of the Federal Easement is limited by the Federal Judgment to the construction and maintenance of the ICW by the United States/ACOE, ACOE has granted consents to use the Federal Easement for, or otherwise allowed the Federal Easement to be used for, privately-owned fiber optic cables for private companies to conduct interstate and

TOBIN & REYES, P.A.

MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

international commerce, such as advertising, streaming movies, selling products to consumers, transferring funds, etc. . .

89.    Notably, some of the Agreements involve officially identified adversary government-owned foreign companies (*e.g.*, China Unicom and China Telecom) that are currently "Blacklisted" and under federal investigation, including the FCC, the U.S. Department of Defense, the U.S. Department of Homeland Security, and/or by the U.S. Department of Justice, for posing a significant threat to U.S. national security and law enforcement interests. *See, e.g.*, FCC News Release and related Order re China Unicom, true and correct copies of which are attached hereto as **Exhibit "J"**; FCC News Release and related Order re China Telecom, true and correct copies of which are attached hereto as **Exhibit "K"**; *see also* Presidential Executive Order 13913, dated April 4, 2020 (signed by President Trump), a true and correct copy of which is attached hereto as **Exhibit "L"**; Presidential Executive Order 13959 (signed by President Trump) (as amended and expanded June 3, 2021 by President Biden), a true and correct copy of which is attached hereto as **Exhibit "M"**; Staff Report, Permanent Subcommittee on Investigations, United States Senate, *Threats to U.S. Networks: Oversight of Chinese Government-Owned Carries*, a true and correct copy of which is attached hereto as **Exhibit "N"**; Paul, Weiss, Rifkind, Wharton & Garrison LLP, *Update on Communist Chinese Military Companies (CCMCs) Sanctions: Amended Executive Order, New OFAC Guidance, Expanded Criteria for CCMCs, and Additional CCMCs Identified* (January 16, 2021), a true and correct copy of which is attached hereto as **Exhibit "O"**; Correspondence from counsel for City of Boca Raton to FCC, U.S. Department of Justice, and U.S. Department of Homeland Security, dated January 14, 2021, a true and correct copy of which is attached hereto as **Exhibit "P."**

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

90.     As such, by issuing and failing to enforce the terms of the 2020 Consent, ACOE may be indirectly aiding and abetting foreign adversaries of the United States who may be engaged in governmental and/or commercial espionage, or even endangering homeland security.

91.     More specifically, by issuing and failing to enforce the terms of the 2020 Consent, ACOE appears to be allowing a federal resource and asset of the Department of Defense – namely, the ICW – to be used by Chinese companies with ties to the Chinese military.

92.     Further, some of the Agreements are with or otherwise involve indirectly private media, fiber optic cable companies, including companies referred to collectively as "Big Tech," and some such companies have employed discriminatory practices to censor or otherwise oust voices from their platforms based on certain social and/or political views.

93.     As such, by issuing and failing to enforce the terms of the 2020 Consent, ACOE may be indirectly aiding and abetting Big Tech in engaging in censorship, which appears to be contrary to Presidential Executive Order 13925, dated May 28, 2020 (signed by President Trump), a true and correct copy of which is attached hereto as **Exhibit "Q."**

94.     More specifically, by issuing and failing to enforce the terms of the 2020 Consent, ACOE appears to be allowing a federal resource and asset of the Department of Defense – namely, the ICW – to be used by Big Tech companies like Facebook and Amazon to censor the voices of American citizens based on social and/or political views.

95.     SST, as the owner of the SST Property, does not wish to aid or abet, or be seen to aid or abet, through the use of the SST Property, foreign adversaries or Big Tech in engaging in activities that may harm the United States and/or United States companies or citizens, and/or violate SST's civil rights (*e.g.*, by effectively forcing SST, through the use of the SST Property, to censor Americans) and/or the civil rights of other Americans.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

96.     SST supports freedom of speech as guaranteed by the First Amendment of the U.S. Constitution, and thus does not wish to have its civil rights, and/or the civil rights of others, violated through the SST Property being used by companies who censor Americans based on social and/or political views.

