## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

SOUTH SPANISH TRAIL, LLC.,
a Florida limited liability corporation,

      Plaintiff,

v.                                 CASE NO. 9:21-cv-80728

GLOBENET CABOS SUBMARINOS
AMERICA, INC., a Delaware for-profit
corporation, CARIBBEAN CROSSINGS
LTD., INC., AND JOHN DOES 1-100,

      Defendants.
_____/

GLOBENET CABOS SUBMARINOS
AMERICA, INC. and CARIBBEAN
CROSSINGS LTD, INC.,

      Counter-Plaintiffs,

v.

SOUTH SPANISH TRAIL, LLC, and
BOARD OF TRUSTEES OF THE
INTERNAL IMPROVEMENT TRUST
FUND OF THE STATE OF FLORIDA,

      Counter/Third-Party Defendants.
_____/

SOUTH SPANISH TRAIL, LLC,

      Cross-Plaintiff,

v.

BOARD OF TRUSTEES OF THE
INTERNAL IMPROVEMENT TRUST
FUND OF THE STATE OF FLORIDA,
FLORIDA INLAND NAVIGATIONAL
DISTRICT, and UNITED STATES OF
AMERICA,

      Cross-Defendants.

_____/

## CROSS-DEFENDANT BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND'S MOTION TO DISMISS FIRST AMENDED CROSSCLAIMS OF SOUTH SPANISH TRAIL, LLC

Cross-Defendant Board of Trustees of the Internal Improvement Trust fund of the State of Florida (Board of Trustees), by and through undersigned counsel and pursuant to rules 8(a)(2), 12(b)(1), and 12(b)(6), Federal Rules of Civil Procedure, and rule 7.1, Rules of the Southern District, moves to dismiss the First Amended Crossclaims of Plaintiff/Counter-Plaintiff South Spanish Trail, LLC (SST) (Doc. 106), and as grounds therefore would show:

1.     SST initially filed this action against Defendant/Third-Party Plaintiff Globenet Cabos Submarinos America, Inc. (Globenet) and John Does 1-100, case no. 50-2020-CA-002024, in the Circuit Court of the Fifteenth Judicial Circuit of Florida, in and for Palm Beach County. SST subsequently filed an amended complaint adding Caribbean Crossings, LTD, Inc. (Caribbean) as an additional party defendant. (Doc. 1, Ex. 1). SST's claims against Globenet, John Does 1-100, and Caribbean stem from the 2000-2003 installation of subterranean conduits by Globenet's predecessor in interest

2

under sovereign land submerged beneath the Intracoastal Waterway (ICW) in Palm Beach County. (Doc. 1, Ex. 1 ¶¶ 57, 61). SST claims to have purchased the submerged property in question on December 9, 2016 and March 29, 2017, at least 13 years *after* installation of the conduit.

2.    Globenet and Caribbean brought counterclaims against SST and third-party claims against the Trustees for declaratory relief on October 20, 2020. (Doc. 1, Ex. 2). The third-party claims against the Trustees seek a declaration that the submerged lands in dispute are sovereign lands to which the Trustees hold title. Globenet's and Caribbean's third-party claims against the Trustees were motivated substantially, if not entirely, by SST's erroneous argument that only the Trustees have standing to claim that the submerged property in question is sovereign land. *See* SST's Answer, Affirmative Defenses and Crossclaim to First Amended Counter Claim. (Doc. 1, Ex. 3 p. 19, n. 1).

3.    SST filed counterclaims against the Trustees, the United States, and the Florida Inland Navigation District (FIND) for declaratory relief (Count I) and against the Trustees for slander of title (Count II) on March 18, 2021. (Doc. 1, Ex. 3). The United States removed this action to federal court following service of SST's counterclaims pursuant to 28 U.S.C. § 1442(a)(1). (Doc. 1).

4.    The Trustees filed their Motion to Dismiss SST's Crossclaims on May 17, 2021. (Doc. 64).

3

5.      In response to the Trustees' Motion to Dismiss, SST abandoned its Crossclaim and filed its First Amended Crossclaims (FAC) (Doc. 106) on June 7, 2021 pursuant to rule 15(a)(1)(B), Fed. R. Civ. P. The FAC attempts to allege a cause of action against the Trustees, FIND and the United States Army Corps of Engineers[1] (USACOE) for declaratory judgment. Counts II through V attempt to allege additional causes of action against USACOE, underscoring SST's desperation to purchase a jurisdictional foothold in this Court.

