**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 21-80728-CIV-CANNON**

SOUTH SPANISH TRAIL, LLC, a Florida
limited liability company,

      Plaintiff,

v.

GLOBENET CABOS SUBMARINOS
AMERICA INC., a Delaware for-profit
corporation; CARIBBEAN CROSSINGS,
LTD., INC., a Bahamian Corporation; and
JOHN DOES 1-100,

      Defendants.

_____/

GLOBENET CABOS SUBMARINOS
AMERICA INC. and CARIBBEAN
CROSSINGS, LTD., INC.,

      Counter-Plaintiffs,

v.

SOUTH SPANISH TRAIL, LLC, and BOARD
OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA,

      Counter/Third-Party Defendant.

_____/

SOUTH SPANISH TRAIL LLC,

      Cross-Plaintiff,

vs.

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA, FLORIDA INLAND
NAVIGATION DISTRICT and the UNITED
STATES OF AMERICA,

      Cross-Defendant/Third-Party Cross
      Defendants

(Formerly Case No. 9:21-cv-81206-AMC)

SOUTH SPANISH TRAIL LLC, a Florida limited
liability company,

      Plaintiff,

vs.

GLOBENET    CABOS    SUBMARINOS
AMERICA,   INC.,   a  Delaware  For-Profit
Corporation, and ALL OTHER IN POSSESSION,

      Defendant.
_____/
GLOBENET CABOS SUBMARINOS
AMERICA, INC.,

      Counter-Plaintiff,

vs.

SOUTH SPANISH TRAIL, LLC, and
BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA,

      Counter- and Third-Party Defendants,
_____/

SOUTH SPANISH TRAIL LLC,

      Cross-Plaintiff,

vs.

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA, FLORIDA INLAND
NAVIGATION DISTRICT and the UNITED
STATES OF AMERICA,

      Cross-Defendant/Third-Party Cross
      Defendants

(Formerly Case No: 9:21-cv-81207-AMC)

SOUTH SPANISH TRAIL, LLC a Florida
limited liability company,

      Plaintiff,

v.

CARIBBEAN CROSSINGS, LTD., INC.,
a Bahamian Corporation, and ALL
OTHERS IN POSSESSION BY AND
THROUGH CARIBBEAN CROSSINGS, LTD., INC.,

      Defendants.
_____/

CARIBBEAN CROSSINGS, LTD., INC.,

      Counter/Third-Party Plaintiff,

v.

SOUTH SPANISH TRAIL, LLC,
and BOARD OF TRUSTEES OF THE
INTERNAL IMPROVEMENT TRUST
FUND OF THE STATE OF FLORIDA,

      Counter/Third-Party Defendants.
_____/

SOUTH SPANISH TRAIL LLC,

      Cross-Plaintiff,

vs.

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA, FLORIDA INLAND
NAVIGATION DISTRICT and the UNITED
STATES OF AMERICA,

      Cross-Defendant/Third-Party Cross
      Defendants

(Formerly Case No: 9:21-cv-81208-AMC)

SOUTH SPANISH TRAIL, LLC,

      Plaintiff.

v.

LITTLE CARDINAL, LLC, JOHN FEROLITO SR.,
JOHN FEROLITO JR, and ALL OTHERS IN
POSSESSION BY AND THROUGH LITTLE
CARDINAL, LLC AND/OR JOHN FEROLITO JR.,

      Defendants.

_____/

LITTLE CARDINAL, LLC,

      Counter-Plaintiff/Third-Party Plaintiff,

v.

SOUTH SPANISH TRAIL, LLC, and FLORIDA
INTERNAL IMPROVEMENT FUND,

      Counter/Third-Party Defendant.

_____/

FLORIDA INTERNAL IMPROVEMENT FUND,

      Third-Party Defendant/Third-Party Plaintiff,

v.

GLOBENET CABOS SUBMARINOS AMERICA,
INC.,

      Third-Party Defendant.

_____/

SOUTH SPANISH TRAIL LLC,

      Cross-Plaintiff,

vs.

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA, FLORIDA INLAND
NAVIGATION DISTRICT and the UNITED
STATES OF AMERICA,

      Cross-Defendant/Third-Party Cross
      Defendants

_____/

**DEFENDANTS STATE OF FLORIDA, FIND, GLOBENET, CARIBBEAN, LITTLE
CARDINAL, AND THE FEROLITOS' MOTION TO REMAND TO STATE COURT**

Defendants, Board of Trustees of the Internal Improvement Trust Fund of the State of
Florida (the "State of Florida"), the Florida Inland Navigation District ("FIND"), Globenet Cabos
Submarinos America, Inc. ("Globenet"), Caribbean Crossings, Ltd., Inc. ("Caribbean"), Little
Cardinal, LLC ("Little Cardinal") and John Ferolito Sr. and Jr. (the "Ferolitos") (collectively, the
"Moving Defendants"), by and through the undersigned counsel, hereby file their Motion to
Remand to State Court (the "Motion"), and in support thereof, state as follows:

## INTRODUCTION

This case is about two tracts of land that Plaintiff South Spanish Trail, LLC ("SST" or
"Plaintiff") claims to own which are entirely submerged beneath the Intercoastal Waterway
("ICW") in Palm Beach County, Florida (the "Submerged Lands"). The central and potentially
dispositive issue in this case is whether the Submerged Lands are, as claimed by the State of
Florida, sovereignty lands owned by it and not SST. All the claims brought by and against the
Moving Defendants turn on this threshold question. If the Submerged Lands are sovereignty lands
this case is over because SST would have no standing and no basis to assert any of the claims
against any of the parties. That threshold issue, pursuant to the Eleventh Amendment of the United
States Constitution can only be decided under state law in state court requiring that all the claims
turning on the ownership question be remanded back to state court. Additionally, the case can and
should be remanded once the Court dismisses the claims against the United States which are
procedurally and substantively improper. This is exactly what the Honorable Judge Roy K. Altman
did in this case in 2019 (*see S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, No.
19-80240-CIV-ALTMAN/Bran, 2019 U.S. Dist. LEXIS 121498, at *19 (S.D. Fla. July 22, 2019))[1]
at the express request of SST who at the time argued "**the U.S. simply has 'no dog in this fight'**"
(emphasis in original) . . . [and] regardless of why or how Globenet asserts that it has some right
of possession of portions of the Property for its fiber optic cable, ***that issue is of no concern to the
U.S.***, and rather is a dispute between SST and Globenet to litigate . . . [and] no matter how

---

[1] "The only basis for federal jurisdiction in this case was the Third-Party Complaint's claim against
the United States. With the Court's dismissal of that claim, this case is little more than a state-law
breach of contract action between two Florida entities. . . . The Court will follow the Supreme
Court's admonition [in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)] and
decline to exercise its discretionary jurisdiction over the parties' remaining state-law claims here."