97.     All conditions precedent to the maintenance of this action have been satisfied, waived, or otherwise excused.

98.     SST, Coastal, and PBC ICW have retained counsel, including undersigned counsel, to represent their interests and must pay reasonable attorneys' fees for those services.

## CROSS-CLAIMS

### COUNT I
### Declaratory Relief Under The Quiet Title Act
### (Cross-Plaintiffs against Cross-Defendants)

99.     Cross-Plaintiffs reallege paragraphs 1 through 98, above.

100.     This is a claim for declaratory relief against the BOT, FIND, and ACOE pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the Quiet Title Act, 28 U.S.C. § 2409a and 28 U.S.C. § 1346(f).

101.     This Court has original subject matter jurisdiction under the Declaratory Judgment Act, and/or under the Quiet Title Act, and/or pursuant to the coercive action doctrine because if ACOE brought a coercive action to enforce its rights under the Federal Easement against SST, such suit would necessarily present a federal question – namely, the scope of the Federal Easement as to the SST Property.

102.     In addition, or alternatively, this Court has supplemental jurisdiction pursuant to 28 U.S.C § 1367 because this claim is related to other claims pled herein over which the Court has original subject matter jurisdiction.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

103.    An actual controversy has arisen between SST and the Cross-Defendants as to the scope of the Federal Easement requiring a declaration of this Court.

104.    Absent the Court re-opening the Federal Judgment under Rule 60 of the Federal Rules of Civil Procedure, the Cross-Defendants cannot assert claims that would contradict the factual findings of the Federal Judgment which resulted in the Federal Easement over the SST Property.

105.    An actual controversy has arisen between SST and ACOE based upon the 2020 Consent requiring a declaration of the scope of the Federal Easement.

106.    In seeking the 2020 Consent, Globenet falsely represented to ACOE that the BOT owned the SST Property.

107.    In issuing the 2020 Consent, ACOE accepted Globenet's false representation that the SST Property was owned by the BOT, rather than by SST, in direct contravention of the findings of the Federal Judgement to which ACOE is bound.

108.    Until ACOE's issuance of the 2020 Consent, SST and ACOE did not have a dispute over the scope of the Federal Easement over the SST Property.

109.    Upon the issuance of the 2020 Consent, the United States, acting through ACOE, first claimed a right to issue a consent to use the Federal Easement over the SST Property to a private party without SST's consent (*i.e.*, to Globenet), and first claimed a right to authorize activities beyond the scope of the Federal Easement (*i.e.*, not for the construction or maintenance of the ICW) on the SST Property without SST's consent.

110.    Until ACOE's issuance of the 2020 Consent (against the express objection of SST and in violation of SST's rights), and subsequent refusal by ACOE to enforce the terms of the 2020 Consent against Globenet, SST was not aware ACOE would assert such rights.

111.    By issuing the 2020 Consent to Globenet, and/or by failing to enforce the terms of the 2020 Consent against Globenet, and/or by allowing the use of the ICW and the Federal Easement by parties that do not have ACOE's consent, let alone the consent of the underlying property owner(s), ACOE is improperly asserting a new or expanded interest in the SST Property beyond the scope of the Federal Easement that is fundamentally incompatible with SST's interest in the SST Property, and/or violating the terms of and/or overburdening the Federal Easement.

112.    Accordingly, the improper issuance of the 2020 Consent, and the failure of and refusal by ACOE to enforce the terms of the 2020 Consent as described herein, has called into question the scope of the Federal Easement in connection with the SST Property, requiring a declaration from this Court as to the scope of the Federal Easement as it relates to the SST Property.

113.    Moreover, following the issuance of the 2020 Consent, the BOT has now also claimed that the SST Property is owned by the State of Florida rather than by SST.

114.    But the BOT's claim that the SST Property is sovereignty land would invalidate the Federal Easement over the SST Property for the construction and maintenance of the ICW since the BOT has not granted an easement over that property to the United States/ACOE.