6.      SST alleges that this Court has subject matter jurisdiction of its claims against the Trustees pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Quiet Title Act, 28 U.S.C. § 2409a, and 28 U.S.C. § 1367. (Doc. 106, ¶¶ 101, 102). SST's allegations concerning subject matter jurisdiction of its claims against the Trustees in this Court are baseless.

7.      The lands in dispute are sovereign submerged lands of the State of Florida to which the Trustees hold title in trust for the people of Florida pursuant to Article X, section 11 of the Florida Constitution.[2]

8.      SST's claim that the Trustees alienated the sovereign lands to which it claims title in 1883 is without merit. (Doc. 106, ¶ 27). Florida's

---

[1] SST's initial counterclaims named the United States as a counter-defendant, not USACOE.

[2] Article X, section 11 of the Florida Constitution provides that "[t]he title to lands under navigable waters, within the boundaries of the state, which have not been alienated, including beaches below mean high water lines, is held by the state, by virtue of its sovereignty , in trust for all the people."

sovereign lands can only be conveyed with express intent and authority. The 1883 deed claimed by SST as the root of its title did not expressly convey sovereign lands, and the Trustees did not have authority to convey sovereign submerged lands in 1883.

9.      SST alleges that a declaratory judgment against the Trustees is necessary because:

(a)     "[T]he [Trustees'] claim that the SST Property is sovereignty land would invalidate the Federal Easement over the SST Property for the construction and maintenance of the ICW." (Doc. 106 ¶ 114).

(b)     The Trustees cannot claim the disputed property as sovereign without reopening the 1935 federal condemnation judgment. (Doc. 106, ¶ 116).

(c)     The Trustees cannot claim the disputed property as sovereign because they do "not have authority over canal rights-of-way, which is FIND's responsibility." (Doc. 106, ¶ 119).

(d)     If BOT is permitted to claim the disputed property as sovereign "FIND and the [USACOE] would be found to have failed to secure the necessary easement rights" over the ICW. (Doc. 106, ¶ 120).

(e)     If the Trustees are "permitted to call into question the [1935 federal condemnation judgment] then the ownership of property located in all government canals…is put into question." (Doc. 106, ¶¶ 121-23).

10.     Count I of SST's counterclaim requesting declaratory judgment fails to state a cause of action against the Trustees and must be dismissed because:

a)     SST's claim against the Trustees is barred by sovereign immunity as set forth in the Eleventh Amendment to the United States Constitution, and as a result this Court lacks subject matter jurisdiction.

b)     The submerged lands claimed by Plaintiff were not conveyed into private ownership as claimed by SST.

c)     SST has failed to allege a bona fide, present dispute requiring the requested declaratory judgment and this Court lacks subject matter jurisdiction for this reason as well.

d)     SST's claim for declaratory relief is a shotgun pleading which impermissibly combines multiple declarations against multiple Defendants in a single count.

## MEMORANDUM OF LAW

### I.     SST's Claims Against the Trustees in Federal Court are Barred by Sovereign Immunity as Expressed in the Eleventh Amendment to the United States Constitution

"Sovereign immunity is, simply put, the privilege of a sovereign not to be sued without its consent." *Midnight Pass Soc'y,* 2013 WL 1245987 at *12, citing *Hans v. Louisiana,* 134 U.S. 1, 16-17 (1890). The Eleventh Amendment confirmed sovereign immunity as a constitutional principal, it did not establish

6

it. See *Alden v. Maine*, 527 U.S. 706, 728-29 (1999) ("The Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principal; it follows that the scope of the State's immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design.") In this case in which a private party seeks to quiet title to sovereign land against the State, sovereign immunity "bars the extant claims from proceeding in federal court." *Midnight Pass Soc'y* at \*11.