Globenet might seek to amend its claims, it cannot avoid the plain fact that ***the U.S. has no interest whatsoever in the Property that is the subject of this action***." SST's March 21, 2019 Motion for Remand attached hereto as **Exhibit 1**, at p. 7-8 (emphasis added). Nothing has changed except SST's desire to avoid a prompt determination of the threshold issue of state sovereignty.

### FACTUAL AND PROCEDURAL BACKGROUND, SST'S THIRD-PARTY CROSS-CLAIMS, AND THE REMOVAL OF THIS CASE TO FEDERAL COURT

In 2000 and 2003, the State of Florida—as the owner of sovereignty lands under navigable waters—granted easements in favor of Globenet's predecessor-in-interest to lay and maintain fiber optic cables beneath the ICW, including under the Submerged Lands (the "State Easements"). *See* State Easements, attached hereto as **Composite Exhibit 2.** These subsea fiber optic cables are several thousand miles long and are considered critical infrastructure. About fifteen years after those cables were installed, and after researching and identifying their precise landing location, SST's principal worked with a land surveyor in 2016 and 2017 to create two deeds with manufactured property descriptions—which do not appear in any historical deed—purporting to grant SST private ownership rights in the Submerged Lands. *See* SST's Deeds, Amended Crossclaim at ¶ 10 [DE 106 and 66-1] and emails with attachments between SST's principal, William Swaim and surveyor Mark Laing (bates-labeled SST 002085-002095), attached hereto as **Exhibit 3.**

Before the ink on those wild deeds had time to dry, SST promptly demanded Globenet pay it millions of dollars for its cables buried under the Submerged Lands. When Globenet refused to be coerced and pay SST's ransom, SST sued Globenet seeking the removal of its fiber optic cables pursuant to a single count for unlawful detainer under Chapter 82, Florida Statutes. *See* November 4, 2018 Complaint, Case No. 2018-CC-013927, in the Fifteenth Judicial Circuit Court of Florida.[2] Following the prior removal and remand by Judge Altman, as well as multiple motions to dismiss and motions for summary judgment, the state court dismissed SST's unlawful detainer claim. *See* January 4, 2021 Final Judgment, Case No. 50-2018-CA-015897 attached hereto as **Exhibit 4** (granting Globenet's "motion for final summary judgment as to Plaintiff's claim in Count I for

---

[2] SST's original Complaint in this earliest filed action was filed in state county court, but that case was later removed to state circuit court, followed by a removal to the Southern District of Florida and remand by Judge Altman back to state circuit court. This matter is now back in this federal Court as one of the related consolidated cases.

unlawful detainer" and holding "Plaintiff shall take nothing by its action.").[3] All that remained in this first-filed case were Globenet's counterclaim for declaratory judgment—requesting a declaration that the Submerged Lands are sovereignty lands owned by the State of Florida, thereby rendering SST's ownership claim invalid—and a counterclaim for abuse of process based on improper conduct by SST's principal. *See* First Amended Counterclaim and Third-Party Complaint, Case No. 2018-CA-015897, attached hereto as **Exhibit 5.**

 SST also initiated similar unlawful detainer and other actions against Caribbean (the owner of a fiber optic cable that runs through Globenet's conduit), Little Cardinal (the owner of the adjacent uplands who maintains docks extending from its property into the ICW), and the Ferolitos (the managing member of Little Cardinal and his son who resides at the upland property). As time went on, SST asserted additional claims against Globenet all based on SST's alleged ownership of the Submerged Lands, as well as claims against the State of Florida, including a claim to quiet title in the Submerged Lands. All of these claims hinge on the threshold issue of ownership of the Submerged Lands. To exert maximum business pressure on Globenet, SST then added as defendants, thirty-eight of Globenet's customers, many located in foreign countries, who SST claims are trespassing because their bits/spectrum of data is allegedly transmitted through Globenet's cables.[4]

---

[3] SST recently filed a *third* motion for reconsideration of the state court's dismissal of Plaintiff's unlawful detainer claims under Chap. 82, Fla. Stat. in the Little Cardinal case [D.E. 11 in former Case No. 21-81208-CIV-CANNON before consolidation] to which Little Cardinal and the Ferolitos responded to on August 2, 2021 in this case [D.E. 135].

[4] Some of the entities joined by SST are not even customers of Globenet, but SST chose to add them anyways because they are well-known companies in the telecommunications and technology sectors. SST has also been using its lawsuit to try to tarnish Globenet's reputation in the industry. In February of this year, SST created and published a self-serving "press release" in an industry publication one-week prior to mediation, entitled: "SOUTH SPANISH TRAIL LLC ADDS MICROSOFT, AMAZON, FACEBOOK, EQUINIX, AND CHINA TELECOM AMONG OTHERS AS DEFENDANTS IN $250 MILLION GLOBENET LAWSUIT." A true and correct copy of SST's February 17, 2021 Press Release is attached hereto as **Exhibit 6.** The Press Release claims, among other things, that Globenet, Caribbean, and 30 high-profile technology companies are "currently using SST's property to conduct business without any permission or authorization from SST…" and gleefully reports that SST is seeking over 250 million dollars against each of these entities. *Id*. The Press Release concludes by encouraging the reader to contact counsel for SST, Ricardo A. Reyes, Esq., for further information. *Id*. There was no legitimate reason for SST to have added Globenet's customers as defendants, much less entities that do not even utilize the subject cables or to have issued the Press Release other than to ensure that everyone in Globenet's

Defendants are not alone in this predicament. There are a multitude of cases just like this one pending in various state courts regarding submerged lands up and down the Florida coast spearheaded by SST's principal, Mr. William Swaim, a serial plaintiff. Mr. Swaim is locked in battle with the State of Florida in many of these cases. His *modus operandi* is as follows: Mr. Swaim (through a single-purpose LLC, in this particular case, SST) purports to "purchase" tracts of land that are entirely submerged under water, and then makes unreasonable demands to the individuals and entities who have long been utilizing those submerged lands via valid government permits and/or easements (namely dock owners and telecommunications companies), threatening to sue them unless they pay his ransom. Recently, the Honorable Judge Donald Hafele in the 15th Judicial Circuit of Florida excoriated Mr. Swaim in entering a final summary judgment against his company in similar submerged land litigation calling Mr. Swaim's tactics "**plain and simply wrong and will not be countenanced by [the] court.**" Judge Hafele went on to declare that Mr. Swaim's tactics "**shocks the conscious of the Court.**" August 9, 2021 Amended Order Granting Summary Judgment and Entering Final Judgment in *Laurence Barnes Revocable Trust, et al v. McCormick Mile Investments, LLC*, Case No. 50-2020-CA-004136, in the Fifteenth Judicial Circuit Court of Florida, attached hereto as **Exhibit 7**, at ¶ 67. (emphasis added).