115.    Pursuant to the Federal Judgment, the United States/ACOE was granted a limited easement by SST's predecessors in title, through condemnation, over the SST Property solely for the construction and maintenance of what is now the ICW (*i.e.*, the Federal Easement), with all other rights in the SST Property being reserved to the underlying property owners (*i.e.*, SST and SST's predecessors in title).

116.    Accordingly, SST seeks a declaration that the BOT cannot, and has no basis to, claim that the SST Property is sovereign submerged land owned by the State of Florida absent re-opening the Federal Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

117.    FIND is an indispensable party to this claim for declaratory relief as its rights will be affected by the Court's declaration, and thus is required to be joined to this claim pursuant to Rule 19 of the Federal Rules of Civil Procedure.

118.    Specifically, as the local sponsor of the ICW, FIND is solely responsible under Chapter 374, Florida Statutes, for obtaining, free of cost to the United States, all necessary right-of-way property and suitable fee simple or easement areas for improving and/or constructing the ICW, and for its subsequent maintenance and/or improvement. *See, e.g.*, Notice Regarding Intracoastal Waterway Right-of-Way – Palm Beach County, issued by FIND, a true and correct copy of which is attached here to as **Exhibit "R."**

119.    In contrast, pursuant to Section 253.03(1), the BOT does not have authority over canal rights-of-way such as the ICW, which is FIND's responsibility. This is an additional reason the BOT has no right to claim that the SST Property, which is in the ICW (*i.e.*, a canal right-of-way) is sovereign submerged land owned by the BOT.

120.    Accordingly, if the BOT is permitted to allege that the SST Property is owned by the BOT, and if such a ruling were made, FIND and the United States/ACOE would be found to have failed to secure the necessary easement rights required by Chapter 374, Florida Statutes, and the RHA (as amended).

121.    Notably, if the BOT, either directly, or indirectly through allegations made by private parties such as Globenet and Caribbean,[7] is permitted to call into question the Federal

---

[7] SST denies that Globenet or Caribbean have standing to assert a sovereign land claim on behalf he BOT, or to challenge the accuracy of the official 1870 original government survey ("1870 Map") from which SST deraigns its title. As alleged in SST's operative Amended Complaint, SST's chain of title originates from an April 25, 1883 deed (recorded April 9, 1886) from the BOT conveying government lots identified on the 1870 Map.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

Judgment, then the ownership of property located in all government canals, including in the South Florida Water Management District, is put in question.

122.    For example, if the SST Property, having been found by way of the Federal Judgment to be owned by SST's predecessors in title, can later be found to be owned by the BOT, then the successors in interest to all of the lands found to be privately owned by way of the Federal Judgment are at risk of having their land deemed claimed by the BOT as well.

123.    In short, private ownership of submerged lands within the legally obtained federal easements from Jacksonville to Key West in the State of Florida will be at risk if the BOT can allege ownership of, and be found to own, land that was previously proven to be owned by private individuals or entities by way of the Federal Judgment.

124.    This makes a declaration as requested herein all the more critical.

125.    Further, by unlawfully allowing the Globenet Cable System on the SST Property, BOT, ACOE, and FIND are allowing the Globenet Cable System to unlawfully interfere with Coastal's Mineral and Resource Subsurface Rights.

126.    Similarly, by unlawfully allowing the Globenet Cable System on the SST Property, BOT, ACOE, and FIND are allowing the Globenet Cable System to unlawfully interfere with PBC ICW's Drainage Easement.

127.    The declaration sought herein thus concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts.  Such declaration will not be advisory in nature.

WHEREFORE, Cross-Plaintiffs seek a declaration:

a.    Affirming the finality of the Federal Judgment;

b.    Declaring that SST is the fee simple owner of the SST Property;

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

c.  Declaring that the Cross-Defendants are prohibited from claiming that the SST Property is sovereign submerged land owned by the State of Florida in light of the Federal Judgment by which the SST Property was determined to be privately owned by SST's predecessors in title;

d.  Declaring that ACOE was not authorized to issue the 2020 Consent under the terms of the Federal Easement, and that therefore the 2020 Consent is null and void because ACOE exceeded the scope of the Federal Easement in issuing it;

e.  Declaring that ACOE is violating the terms of, exceeding the scope of, and/or overburdening the Federal Easement;

f.  Declaring that Globenet does not have a valid consent from ACOE to use the Federal Easement, and therefore any RHA permits from ACOE to Globenet are null and void.