The Eleventh Amendment to the Constitution of the United States directs that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Seminole Tribe of Florida v. Florida*, 517 U.S. 43, 54 (1996). The U.S. Supreme Court has consistently held that absent waiver of Eleventh Amendment immunity, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, (1974). (emphasis added). "[T]he Eleventh Amendment has been described as a jurisdictional gatekeeper for federal courts as it 'deals only with federal jurisdiction to hear suits against the state, not with the state's immunity from suit in any forum.'" *Midnight Pass Soc'y, Inc.* 2013 WL 1245987 at \*12, quoting *Hufford v. Rodgers,* 912 F.2d

1338, 1340-41 (11ᵗʰ Cir. 1990).

The immunity from suit in federal courts afforded states by the Eleventh Amendment applies equally to agencies acting under their control. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy*, Inc., 506 U.S. 139, 144 (1993). "Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'" *Id.*, quoting *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 480 (1987) (plurality opinion). *See also Edelman*, 415 U.S. at 663 ("[T]he amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities.")

Nor may SST avoid application of Eleventh Amendment immunity by seeking declaratory relief against the Trustees. "[W]e have often made it clear that the relief sought by a Plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Florida*, 517 U.S. at 58. See also *Cory v. White*, 457 U.S. 85, 90(1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money is sought."); *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 48(1994) (Eleventh Amendment does not exist solely to "preven[t] federal-court judgments that must be paid out of a State's treasury"). To the contrary, the Eleventh Amendment serves to avoid "the indignity of subjecting a State to the coercive process of judicial

8

tribunals at the instance of private parties." *Puerto Rico Aqueduct and Sewer Authority,* 506 U.S. at 146.

SST's First Amended Counterclaims acknowledge that the Internal Improvement Trust Fund of the State of Florida is an agency of the State of Florida. (Doc. 106, ¶ 19). The Internal Improvement Trust Fund of the State of Florida is established by section 253.01(1)(a), Florida Statutes, and is charged with maintaining all state lands as well as the funds from the use and sale of those lands. The Board of Trustees of the Internal Improvement Trust Fund consists of the Governor, the Attorney General, the Chief Financial Officer, and the Commissioner of Agriculture. *See* § 253.02(1), Fla. Stat. The Internal Improvement Trust Fund is clearly an agency of the State of Florida entitled to Eleventh Amendment immunity. *Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 144. Further, the Trustees are state officials entitled to immunity from suit in federal court pursuant to the Eleventh Amendment. *Edelman*, 415 U.S. at 663.

SST may not maintain its declaratory judgment action against the Trustees pursuant to the Quiet Title Act (QTA) set forth in 28 U.S.C. § 2409a. That act provides that "[t]he *Unites States* may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). (emphasis added) As an initial matter, the

QTA waives the federal government's sovereign immunity to allow for quiet title suits *against the United States*. But SST is not seeking a declaration quieting its title as against the United States. To the contrary, it seeks a declaration that "SST is the fee simple owner of the SST property" as against the Trustees. (Doc. 106, ¶¶ 113, 116, 119-123, ad damnum clause p. 23, ¶ a). The QTA does not waive the Eleventh Amendment Immunity of the State of Florida, its agencies, or its officers to permit SST to file a quiet title action *against the Trustees* in federal court. "It is common ground between the parties, at this stage of the litigation, that the Tribe could not maintain a quiet title suit against Idaho in federal court, absent the State's consent. *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 281 (1997). The Trustees have not given their consent to be hailed into federal court in this matter.

Nor does the exception to Eleventh Amendment Immunity set forth in *Ex parte Young,* 209 U.S. 123 (1908) apply to allow SST to pursue declaratory relief against the Trustees in federal court. "In *Ex parte Young* the Supreme Court carved an exception to Eleventh Amendment immunity and held that suits can lie for prospective injunctive relief against state officials when there is an ongoing violation of federal law." *Midnight Pass Soc'y, Inc.*, 2013 WL 1245987 at *19; *Ex parte Young* 209 U.S. at 159. In *Idaho v. Coeur D'Alene Tribe*, the Tribe sought prospective injunctive relief establishing its exclusive use and occupancy of submerged lands. *Id.* at 264-65. The Supreme Court held

10

that "the Ex parte Young exception is not applicable in instances when the effect, not the stated objective, of the lawsuit against the agency official is the 'functional equivalent of a quiet title action which implicates special sovereignty interests.'" *Midnight Pass Soc'y* at *20, *quoting Idaho v. Coeur d'Alene Tribe of Idaho* at 281.