Here, SST has no legal basis for its claim that it owns the Submerged Lands. Because the Submerged Lands were under navigable waters at the time Florida became a state in 1845, they are "sovereignty lands" owned by the State of Florida. Accordingly, the State of Florida has declared the Submerged Lands to be sovereignty lands, held by the State in trust for the public. Globenet and Caribbean are therefore entitled to use those sovereignty lands for their cables pursuant to the State Easements, and Little Cardinal has a riparian right to have docks extending from its upland property over sovereignty lands in the ICW after it obtained the necessary state and local permits and approvals for its docks in 2005.

Because the state court judge who has presided over these related (and now consolidated) cases since 2018 understood that ownership of the Submerged Lands was a threshold issue, he was planning to hold a bench trial this year on the sole issue of whether the Submerged Lands are sovereignty lands, thus requiring SST to present evidence sufficient to carry its burden of overcoming the presumption that the Submerged Lands are sovereignty lands as the State of

---

industry knew that Globenet and its customers are being sued and to implicitly warn others that if they do business with Globenet, they too might find themselves in this quagmire.

Florida claims.[5] SST, knowing that such a trial will finally end its years-long effort to coerce Defendants based on the hollow claim that it owns the Submerged Lands, has been employing every delay tactic in the book to prevent that from occurring—most recently by improperly joining the United States via third-party crossclaims. This is what brought this case back to this Court for now a second time.

On February 15, 2021, Globenet amended its abuse of process counterclaim and SST initially moved to dismiss both the abuse of process and declaratory judgment counterclaims. While the state court was working on a schedule to close the pleadings and set the sovereignty trial, SST then suddenly withdrew its motion to dismiss in order to improperly add new third-party crossclaims against the United States—knowing that doing so would cause the case to be removed to federal court and thus essentially start all over. SST has now amended its crossclaim to manufacture new impermissible third-party crossclaims against the United States *three years into the litigation after a prior removal and remand following dismissal of the United States.* The sole purpose of joining the United States was to cause each of the related cases to be removed to federal court, resulting in additional months of delay and avoidance of the threshold issue of state sovereignty because SST is unable to meet its burden. SST never asserted these third-party crossclaims before now, notwithstanding the fact that the United States first issued a permit and easements to Globenet and its predecessor in September 2000 and May 2003 to install its cables in the ICW. SST knows that none of the claims in this litigation between itself and Globenet impact the United States, a fact SST made clear when it moved to remand this case after the first removal in 2019 when it asserted "the U.S. simply has 'no dog in this fight'. . .  [and] regardless of why or how Globenet asserts that it has some right of possession of portions of the Property for its fiber optic cable, that issue is of no concern to the U.S., and rather is a dispute between SST and Globenet to litigate . . .  [and] no matter how Globenet might seek to amend its claims, it cannot

---

[5] *See Williams v. Guthrie*, 137 So. 682, 686 (Fla. 1931) ("When title to submerged lands is asserted to rest in private ownership and not in the state, . . . it is incumbent upon the pleader . . . to allege in his pleading sufficient facts to negative the presumptive title of the state, and to show that title to such lands has become vested in private ownership. . . ."); *Apalachicola Land & Dev. Co. v. McRae*, 98 So. 505, 517 (Fla. 1923) ("Even if in this State lands below high water mark may be the subject of private ownership such a right would be a most unusual and extraordinary one that should be particularly shown when claimed in a suit.").

avoid the plain fact that the U.S. has no interest whatsoever in the Property that is the subject of this action." Ex. 1, at p. 7-8.

Nothing has changed since the United States was previously dismissed from this case in 2019 and Judge Altman remanded it back to state court. The amended crossclaims SST came up with in an attempt to plead jurisdiction against the United States are entirely separate from the threshold question of state sovereignty, are improperly "joined," and fail to state a claim. All of SST's claims against the United States stem from a July 15, 2020 Corrective Consent to Easement to Use Corps of Engineers Right-of-Way (the "2020 Correction"). *See* SST's June 7, 2021 First Amended Cross-Claims, Exhibit "H" [D.E. 106]. This 2020 Correction did nothing more than correct a scrivener's error in previously issued consents that authorized Globenet's use of any rights the United States may have had pursuant to the United States Constitution and easements it acquired in connection with the widening of the ICW in the 1930s. *Id.* The initial consents from the  United States were granted to Globenet and its predecessor in September 2000 and May 2003, and although the legal descriptions on the consents identified the correct land, the tracts were identified on the front pages as nos. 908 and 909, when they should have been identified as 910 and 911, which is all the United States corrected in the 2020 Correction. SST's counterclaim concedes it was aware of the United States consent when it purported to purchase the Submerged Lands in 2017. *See id.* ¶ 74 and Ex. I thereto.

All of SST's newly-added third-party crossclaims are improperly joined and subject to dismissal. As previously described, SST has known for years that nothing in this lawsuit impacts the rights of the United States in the ICW and although SST bases its sudden joinder of the United States on Federal Rules of Civil Procedure 13, 19, and 20, none of those Rules support the purported third-party cross-defendant joinder, and the United States should be dismissed as a party to this action for improper joinder. In any event, the claims against the United States fail to state a claim, and the United States should be dismissed for that reason as well.[6] After dismissing the claims against the United States, the Court loses subject matter jurisdiction, and 28 U.S.C. §

---

[6] Pursuant to the Court's Order dated July 15, 2021 (D.E. 130), the deadline for the United States to file its response to Plaintiff's First Amended Crossclaims (D.E. 106) is August 20, 2021. As with the original crossclaim, the United States has advised that it will be moving to dismiss all claims against the United States. The United States has consistently stated in has no interest in the determination of whether the Submerged Lands are sovereignty lands or privately owned, and that such a determination does not impact its interest in any way.

1447(c) mandates that "the case **shall** be remanded." (emphasis added). Alternatively, once the claims against the United States are dismissed, this Court should decline to exercise supplemental jurisdiction and remand the case back to state court.

But even if this Court decides to retain SST's contrived third-party crossclaims against the United States (though it should not), or in the interest of judicial efficiency wants to have the State Court adjudicate the ownership issue while it adjudicates the United States' forthcoming motion to dismiss, the Court should, at a minimum, sever and remand the claims asserted by or against the Moving Defendants which relate to the question of ownership of the Submerged Lands. This is because the question of Florida's sovereign ownership is a matter of state law that must be adjudicated in Florida state court pursuant to the Eleventh Amendment to the United States Constitution.