g.  Declaring that Caribbean does not have a valid consent from ACOE to use the Federal Easement, and therefore any RHA permits from ACOE to Caribbean are null and void.

h.  Declaring that, if or to the extent that the 2020 Consent is not revoked or declared a nullity and thus remains in force, ACOE cannot fail and refuse to enforce the terms of the 2020 Consent under the terms of the Federal Easement;

i.  Declaring that, if or to the extent that the 2020 Consent is not revoked or declared a nullity and thus remains in force, the 2020 Consent does not and cannot confer rights to any third parties (such as the John Does) absent prior written notice to ACOE, and the express prior written consent of SST;

j.  Declaring that ACOE does not have authority under the Federal Easement to issue consents to use the Federal Easement over the SST Property to third parties without first ensuring that the prospective grantee of such a consent has the consent of SST, the underlying property owner;

k.  Declaring that ACOE does not have authority under the Federal Easement to issue consents to use the Federal Easement over the ICW to third parties without first ensuring that the prospective grantee of such a consent has the consent of the underlying property owner(s);

l.  Declaring that any rights granted by the BOT to Globenet with respect to the SST Property, including any quit claim easements, are null and void as to the SST Property because the BOT does not own the SST Property, SST does, and thus the BOT had and has no right to grant any rights or easements over the SST Property;

m.  Declaring that the Globenet Cable System unlawfully interferes with Coastal's Mineral and Resource Subsurface Rights;

TOBIN & REYES, P.A.

MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

n.  Declaring that the Globenet Cable System unlawfully interferes with PBC ICW's Drainage Easement;

o.  Declaring that Caribbean's FCC license for its cable that traverses the ICW and SST Property be revoked because Caribbean does not have consent to use the Federal Easement from ACOE as required by 47 C.F.R. § 1.767;

p.  Granting Cross-Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

q.  Granting such other relief as the Court deems just and proper.

**COUNT II**
**Violation of Takings Clause of Fifth Amendment of the U.S. Constitution**
**(Cross-Plaintiffs against ACOE)**

128.    Cross-Plaintiffs reallege paragraphs 1 through 98, above.

129.    The United States/ACOE was granted the limited Federal Easement by SST's predecessors in title pursuant to the Federal Judgment.

130.    The Federal Easement was limited to granting only the rights necessary to construct and maintain the waterway which is now the ICW, and the Federal Judgment expressly reserved to the underlying private property owners all other rights in their property.

131.    By issuing the 2020 Consent to Globenet (against the express objection of SST and in violation of SST's rights), and/or by failing to enforce the terms of the 2020 Consent against Globenet despite Globenet being in violation of the 2020 Consent, ACOE has breached and improperly expanded the scope of the Federal Easement.

132.    This breach and/or improper expansion of the scope of the Federal Easement has deprived SST of a legitimate constitutionally protected property interest.

133.    Specifically, as the fee simple owner and record titleholder of the SST Property, SST has a constitutionally protected property interest in the SST Property.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

134.     SST has not consented to the SST Property being used or occupied by the Globenet Cable System through the 2020 Consent, nor did Globenet receive consent for the installation or use or occupation by Globenet Cable System from any predecessor in title to the SST Property.

135.     Indeed, the Globenet Cable System was installed surreptitiously, and without notice to the owners of the SST Property at the time, and thus the owners of the SST Property at the time of installation did not know, and could not have known, of the installation.

136.     By issuing and/or by failing to enforce the terms of the 2020 Consent, ACOE has allowed the Globenet Cable System to unlawfully use and occupy the SST Property, and for such system to be used not only by Globenet, but by third parties (John Does) with which Globenet has Agreements purportedly allowing those parties to use the Globenet Cable System, and/or by the public to the extent that members of the public directly or indirectly use the Globenet Cable System through Globenet and/or through the third parties that use the Globenet Cable System.