In the instant case SST's claim against the Trustees is plainly the functional equivalent of a quiet title action. Plaintiff invokes the QTA as a basis for subject matter jurisdiction over its claim against the Trustees, and seeks declarations that SST is the fee simple owner of the disputed property and that the Trustees are barred from claiming the disputed property is sovereign land. As the Supreme Court held in *Idaho v. Coeur D'Alene Tribe*, "[n]ot only would the relief [sought] block all attempts by [state] officials to exercise jurisdiction over a substantial portion of land but also would divest the State of its sovereign control over submerged lands, lands with a unique status in the law and infused with a public trust the State itself is bound to respect." *Id.* at 456. *See also* Art. X, § 11, Fla. Const. In this case "[t]here is no reasonable construction of the allegations in the complaint that does not implicate the immediate effect of the State of Florida's jurisdictional control over its public lands should [SST] prevail." *Midnight Pass Soc'y* at *24-25 . SST's declaratory judgment claim against the Trustees is therefore barred by Eleventh Amendment Immunity and must be dismissed with prejudice.

## II.     The Sovereign Lands Claimed by SST were not Conveyed into Private Ownership in 1883

Florida's sovereign submerged lands "cannot be conveyed without clear intent and authority, and conveyances , where authorized and intended, must retain public use of the waters." *Coastal Petroleum* Co *. v. American Cyanamid Co.,* 492 So.2d 339, 343 (Fla. 1986). The 1883 deed from the Trustees to Arthur T. Williams that SST claims as the root of its alleged title does not contain an express conveyance of sovereign lands, and SST does not allege to the contrary. (Doc. 1, Ex. 1, ¶¶ 53a., 55a; Doc 106). Nor does the absence of a reservation of sovereign submerged lands in the 1883 Williams deed vest title of sovereign lands in SST. "The fact that a deed of swamp and overflowed lands does not explicitly exempt sovereignty lands from the conveyance does not show that the Trustees intended to convey sovereignty lands encompassed within the swamp and overflowed lands being conveyed." *Id.* As the 1883 deed from the Trustees to Arthur T. Williams does not expressly convey sovereign submerged lands, SST has no claim to any such lands. "Further, because grantees of swamp and overflowed lands took with notice that such grants did not convey sovereignty lands, neither they nor their successors have any moral or legal claim to those lands." *Id.*

Even had the Trustees intended to convey sovereign lands to Williams in 1883, they lacked the legal authority to do so. The Florida legislature did

not grant the Trustees the authority to convey sovereign lands into private ownership until 1917, at the earliest. *See Pierce v. Warren*, 47 So.2d 857, 858 (Fla. 1950) ("The basic question for us to determine is whether the trustees attempted to convey 'sovereignty lands' which they could not have done before the enactment of Chapter 7304 , Acts of 1917…") Because there was no clear intent *or* authority on the part of the Trustees to convey sovereign submerged lands via the 1883 Williams deed, no sovereign land was conveyed. SST cannot therefore claim to be the "title owner" of the sovereign lands at issue in this case.

   III.   **Count I of SST's First Amended Counterclaim Requesting Declaratory Judgment Must be Dismissed Pursuant to Rule 12(b)(1), Fed. R. Civ. P., for Lack of Subject-Matter Jurisdiction**

      A.   **SST has failed to allege a bona fide, actual controversy requiring the requested declaration.**

The Constitution of the United States confines the jurisdiction of federal courts to "cases" and "controversies." Art. III, § 2, U.S. Const. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). "Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists to hear a case, and dismissal is warranted if a court determines that it lacks jurisdiction." *MSP Recovery, LLC v. Allstate Ins. Co.,* 835 F.3d 1351, 1357 (11th Cir. 2016). In the instant case SST cannot

demonstrate Article III standing to bring its declaratory judgment claim against the Trustees for the additional reason that it cannot establish a bona fide, present need for the declaration.