Judge James Nutt expressly encouraged this Court to do just that. During the June 21, 2021 Case Management Conference to discuss the impact of the impending removal of the related cases to federal court, Judge Nutt stated that he was intentionally putting his position on the record that the question of sovereignty is a threshold issue, and invited the federal court to remand that issue back to him for it to be tried in state court:

> I welcome -- I do think it's in everybody's interest to have the sovereignty lands issue decided. If that's not appropriate and the federal judge is not going to delve into that, *I absolutely welcome in remanding that portion back*. I'm putting that on the record on purpose because I think it's in everybody's best interest to have that issue finally resolved. I think everything in this case is going to fall out from it. So I welcome that.

*See* June 28, 2021 Case Management Conference Trans., at 32:4–13, attached as **Exhibit 8** (emphasis added). Judge Nutt reinforced this position in a written order:

### ORDER ON EXPEDITED MOTION TO SEVER

THIS CAUSE came before the Court upon the above reference Motion. Upon review, it is:

ORDERED that the Motion is DENIED without prejudice. Upon removal, the Federal Court may consider whether the threshold State sovereignty issues can fairly be decided separate from the federal issues and, if so, remand that portion of the case for determination by the State Court. That may well facilitate resolution of the case as a whole.

**DONE AND ORDERED**, in West Palm Beach, Palm Beach County, Florida this 30th day of June, 2021.

June 30, 2021 Order, attached as **Exhibit 9**.

For all of these reasons, the Moving Defendants respectfully request that the Court (a) remand the consolidated cases back to state court in its entirety following the dismissal of all third-party crossclaims against the United States; or (b) at a minimum and regardless of whether the third-party crossclaims against the United States survive (in whole or in part), sever and remand all other claims by and against the Moving Defendants relating to whether the Submerged Lands are sovereignty lands owned by the State of Florida as mandated by the Eleventh Amendment.

## LEGAL STANDARD FOR REMAND

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, a federal court must "remand to state court any case that has been improperly removed." *Krobatsch v. Target Corp.*, No. 20-81552-CIV-ALTMAN/Bran, 2020 U.S. Dist. LEXIS 202662, at *2 (S.D. Fla. Oct. 30, 2020). "[D]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Id.* Importantly, "all doubts about the propriety of removal should be ***resolved in favor of remand***." *King v. Gov't Emples. Ins.*, 579 F. App'x 796, 800 (11th Cir. 2014) (emphasis added); *see also Aust v. Terminix Int'l Co., LP*, No. 13-00629-KD-B, 2014 U.S. Dist. LEXIS 65336, at *3 (S.D. Ala. Apr. 25, 2014) *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 65337, at *1 (S.D. Ala. May 13, 2014) ("Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.").

"Upon removal of an action . . . the district court shall sever from the action all claims [not within the original or supplemental jurisdiction of the district court or otherwise nonremovable] and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c)(2); *see also Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1366 (S.D. Fla. 2017) ("[F]or cases removed [to federal court], the claims over which the Court lacks jurisdiction must be severed from the claim over which the Court does have jurisdiction, with the severed claims being remanded to the state-court forum.").

According to 28 U.S.C. § 1447, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case **shall** be remanded." 28 U.S.C. § 1447(c) (emphasis added). Additionally, district courts have "supplemental jurisdiction" over claims "that

are so related to claims in [an] action within . . . original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, the power to hear cases via supplemental jurisdiction "need not be exercised in every case in which it is found to exist." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Rather, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Id.* Thus, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). They may also decline to exercise supplemental jurisdiction over claims that "raise[] a novel or complex issue of State law." § 1367(c)(1).

## ARGUMENT AND MEMORANDUM OF LAW

I.   **THE COURT SHOULD REMAND THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION AFTER DISMISSING THE THIRD-PARTY CROSSCLAIMS AGAINST THE UNITED STATES**

This case was removed to federal court based solely on SST's misjoinder of the United States as a third-party cross-defendant through new crossclaims asserted for the first time three years into the litigation. Because SST's purported joinder is improper, and the United States is not a proper third-party cross-defendant in this litigation, this Court should dismiss the crossclaims against the United States. And given that the third-party crossclaims against the United States are the only basis for this Court's jurisdiction, the cases should be remanded back to state court for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

When a party has been improperly joined, "the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Fed. R. Civ. P. 21. In other words, "district courts may sever any claim against any party and proceed with it separately, or drop a party from the action with leave to re-file separately in a manner which avoids substantial prejudice." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1326 (S.D. Fla. 2014). The Court has "broad discretion" to do so. *Id.* (collecting cases); *see also Gilead Scis. v. All. Med. Ctr.*, No. 20-24523-CIV-CAN, 2021 U.S. Dist. LEXIS 126829, at *9 (S.D. Fla. Apr. 19, 2021).

SST purports to join the United States as a new third-party cross-defendant to this action pursuant to "Rules 13(h), 19(a), and 20(a) of the Federal Rules of Civil Procedure." SST's June 7, 2021 First Amended Cross-Claims [D.E. 106], ¶ 4. None of those Rules allow for the joinder of the United States as a new party at this juncture, and even if they did, SST is collaterally estopped

from arguing otherwise because it previously opposed the United States' joinder as a party. Additionally, SST's crossclaims against the United States fail to state a claim.

**A.      Rules 13, 19, and 20 Do Not Support SST's Purported Joinder of the United States to this Action**

Federal Rule of Civil Procedure 13(h) provides no basis for SST to join the United States because Rule 13(h) "can only be used to bring additional parties to an ***existing*** cross claim." *CreditMax Holdings, LLC v. Kass*, No. 11-81056-CIV, 2012 WL 12854879, at *1 (S.D. Fla. July 25, 2012) (internal quotation omitted; emphasis added). Rule 13 "authorizes the assertion of counterclaims or cross-claims against opposing parties or co-parties, ***but not against strangers to the litigation***." *Id.* (emphasis added; internal citations omitted). Because the United States was not an existing party in this action, SST may not join it under Rule 13(h) through its new third-party crossclaims. *See Owners Ins. Co. v. Gordon*, No. 1:07-CV-0369-JFK, 2007 U.S. Dist. LEXIS 105488, at *5 (N.D. Ga. June 27, 2007) ("The problem for the Chesapeake Defendants is that they have asserted their cross-claims . . . solely against Taylor and Verbeke, who are not parties to the original action," which is "not permitted under Rule 13(h)." (internal citation omitted)); *see also Incarcerated Entm't, LLC v. Cox*, No. 18-21991, 2019 U.S. Dist. LEXIS 231297, *8 (S.D. Fla. Apr. 17, 2019) (dismissing all counterclaims asserted solely against counter-defendant who was not an original party to the action); *Gen. Prop. Constr. Co. v. Empire Office, Inc.*, No. 18-23688, 2019 U.S. Dist. LEXIS 113452, *4 (S.D. Fla. July 9, 2019) (same).