137.     Indeed, through ACOE's subject conduct, ACOE is enticing and encouraging trespassing on the SST Property by the public and others in violation of SST's rights.

138.     SST has not received just compensation (or any compensation whatsoever) for the unlawful use and occupation of the SST Property by the Globenet Cable System (not only in relation to Globenet's use of the Globenet Cable System, but also in relation to the use of the Globenet Cable System by and through Globenet, such as by third parties (John Does) with which Globenet has Agreements, and who are using the Globenet Cable System to conduct commerce).

139.     As such, through the 2020 Consent, ACOE has unlawfully taken the portion of the SST Property occupied by the Globenet Cable System for a public purpose, to the extent the purpose of issuing the 2020 Consent was to allow the public to use (now or in the future) the

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

Globenet Cable System, and hence allowed Globenet and third parties (John Does) to use the portion of the SST Property occupied by the Globenet Cable System.

140.    Alternatively, through the 2020 Consent, ACOE has unlawfully taken the portion of the SST Property occupied by the Globenet Cable System solely for the purpose of transferring it from SST to another private party, Globenet, and/or to Globenet and other private third parties (John Does), solely for their private use, in violation of the Fifth Amendment.

141.    In both instances, ACOE has breached the Federal Easement by issuing and failing to enforce the 2020 Consent, and as a result has unlawfully taken the portion of the SST Property occupied by the Globenet Cable System without providing just compensation to SST in violation of the Fifth Amendment of the U.S. Constitution.

WHEREFORE, Cross-Plaintiffs demand judgment against ACOE for breach of the Federal Easement and the unlawful taking of the portion of the SST Property occupied by the Globenet Cable System, compensation for such unlawful taking, revocation or enforcement of the 2020 Consent, granting Cross-Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412, and such other and further relief as the Court deems just and proper.

## COUNT III
### Violation of SST's Procedural Due Process Rights
### (Cross-Plaintiffs against ACOE)

142.    Cross-Plaintiffs reallege paragraphs 1 through 98, above.

143.    ACOE has repeatedly violated SST's procedural due process right in connection with ACOE's issuance of and failure to enforce the 2020 Consent.

144.    ACOE's issuance of the 2020 Consent has deprived SST of its constitutionally protected property interest in the SST Property by allowing the Globenet Cable System to

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

unlawfully use and occupy the SST Property without SST's consent, and without any compensation paid to SST for such use and occupation.

145.    ACOE's failure and/or refusal to enforce the terms of the 2020 Consent, including the requirement that Globenet (the Grantee) obtain the consent of the underlying property owner (*i.e.*, SST), or to otherwise revoke the 2020 Consent, has continued to deprive SST of its constitutionally protected property interest in the SST Property.

146.    Further, ACOE issued the 2020 Consent over the SST Property without providing notice to SST, let alone an opportunity for SST to be heard on the matter prior to, or even after, the issuance of the 2020 Consent.

147.    ACOE has also improperly allowed third parties to use the SST Property in violation of the 2020 Consent to the extent that ACOE has allowed Globenet to authorize third parties (John Does) to use the Globenet Cable System without requiring those third parties to obtain SST's Consent.

148.    Moreover, there is no process, or at least no constitutionally adequate process, to protect the interests of private property owners such as SST in connection with ACOE's issuance and/or failure to enforce consents to use the Federal Easement over private property.

149.    Accordingly, SST has been deprived of pre-deprivation due process due to a lack of process to provide notice and an opportunity to be heard prior to the 2020 Consent being issued by ACOE, and of post-deprivation due process due to a lack of process to address ACOE's failure and/or refusal to enforce the terms of the 2020 Consent against Globenet.

WHEREFORE, Cross-Plaintiffs demand judgment against ACOE for violating SST's procedural due process right, revocation or enforcement of the 2020 Consent, a permanent injunction prohibiting ACOE from issuing any consents to use the Federal Easement over the SST

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

Property absent prior written consent from SST, a permanent injunction prohibiting ACOE from issuing consents to use the Federal Easement over the ICW without first ensuring that the prospective grantee of such a consent has the consent of the underlying property owner(s), granting Cross-Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412, and such other and further relief as the Court deems just and proper.