Count I of SST's First Amended Counterclaims purports to bring its claim for declaratory relief against the Trustees pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. (Doc. 106, ¶¶ 6, 101). In cases brought under that act, "the 'actual controversy' requirement is imposed both by Article III of the Constitution and the express terms of the Federal Declaratory Judgment Act." *200 Leslie Condominium Ass'n v. QBE Ins. Corp.,* 965 F.Supp.2d 1405, 1408 (S.D. Fla. 2013). *See also Steffel v. Thompson*, 415 U.S. 452, 460 n. 10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review…")

SST's claim for declaratory relief is predicated upon two hopelessly flawed theories. The first is that the Trustees cannot claim the disputed submerged lands as sovereign "absent the Court re-opening the [1935] Federal Judgment"[3] (FAC ¶ 104). The second is that "the [Trustee's] claim that the SST Property is sovereignty land would invalidate the Federal Easement…for the construction and maintenance of the ICW…" Compl. ¶ 114).

---

[3] *United States of America v. Parcel 8 Sheet*, case no. 793-m, in the United States District Court for the Southern District of Florida.

SST's theories are flawed because they fail to account for the acts of the Florida legislature and the Trustees which granted the United States all necessary rights to construct and maintain the ICW over state lands and waterways in perpetuity. Among these legislative acts is Chapter 4426, Laws of Florida (1895), which provided that:

> SECTION1. That hereafter any railroad or canal company, which is a public carrier, or intended to be, in the construction of its railroad or canal, or in the extension of same, for the purpose of securing terminal facilities therefor on any of the waters of any river, lake, bay, gulf or ocean, shall have and they are hereby given the right to condemn for the use of such railroad or canal company…such area in and over the waters to the limit of the channel, natural or artificial, of such rivers, lakes, bays, gulf or oceans sufficient for ample room for docks, wharves, elevation, berths for ships, ware and store houses, tracks, switches, and all required facilities for the reception, retention transfer and forwarding of commerce.
>
> SEC. 2. That whenever such land or water privileges shall belong to the State of Florida, the use thereof for the aforesaid purposes shall vest in said railroad or canal company upon the occupancy of both or either the said land or water by such company, for such purposes…

This statute granted to the Florida East Coast Canal Company all rights over state lands and waters necessary to construct and operate the Florida East Coast Canal, the predecessor to the ICW. A copy of chapter 4426, Laws of Florida (1895) is attached hereto as Exhibit A.

In 1929, the Florida Legislature passed chapter 13664, Laws of Florida

(1929), which established:

> An Act empowering and directing the Trustees of the
> Internal Improvement Fund of the State of Florida to
> grant and transfer to the United States of America, a
> right-of-way through the submerged, semi-submerged
> and marsh lands, islands and/or uplands to be
> traversed by an inland waterway following the coastal
> route from Jacksonville, Florida to Miami, Florida, to
> be constructed by the United States, pursuant to Act
> of Congress duly approved by the President of the
> United States on January 21st, 1927…

A copy of chapter 13664, Laws of Florida (1929) is attached hereto as Exhibit

B.

On October 29, 1929, the Florida East Coast Canal Company deeded "all

the right, title, interest, claim and demand" in the land over which the ICW

would traverse from Duval County "through the head waters of Bay Biscayne"

to the United States. This deed conveyed all rights over Florida's lands and

waters previously conveyed by the State of Florida to the Florida East Coast

Canal Company for construction of a canal from Jacksonville to Miami to the

United States for construction of the ICW. A copy of the October 29, 1929 deed

from the Florida East Coast Canal Company to the United States is attached

hereto as Exhibit C.

These conveyances reflect that the State of Florida granted to the United

States all necessary right-of-way in state lands, including submerged lands,

16

needed to construct and maintain the ICW in perpetuity. As a result, when the United State filed the condemnation action which resulted in the 1935 federal judgment the U.S. needed only to obtain an easement over property which may have been privately owned. There was simply no need to secure any further rights from the State of Florida.

For these reasons, as well as the reasons set forth in section II B. below, the suggestion that the easement held by the United States for maintenance of the ICW will be invalidated if the submerged lands at issue are determined to be sovereign is preposterous. Count I of the FAC does not allege the actual controversy necessary to establish Article III standing and state a claim under the Declaratory Judgment Act. Consequently SST has failed to set forth a claim for which relief can be granted as required by Federal Rule of Civil Procedure 8(a). Count I of SST's counterclaim against the Trustees fails to establish subject matter jurisdiction as required by rule 12(b)(1), Fed. R. Civ. P. or state a claim upon which relief can be granted as required by rule 12(b)(6), Fed. R. Civ. P. and must therefore be dismissed