Nor can SST join the United States under Rules 19 or 20, which govern required and permissive joinder of parties, respectively. Under Rule 19, an indispensable party must be joined to an action if the joinder would not deprive the court of subject matter jurisdiction and one of the following conditions is true:

> (A)      in that person's absence, the court ***cannot accord complete relief*** among existing parties; ***or***
> (B)      that person ***claims an interest*** relating to the subject of the action ***and*** is so situated that disposing of the action in the person's absence may:
>> (i)      as a practical matter ***impair or impede the person's ability to protect the interest***; or
>> (ii)      leave an existing party subject to a substantial risk of incurring ***double, multiple, or otherwise inconsistent obligations*** because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis added). In determining whether an entity is properly joined under Rule 19, "pragmatic concerns, especially the effect on the parties and the litigation,

control." *Med. Lien Mgmt,* 2013 WL 2456008, at *2; *McNeely v. Berk*, No. 510-CV-682-OC-37TBS, 2011 WL 5358057, at *2 (M.D. Fla. Oct. 31, 2011) (holding joinder not required under Rule 19).

Under Rule 20, a plaintiff may permissively join a party if it can show (1) that the claims against the party to be joined "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and (2) that there are "question[s] of law or fact common" to all parties to be joined. Fed. R. Civ. P. 20(a); *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 839 (11th Cir. 2017) (affirming district court's ruling precluding joinder under Rules 19 or 20).

SST cannot demonstrate the existence of any of the conditions allowing joinder under Rules 19 or 20. Far from showing that the United States' presence is required to accord complete relief or that the claims against the United States arise out of the same transaction, SST's crossclaims establish on their face that the United States has nothing to do with the question of whether the Submerged Lands are sovereignty lands owned by the State of Florida or privately owned by SST. SST's crossclaims are based on nothing more than the United States' correction of a typographical error in the federal easements previously issued to Globenet which give Globenet nothing more than the United States had to give. *See* SST's June 7, 2021 First Amended Cross-Claims [D.E. 106], ¶ 63 and Ex H. The United States has no stake (nor does it claim to have one) in the question of whether the Submerged Lands are sovereignty lands owned by the State of Florida, and the determination of that question has no impact on the United States—a position SST itself successfully argued in this case in 2019.  *See* Ex. 1. That is because the United States' rights relating to the ICW emanate from the United States Constitution which provides that the United States has the rights to regulate navigable waters. *Zabel v. Tabb*, 430 F.2d 199, 203 (5th Cir. 1970) (describing the paramount federal easement right in navigable waters of the United States deriving from Commerce Clause of the United States Constitution and Section 1314(a) of the Submerged Lands Act); U.S. Const. art. 1 § 8, cl. 3. Additionally, the United States has a paramount right to control navigation in the ICW pursuant to 43 USC § 1314 ("The United States retains all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international affairs, all of which shall be paramount to … proprietary rights of ownership, or the rights of management, administration, leasing, use, and development of the lands and natural resources . . . ."). The United States claims no property ownership rights to the ICW nor to the

Submerged Lands, and thus regardless of whether the State of Florida or SST owns the Submerged Lands, the United States retains its paramount and independent rights to control navigation in the ICW. Those rights cannot be, and will never be, impacted by this litigation. As such, SST may not join the United States under Rules 13, 19, or 20.

**B.     SST Previously *Opposed* the United States' Joinder to this Litigation, and SST is Thus Collaterally Estopped From Arguing A Directly Contrary Position**

SST previously successfully argued in this litigation that the United States was an improper party and irrelevant to this dispute. After Globenet filed a third-party claim against the United States, the United States removed the case to federal court on February 19, 2019. *See South Spanish Trail, LLC v. Globenet Cabos Submarinos America, Inc.,* No. 9:19-cv-80240-BB (S.D. Fla.) (D.E. 1). SST filed a Motion to Remand, arguing that removal to federal court was premised upon an "improper join[d]er of the U.S. government." Ex. 1 at p. 1. According to SST, "**the U.S. simply has 'no dog in this fight'** (emphasis in original) . . . [and] regardless of why or how Globenet asserts that it has some right to possession of portions of the [Submerged Lands] for its fiber optic cables*, that issue is of no concern to the U.S.,* and rather it is a dispute between SST and Globenet to litigate. . . [and] no matter how Globenet might seek to amend its claims, it cannot avoid the plain fact that *the U.S. has no interest whatsoever in the Property that is the subject of this action*." *Id.* at p. 7-8. Judge Altman subsequently dismissed the United States for failure to state a claim and remanded the case back to state court consistent with SST's position at the time. *See S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, 2019 WL 3285533, at *7 (S.D. Fla. July 22, 2019) (dismissing the United States and remanding case to state court). That case and the related cases that now comprise the consolidated cases in this action were then litigated in state court for an additional two years until SST—doing a complete 180-degree reversal of itself— asserted new third-party crossclaims against the United States based on theories, that if they were valid, existed at the time of the first removal.

SST is judicially estopped from pursuing a position directly opposite of that it clearly took earlier in this proceeding. "The equitable doctrine of judicial estoppel is intended to 'prevent the perversion of the judicial process' and 'protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Slater v. United States Steel Corp.*, 871 F.3d 1174, 1180 (11th Cir. 2017) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)); *see also Blumberg v. USAA Casualty Ins.*, 790 So. 2d 1061, 1066 (Fla. 2001)

(applying judicial estoppel and stating "[j]udicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions" during judicial proceedings.); *Salcedo v. Asociacion Cubana, Inc.*, 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979) ("[H]aving successfully claimed that mediation was a required condition precedent to the filing of this action, the defendant may not now be heard to say that the delay specifically caused by the pendency of that very proceeding has resulted in the running of the statute of limitations"). "The hallmark of judicial estoppel is inconsistency: Under this doctrine, a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Palmer Ranch Holdings Ltd. v. Commissioner*, 812 F.3d 982, 994-95 (11th Cir. 2016) (internal citations omitted); *see also New Hampshire*, 532 U.S. at 749 ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (internal quotation omitted)).   To prevail on a judicial estoppel theory in the Eleventh Circuit, "the proponent must show (1) that the allegedly inconsistent positions were made under oath in a prior proceeding and (2) that such inconsistencies have been calculated to make a mockery of the judicial system." *Palmer Ranch Holdings Ltd.*, 812 F.3d at 994-95 (internal quotations omitted).