### COUNT IV
### Violation of the Rivers & Harbors Act Under the APA
### (Cross-Plaintiffs against ACOE)

150.    Cross-Plaintiffs reallege paragraphs 1 through 98, above.

151.    The "River & Harbor Act" may refer to one of many pieces of legislation and appropriations passed by the United States Congress.

152.    The Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401 et seq., is the nation's oldest federal environmental law, and prohibits a number of activities that impair ports, channels, and other navigable waters.

153.    Section 408 of the RHA ("Section 408"), 33 U.S.C. § 408 (Taking possession of, use of, or injury to harbor or river improvements), makes it unlawful to "build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States" without permission from ACOE.

154.    The ICW is a federal project or "work built by the United States."

155.    Prior to granting permission under Section 408 for any particular use or occupation of a federal project/public works, ACOE must determine, based on a recommendation of the Chief of Engineers, whether the proposed use or occupation will be injurious to the public interest or impair the usefulness of the federal project/public works (here, the ICW).

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

156.     As the SST Property is located within the ICW, SST and/or the SST Property are within the zone of interest to be protected by the requirements of Section 408.

157.     The 2020 Consent was issued by ACOE to Globenet under the authority of Section 408, as it authorized Globenet (and only Globenet, not third parties such as the John Does) to use the ICW pursuant to the Federal Easement.

158.     However, ACOE failed to comply with the requirements of Section 408 in issuing the 2020 Consent to Globenet because ACOE never determined whether it would be injurious to the public interest to issue the 2020 Consent to Globenet over private property (*i.e.*, the SST Property) owned by SST in the absence of SST's consent.

159.     ACOE also violated (and/or is presently in violation of) the RHA in that the 2020 Consent was issued after the Globenet Cable System had been installed, despite the requirement that a consent to use the Federal Easement be issued prior to any construction in the ICW.  *See* Public Notice issued by ACOE, dated May 24, 2019, a true and correct copy of which is attached hereto as **Exhibit "S."**

160.     ACOE also violated the RHA (and/or is presently in violation of) the RHA in that ACOE has failed to revoke RHA permits issued to Globenet and  Caribbean even though neither Globenet nor Caribbean have, or have ever had, a valid consent from ACOE to use the Federal Easement over the SST Property.

161.     As such, the RHA permits relied upon to construct the Globenet Cable System is invalid, yet ACOE has not revoked the RHA permits or otherwise complied with these requirements of the RHA.  *See id.*

162.     SST contends that it is injurious to the public interest to issue the 2020 Consent and grant permission to use or occupy the ICW, and the private property over which the ICW runs, in

Tobin & Reyes, P.A.
Mizner Park Office Tower • 225 N. E. Mizner Boulevard, Suite 510 • Boca Raton, Florida • 33432

the absence of ensuring that the underlying private property owner has consented to the proposed use or occupation, and moreover is in compliance with all the requirements of the RHA.

163.    At a minimum, however, ACOE's failure to make a determination that granting the 2020 Consent to Globenet over the SST Property, without first ensuring that SST consented to the use and occupation by Globenet/the Globenet Cable System of the SST Property, is a violation of Section 408 of the RHA, and reviewable by this Court under the APA (5 U.S.C. § 702).

WHEREFORE, Cross-Plaintiffs demand judgment against ACOE for violating Section 408 and/or other provisions of the RHA, revocation or enforcement of the 2020 Consent, revocation of any and all RHA permits issued to Globenet and Caribbean for the use of the SST Property, a permanent injunction prohibiting ACOE from issuing any consents to use the Federal Easement over the SST Property absent prior written consent from SST, a permanent injunction prohibiting ACOE from issuing consents to use the Federal Easement over the ICW without first ensuring that the prospective grantee of such a consent has the consent of the underlying property owner(s), granting Cross-Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412, and such other and further relief as the Court deems just and proper.