### B. The United States has full authority to maintain the ICW pursuant to the Commerce Clause of the United States Constitution

"It has long been settled that Congress has extensive authority over this Nation's waters under the Commerce Clause. Early in our history this Court held that the power to regulate commerce necessarily includes power over

navigation." *Kaiser Aetna v. United States*, 444 U.S. 164, 173 (1979). As SST acknowledges, in the River and Harbor Act of 1927 Congress authorized construction of the ICW to provide inland navigation along the east coast of the United States. Doc. 1, Ex. 3, p. 14 ¶ 1; Doc. 106, ¶ 30. As the Supreme Court explained in *Gilman v. Philadelphia,* 3 Wall. 713, 724-25, 18 L.Ed. 96 (1866):

> Commerce includes navigation. The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States which are accessible from a State other than those in which they lie. For this purpose they are the public property of the nation, and subject to all the requisite legislation by Congress.

The nature and extent of Congress's pervasive authority over national waters such as the ICW was set forth by the Supreme Court in *United States v. Appalachian Power Co.,* 311 U.S. 377, 426-27 (1940):

> [I]t cannot properly be said that the constitutional power of the United States over its waters is limited to control for navigation… In truth the authority of the United States is the regulation of commerce on its waters. Navigability…is but a part of this whole. Flood protection, watershed development, recovery of the cost of improvements through utilization of power are likewise parts of commerce control… [The] authority is as broad as the needs of commerce… The point is that navigable waters are subject to national planning and control in the broad regulation of commerce granted the Federal Government.

Nor does the authority of the United States over national waters depend on the navigability of a given waterbody. "*Appalachian Power Co.* indicates that

the congressional authority over the waters of this Nation does not depend on a stream's 'navigability.'" *Kaiser Aetna*, 444 U.S. at 173-74.

The ICW is an interstate body of water which the United States has authority to regulate and maintain for the purpose of navigation and commerce pursuant to the Commerce Clause of the United States Constitution. Florida's right to use and control its sovereign submerged lands is subservient to the federal government's authority to regulate navigation and commerce over national waters. Seen in this light, SST's argument that the United States' easement will become null and void if the disputed submerged lands are found to be sovereign is exposed as specious.

## IV. Count I of SST's First Amended Counterclaim Requesting Declaratory Relief Must be Dismissed as a Shotgun Pleading

The Eleventh Circuit has identified four general types of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015). A complaint which asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against," is one of the four recognized types of shotgun pleadings. *Id.* Another recognized type of shotgun pleading is a complaint that "commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322-23. "The unifying characteristic of all types of shotgun pleadings is that

they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.;* see also *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F.App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'")

When confronting a shotgun pleading, a Court should dismiss the complaint and instruct the plaintiff to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 984 (11th Cir. 2008), abrogated on other grounds by *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The Eleventh Circuit has condemned shotgun pleadings for "imped[ing] the administration of the district Court's civil dockets." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 806 n.4 (11th Cir. 2010). The Eleventh Circuit has repeatedly held that shotgun pleadings are an unacceptable manner of setting forth a claim for relief and are subject to dismissal.

Count I of SST's FAC asks this Court to issue sixteen (16) separate declarations against three separate Cross-Defendants. SST requests declarations on topics as varied as affirming the finality of the 1935 federal judgment, quieting title in SST, prohibiting the Trustees from claiming the disputed property as sovereign, and that the 2020 Consent from the United is void. Further, Count I seeks declaratory judgments against the Trustees, the

20

United States, and FIND without differentiating which of the sixteen declarations are sought against which. It is impossible for the Trustees to frame a responsive pleading to Count I as it constitutes a shotgun pleading. Count I should be dismissed on this ground as well.

## CONCLUSION

For the reasons set forth above, SST's First Amended Counterclaim against the Trustees must be dismissed with prejudice.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Timothy L. Newhall*
TIMOTHY L. NEWHALL
Florida Bar No.: 391255
Special Counsel
Complex Litigation Section
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 414-9650
Timothy.Newhall@myfloridalegal.com
Complexlitigation.eservice@myfloridalegal.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of June 2021 I electronically filed a true and correct copy of the foregoing Notice of Appearance with the Clerk of Court using the CM/ECF system.

*/s/ Timothy L. Newhall*
Timothy L. Newhall