That is exactly what SST is doing here. The only reasonable conclusion as to why SST has suddenly joined the United States to the case when it successfully opposed its joinder before, resulting in remand, is to expand the litigation and create distractions that prevent the courts and the parties from focusing their attention on the complete lack of merit to SST's claims—making a mockery of the system and wasting multiple judges', multiple courts', and the parties' time and resources.

### C.    SST's Crossclaims Against the United States Also Fail to State a Claim

Moreover, the United States will ultimately be dismissed as a party to this action because SST's third-party crossclaims against the United States fail to state a claim. It is for this reason that the United States will be filing a motion to dismiss all the claims asserted against it. Based on the face of SST's crossclaim (D.E. 106 which attaches the 2020 Correction as Exhibit H thereto), the United States simply granted Globenet consent to use the ICW commensurate with *whatever rights the United States already had*. Judge Altman acknowledged this when he previously dismissed and remanded this case. *See S. Spanish Trail, LLC,*2019 WL 3285533 at *2 ("That

Consent gave Globenet a right-of-way, ***commensurate with the government's own right-of-way***, to lay fiber optic cable over a sliver of the Intracoastal Waterway.") (emphasis added).

Thus, the United States' issuance of the 2020 Correction has no effect on SST or this litigation. Even accepting SST's false premise that it is the true owner of the Submerged Lands, the 2020 Correction does nothing to disturb that alleged ownership.[7] Accordingly, the claims against the United States will be dismissed with prejudice because they fail to state a claim.

### D.   The Court Should Decline to Exercise its Discretionary Supplemental Jurisdiction if the United States is Dismissed

If the Court dismisses the United States, there is another reason why the Court should remand the case. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

The question of whether the Submerged Lands are sovereignty lands owned by the State of Florida presents a complex issue of State law. "Upon its admission to the Union in 1845, Florida acquired the right to own and hold the lands under navigable waters lying within the State, including the shores and space between the ordinary high and low water marks, which are called sovereignty lands." *Fla. Bd. v. Wakulla Silver Springs*, 362 So. 2d 706, 708 (Fla. 3d DCA 1978); *see also, e.g.*, *Coastal Petroleum Co. v. Am. Cyanamid Co.*, 492 So. 2d 339, 342 (Fla. 1986) (discussing the "uncontroverted legal proposition that Florida received title to all lands beneath navigable waters, up to the ordinary high water mark, as an incident of sovereignty, when it became a state in 1845."); *Martin v. Busch*, 112 So. 274, 283 (Fla. 1927) ("In 1845 the State by virtue of its sovereignty upon being admitted to the Union [b]ecame the owner of, and unless lawfully conveyed or granted, still owns the beds of all navigable lakes to ordinary high water mark, however shallow the water may be at the outside lines or elsewhere if the water is in fact a part of the particular lake that is navigable for useful purposes"). Because this question of sovereignty is a complex matter of state law, this Court should decline to exercise its supplemental jurisdiction

---

[7] SST's crossclaim also concedes this on its face because it cites to several Army Corps of Engineer regulations which confirms the consent of the United States "does not convey any property rights…" *See* D.E. 106, at ¶ 78, n 6 citing 33 C.F.R. § 320.4 (g) ("Authorization of work or structures by DA does not convey a property right…"); (g)(6) ("A DA permit does not convey any property rights… [and any] dispute over property ownership will not be a factor in the Corps public interest decision."

over the claims implicating it just as Judge Altman did the last time that this case was in federal court.

For all of these reasons, this Court should dismiss SST's third-party crossclaims against the United States and remand the cases for lack of subject matter jurisdiction and decline to exercise any supplemental jurisdiction over the remaining claims.

**II.    REGARDLESS OF SST'S CROSSCLAIMS AGAINST THE UNITED STATES, THE COURT MUST REMAND CLAIMS IMPLICATING THE STATE OF FLORIDA'S SOVEREIGN OWNERSHIP OF THE SUBMERGED LANDS PURSUANT TO THE ELEVENTH AMENDMENT BECAUSE THE STATE HAS THE RIGHT TO HAVE THE QUESTION OF SOVEREIGNTY ADJUDICATED IN ITS STATE COURT**

The Court need not dismiss the United States from this action in order to remand the threshold issue of sovereignty. According to binding United States Supreme Court precedent, the Eleventh Amendment to the United States Constitution bars this Court from adjudicating the threshold question of whether the Submerged Lands are sovereignty lands owned by the State of Florida—regardless of whether the United States remains a party to this action. Accordingly, all claims implicating the State of Florida's sovereign ownership must be remanded for adjudication by the state court.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. One purpose of the Eleventh Amendment is "to accord the States the respect owed them as members of the federation and not to affront the dignity or integrity of a state by requiring a state to respond to lawsuits in federal courts." *Manders v. Lee*, 338 F.3d 1304, 1327 (11th Cir. 2003) (internal quotations omitted). The Eleventh Amendment confirms the long-established fact that the individual States enjoy sovereign immunity, which is "the privilege of a sovereign not to be sued without its consent." *Midnight Pass Soc'y, Inc. v. Fla. Dep't of Envtl. Prot.*, No. 8:12-cv-1314-T-17TBM, 2013 U.S. Dist. LEXIS 42344, at *11 (M.D. Fla. Mar. 26, 2013); *see Alden v. Maine*, 527 U.S. 706, 728-29 (1999) ("The Eleventh Amendment confirmed . . . sovereign immunity as a constitutional principle. . . ."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) ("[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State.").

The United States Supreme Court addressed claims remarkably similar to those at issue here, and held that the Eleventh Amendment barred their adjudication in federal court. In *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261 (1997), the plaintiff—a federally recognized Native American Tribe—brought claims against the State of Idaho and various state agencies and officials for quiet title to certain submerged lands, as well as claims for declaratory and injunctive relief. *Id.* at 264–66. The Supreme Court acknowledged that "the Tribe could not maintain a quiet title suit against Idaho in federal court, absent the State's consent" because "[t]he Eleventh Amendment would bar it." *Id.* at 281–82. This was because "lands underlying navigable waters have historically been considered 'sovereign lands'" and "State ownership of them has been 'considered an essential attribute of sovereignty.'" *Id.* at 283.