**COUNT V**
**Permanent Mandatory Injunction**
**(Cross-Plaintiffs against ACOE)**

164.    Cross-Plaintiffs reallege paragraphs 1 through 98, above.

165.    This is an action against ACOE for permanent injunctive relief.

166.    ACOE's illegal, intentional, and unauthorized issuance of consents to use the Federal Easement over the SST Property, through the 2020 Consent, without first ensuring that the prospective grantee of such a consent has the consent of SST, the underlying property owner, constitutes a past, present, and continuing violation of SST's constitutionally protected property

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

rights, including by purportedly authorizing third parties such as Globenet to unlawfully enter, detain, and occupy SST's property despite such third parties lacking SST's consent for such entry, detention, and occupation.

167.    The SST Property, like all real property, is unique, and there is no remedy at law or amount of damages that can compensate SST so long as ACOE continues to issue consents to use the Federal Easement over the SST Property to third parties without first ensuring that SST has given its consent to such third parties to enter, detain, and/or occupy the SST Property.

168.    SST has a clear legal right to the possession, use, and quiet enjoyment of the SST Property, and ACOE's illegal, intentional, and unauthorized issuance of consents to third parties to use the Federal Easement over the SST Property without first ensuring that SST has given its consent to such third parties to enter, detain, and/or occupy the SST Property denies SST possession, use, and quiet enjoyment of the SST Property.

169.    Further, the threatened injury to SST by the 2020 Consent and by ACOE's illegal, intentional, and unauthorized issuance of consents to use the Federal Easement over the SST Property without first ensuring that the prospective grantee of such a consent has SST's consent, far outweighs any possible harm to ACOE if an injunction is entered mandating the revocation of the 2020 Consent and prohibiting ACOE from issuing any further consents to use the Federal Easement over the SST Property without first ensuring that SST has consented to the proposed entry, detention, and/or occupation of the SST Property, and thus the granting of an injunction will serve the public interest, including by protecting constitutionally protected private property rights.

170.    As such, SST will be irreparably harmed by the 2020 Consent and by ACOE issuing other consents to use the Federal Easement over the SST Property without first ensuring that SST has consented to the proposed entry, detention, and/or occupation of the SST Property.

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432

WHEREFORE, Cross-Plaintiffs demand judgment in their favor and against ACOE:

a.  Mandating that ACOE revoke the 2020 Consent;

b.  Mandating that ACOE revoke any and all RHA permits issued to Globenet (or its predecessors in interest) for the Globenet Cable System on the SST Property due to the lack of a valid consent from ACOE to use the Federal Easement over the SST Property ;

c.  Mandating that ACOE revoke any and all RHA permits issued to Caribbean for the use of the SST Property due to the lack of a valid consent from ACOE to use the Federal Easement over the SST Property ;

d.  Permanently enjoining ACOE from issuing consents to use the Federal Easement over the SST Property without first ensuring that the prospective grantee of such a consent has SST's consent;

e.  Permanently enjoining ACOE from issuing consents to use the Federal Easement over the ICW without first ensuring that the prospective grantee of such a consent has the consent of the underlying property owner(s);

f.  Granting Cross-Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

g.  Granting such other relief as the Court deems just and proper.

Respectfully submitted,

s/Sacha A. Boegem
Ricardo A. Reyes, FBN 864056
Sacha A. Boegem, FBN 0024930
Carrie S. Robinson, FBN 354030
TOBIN & REYES, P.A.
*Attorneys for South Spanish Trail, LLC*
Mizner Park Office Tower
225 N. E. Mizner Blvd., Suite 510
Boca Raton, FL 33432
Phone: (561) 620-0656
Fax:    (561) 620-0657
eservice@tobinreyes.com
rar@tobinreyes.com
sboegem@tobinreyes.com
csrobinson@tobinreyes.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of said filing to all CM/ECF participants.

s/Sacha A. Boegem
Sacha A. Boegem, FBN 0024930

TOBIN & REYES, P.A.
MIZNER PARK OFFICE TOWER • 225 N. E. MIZNER BOULEVARD, SUITE 510 • BOCA RATON, FLORIDA • 33432