This constitutional bar also extended to the Tribe's claims for declaratory and injunctive relief because those claims inherently implicated the State's sovereign ownership of the submerged lands at issue:

> [T]he declaratory and injunctive relief the Tribe seeks is ***close to the functional equivalent of quiet title*** in that substantially all benefits of ownership and control would shift from the State to the Tribe. . . . The requested injunctive relief would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters. ***The suit would diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory.*** To pass this off as a judgment causing little or no offense to Idaho's sovereign authority and its standing in the Union would be to ignore the realities of the relief the Tribe demands.

*Id.* at 282 (emphasis added). Thus, all of the Tribe's claims implicating Idaho's sovereign ownership of the submerged lands were barred from being adjudicated in federal courts, based on the Eleventh Amendment.

More recently, a federal district court in the Middle District of Florida examined this question in a similar context. In *Midnight Pass Society, Inc. v. Florida Department of Environmental Protection*, an environmental society brought claims for injunctive relief against various Florida State agencies and others related to an inlet in Sarasota County, Florida called Midnight Pass. 2013 U.S. Dist. LEXIS 42344 at *1–*7. The State defendants sought to have the case dismissed on several grounds, one being Eleventh Amendment immunity from suit in federal court. Citing *Coeur D'Alene*, the Middle District stated that the Eleventh Amendment barred the

suit, and that the *Ex Parte Young*[8] exception was not applicable "in instances when the effect, not the stated objective, of the lawsuit against the agency official is the 'functional equivalent of a quiet title action which implicates special sovereignty interests.'" *Id.* at *20 (citing *Coeur D'Alene*, 521 U.S. at 281).

Noting that "it is beyond dispute that the State of Florida considers the submerged lands underlying Midnight Pass to be sovereign[,]" the court held that "[t]here is no reasonable construction of the allegations in the complaint that does not implicate the immediate effect of the State of Florida's jurisdictional control over its public lands should Plaintiffs prevail" and concluded that the suit must be brought in a Florida state court. *Id.* at *24–*27 ("[A]s this Court is obliged to do based on *Coeur d'Alene*, the Court concludes that this suit will effectively deprive the State of Florida from regulating its sovereign lands surrounding Midnight Pass. [The defendants] are entitled to Eleventh Amendment immunity based on the application of *Coeur d'Alene* to this case. To hold otherwise, would effectively render the judgment a nullity and strip the force of any judgment by this Court of any meaningful authority.").

The result here should be the same because the claims being litigated by and against the Moving Defendants in this case all implicate and are inextricably intertwined with the central question of whether the State of Florida or SST owns the Submerged Lands. And it is the State of Florida's ownership of the Submerged Lands that supports the easements provided by the State of Florida to Globenet and Caribbean. Just as in *Coeur D'Alene* and *Midnight Pass*, an adjudication of the ownership issue in favor of SST would result in "substantially all benefits of ownership and control [of the Submerged Lands] . . . shift[ing] from the State to [SST]." *Coeur D'Alene*, 521 U.S. at 282. Thus, the State of Florida has an Eleventh Amendment right to have these claims directly implicating its sovereign ownership of the Submerged Lands adjudicated in its state court and Globenet, Caribbean, and Little Cardinal are indispensable parties because that issue directly impacts their cables and docks. Moreover, Globenet's, Caribbean's, and Little Cardinal's counterclaims for declaratory relief against both the State of Florida and SST—to declare that the

---

[8] The *Ex Parte Young* exception to sovereign immunity allows for litigation seeking declaratory and injunctive relief brought against state officers in their individual capacities to go forward in federal court. *Coeur D'Alene Tribe*, 521 U.S. at 269. The exception allows federal courts to enjoin state officers who are violating, or planning to violate, federal law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326, 135 S. Ct. 1378, 1384 (2015).

Submerged Lands are sovereignty lands owned in fee by the State—serve as the predicate for SST's crossclaim to quiet title in the Submerged Lands against the State. Thus, the claims by and against Globenet, Caribbean, and Little Cardinal must be remanded to state court with the claims against the State of Florida because those claims are directly impacted by the outcome of the ownership dispute.

As a result, this Court must remand all of the claims relating to the issue of whether the Submerged Lands are sovereignty lands owned by the State of Florida and stay any remaining claims until the threshold issue of ownership of the Submerged Lands is resolved.  *See Tex. Hosp. Ass'n v. Nat'l Heritage Ins. Co.*, 802 F. Supp. 1507, 1517 (W.D. Tex. 1992) (finding "that a partial remand is appropriate" despite "the presence of the State as a defendant" and that "the entire case" "does not require remand . . .  under Section 1441").[9]

As this Court has already recognized, the question of sovereignty is a threshold issue that must be decided first before anything else, given all of SST's claims hinge on the false premise that it, and not the State of Florida, owns the Submerged Lands. *See* Court's July 15, 2021 Order Regarding July 6, 2021 Status Conference at p. 1 [D.E. 130] ("[T]he Court agrees with the Honorable James Nutt . . . that the threshold issue of State sovereignty of the land at issue 'may well facilitate resolution of the case as a whole.'"). Judge Nutt has repeatedly acknowledged this as well. *See, e.g.*, April 21, 2021 hearing transcript, at pp. 20-21 ("It's a threshold issue. I would like to stay on track for scheduling the sovereign land issue if I don't dismiss the counterclaim . . . . [I]f I don't dismiss them, then I do want to move forward with the sovereign land issue because I think that's coming back no matter where this is."); *see also* Order Denying Plaintiffs' Motions for Summary Judgment Against Globenet and Caribbean for Failure to Comply with Section 66.021, dated February 16, 2021 (denying SST's motions for summary judgment because they "raise . . . arguments that turn upon several undecided questions of fact, including challenges to the validity of plaintiff's own title.").

Remanding the state sovereignty issue is thus necessary to further judicial economy and efficiency. In the likely scenario that the state court finds the Submerged Lands to be sovereignty lands owned by the State, all of SST's claims (including any crossclaims against the United States)

---

[9] Though the reasoning of this case as it relates to its Eleventh Amendment findings has been questioned and disagreed with, the Court's finding that partial remands are appropriate and allowed survives.

will become moot because SST will have no interest in the Submerged Lands and they will lack standing and any basis to assert any of the claims. [10] To be sure, such a ruling of sovereignty would be binding on SST, and SST would be precluded from re-litigating that issue in connection with any of the remaining claims—whether in federal or state court—based on the doctrine of collateral estoppel (issue preclusion). *See Thompson v. Mostert*, 489 F. App'x 396, 398 (11th Cir. 2012) ("Federal courts considering whether to give preclusive effect to state court judgments must apply the State's law of collateral estoppel. Under Florida law, collateral estoppel bars relitigation of the same issue between the same parties after it has been fully litigated." (internal citations omitted)); *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004) ("In Florida, the doctrine of collateral estoppel bars relitigation of the same issues between the same parties in connection with a different cause of action."); *Rice-Lamar v. Fort Lauderdale*, 853 So. 2d 1125, 1131 (Fla. 4th DCA 2003) ("[C]ollateral estoppel precludes relitigation of issues actually litigated in a prior proceeding," and it "does not require prior litigation of an entire claim, only a particular issue."); *Kowallek v. Rehm*, 183 So. 3d 1175, 1177 (Fla. 4th DCA 2016) (affirming dismissal based on collateral estoppel). Because SST will have had "a full and fair opportunity to litigate the issue in the earlier proceeding," it will not be permitted to assert ownership over the Submerged Lands in any later proceedings. *Baxas Howell Mobley, Inc. v. BP Oil Co.*, 630 So. 2d 207, 209 (Fla. 3d DCA 1994).

Accordingly, remanding the claims by and against the Moving Defendants implicating the State of Florida's sovereign ownership of the Submerged Lands, while staying any remaining federal proceedings pending the state court's adjudication of that threshold question, is mandated by the Eleventh Amendment and would serve judicial economy and efficiency.

<u>**CERTIFICATE OF CONFERRAL PURSUANT TO L.R. 7.1**</u>

Pursuant to Local Rule 7.1 of the Local Rules for the Southern District of Florida, I hereby certify that the parties conferred regarding the relief requested herein, and that:

- Plaintiff opposes the relief requested herein; and

---

[10] This is also true of SST's claims and defenses against the other Defendants relating to the validity of Globenet's federal or state easement rights. If SST fails to prove it owns the Submerged Lands, the easement issues are moot because SST would be a third-party with no standing to challenge the validity of—or to try to enforce the terms of—Globenet's and/or Caribbean's easement agreements with the State or Florida or the United States. *See, e.g.*, *Henry v. United Nat'l. Ins. Co.*, 813 So. 2d 177, 178 (Fla. 3d DCA 2002) (holding that Plaintiff had no standing to challenge a contract when "Plaintiff was not a party to that contract and has no assignment of interest").

- The United States and the John Doe Customer Defendants[11] consent to and do not oppose the relief requested herein.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (a) remand this case back to state court in its entirety following the dismissal of all third-party crossclaims against the United States; or (b) at a minimum and regardless of whether the third-party crossclaims against the United States survive (in whole or in part), sever and remand all other claims by and against the Moving Defendants relating to whether the Submerged Lands are sovereignty lands owned by the State of Florida as mandated by the Eleventh Amendment; and (c) grant any such further relief as this Court deems just and proper.

Dated: August 13, 2021            Respectfully submitted,

By: *s/  Mark F. Bideau*                 By: *s/  Timothy L. Newhall*

Mark F. Bideau, Esq.                     Timothy L. Newhall, Esq.
Robert R. Kane III, Esq.                 Senior Assistant Attorney General
Jessica J. Fishfeld, Esq.                 Complex Litigation
**GREENBERG TRAURIG, P.A.**        **OFFICE OF THE ATTORNEY GENERAL**
777 S. Flagler Dr., STE 300E          PL-01 The Capitol
West Palm Beach, FL 33401          Tallahassee, FL  32399
Telephone: (561) 650-7900          Telephone: (850) 414-3300
bideaum@gtlaw.com                  Timothy.Newhall@myfloridalegal.com
kaner@gtlaw.com                     ComplexLitigation.eservice@myfloridalegal.com
fishfeldj@gtlaw.com
FLService@gtlaw.com              *Counsel for Third-Party Defendant, State of Florida Board of Trustees of the Internal Improvement Trust Fund and Florida Inland Navigational District*

*Counsel for Defendants/Counter-Plaintiffs, Globenet Cabos Submarinos America, Inc., Caribbean Crossings, Ltd., Inc., Little Cardinal, LLC, John Ferolito Jr. & Sr.*

---

[11] The Customer John Doe Defendants further advise that they reserve the right to file a Motion to Remand pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction in the event the United States is dismissed from the case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of August, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk and served on all counsel of record listed below via Florida's E-Filing Portal.

Mark F. Bideau, Esq.
Robert R. Kane III, Esq.
Jessica J. Fishfeld, Esq.
**GREENBERG TRAURIG, P.A.**
777 S. Flagler Dr., STE 300E
West Palm Beach, FL 33401
Telephone: (561) 650-7900
bideaum@gtlaw.com
kaner@gtlaw.com
fishfeldj@gtlaw.com
FLService@gtlaw.com

*Counsel for Defendants/Counter-Plaintiffs,*
*Globenet Cabos Submarinos America, Inc.,*
*Caribbean Crossings, Ltd., Inc., Little Cardinal,*
*LLC, John Ferolito Jr. & Sr., and John Doe*
*Customer Defendants Microsoft, Amazon and*
*Twitch*

Carly A. Kligler, Esq.
Alec H. Schultz, Esq.
**HILGERS GRABEN PLLC**
777 S. Flagler Dr., STE 800W
West Palm Beach, FL 33401
Telephone: (561) 485-1325
ckligler@hilgersgraben.com
aschultz@hilgersgraben.com

*Counsel for John Doe Customer Defendants*

Timothy L. Newhall, Esq.
Senior Assistant Attorney General
Complex Litigation
**OFFICE OF THE ATTORNEY GENERAL**
PL-01 The Capitol
Tallahassee, FL  32399
Telephone: (850) 414-3300
Timothy.Newhall@myfloridalegal.com
ComplexLitigation.eservice@myfloridalegal.com

*Counsel for Third-Party Defendant, State of*
*Florida Board of Trustees of the Internal*
*Improvement Trust Fund and Florida Inland*
*Navigational District*

Ricardo A. Reyes, Esq.
Sacha A. Boegem, Esq.
Carrie S. Robinson, Esq.
**TOBIN & REYES, P.A.**
Mizner Park Office Tower
225 N. E. Mizner Blvd., Suite 510
Boca Raton, FL 33432
Phone: (561) 620-0656
eservice@tobinreyes.com
rar@tobinreyes.com
sboegem@tobinreyes.com
csrobinson@tobinreyes.com

*Counsel for Plaintiff/Counter-Defendant, South*
*Spanish Trail, LLC*

21

John S. Leinicke, Esq.
Assistant United States Attorney
**U.S. Attorney's Office, SDFL**
99 N.E. 4th Street, Third Floor
Miami, FL 33132
Telephone: (305) 961-9212
John.Leinicke@usdoj.gov

*Counsel for The United States*


By: *s/       Mark F. Bideau*