# EXHIBIT 5

IN THE CIRCUIT COURT OF THE 15th
JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO: 2018 CA 015897 XXXX MB AO

SOUTH SPANISH TRAIL, LLC,
a Florida limited liability company,

      Plaintiff,

v.

GLOBENET CABOS SUBMARINOS
AMERICA, INC., a Delaware For-Profit
Corporation, and ALL OTHER IN
POSSESSION.,

      Defendant.

_____/

GLOBNET CABOS SUBMARINOS
AMERICA, INC., a Delaware For-profit
Corporation,

      Counter-Plaintiff,

v.

SOUTH SPANISH TRAIL, LLC,
a Florida limited liability company, and
BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE
STATE OF FLORIDA,

      Counter-Defendants.

_____/

**FIRST AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT**

Defendant/Counter-Plaintiff, Globenet Cabos Submarinos America, Inc. ("Globenet or

"Counter-Plaintiff"), hereby file this First Amended Counterclaim and Third-Party Complaint

("Counterclaims") through undersigned counsel against Plaintiff/Counter-Defendant, South

Spanish Trial, LLC ("SST") and Third-Party Defendant Board of Trustees of the Internal

Improvement Trust Fund of the State of Florida ("Trust") who is joined pursuant to Rule 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, and allege as follows:

1.      Counter-Plaintiff's Counterclaims consist of claims for damages in excess of $15,000, exclusive of attorneys' fees, interests and costs and a claim for equitable and declaratory relief.  Counter-Plaintiff's Counterclaims are exclusively within the subject matter jurisdiction of the Circuit Court.

2.      Counter-Plaintiff's Counterclaims arise out of the same transaction or occurrence set forth in SST's Amended Complaint, and are compulsory counterclaims within the meaning of Rule 1.170(a) of the Florida Rules of Civil Procedure.

**Parties**

3.      Defendant/Counter-Plaintiff Globenet is a Delaware corporation, with its principal place of business in Broward County, Florida.  Globenet provides telecom services through subsea fiber optic cable systems that connect Latin America and the Caribbean with the United States. In fact, Globenet's fiber optic cables are considered vital to national security as it is required to advise the Department of Homeland Security of any significant changes concerning its cables. Caribbean Crossings Ltd., Inc. ("Caribbean") has a cable that utilizes Globenet's submarine conduit.

4.      Plaintiff SST is a Florida limited liability company that recently purports to have acquired certain submerged lands in the Intracoastal Waterway that are described in SST's Complaint (the "Submerged Lands").

5.      Third-party defendant, Board of Trustees of the Internal Improvement Trust Fund of the State of Florida ("Trust") is a legal entity comprised of the Governor of the State of Florida and the Governor's cabinet members. Pursuant to the Florida Constitution, title to lands under navigable waters, which have not been specifically alienated, is held by the State in trust for the

people via the Trust. Pursuant to Rules 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure, the Trust is joined as a Third-Party Defendant to the counterclaim for declaratory relief. The Trust has a direct interest in the subject matter of this case and Counter-Plaintiff's Counterclaims, and thus the Trust's presence as a party is necessary to a complete determination of these claims.

**Facts**

*Telecommunications Project*

6.      From around 1999, Globenet and its predecessors began construction of a fiber optic cable system to provide a telecommunications link (including internet service) for parts of the Southeastern United States of America and nations in the Caribbean and Latin America ("Project").  The Project involved laying a fiber optic cable linking landing stations in Tuckerton, New Jersey and Boca Raton, Florida with landing stations in Bermuda, Brazil, Colombia and Venezuela.  A timeline of relevant milestones in the Project includes the following:

   a.  1999 - The Project begins.

   b.  October 1999 – An engineering report for the Project was submitted to relevant federal, state and local government authorities.  The Project landed a fiber optic cable in Palm Beach County, with the path of the cable beginning in the Atlantic Ocean and traveling westward towards a beach manhole located in Boca Raton, Florida.  From there, the cable went underground to a cable landing station.  En route to the landing station, the cable would tunnel underneath a section of the Intracoastal Waterway.

   c.  December 1999 - The Project's cable landing license was issued by the Federal Communications Commission (FCC).

d.  February 2000 - Third party objections to the Project's cable landing license were lodged.  No objections were made by SST or its predecessors.

e.  July 2000 - The Florida Department of Environmental Protection (FDEP) published a notice of intent to issue a permit for the Project in the Palm Beach Post.  This did not result in inquiries or objections to the Project being lodged by SST or its predecessors.

f.  August 2000 - FDEP issued a permit and intent to grant a sovereign submerged land easement for the Project.  The Army Corps of Engineers also issued a permit for the Project authorizing boring under the ocean and land portions of the path of the cable, including the portion passing underneath the Intracoastal Waterway.

g.  September 2000 - The United States of America, acting through the U.S. Army Corps of Engineers, issued an easement to Globenet's predecessor granting it permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over and under a portion of the Intracoastal Waterway.

h.  September 2000 - The State of Florida, acting through the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, also issued an easement to Globenet's predecessor granting it permission to install four conduits and two fiber optic cables passing underneath the Intracoastal Waterway.

i.  October 2000 - Site-related work on the Project commenced.

j.  In March 2001, as-built drawings for the Project were prepared, which included a drawing depicting the as-built location and legal description of the portion of the cable that tunnels underneath the Intracoastal Waterway.  Due to an administrative error, the legal description forwarded to FDEP for the portion of the cable that

tunnels underneath the Intracoastal Waterway referenced the wrong as-built drawing.

k.   October 2001 – An updated legal description was provided to FDEP reflecting the as-built location of the portion of the cable tunneling underneath the Intracoastal Waterway.

l.   November 2002 - Brasil Telecom S.A. purchased all rights in the Project from its previous owners.

m.  May 2003 - The federal easement for the Project was updated to identify a Brasil Telecom S.A. affiliate, Brasil Telecom of America, Inc., as the federal easement grantee.

n.   September 2003 - The state easement for the Project was updated to identify Brasil Telecom of America, Inc. as the state easement grantee.

o.   January 2014 - Brasil Telecom of America, Inc. changed its name to the Defendant/Counter-Plaintiff in this action, "Globenet Cabos Submarinos America Inc."

*U.S. Easements*

7.     The September 2000 and May 2003 easements the United States granted rights to Globenet and its predecessor in connection with construction of the Project ("U.S. Easements"). See attached **Exhibits A and B**.

8.     The U.S. Easements grant Globenet rights that are terminable only in three scenarios: (1) if the Project interferes with the Government's use of the Intracoastal Waterway; (2) if Globenet fails to comply with the conditions stated in the U.S. Easements, or (3) if Globenet

abandons or fails to utilize its federal easement rights for a period of two years.  None of these conditions has been triggered.

9.      Due to a scrivener's error, the U.S. Easements identify the wrong federal tract numbers.  The tracts are identified as nos. 908 and 909 on the first page thereof, when these should have been identified as 910 and 911. Upon information and belief, this error occurred because there were several prior re-numberings of the tracts that took place and led to the confusion along with a change in the as-built location of the cable.  This error was corrected. See attached **Exhibit C**.

10.     The United States has a superior interest over all others to the Submerged Lands and has the power to give Globenet a federal easement corresponding to the as-built subterranean path traversed by Globenet's cable through the Submerged Lands. Pursuant to the rights it received, Globenet has the right to authorize others (including Caribbean) to use its conduit and cable system.

*The Federal Source of Rights*
*Granted in the U.S. Easements*

11.     The United States derives the right to grant Counter-Plaintiff the U.S. Easements from the constitutional and congressional mandate the United States Government has to regulate navigable waters.  The Government's rights in this regard are superior to all other interests.  *See Zabel v. Tabb*, 430 F.2d 199, 203-206 (5th Cir. 1970) (describing the paramount federal easement right in navigable waters of the United States deriving from Commerce Clause of the United States Constitution and Section 1314(a) of the Submerged Lands Act); 43 USC § 1314 (a) ("The United States retains all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international affairs, all of which shall be paramount to … proprietary rights of

ownership, or the rights of management, administration, leasing, use, and development of the lands and natural resources ….").

12.     The United States Government's grant of rights to Counter-Plaintiff is also grounded in a federal judgment. The United States was specifically granted a perpetual easement in the undersea property at issue in this case via a final judgment issued by a federal court in 1935 in a condemnation proceeding.  The petition for condemnation and resulting final judgment are attached hereto as **<u>Exhibits D and E</u>**, respectively.  The federal condemnation judgment enabled construction of the portion of the Intracoastal Waterway at issue in this case and granted the United States perpetual easement rights to use and maintain it.

<em>Florida's Title to the Submerged Lands</em>

13.     Despite SST's purported ownership claim in the Submerged Lands, the State of Florida, acting through the Trust, has been and remains the actual fee simple owner of the Submerged Lands.  At a minimum, the Trust's title interest arises pursuant to the federal equal-footing doctrine, which, upon statehood, vested title to submerged lands within Florida borders and under navigable waters to the State of Florida.  *Id.*; s*ee also PPL Mont., LLC v. Montana*, 565 U.S. 576, 591 (2012) ("The title consequences of the equal-footing doctrine can be stated in summary form: Upon statehood, the State gains title within its borders to the beds of waters then navigable [or tidally influenced].  It may allocate and govern those lands according to state law subject only to 'the paramount power of the United States to control such waters for purposes of navigation in interstate and foreign commerce.'") (citations omitted) (reversing state supreme court judgment which misapplied federal rules for determining navigability for title under the equal footing doctrine when resolving title dispute between the state and a private party).

14.     The equal footing doctrine was later recognized and incorporated into the Florida Constitution.  Fla. Const. Art. X, § 11 (adopted 1970) ("The title to lands under navigable waters, within the boundaries of the state, which have not been alienated … is held by the state, by virtue of its sovereignty, in trust for all the people.  Sale of such lands may be authorized by law, but only when in the public interest. Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.").

15.     Ownership of the Submerged Lands lies with the State of Florida and it acquired those lands at statehood. Other documents establishing the State of Florida's ownership in the Submerged Lands which may be relied on in this case are:

(i)     the Bureau of Land Management, General Land Office, Survey of 1870, see **Exhibit F**;

(ii)    Deed No. 12041 from the Trustees of the Internal Improvement Fund to Arthur Williams, dated April 25, 1883, see **Exhibit G**; and

(iii)   the U.S. Coast and Geodatic Survey, dated 1884, see **Exhibit H**.

*Florida Easements*

16.     Globenet and its predecessor also obtained the requisite permits for the Project and additionally obtained the September 2000 and September 2003 easements from the Trust ("Florida Easements") who asserted sovereign ownership of the Submerged Lands.  The Florida Easements are attached as **Exhibits I and J**.

17.     Globenet and its predecessor paid the Trust $185,000 for the Florida Easements to the Submerged Lands, as along with Trust approval to proceed with the portion of the Project tunneling underneath the Intracoastal Waterway.

18. Globenet's recorded Florida Easements were not updated by the State to include the corrected legal description showing the final as-built location of Globenet's cables. As a consequence, there is a small discrepancy between the legal description in the Florida Easements and the actual subterranean path traversed by cables through the Submerged Lands. Globenet has initiated the process to correct these administrative errors with State authorities.

19. The records showing the construction of the Globenet's cable system are publicly available.

20. The records showing the correct legal description for the location of Globenet's cable is publicly- available.

21. Prior to purportedly "purchasing" the Submerged Lands, SST had in its possession certain as-built drawings that showed the actual location of Globenet's conduit and cable system and which contained the correct legal description for the easement to be provided by the State of Florida. SST nonetheless continued with the purported "purchase" of the Submerged Lands simply to coerce Globenet and others like Caribbean into paying substantial amounts of money in order to protect their existing rights. However, SST "purchased" the Submerged Lands subject to those rights.

22. Despite the administrative error, the actual cable path still passes under sovereign submerged lands of the State of Florida.  Except for the interests of the federal government, the State of Florida has a superior ownership interest over all others to the Submerged Lands. Consequently, the Trust has the power to correct the Florida Easements to reflect the intent of the State of Florida to give Counter-Plaintiff a state sovereign submerged lands easement corresponding to the as-built subterranean path traversed by Counter-Plaintiff's cable through the Submerged Lands.

*Project Completion and Ongoing Operations*

23.     In approximately 2001, Globenet completed the Project in the ICW.  Since that time, the fiber optic cable installed by Globenet has provided telecommunication services to the Southeastern United States and to locations in the Caribbean and Latin America.  Caribbean's own cable has been in place since around that time as well. The United States Government's approval of the Project, which includes a determination that the project is in the public interest, remains in place.  The Department of Homeland Security also now considers Globenet's fiber optic cable to be vital to national security as Globenet must advise it of any significant matters which might affect the cable.

*SST's Unfounded Title Claim to Seabed of the Intracoastal Waterway*

24.     Globenet's fiber optic cable traverses constructed tunnels underneath a portion of seabed of the Intracoastal Waterway located in Palm Beach County, Florida.

25.     In 2016 and 2017, SST alleges to have acquired a fee simple interest in a portion of submerged lands in the Intracoastal Waterway that lie vertically above the path of the location of the fiber optic cable (i.e., the Submerged Lands).  Estates of deceased private citizens, some closed for 20 years, were suddenly reopened for the sole purpose of purportedly conveying these interests for mere nominal value, to SST by warranty deeds. Upon information and belief, SST—or someone acting on its behalf—paid the legal fees of the attorneys representing the estate and/or heirs to obtain warranty deeds. Armed with these "warranty deeds," SST contends in its Amended Complaint to assert a title interest in the Submerged Lands.

*Caribbean's Fiber Optics Cable*

26.     By way of Globenet's conduit, Caribbean's fiber optics cable traverses the Submerged Lands in the intracoastal waterway (ICW) in Palm Beach County.

27.     Caribbean's fiber optics cable and Globenet's conduit system through which it passes, have been in place for two decades pursuant to easement rights granted to Caribbean by the State of Florida and the federal government.

28.     Globenet has valid federal and state easement rights over the Submerged Lands. Pursuant to those rights, Globenet had the right and authority to allows companies like Caribbean to use its conduit and cable system.

29.     All conditions precedent to the maintenance of this action have been satisfied or waived.

**Count I**
**Declaratory Relief**
**(Against SST and The Trust)**

30.     Counter-Plaintiff incorporates by reference paragraphs 1 through 29 above.

31.     This is a claim for declaratory judgment against SST and the Trust pursuant to Chapter 86, Fla. Stat., and for supplemental and equitable relief.

32.     As set forth above, an actual controversy has arisen between the parties to this action regarding the ownership status of the Submerged Lands as sovereign submerged lands. SST asserts it is the owner of the Submerged Lands and that its rights are superior to all others, including the State.

33.     The Trust, through its Florida Easements in favor of Globenet, has asserted since at least 2000 that it is the owner of the Submerged Lands. In the Florida Easements, it repeatedly referred to the Submerged Lands as "sovereign submerged lands". In the easement granted to Caribbean, the Trust similarly referred to the submerged lands as "sovereign submerged lands." Additionally, the legal descriptions that were or should have been used with the Florida Easements make clear that those easements extend from a point on the west seawall of the ICW to a point on

the east seawall of the ICW, thus encompassing the Submerged Lands over which SST claims to own.

34.     Caribbean acquired rights to use the Globenet conduit and cable system based on both the superior rights of the United States and the Trust's sovereignty rights in the Submerged Lands.

35.     Consequently, Globenet is unsure of its rights. There is a bona fide, actual, present practical need for a declaration regarding Counter-Plaintiff's easement rights in the Submerged Lands, as well as its rights to operate its fiber optic cable in the conduit that is, at least in part, dependent on the ownership of the Submerged Lands.

36.     The declaration sought herein thus concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts. Such declaration will not be advisory in nature.

WHEREFORE, Counter-Plaintiff seeks a declaration that:

a.  The Submerged Lands consist of sovereign submerged lands that are owned in fee by the State of Florida (acting via the Trust), subject to prior rights duly acquired by the United States via the United States Constitution, authorizing Congressional legislation, and a final judgment in the federal condemnation proceeding, thereby rendering SST's deeds null and void and without force and effect;

b.  Globenet has an interest in the Submerged Lands as a result of a valid and express easement it acquired from and the United States, and that such easement rights are paramount to the rights of any owner of the Submerged Lands and that, as a result, Globenet was authorized to allow Caribbean and others to use its conduit and cable system;

c.  Globenet has an interest in the Submerged Lands as a result of the valid express easement from the State of Florida (acting via the Trust) and that, as a result, Globenet was authorized to allow Caribbean and others to use its conduit and cable system;

d.  Even if the Submerged Lands were ever privately held, SST, through its predecessor in interest, was properly compensated for the Submerged Lands in the 1933 Condemnation Proceeding or, alternatively, SST's action is an improper collateral attack on the 1935 judgment that resulted from that proceeding;

e.  Caribbean has an interest in the Submerged Lands as a result of the valid express easement from the State of Florida (acting via the Trust), and the rights granted to it by Globenet;

f.  And, such other relief as this Court deems just and proper.

### Count II
### Abuse of Process
### (Against SST only)

37.  Globenet incorporates by reference paragraphs 1 through 29 above.

38.  SST, through its agents, willfully and intentionally made an illegal, improper and perverted use of process by contacting the upland owner of the Submerged Lands to make intentionally false and misleading statements about Globenet and its cable system. Prior to purportedly "purchasing" the Submerged Lands, SST had in its possession certain as-built drawings that showed the actual location of Globenet's cable and which contained the correct legal description for the easement to be provided by the State of Florida. SST "purchased" the Submerged Lands anyway simply to coerce Globenet into paying substantial amounts of money in order to protect Globenet's existing rights. SST attempted to induce the upland owner to support

claims SST knew, or should have known, were specious by offering a share of settlement proceeds that SST represented it was close to reaching with Globenet when SST knew there was no imminent settlement with Globenet. After the upland owner failed to go along with SST's scheme to extort and pressure Globenet, SST then filed a separate lawsuit against the upland owner.

39.     SST also sent letters to Governor Ron DeSantis and various other State of Florida Departments on January 8, 2021 and January 14, 2021 (see attached **Exhibits K and L**), claiming, among other things, that Globenet was engaging in (or aiding and abetting) espionage which allegedly posed a national security threat. These letters went so far as to suggest that the State of Florida was a "participant" in unlawful activities that was being "conducted to circumvent the executive orders of the [former] President of the United States." SST claimed Globenet and its customers ("Big Tech")[1] were censoring the former President of the United States and Florida citizens through its cable system. SST ultimately requested that State law enforcement investigate Globenet immediately and that the State discontinue and withdraw its easements and permits with Globenet.

40.     SST, through its agents, willfully and intentionally made an illegal, improper and perverted use of process by presenting, participating in presenting, facilitating, and/or threatening criminal prosecution solely to leverage and gain an advantage in its civil matters with Globenet and to harass Globenet and its customers. The criminal process was not intended, and should not be used, as a means of settling private disputes or for harassment and the process is undermined when it is misused by SST in such a manner.

---

[1] At the time SST sent the January 8 and 14 letters it had in its possession Globenet's customer list and agreements, and yet, SST intentionally misrepresented the "Big Tech" companies that are allegedly Globenet's customers using the cable.

41.     SST had an ulterior motive for its actions, as it was pursuing a scheme to coerce Globenet to pay substantial sums (initially $1 million, then $40 million and subsequently demanded $250 million) to "allow" Globenet's fiber optic cable to remain on the Property. Globenet has refused to be extorted.

42.     SST's owner (William Swaim) has pursued similar "scorched-earth" tactics against other fiber optic cable companies whose cables pass through submerged lands recently acquired by Mr. Swaim through companies he owns or controls. Encountering little, if any success, in the Circuit Courts, SST devised a scheme to extort and pressure Globenet into paying money by taking the actions set forth in these Counterclaims. SST has also attempted to alienate and pressure Globenet's customers through improper means and methods in the hopes that Globenet will succumb and settle with SST.

43.     As a result of SST's conduct, Globenet has suffered, and will continue to suffer, damages to be determined at trial.

WHEREFORE, Counter-Plaintiff demands judgment against SST for compensatory damages, interest, costs and such other and further relief as the Court deems just and proper.

Dated:  February 15, 2021                    Respectfully Submitted,

                                             **GREENBERG TRAURIG, P.A.**
                                             777 S. Flagler Drive, Suite 300E
                                             West Palm Beach, Florida 33401
                                             Telephone: (561) 650-7900
                                             Facsimile: (561) 655-6222


                                             By: *s/  Mark F. Bideau*
                                                 MARK F. BIDEAU
                                                 Florida Bar No. 564044
                                                 Email: bideaum@gtlaw.com
                                                 ROBERT R. KANE, III
                                                 Florida Bar No. 99488
                                                 Email: kaner@gtlaw.com

JESSICA J. FISHFELD
Florida Bar No. 1018904
Email: fishfeldj@gtlaw.com
        cruzm@gtlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Florida Courts E-Filing Portal.  I also certify that the foregoing document is being served this 15th day of February, 2021, by e-mail generated by the E-Portal system on all counsel of record listed below.

s/   *Mark F. Bideau*
MARK F. BIDEAU

## <u>SERVICE LIST</u>

| | |
|---|---|
| Ricardo A. Reyes, Esq.<br>Sacha A. Boegem, Esq.<br>TOBIN & REYES, P.A.<br>Mizner Park Office Tower<br>225 N.E. Mizner Blvd., Suite 510<br>Boca Raton, FL  33432<br>Telephone: (561) 620-0656<br>Facsimile:  (561) 620-0657<br>rar@tobinreyes.com<br>sboegem@tobinreyes.com<br>eservice@tobinreyes.com<br><br>*Counsel for Plaintiff/Counter-Defendant, South Spanish Trail, LLC* | Timothy L. Newhall, Esq.<br>Anita J. Patel, Esq.<br>Senior Assistant Attorney General<br>Complex Litigation<br>OFFICE OF THE ATTORNEY GENERAL<br>PL-01 The Capitol<br>Tallahassee, FL  32399<br>Telephone: (850) 414-3300<br>Timothy.Newhall@myfloridalegal.com<br>Anita.Patel@myfloridalegal.com<br>ComplexLitigation.eservice@myfloridalegal.com<br><br>*Counsel for Third-Party Defendant, State of Florida Board of Trustees of the Internal Improvement Trust Fund* |

# EXHIBIT  A

BOOK 15447   PAGE 0664

**DEPARTMENT OF THE ARMY**
**CONSENT TO EASEMENT**
**TO USE CORPS OF ENGINEERS RIGHT-OF-WAY**

Consent No. DACW17-9-00-0105
Project: Intracoastal Waterway,
Jacksonville to Miami, Palm Beach
County, Florida
Tract Nos. 908 and 909

**THIS CONSENT TO EASEMENT AGREEMENT**, made by and between the
**UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY**, hereinafter
referred to as the "Government", acting by and through the Chief,
Real Estate Division, U.S. Army Corps of Engineers, Jacksonville
District, hereinafter referred to as "said officer," and Atlantica
USA L.L.C., hereinafter referred to as the "Grantee":

**WHEREAS**, the Government has acquired right-of-way easements over
the above-numbered tracts of land, which easement, by the terms,
reserves to the Government, in perpetuity, the right to use said
easements for the construction, improvement, and maintenance of the
Intracoastal Waterway, Jacksonville to Miami, Palm Beach County,
Florida; and

**WHEREAS**, the Grantee has requested permission to construct, use,
maintain, repair and remove a fiber optic cable in, on, across, over,
and under a portion of the lands identified as Tract Nos. 908 and
909, Section 29, Township 47 South, Range 43 East, Palm Beach County,
Florida. The area comprising 0.07 of an acre, more or less, is shown
in red on Exhibit "A" attached hereto and made a part hereof.

**NOW THEREFORE**, this consent is granted and accepted under the
following conditions:

1. That it is understood that this consent is effective only insofar
as the property rights of the Government in the land to be occupied
are concerned, and that it does not relieve the Grantee from the
necessity of obtaining grants from the owners of the fee and/or other
interests, therein, nor does it obviate the requirement that the
Grantee obtain State or local assent required by law for the activity
authorized herein.

2. That any proposed improvements or use authorized herein shall not
be commenced until appropriate rights shall have been obtained by the
Grantee from the record owners and encumbrancers of the fee title to
the lands involved, or until the Grantee has obtained all Federal,
State, or local permits required by law.

3.   That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

4.   That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 14 below.

5.   That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects.  Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

6.   That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

7.   That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

8.   That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of the Government, under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to

2

compensation shall accrue from such damage, and if further operations of the Government require the alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

9.   That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights nor to endanger lives and safety of the public.

10.   That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

11.   That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefor, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

12.   That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

13.   That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional examination of

BOOK 15447   PAGE 0667

them can be made or until a clearance to proceed is authorized by the District Engineer.

14.  That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference.  That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

15.  That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida  32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent.  In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

IN WITNESS WHEREOF, I have hereunto set my hand, by authority of the Secretary of the Army, this ___8th___ day of ___SEPTEMBER___ 2000.

UNITED STATES OF AMERICA

BY: _____

BART J. WIVELL
Chief, Real Estate Division
U.S. Army Engineer District
Jacksonville, Florida


AGREED TO AND ACCEPTED

ATLANTICA USA, L.L.C.

BY: _____

Witness

Witness

4

# EXHIBIT B

BOOK 15447  PAGE 0673

**DEPARTMENT OF THE ARMY**
**CONSENT TO EASEMENT**
**TO USE CORPS OF ENGINEERS RIGHT-OF-WAY**

                    Consent No. DACW17-9-03-0084
                    Project:  Intracoastal Waterway,
                    Jacksonville to Miami, Palm Beach
                    County, Florida
                    Tract Nos. 908 and 909

        **THIS CONSENT TO EASEMENT AGREEMENT**, made by and between the **UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY**, hereinafter referred to as the "Government", acting by and through the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, hereinafter referred to as "said officer", and Brasil Telecom of America. Inc., hereinafter referred to as the "Grantee":

        **WHEREAS**, the Government has acquired right-of-way easements over the above-numbered tracts of land, which easement, by its terms, reserves to the Government, in perpetuity, the right to use said easements for the construction, improvement, and maintenance of the  Intracoastal Waterway, Jacksonville to Miami, Palm Beach County, Florida; and

        **WHEREAS**, the Grantee has requested permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over, and under a portion of the lands identified as Tract Nos. 908 and 909, Section 29, Township 47 South, Range 43 East, Palm Beach County, Florida. The area comprising 0.07 of an acre, more or less, is shown in red on Exhibit "A" attached hereto and made a part hereof.

        **NOW THEREFORE**, this consent is granted and accepted under the following conditions:

1.  That effective as of the date of execution hereof on behalf of the United States, this consent shall replace and supersede Department of the Army Consent to Easement No. DACW17-9-00-0105 granted to Atlantica USA, L.L.C.

2.  That it is understood that this consent is effective only insofar as the property rights of the Government in the land to be occupied are concerned, and that it does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests, therein, nor does it obviate the requirement that the Grantee obtain State or local assent required by law for the activity authorized herein.

3.  That any proposed improvements or use authorized herein shall not be commenced until appropriate rights shall have been obtained by the Grantee from the record owners and encumbrancers of the fee title to the lands involved, or until the Grantee has obtained all Federal, State, or local permits required by law.

BOOK 15447   PAGE 0674

4.  That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

5.  That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 15 below.

6.  That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects. Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

7.  That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

8.  That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

9.  That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of the Government, under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to compensation shall accrue from such damage, and if further operations of the Government require the

2

BOOK 15447   PAGE 0675

alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

10.   That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights nor to endanger lives and safety of the public.

11.   That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

12.   That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefore, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

13.   That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

14.   That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional examination of them can be made or until a clearance to proceed is authorized by the District Engineer.

15.   That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference.   That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

16.   That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida  32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent.  In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

   **IN WITNESS WHEREOF,** I have hereunto set my hand, by authority of the Secretary of the Army this ____ 1st ____ day of ____ MAY ____ 20 03.

                         UNITED STATES OF AMERICA

                         BY: SHARON W. CONKLIN
                         Chief, Management and Disposal Branch
                         Real Estate Division
                         U.S. Army Engineer District
                         Jacksonville, Florida


                         AGREED TO AND ACCEPTED

                         BRASIL TELECOM OF AMERICA, INC.

                         BY:
Witness                        SAMI ARAP SOBRINHO
ALINE MÉRONE                   VICE PRESIDENT, GENERAL COUNSEL AND SECRETARY


Witness
ALEX K. BAYEN

4

BOOK 15447   PAGE 0677



RECORDER'S MEMO: Legibility of document unsatisfactory when received.

EXHIBIT "A"

ACQUISITION

TOTAL ACRES ACQUIRED

PUBLIC DOMAIN

TRUE NORTH

DISPOSAL

PALM BEACH COUNTY

INTRACOASTAL WATERWAY
JACKSONVILLE TO MIAMI

AUDITED

RECORDER'S MEMO: Legibility of document
unsatisfactory when received.

EXHIBIT "A"

BOOK 15447   PAGE 0679



EXHIBIT "B"

BOOK 15447   PAGE 0680



FOR PERMIT APPLICATION ONLY

PROFILE R/L STATION 20+25 TO STATION 24+00

MATCH LINE STATION 20+25
SEE SHEET 29 OF 40

MATCH LINE STATION 24+00
SEE SHEET 31 OF 40

INTERCOASTAL WATERWAY

20+69 SEAWALL

22+78 SEAWALL

EXISTING GRADE

17" STEEL CASING

VERT. SCALE: 1"=8'
HORIZ. SCALE: 1"=20'

Atlantica '1'
FIBER OPTIC CABLE SYSTEM
STATION 20+25 TO STATION
24+00
BOCA RATON, FLORIDA

DATE: 11/15/99
DRAWN: 10/28/99
CHCD:
APPD: 11/12/99

SHEET 30 OF 40

EXHIBIT

PB

BOOK 15447 PAGE 0681
Dorothy H. Wilken, Clerk

## CORPORATE CERTIFICATE

I, _Yosi Moreira da Silva Jr_, certify that I am an officer
(other than consent signatory)

of the corporation named as grantee in the foregoing Consent to

Easement; that _Sami Arap Sobrinho_ who signed said Consent
(consent signatory)

to Easement on behalf of the Grantee was the _Vice President, General Counsel and Secretary_

of said corporation, and that said Consent to Easement was duly

signed for and in behalf of said corporation by authority of its

governing body, and is within the scope of its corporate powers.

(Corporate Seal)

_____
(Signature)

_4·25·03_
(Date)

This is not a certified copy

# EXHIBIT C

CFN 20200282028
OR BK 31632 PG 1304
RECORDED 08/07/2020 08:23:07
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1304-1313; (10Pgs)

# DOCUMENT COVER PAGE

**Document Title**:   **DEPARTMENT OF THE ARMY CORRECTIVE CONSENT TO EASEMENT TO USE CORPS OF ENGINEERS RIGHT-OF-WAY**

GREENBERG TRAURIG, P.A.
333 SE 2nd Avenue, 44th Floor
Miami, Florida 33131

ADMIN 37301118v1

# DEPARTMENT OF THE ARMY
## CORRECTIVE CONSENT TO EASEMENT
## TO USE CORPS OF ENGINEERS RIGHT-OF-WAY

Consent No. DACW17-9-03-0084
Project: Intracoastal Waterway,
Jacksonville to Miami
Palm Beach County, Florida
Tract Nos. 910 and 911

**THIS CONSENT TO EASEMENT AGREEMENT**, made by and between the **UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY**, hereinafter referred to as the "Government", acting by and through the Real Estate Contracting Officer, Chief, Real Estate Division, hereinafter referred to as "said officer," and Globenet Cabos Submarinos America, Inc., f/k/a Brasil Telecom of America, Inc., hereinafter referred to as the "Grantee":

**WHEREAS**, the Government has acquired a right-of-way easements over the above-numbered tract of land, which easement, by its terms, reserves to the Government, in perpetuity, the right to use said easements for the construction, improvement, and maintenance of the Intracoastal Waterway, Jacksonville to Miami Project, Palm Beach County, Florida; and

**WHEREAS**, the Grantee has requested permission to construct, use, maintain, repair and remove a fiber optic cable in, on, across, over, and under a portion of the lands identified as Tract Nos. 910 and 911, Section 29, Township 47 South, Range 43 East, Palm Beach County, Florida. The area is shown on Exhibits "A" and "B" attached hereto and made a part hereof.

**NOW THEREFORE**, this consent is granted and accepted under the following conditions:

1. That effective as of the date of execution hereof on behalf of the United States of America, this consent replaces the Department of the Army Consent to Easement No. DACW17-9-03-0084 to Brasil Telecom of America, Inc. recorded 27 June 2003 in the Palm Beach County Official Records, Deed Book 15447, Pages 673 – 681.

2. That it is understood that this consent is effective only insofar as the property rights of the Government in the land to be occupied are concerned, and that it does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests, therein, nor does it obviate the requirement that the Grantee obtain State or local assent required by law for the activity authorized herein.

CFN 20200282028
BOOK 31632 PAGE 1308
3 OF 10

3. That any proposed improvements or use authorized herein shall not be commenced until appropriate rights shall have been obtained by the Grantee from the record owners and encumbrancers of the fee title to the lands involved, or until the Grantee has obtained all Federal, State, or local permits required by law.

4. That the proposed improvements or use authorized herein shall be consistent with the terms and conditions of this consent; and that any improvements or use not specifically identified and authorized shall constitute a violation of the terms and conditions of this consent which may result in a revocation of this consent and in the institution of such legal proceedings as the Government may consider appropriate, whether or not this consent has been revoked or modified.

5. That the exercise of the privileges hereby consented to shall be without cost or expense to the Government and under the supervision of and subject to the approval of the said officer having immediate jurisdiction over the property and subject to such regulations as he may from time to time prescribe, including, but not limited to, the specific conditions, requirements, and specifications set forth in paragraph 15 below.

6. That the Grantee shall supervise and maintain the said improvements and cause it to be inspected at reasonable intervals, and shall immediately repair any damage found therein as a result of such inspection, or when requested by said officer to repair any defects.  Upon completion of the installation of said improvements or the making of any repairs thereto, the premises shall be restored immediately by the Grantee, at the Grantee's own expense, to the same condition as that in which they existed prior to the commencement of such work, to the satisfaction of said officer.

7. That any property of the Government damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to the satisfaction of the said officer, or in lieu of such repair or replacement, the Grantee shall, if so required by said officer and at his option, pay to the Government an amount sufficient to compensate for the loss sustained by the Government by reason of damage to or destruction of Government property.

8. That the Government shall not be responsible for damages to the property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee, or the persons of Grantee's officers, agents, servants, or employees, or others who may be on said premises at the invitation of the Grantee or the invitation of one of them, arising from Governmental activities on or in the vicinity of the said premises, and the Grantee shall hold the Government harmless from any and all claims.

9. That the Government shall in no case be liable for any damage, either hidden or known, to any improvements herein authorized which may be caused by any action of

CFN 20200282028
BOOK 31632 PAGE 1307
4 OF 10

the Government, under the rights obtained in its easements, or that may result from the future operations undertaken by the Government, and no claim or right to compensation shall accrue from such damage, and if further operations of the Government require the alteration or removal of any improvements herein authorized, the Grantee shall, upon due notice, from said officer, alter or remove said improvements without expense to the Government and subject to the supervision and approval of the said officer and no claim for damages shall be made against the Government on account of such alterations or removal.

10.  That construction and/or operation, maintenance, and use of any improvements incident to the exercise of the privileges herein granted shall be in such a manner as not to conflict with the rights of the Government, nor to interfere with the operations by the Government under such rights nor to endanger lives and safety of the public.

11.  That this consent may be terminated by the Government or said officer upon reasonable notice to the Grantee if the Government or said officer shall determine that any improvements or use to which consent is herein granted interferes with the use of said land or any part thereof by the Government, and this consent may be annulled and forfeited by the declaration of the Government or said officer for failure to comply with any or all of the provisions and conditions of this consent, or for nonuse for a period of two (2) years, or for abandonment.

12.  That upon relinquishment, termination, revocation, forfeiture, or annulment of this consent, the Grantee shall vacate the premises, remove all property of the Grantee therefrom, and restore the premises to a condition satisfactory to the said officer.  If the Grantee shall fail or neglect to remove the said property and so restore the premises, then at the option of the Government or said officer, the said property shall either become the property of the Government without compensation therefor, or the Government or said officer, may cause it to be removed, and the premises to be so restored at the expense of the Grantee, and no claim for damages against the Government, or its officer or agents, shall be created by or made on account of such removal and restoration.

13.  That the Grantee within the limits of his respective legal powers shall comply with all Federal, interstate, State, and/or local governmental regulations, conditions, or instructions for the protection of the environment and all other matters as they relate to real property interests granted herein.

14.  That the Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural, or other cultural artifacts, relics, vestiges, remains, or objects of antiquity.  In the event such items are discovered on the premises, the Grantee shall immediately notify the District Engineer, Jacksonville District, Post Office Box 4970, Jacksonville, Florida 32232-0019, and the site and the material shall be protected by the Grantee from further disturbance until a professional

3

CFN 20200282028
BOOK 31632 PAGE 1308
5 OF 10

examination of them can be made or until a clearance to proceed is authorized by the District Engineer.

15. That construction shall be in accordance with the drawings attached hereto and made a part hereof as Exhibit "B" and to Department of the Army Permit No. 199905552, incorporated herein by reference. That no additional structures shall be constructed waterward of the Government's right-of-way line and that any structures currently within the right-of-way must be removed by the Grantee, at Grantee's expense, if future needs of the Government so require.

16. That this consent may not be transferred to a third party without the prior written notice to the Chief, Real Estate Division, U.S. Army Corps of Engineers, Jacksonville District, Post Office Box 4970, Jacksonville, Florida  32232-0019, and by the transferee's written agreement to comply with and be bound by all the terms and conditions of this consent.  In addition, if the Grantee transfers the improvements authorized herein by conveyance of realty, the deed shall reference this consent and the terms and conditions herein and the consent shall be recorded along with the deed in the Registrar of Deeds or with other appropriate official.

This consent is not subject to Title 10, United States Code, Section 2662.

**IN WITNESS WHEREOF**, I have hereunto set my hand, by authority of the Secretary of the Army, this 15th day of July 2020.

**UNITED STATES OF AMERICA**

BY: MCQUILLEN.TIMOTH Y.HART.1050583305

Digitally signed by
MCQUILLEN.TIMOTHY.HART.10505833
05
Date: 2020.07.15 14:50:51 -04'00'

Timothy H. McQuillen
Real Estate Contracting Officer
Chief, Real Estate Division

**AGREED TO AND ACCEPTED**

**GLOBENET CABOS SUBMARINOS AMERICA, INC.**
f/k/a Brasil Telecom of America, Inc.

Witness
BRUNO GIOVENACI

Eduardo Falzoni
Chief Executive Officer

4

Witness

## CORPORATE CERTIFICATE

I, Bruno Giovenatti, certify that I am an officer of the Corporation
(other than consent signatory)

named as Grantee in the foregoing Consent to Easement; that Eduardo Falzon
                                                                                                    (consent signatory)

who signed said Consent to Easement on behalf of the Grantee was the _____

_____ of said Corporation; and that said Consent to Easement was duly

signed for and on behalf of said Corporation by authority of its governing body, and is

within the scope of its corporate powers.

_____
(Signature)

07/13/20
_____
(Date)

5

CFN 20200282028
BOOK 31632 PAGE 134

# BOUNDARY SURVEY FOR: Globenet Cabos Submarinos America, Inc.

## Section 29, Township 47 South, Range 43 East
## Palm Beach County, Florida



BOCA RATON

SUBJECT PROPERTY

**LEGAL DESCRIPTION** (from Title report)

**SURVEYORS NOTES**

**CERTIFIED TO:**
Globenet Cabos Submarinos America, Inc.
Alcatel-Lucent LLP

**Certification**

EXHIBIT B
CONSENT TO EASEMENT
DACW17-9-03-0084

GLOBENET

PALM BEACH COUNTY   FLORIDA



COPYRIGHT 2019 ROPA, INC. PROFESSIONAL SURVEYORS AND MAPPERS

CFN 20200282028
BOOK 31632 PAGE 1318

# EXHIBIT D



IN THE UNITED STATES DISTRICT
COURT IN AND FOR THE SOUTHERN
DISTRICT OF FLORIDA.

UNITED STATES OF AMERICA,

Petitioner,

vs.

Parcel 8, Sheet 11, etc,

JAMES O'CONNOR, et al,

Respondents.

PETITION IN CONDEMNATION.
(CERTIFIED COPY)

F I L E D

JUL 18 1:3

W.     Alfred A. Green
Daytona Beach, Florida,
Special Assistant to the
Attorney General of the
United States.

NOT A CERTIFIED COPY

IN THE UNITED STATES DISTRICT
COURT IN AND FOR THE SOUTHERN
DISTRICT OF FLORIDA.

UNITED STATES OF AMERICA,

             Petitioner,

vs.

Parcel 8, Sheet 11, of the
Right-of-way of the Intra-
coastal Waterway from Jack-
sonville, Florida, to Miami,
Florida, through Section 22,
Township 45 South, Range 43
East, in Palm Beach County,
Florida, according to plat
thereof of record in the cur-
rent Public Records in the
office of the Clerk of the
Circuit Court in and for said
Palm Beach County, in Plat
Book 17, page 11, of the Pub-
lic Records of said County,
and other parcels of land in
Palm Beach County, Florida,
specifically described in the
Petition filed herein;

JAMES O'CONNER, and other res-
pondents specifically named
in the Petition filed herein,

             Respondents.

PETITION IN CONDEMNATION
AS TO CERTAIN PROPERTIES
IN PALM BEACH COUNTY.
(SOUTH PALM BEACH)

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF THE STATE OF FLORIDA:

        Your Petitioner, United States of America, by
its duly authorized attorney, acting under the instructions
of the Attorney General of the United States of America,
and at the request of the Secretary of War, brings this its
suit to acquire by condemnation certain rights hereinafter
particularly described in and to those parcels or areas of
land situated in Palm Beach County, Florida, in the Southern

District of Florida, particularly described in paragraph
IV hereof, and hereby makes parties defendant those persons
and corporations named in paragraph VI hereof, as well as
all other persons and corporations, if any, who have or
claim any right, title or interest in and to said lands,
and respectfully represents to the Court:

- I -

That by the Act of Congress approved January
21st, 1927 (44 Stat. 1010), and modified by Act of Congress
approved July 3rd, 1930 (_____ Stat. _____), there was
authorized the improvement of an Inland Waterway following
the coastal route from Jacksonville, Florida, to Miami,
Florida, under direction of the Secretary of War in accord-
ance with the provisions and conditions set forth in House
Document Numbered 586, 89th Congress, Second Session.

- II -

That the Florida Inland Navigation District,
in its further performance of said conditions, is now un-
dertaking to acquire and furnish easements (the kind and
extent of which are hereinafter particularly described and
set forth) in suitable lands, properties and areas, here-
inafter described, such as are required and/or necessary
as and for rights-of-way to be used in connection with
said improvement and/or for the deposit of spoil and/or
dredged material in connection with such improvement, for
the purpose of conveying the same to the United States
free of cost, but has been unable to obtain the same by
purchase and acquire a valid title thereto.

-2-

- III -

That on the 5th day of April, A. D. 1933, and
after the Florida Inland Navigation District had report-
ed to him that it had been unable to purchase and acquire
a valid title to such easements in or over said lands,
properties and areas or any of them herein mentioned,
for the purposes aforesaid, or otherwise, the Secretary
of War, being of the opinion that the acquisition of valid
title as here required to such easements as are herein
sought for the United States of America, could not be
acquired by purchase, but only by condemnation under judi-
cial process, and that this was necessary and advantageous
to the government of said United States of America, and
in order to obtain a valid title as here required to said
easements, and in pursuance to the authority vested in
him by the provisions of the Act of Congress approved August
8th, 1917 (40 Stat. 297), and the Act of Congress approved
July 18th, 1918 (40 Stat. 911), and such other Act or Acts
of Congress, if any, as is or are pertinent to these pro-
ceedings, requested the Attorney General of the United States
of America to cause these proceedings to be instituted, and
that in compliance therewith the said Attorney General has
caused these proceedings to be instituted in the name of
the United States of America.

- IV -

That the lands, properties and/or areas in which
an easement is sought by these proceedings to be condemned
are situated in the County of Palm Beach, State of Florida,
and are particularly and properly described as follows, viz:

-3-

| | Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|---|---|---|---|---|---|---|
| (1) - | 6085 | 8 | 11 | 22 | 45 S. | 43 E. |
| (2) - | 6086 | 9 | 11 | " | " | " |
| (3) - | 6088 | 11 | 11 | " | " | " |
| (4) - | S-6094 | 3 | 12-A | 27 | " | " |
| (5) - | S-6095 | 3-A | 12-A | " | " | " |
| (6) - | S-6096 | 4 | 12-A | " | " | " |
| (7) - | S-6098 | 6 | 12-A | " | " | " |
| (8) - | 6099 | 7 | 12-A | " | " | " |
| (9) - | S-6100 | 8 | 12-A | " | " | " |
| (10) - | 6101 | 9 | 12-A | " | " | " |
| (11) - | S-6102 | 10 | 12-A | " | " | " |
| (12) - | 6103 | 11 | 12-A | " | " | " |
| (13) - | S-6104 | 12 | 12-A | " | " | " |
| (14) - | 6105 | 13 | 12-A | " | " | " |
| (15) - | S-6106 | 14 | 12-A | " | " | " |
| (16) - | 6107 | 15 | 12-A | " | " | " |
| (17) - | S-6108 | 16 | 12-A | " | " | " |
| (18) - | S-6109 | 17 | 12-B | " | " | " |
| (19) - | 6110 | 18 | 12-B | " | " | " |
| (20) - | S-6111 | 19 | 12-B | " | " | " |
| (21) - | 6112 | 20 | 12-B | " | " | " |
| (22) - | S-6113 | 21 | 12-B | " | " | " |
| (23) - | 6117 | 25 | 12-B | " | " | " |
| (24) - | S-6118 | 26 | 12-B | " | " | " |
| (25) - | 6119 | 27 | 12-C | " | " | " |
| (26) - | 6120 | 28 | 12-C | " | " | " |
| (27) - | 6121 | 29 | 12-C | " | " | " |
| (28) - | 6122 | 30 | 12-C | " | " | " |
| (29) - | S-6123 | 31 | 12-C | " | " | " |
| (30) - | 6125 | 33 | 12-C | " | " | " |

-4-

NOT A CERTIFIED COPY

| | Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|---|---|---|---|---|---|---|
| (31) - | S-6126 | 34 | 12-C | 27 | 45 S. | 43 E. |
| (32) - | 6127 | 35 | 12-C | " | " | " |
| (33) - | S-6129 | 37 | 12-C | " | " | " |
| (34) - | S-6130 | 38 | 12-C | " | " | " |
| (35) - | 6132 | 40 | 12-C | " | " | " |
| (36) - | 6134 | 42 | 12-C | " | " | " |
| (37) - | 6135 | 1 | 13-A | 34 | " | " |
| (38) - | 6136 | 2 | 13-A | " | " | " |
| (39) - | 6137 | 3 | 13-A | " | " | " |
| (40) - | 6138 | 4 | 13-A | " | " | " |
| (41) - | 6140 | 6 | 13-A | " | " | " |
| (42) - | 6141 | 7 | 13-A | 34 | " | " |
| (43) R- | 6142 | 8 | 13-A | " | " | " |
| (44) - | 6143 | 9 | 13-A | " | " | " |
| (45) - | 6145 | 11 | 31 | 33 & 34 | " | " |
| (46) - | 6146 | 12 | 31 | 34 | " | " |
| (47) - | 6147 | 13 | 31 | " | " | " |
| (48) - | 6148 | 14 | 31 | " | " | " |
| (49) - | 6149 | 15 | 13-A | " | " | " |
| (50) - | 6152 | 22 | 13 | 33 & 34 | " | " |
| (51) - | 6153 | 23 | 31 | 34 | " | " |
| (52) - | 6154 | 24 | 31 | " | " | " |
| (53) - | 6155 | 25 | 31 | " | " | " |
| (54) - | 6156 | 1 | 14-A | 3 | 46 | 43 |
| 55 ) - | 6157 | 2 | 14-A | 4 | " | " |
| (56) - | 6158 | 3 | 14-A | " | " | " |
| (57) - | 6159 | 4 | 14-A | " | " | " |
| (58) - | 6160 | 5 | 14-B | " | " | " |

-5-

NOT A CERTIFIED COPY

| | Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|---|---|---|---|---|---|---|
| (59) - | R-6161 | 6 | 14-B | 4 | 46 | 43 |
| (60) - | 6162 | 1 | 15 | 9 | " | " |
| (61) - | 6163 | 2 | 15 | " | " | " |
| (62) - | 6164 | 3 | 15 | 9 | " | " |
| (64) - | 6167 | 6 | 15 | " | " | " |
| (66) - | 6171 | 10 | 15 | " | " | " |
| (67) - | S-6172 | 11 | 15 | " | " | " |
| (68) - | 6173 | 12 | 15 | " | " | " |
| (69) - | 6174 | 13 | 15 | " | " | " |
| (70) - | 6175 | 14 | 15 | " | " | " |
| (71) - | S-6176 | 1 | 16-A | 16 | " | " |
| (72) - | S-6177 | 2 | 16-A | 16 | " | " |
| (73) - | S-6178 | 3 | 16-A | " | " | " |
| (74) - | S-6181 | 6 | 16-A | " | " | " |
| (75) - | 6182 | 7 | 16-A | " | " | " |
| (76) - | S-6183 | 8 | 16-A | " | " | " |
| (77) - | 6184 | 9 | 16-A | " | " | " |
| (79) - | 6188 | 13 | 16-A | " | " | " |
| (81) - | 6190 | 15 | 16-B | " | " | " |
| (82) - | S-6191 | 16 | 16-B | " | " | " |
| (83) - | 6192 | 17 | 16-B | " | " | " |
| (84) - | S-6193 | 18 | 16-B | " | " | " |
| (85) - | 6194 | 19 | 16-B | " | " | " |
| (86) - | S-6195 | 20 | 16-B | " | " | " |
| (87) - | 6196 | 21 | 16-B | " | " | " |
| (88) - | S-6197 | 22 | 16-B | " | " | " |

-6-

NOT A CERTIFIED COPY

| Item No. | Parcel No. | Sheet No. | Sec. | Twn. | Rge. |
|---|---|---|---|---|---|
| (89) - 6198 | 23 | 16-B | 16 | 46 S. | 43 E. |
| (90) - 6199 | 24 | 16-B | " | " | " |
| (91) - S-6200 | 25 | 16-B | " | " | " |
| (92) - S-6201 | 1 | 17-A | 21 | " | " |
| (93) - S-6204 | 4 | 17-A | 21 | " | " |
| (94) - 6205 | 5 | 17-A | " | " | " |
| (95) - 6207 | 7 | 17-A | " | " | " |
| (96) - 6208 | 8 | 17-A | " | " | " |
| (97) - 6209 | 9 | 17-A | " | " | " |
| (98) - 6211 | 11 | 17-A | " | " | " |
| (99) - 6212 | 12 | 17-A | " | " | " |
| (100) - 6214 | 14 | 17-A | " | " | " |
| (101) - 6216 | 16 | 17-A | " | " | " |
| (102) - S-6217 | 17 | 17-A | " | " | " |
| (103) - 6218 | 18 | 17-A | " | " | " |
| (104) - S-6219 | 19 | 17-A | " | " | " |
| (105) - S-6220 | 20 | 17-B | " | " | " |
| (106) - 6225 | 25 | 17-B | " | " | " |
| (107) - 6226 | 26 | 17-B | " | " | " |
| (108) - 6228 | 28 | 17-B | " | " | " |
| (109) - 6230 | 2 | 18 | 28 | " | " |
| (110) - 6231 | 3 | 18 | " | " | " |
| (111) - 6232 | 4 | 18 | " | " | " |
| (112) - 6233 | 5 | 18 | " | " | " |
| (113) - 6234 | 6 | 18 | " | " | " |
| (114) - 6235 | 7 | 18 | " | " | " |
| (115) - 6236 | 1 | 19 | 33 | " | " |
| (116) - 6239 | 4 | 19 | " | " | " |
| (117) - 6240 | 5 | 19 | " | " | " |
| (118) - 6243 | 1 | 20 | 4 | 47 | " |

| | Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|---|---|---|---|---|---|---|
| (119) - | 6244 | 2 | 20 | 4 | 47 S. | 43 E. |
| (120) - | 6246 | 2 | 21 | 9 | " | " |
| (121) - | R-6247 | 3 | 21 | " | " | " |
| (122) - | R-6248 | 1 | 22 | 16 | " | " |
| (123) - | 6249 | 2 | 22 | " | " | " |
| (124) - | 6250 | 3 | 22 | " | " | " |
| (125) - | 6251 | 4 | 22 | 17 | " | " |
| (126) - | 6253 | 6 | 22 | " | " | " |
| (127) - | 6255 | 8 | 22 | " | " | " |
| (128) - | 6256 | 1 | 23-A | 21 | " | " |
| (129) - | 6257 | 2 | 23-A | " | " | " |
| (130) - | 6258 | 3 | 23-A | " | " | " |
| (131) - | 6259 | 4 | 23-A | " | " | " |
| (132) - | 6260 | 5 | 23-A | " | " | " |
| (133) - | 6262 | 7 | 23-A | 20 | " | " |
| (134) - | 6263 | 8 | 23-A | " | " | " |
| (135) - | 6264 | 9 | 23-A | 20 & 21 | " | " |
| (136) - | 6265 | 10 | 23-A | 20 | " | " |
| (137) - | 6266 | 11 | 23-A | " | " | " |
| (138) - | 6269 | 14 | 23-B | " | " | " |
| (139) - | 6270 | 15 | 23-B | " | " | " |
| (140) - | 6272 | 17 | 23-B | " | " | " |
| (141) - | 6275 | 20 | 23-B | " | " | " |
| (142) - | 6277 | 22 | 23-B | " | " | " |
| (143) - | 6278 | 23 | 23-B | " | " | " |
| (144) - | 6279 | 24 | 23-B | " | " | " |
| (145) - | 6280 | 25 | 23-B | " | " | " |
| (146) - | 6281 | 26 | 23-B | " | " | " |
| (147) - | 6284 | 3 | 30 | " | " | " |
| (148) - | 6288 | 7 | 30 | 20 | " | " |

-8-

| Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|----------|-----------|-----------|------|------|------|
| (149)- 6289 | 8 | 30 | 20 | 47 | 43 |
| (152)- 6292 | 10 | 30 | 29 | " | " |
| (153)- 6294 | 11 | 30 | " | " | " |
| (154)- 6295 | 12 | 30 | " | " | " |
| (155)- 6296 | 6 | 24-A | " | " | " |

each and all according to plat thereof of record in the Pub-
lic Records of Palm Beach County, Florida, in Plat Book 17,
pages 11 to 31, both inclusive.

S/A Item 6087.

156 - That part of the S½ of the N½ of the S½ of
      the SE¼ of the SW¼ of Section 22, Township
      45 South, Range 43 East, Palm Beach County,
      Florida, lying East of the Easterly right-of-
      way line of the Intracoastal Waterway from
      Jacksonville to Miami, Florida, as that
      right-of-way line is shown on the plat re-
      corded in Plat Book 17, at page 11.

S/A Item 6088.

157 - That part of the South 2.53 chains of Govern-
      ment Lot 5, Section 22, Township 45 South,
      Range 43 East, Palm Beach County, Florida, ly-
      ing West of Spanish Creek; and that part of the
      S½ of the S½ of the SE¼ of the SW¼ of said Sec-
      tion 22, lying East of the Easterly right-of-way
      line of the Intracoastal Waterway from Jackson-
      ville to Miami, Florida, as that right-of-way
      line is shown on the plat recorded in Plat
      Book 17, at page 11, of the Public Records of
      said Palm Beach County.

S/A Item 6097.

158 - (1) That part of Lot 15 of Block 1 of Boyn-
      ton Beach Park, a subdivision in Section 27,
      Township 45 South, Range 43 East, Palm Beach
      County, Florida, according to plat thereof,
      recorded in Plat Book 13, at page 42 of the
      Public Records of said county, lying East of
      the Easterly right-of-way line of the Intra-
      coastal Waterway from Jacksonville to Miami,
      Florida, as that right-of-way line is shown
      on the plat recorded in Plat Book 17, at page
      12-A, of the records aforementioned; and,

-9-

(2) - Those portions of Parker Avenue and the
alley adjoining the area hereinabove described.

S/A Item 6097-A.

159 - (1) - Lots 12, 13 and 14 of Block 1 of Boynton
Beach Park, a subdivision in Section 27, Town-
ship 45 South, Range 43 East, Palm Beach County,
Florida, according to plat thereof recorded in
Plat Book 12, at page 42 of the Public Records
of said county, and

(2) - Those portions of Parker Avenue and the
alley adjoining the area hereinabove described.

S/A Item 6110.

160 - (1) - All of Lots 23, 24, 27, 28, 32, 33, 34,
35, those portions of Lots 25, 26, "B" and "C",
of Boynton's Subdivision in Section 27, Town-
ship 45 South, Range 43 East, Palm Beach County,
Florida, according to Amended Plat thereof, re-
corded in Plat Book 12, at page 45 of the Public
Records of said Palm Beach County, lying East of
the Easterly Right-of-way line of the Intracoastal
Waterway from Jacksonville to Miami, Florida, as
that right-of-way line is shown on the plat re-
corded in Plat Book 17, at page 12-B of the re-
cords aforementioned, and those portions of
Edith Street, Anna Street, Corbine Street and
George Street, adjoining the areas hereinabove
described, and

(2) - That part of Lot 54 of Boynton's Subdi-
vision in said Section 27, according to plat
thereof, recorded in Plat Book 1, at page 29
of the records aforementioned, lying East of
and adjoining Parcel No. 35 of the right-of-way
of said Intracoastal Waterway as that right-of-
way is shown on the plat recorded in Plat Book
17, at page 12-C of said Palm Beach County
Records, the prolongation of the North and South
lines of said Parcel No. 35 forming the North
and South lines respectively of said part of
Lot 54 hereinabove described; and that part of
Porter Street adjoining the area hereinabove
described.

S/A Item 6122.

161 - (1) - Lots 40, 41, 42 and 43 and those portions
of Lots "D" and "E" of Boynton's Subdivision in
Section 27, Township 45 South, Range 43 East,
Palm Beach County, Florida, according to Amended
Plat thereof, recorded in Plat Book 12, at page
45, of the Public Records of said Palm Beach
County, lying East of the Easterly right-of-way
line of the Intracoastal Waterway from Jack-
sonville to Miami, Florida, as that right-of-
way line is shown on the plat recorded in
Plat Book 17, at page 12-C of the records

-10-

aforementioned, and

(2) - Those portions of Corbine Street, Thompson Street and George Street adjoining the areas hereinabove described.

S/A Item 6124.

162 - (1) - That part of Lot "F" of Boynton's Subdivision in Section 27, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Amended Plat thereof, recorded in Plat Book 12, at page 45 of the Public Records of said Palm Beach County, lying East of the Easterly right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as that right-of-way line is shown on the plat recorded in Plat Book 17, at page 12-C of the records aforementioned; and those portions of Thompson Street and George Street adjoining the area hereinabove described, and

(Note: The following tract is intended for Pipe Line and Flood Area and not for deposit of spoil)

(2) - Lot 49 of Boynton's Subdivision in Section 27, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Amended Plat thereof, recorded in Plat Book 12, at page 45 of the Public Records of said Palm Beach County; and those portions of Thompson Street and George Street adjoining the area hereinabove described.

S/A Item 6124-A.

163 - (1) - Lot 48 of Boynton's Subdivision in Section 27, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Amended Plat thereof, recorded in Plat Book 12, at page 45, of the Public Records of said Palm Beach County; and

(2) - That portion of Thompson Street adjoining the areas hereinabove described.

S/A Item 6125.

164 - (1) - All of Lots 50 and 51 and that part of Lot "G" of Boynton's Subdivision in Section 27, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Amended Plat thereof, recorded in Plat Book 12, at page 45 of the Public Records of said Palm Beach County, lying East of the Easterly right-of-way line of the Intracoastal Water-

-11-

way from Jacksonville to Miami, Florida, as
that right-of-way line is shown on the Plat
recorded in Plat Book 17, at Page 12-C of
the records aforementioned; and

(2) - Those portions of Porter Street and
George Street adjoining the areas herein-
above described.

P/F 6146.

165 - The North 25 feet of Lot 14 of "Plat of Lands
owned by Benson Bros." in Section 34, Town-
ship 45 South, Range 43 East, Palm Beach
County, Florida, according to plat recorded
in Plat Book 5, at page 27 of the Public
Records of said County, lying East of the
Easterly right-of-way line of the Intra-
coastal Waterway from Jacksonville to Miami,
Florida, as that right-of-way line is shown
on the plat recorded in Plat Book 17, at
page 13-A, of the records aforementioned.

P/F 6147.

166 - The North 25 feet of Lot 12 and the South
25 feet of Lot 13 according to "Plat of
Lands Owned by Benson Bros.", in Section 34,
Township 45 South, Range 43 East, Palm Beach
County, Florida, recorded in Plat Book 5, at
page 27 of the Public Records of said County,
lying East of the Easterly right-of-way line
of the Intracoastal Waterway from Jackson-
ville to Miami, Florida, as that right-of-way
line is shown on the plat recorded in Plat
Bk.17, page 13-A of the records aforemen-
tioned.

S/A Item 6147-A.

167 - (1) Lots 1 to 9, both inclusive, and the
North 59 feet of Lot 10, all in Block Z of
Palm Beach Shore Acres in Section 34, Town-
ship 45 South, Range 43 East, Palm Beach
County, Florida, according to Plat recorded
in Plat Book 7, at page 15 of the Public
Records of said County; and

(2) - That part of that certain 10 foot road-
way lying immediately west of and adjoining
the areas hereinabove described.

S/A Item 6147-C.

168 - That part of the South 508 feet of the North
924 feet of Government Lot 2 in Section 34,
Township 45 South, Range 43 East, Palm Beach

-12-

County, Florida, lying West of the Ocean
Boulevard, a Palm Beach County highway, as
that boulevard is now constructed, and lying
East of a line that is parallel to the West
line of said Government Lot 2 and 165 feet
Eastwardly therefrom as measured at right-
angles to said West line of Government Lot
2.

P/F 6148.

169 - The South 25 feet of Lot 11 of "Plat of
Lands Owned by Bonson Bros." in Section 34,
Township 45 South, Range 43 East, Palm Beach
County, Florida, according to Plat recorded
in Plat Book 5, at page 27 of the Public Re-
cords of said County, lying East of the
Easterly right-of-way line of the Intra-
coastal Waterway from Jacksonville to Miami,
Florida, as that right-of-way line is shown
on the Plat recorded in Plat Book 17, at
page 13-A of the records aforementioned.

P/F 6149.

170 - Marine Way, Briny Breezes Boulevard, Ruthmary
Avenue, Cordova Avenue, Seneca Avenue, Seminole
Avenue, Cherokee Avenue, Lots 244, 245, 255 &
256 and that part of Banyan Boulevard and Ser-
vice Lane embraced in a zone formed by prolong-
ing said Seneca Avenue and Seminole Avenue
Eastward for their full width to an intersec-
tion with the East line of said Service Lane,
all in Briny Breezes, a subdivision in Section
34, Township 45 South, Range 43 East, Palm
Beach County, Florida, according to Plat there-
of recorded in Plat Book 3 at page 46 of the
Public Records of said County.

P/F 6150.

171 - Marine Way, Chickasaw Avenue, Choctaw Ave-
nue, Cherokee Avenue, and those portions of
Banyan Boulevard, Service Lane and Lots 79,
80 and 81 embraced in a zone by prolonging
said Choctaw Avenue Eastward for its full
width to an intersection with the East line
of said Service Lane, all in Briny Breezes
Addition No. 2, a subdivision in Section 34,
Township 45 South, Range 43 East, Palm Beach
County, Florida, according to Plat thereof
recorded in Plat Book 14 at page 62 of the
Public Records of said County.

S/A Item 6150-D.

172 - Lots 10 and 11 of Block A, Palm Beach Shore
Acres, Section 34, Township 45 South, Range
43 East, according to Plat thereof recorded
in Plat Book 7 at page 15 of the Public Re-
cords of said County, together with that
part of that certain 10 foot road lying im-

-13-

mediately West of and adjoining said Lots 10
and 11 as shown on the aforementioned plat.

S/A Item 6155.

173 - (1) - That part of Lot 17 of "Plat of Lands
Owned by Benson Bros." in Section 34, Town-
ship 45 South, Range 43 East, Palm Beach
County, Florida, according to Plat recorded
in Plat Book 5 at page 27 of the Public Re-
cords of said County; and that part of the
SW¼ of the SW¼ of said Section 34, all lying
East of the Easterly right-of-way line of the
Intracoastal Waterway from Jacksonville to
Miami, Florida, as that right-of-way line is
shown on the Plat recorded in Plat Book 17
at page 13-B of the records aforementioned,
and inclosed by a private road or bridle
path as now constructed and more particular-
ly described as follows:-

Commence at a point on the Easterly right-
of-way line of said Intracoastal Waterway,
same being 35 feet South of the North line
of said Lot 17 when measured along said
right-of-way line for a point of beginning.
From said point of beginning run thence
along the Southerly edge of aforementioned
private road and parallel to the North line
of said Lot 17, N. 89 degrees, 01'-53" E.
823 feet to a point where said private road
turns to a Southerly direction; thence along
the Westerly edge of said private road the
following courses and distances:  S. 26 de-
grees - 31' E. 54 feet; thence S. 13 Degrees
53' East 270 feet; thence S. 21 degrees 33'
W. 244 feet; thence S. 7 degrees 18' E. 180
feet; thence S. 2 degrees 27' E. 172 feet;
thence S. 67 degrees 06' W. 333 feet; thence
S. 29 degrees - 41' W. 110 feet; thence S.
2 degrees 06' W. 188 feet to a point where
said private road turns to a Westerly direc-
tion; thence along the Northerly edge of
said private road and parallel to the South
line of said Section 34, S. 88 degrees 26'
41" W. 648 feet to an intersection with the
Easterly right-of-way line of said Intra-
coastal Waterway; thence along said Easterly
right-of-way line N. 7 degrees 07' 04" E.
1315 feet to the point of beginning; and

(Note:  The following tract is in-
tended for Pipe Line and Flood
Area only, and not for deposit of
Spoil)

(2)  That part of the South 50 feet of the
SW¼ of the SW¼ of said Section 34, lying

-14-

between the area hereinabove described and
the East line of said SW¼ of the SW¼.

### S/A Item 6155-A.

174 - The South 41 feet of Lot 10 and all of Lots
11 to 26, both inclusive, in Block Z of Palm
Beach Shore Acres in Section 34, Township 45
South, Range 43 East, Palm Beach County,
Florida, according to Plat recorded in Plat
Book 7 at Page 15 of the Public Records of
said County, and that part of that certain
10 foot road lying immediately West of and
adjoining the areas hereinabove described.

### S/A Item 6155-B.

175 - That part of the South 1666.4 feet of Govern-
ment Lot 2 in Section 34, Township 45 South,
Range 43 East, Palm Beach County, Florida,
lying West of the Ocean Boulevard, a Palm
Beach County highway, as that highway is now
constructed; excluding therefrom the West 165
feet of said Government Lot 2, said 165 feet
measured at right-angles to the West line of
said Government Lot 2.

### S/A Item 8159.

176 - That part of Government Lot 1 and that part
of the SE¼ of the NE¼ of Section 4, Township
46 South, Range 43 East, Palm Beach County,
Florida, embraced in a zone 500 feet wide
measured at right angles to and lying West
of and immediately adjoining the Westerly
right-of-way line of the Intracoastal Water-
way from Jacksonville to Miami, Florida, as
that right-of-way line is shown on the Plat
recorded in Plat Book 17, at page 14-A of
the Public Records of said County; excluding
therefrom the North 1400 feet of said Govern-
ment Lot 1.

### S/A Item 6160.

177 - (1) - That part of the E 3/4 of the SE ¼ of
Section 4, Township 46 South, Range 43 East,
Palm Beach County, Florida, lying West of the
Westerly right-of-way line of the Intra-
coastal Waterway from Jacksonville to Miami,
Florida, as that right-of-way line is shown
on the Plat recorded in Plat Book 17, at Page
14-B of the Public Records of said County,
excluding therefrom the Rose Garden located
in the NW corner of the NE¼ of the SE¼ of
said Section 4, the same being rectangular in
shape and extending Eastward a distance of
250 feet from the West line of said NE¼ of the
SE¼, and extending in a Southerly direction

-15-

a distance of 400 feet from the N line of said
NE¼ of the SE¼; and

(2) – That part of the E½ of the NE¼ of Section
9, Township 46 South, Range 43 East, Palm Beach
County, Florida, and that part of Lot 9 of said
Section 9, according to "Map of Subdivisions of
Portions of Townships 45 and 46 South, Range 43
East" recorded in Plat Book 1 at Page 4 of the
Public Records of said Palm Beach County, em-
braced in a zone 800 feet wide, measured at
right angles to and lying East of and immediate-
ly adjoining the Easterly right-of-way line of
said Intracoastal Waterway, as that right-of-way
is shown on the Plat recorded in Plat Book 17,
at Page 15, of the Records aforementioned, ex-
cluding therefrom that portion of the improved Gulf
Stream Golf Course as now constructed and lo-
cated in the Northerly portion of the E½ of the NE
¼ of said Section 9.

S/A Item 6174.

178 – Lots 22, 23, 24, 25, 30, 31, 32, 33 and those
portions of Lots 10, 11, 12 and 13 of Model
Land Company's Subdivision of Section 9, Town-
ship 46 South, Range 43 East, Palm Beach County,
Florida, according to Plat recorded in Plat Book
8 at page 40 of the Public Records of said County,
lying East of the Easterly right-of-way line of
the Intracoastal Waterway from Jacksonville to
Miami, Florida, as that right-of-way line is shown
on the Plat recorded in Plat Book 17 at Page 15 of
the records aforementioned.

S/A Item 6182.

179 –(1) – The N 3/4 of Blocks 154 and 162, that part of
the N 3/4 of Block 146, and that part of Block 138,
City of Delray Beach, formerly Town of Linton, in
Section 16, Township 46 South, Range 43 East, Palm
Beach County, Florida, according to Plat recorded
in Plat Book 1 at page 3 of the Public Records of
said County, lying East of the Easterly right-of-
way line of the Intracoastal Waterway from Jack-
sonville to Miami, Florida, as that right-of-way
line is shown on the Plat recorded in Plat Book
17 at page 16-A of the records aforementioned; and

(2) – Those portions of Laing Street and Thomas
Avenue adjoining the areas hereinabove described.

S/A Item 6184

180 – (1) That part of the N½ of Block 139 of the City of
Delray Beach, formerly Town of Linton, in Section
16, Township 46 South, Range 43 East, Palm Beach
County, Florida, according to Plat recorded in Plat
Book 1, at page 3 of the Public Records of said
County, lying East of the Easterly right-of-way
line of the Intracoastal Waterway from Jack-
sonville to Miami, Florida, as that right-

-16-

of-way line is shown on the plat recorded in
Plat Book 17 at page 16-A of the Records afore-
mentioned; and

(2) - That part of Thomas Avenue adjoining the
area hereinabove described.

S/A Item 6185.

181 - (1) - The S½ of Blocks 147, 155 and 163, and that
part of the S½ of Block 139, and that part of the
N½ of Block 140, City of Delray Beach, formerly
Town of Linton, in Section 16, Township 46 South,
Range 43 East, Palm Beach County, Florida, accord-
ing to Plat recorded in Plat Book 1 at page 3 of
the Public Records of said County, lying East of
the Easterly right-of-way line of the Intracoas-
tal Waterway from Jacksonville to Miami, Florida,
as that right-of-way line is shown on the Plat
recorded in Plat Book 17 at page 16-A, of the
Records aforementioned; and

(2) - That part of Lowry Street adjoining the
areas hereinabove described.

182 -                    S/A Item 6163.

That part of the S½ of Block 140 of the City of
Delray Beach, formerly Town of Linton, in Section
16, Township 46 South, Range 43 East, Palm Beach
County, Florida, according to Plat recorded in
Plat Book 1 at page 3 of the Public Records of
said County, lying East of the Easterly right-of-
way line of the Intracoastal Waterway from Jack-
sonville to Miami, Florida, as that right-of-way
line is shown on the plat recorded in Plat Book
17 at page 16-A of the records aforementioned.

S/A Item 6228.

183 - (1) - All that certain area in Section 21, Township
46 South, Range 43 East, Palm Beach County, Florida,
lying between the Easterly Government meander line
of Boca Ratone's Lagoon, according to Government
Survey of A. D. 1870, and the Easterly right-of-way
line of the Intracoastal Waterway from Jacksonville
to Miami, Florida, as that right-of-way line is
shown on the Plat recorded in Plat Book 17 at
page 17-B of the Public Records of said County,
said area containing portions of Government Lots
2 and 3 and the submerged and/or semi-submerged
and unsurveyed lands in said Section 21, known as
Boca Ratone's Lagoon; and

(2) - That certain area in Section 28, Township
46 South, Range 43 East, Palm Beach County, Flo-

-17-

rida, lying between the Ocean Boulevard, a Palm Beach County highway, as that highway is now constructed, and the Easterly right-of-way line of aforementioned Intracoastal Waterway, as that right-of-way line is shown on the Plat recorded in Plat Book 17 at page 18 of the aforementioned records, said area containing portions of Government Lots 1, 2 and 3 and a portion of the submerged and/or semi-submerged and unsurveyed lands in said section 28, known as Boca Ratone's Lagoon.

S/A Item 6228-A.

184 - Those portions of Government Lots 1 and 4 in Section 21, Township 46 South, Range 43 East, Palm Beach County, Florida, lying West of the Ocean Boulevard, a Palm Beach County highway, as that highway is now constructed.

S/A Item 6235.

185 - That part of Government Lot 5, Section 28, Township 46 South, Range 43 East, Palm Beach County, Florida, lying between the Ocean Boulevard, a Palm Beach County highway, as that highway is now constructed, and the Easterly right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as that right-of-way line is shown on the Plat recorded in Plat Book 17, at page 18, of the Public Records of said County.

S/A Item 6241-B.

186 - That part of Government Lot 4, Section 33, Township 46 South, Range 43 East, Palm Beach County, Florida, lying West of the Ocean Boulevard, a Palm Beach County highway, as that highway is now constructed, and lying South of a line that is 3,320 feet South of the North line of said Section 33, and lying North of a line that is 870 feet North of the South line of said Section 33.

S/A Item 6295-X-A.

187 - That part of the south 65 feet of South half of north half and of the north ten feet of $N\frac{1}{2}$ of $S\frac{1}{2}$ of Government Lot 1 in Section 28, T. 47 S, R. 43 E, Palm Beach County, Florida; included between the easterly shore line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this March 1, 1933.

S/A Item 6295-X-B.

188 - That part of the south seventy feet of the north 80 feet of $N\frac{1}{2}$ of $N\frac{1}{2}$ of $S\frac{1}{2}$ of Government Lot 1 in Section 28, T 47 S., R. 43 E, Palm Beach County, Florida; included between the easterly shore

-18-

line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-C.

189 - That part of the North 100 feet of the South 200 feet of the North 280 feet of S½ of Government Lot 1 in Section 28, T 47 S, R 43, East, Palm Beach County, Florida; included between the Easterly Shore Line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-D.

190 - That part of the South 150 feet of the N½ of N½ of S½ of Government Lot 1 in Section 28, T 47 S, R 43 E, Palm Beach County, Florida; included between the Easterly Shore Line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-F.

191 - That part of the North 67 feet of the South 264 feet of the S½ of N½ of S½ of Government Lot 1 in Section 28, T 47 S, R 43 E, Palm Beach County, Florida; included between the Easterly Shore Line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-G.

192 - That part of the North 97 feet of the South 197 feet of the South 264 feet of the S½ of N½ of S½ of Government Lot 1 in Section 28, T 47 S, R 43 E, Palm Beach County, Florida; included between the Easterly Shore Line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-H.

193 - That part of the South 100 feet of the S½ of N½ of S½ of Government Lot 1 in Section 28, T 47 S, R 43 E, Palm Beach County, Florida; included between the Easterly Shore Line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

-19-

NOT CERTIFIED COPY

S/A Item 6295-X-E.

194 - That part of the North 66 feet of the $S\frac{1}{2}$ of $N\frac{1}{2}$ of $S\frac{1}{2}$ of Government Lot 1 in Section 28, T 47 S, R 43 E, Palm Beach County, Florida; included between the Easterly Shore Line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-I.

195 - That part of the North 200 feet of the $S\frac{1}{2}$ of $S\frac{1}{2}$ of Government Lot 1 in Section 28, T 47 S, R 43E, Palm Beach County, Florida, included between the Easterly shore line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6295-X-J.

196 - That part of the South 460 feet of Government Lot 1, Section 28, T 47 S, R 43 E, Plam Beach County, Florida, and of the portion of Section 29, of said Township and Range lying West of the said South 460 feet; included between the Easterly shore line of Lake Boca Ratone and the Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6296-X.

197 - That part of Government Lot 2 in Section 28 and of Government Lot 4 in Section 29, T 47 S, R 43 E, Palm Beach County, Florida; included between the Easterly shore line of Lake Boca Ratone and Ocean Boulevard County Road as the same is located and constructed this Mar. 1, 1933.

S/A Item 6243.

198 - That part of the North 40 acres of Government Lots 2 and 3 in Section 4, Township 47 South, Range 43 East, Palm Beach County, Florida; lying East of the Easterly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as shown on Plat recorded in Plat Book 17, Page 20, of the Public Records of said County.

-20-

NOT A CERTIFIED COPY

S/A Item 6243-A.

199 - That part of the North 450 feet of Government
Lot 1 in Section 4, Township 47 South, Range
43 East, Palm Beach County, Florida; described
as follows:

Beginning at the Northwest corner of said Govern-
ment Lot 1; thence, along the North Boundary of
said Section, North 89 degrees - 54' East, 750
feet, more or less, to an intersection with the
West edge of the high ground or edge of beach
ridge; thence, in a general Southerly direction
along the West edge of said beach ridge and
following the meanders thereof, 450 feet, more
or less, to an intersection with the South
Boundary of said North 450 feet of Government
Lot 1; thence, along said South Boundary, South
89 degrees - 54' West, 755 feet, more or less,
to an intersection with the West Boundary of
said Government Lot 1; thence, along the West
Boundary of said Government Lot 1, North 28 de-
grees - 37' West, 102 feet, more or less; thence,
continuing along the West Boundary of said Govern-
ment Lot 1, North 7 degrees - 34' East, 364 feet,
more or less, to the point of beginning.

S/A Item 6244.

200 - That part of Section 4, Township 47 South, Range
43 East, Palm Beach County, Florida; described
as follows:

Beginning at the intersection of the South Bound-
ary of said Section and the Easterly Right-of-
way line of the Intracoastal Waterway from Jack-
sonville to Miami, Florida, said Easterly Right-
of-way line being shown on Plat recorded in Plat
Book 17, Page 20, of the Public Records of said
County; thence, along said Easterly Right-of-
way line, North 2 degrees 9' E., 1889 feet, more
or less; thence, continuing along said Easterly Right-
of-way line, North 25 degrees - 29' East, 1494 feet,
more or less; thence, continuing along said Easter-
ly Right-of-way line, North 9 degrees - 25' West,
1258 feet, more or less; thence, continuing along
said Easterly Right-of-way line, North 8 degrees -
22' East, 251 feet, more or less, to an intersec-
tion with the South Boundary of the North 40 acres
of Government Lots 2 and 3 in said section; thence,
along South Boundary of said North 40 acres, North
89 degrees - 53' East, 400 feet, more or less, to
an intersection with the West Boundary of Govern-
ment Lot 1 of said Section; thence, along West Bound-
ary of said Government Lot 1, North 21 degrees - 13'
East, 309 feet, more or less; thence, continuing

-21-

along said West Boundary, North 28 degrees
37' West, 549 feet, more or less, to an inter-
section with the South Boundary of the North
450 feet of said Government Lot 1; thence,
along said South Boundary, North 89 degrees -
54' East, 755 feet, more or less, to an inter-
section with the West edge of the high ground
or beach ridge; thence, in a general South-
westerly direction along the West edge of the
said high ground and following the meanders
there-of, 5300 feet, more or less, to an in-
tersection with the South Boundary of said
Section 4; thence, along the South Boundary
of said Section, South 89 degrees - 47' West,
1160 feet, more or less, to the point of be-
ginning.

S/A Item 6245.

201 - That part of Government Lot 2 in Section 9,
Township 47 South, Range 43 East, Palm Beach
County, Florida; lying East of the Easterly
Right-of-way line of the Intracoastal Water-
way from Jacksonville to Miami, Florida, as
shown on Plat recorded in Plat Book 17, Page
21, of the Public Records of said County.

S/A Item 6246.

202 - Those parts of Government Lots 1 and 4 in
Section 9, Township 47 South, Range 43 East,
Palm Beach County, Florida, included between
the West edge of the high ground or beach
ridge and the Easterly Right-of-way line of
the Intracoastal Waterway from Jacksonville
to Miami, Florida, said Easterly Right-of-way
line being shown on Plat recorded in Plat
Book 17, Page 21, of the Public Records of
said County.

S/A Item 6246-A.

203 - All of the S½ of Government Lot 3 in Section 9,
Township 47 South, Range 43 East, Palm Beach
County, Florida, and that part of the SE¼ of
SE¼ in Section 8, of said Township and Range;
lying East of a line 500 feet Westwardly from
and parallel to, the East Boundary of said Sec-
tion 8.

S/A Item 6250.

204 - That part of Government Lot 2 in Section 16,
Township 47 South, Range 43 East, Palm Beach
County, Florida; lying West of the Westerly
Right-of-way line of the Intracoastal Waterway
from Jacksonville to Miami, Florida, as shown
on Plat recorded in Plat Book 17, Page 22, of
the Public Records of said County.

-82-

S/A Item 6251.

205 - That part of the S½ of NE½ of NE½ in Section 17, Township 47 South, Range 43 East, Palm Beach County, Florida; described as follows:

Beginning at the Northeast corner of said Section 17; thence, along the East Boundary of said Section, South 1 degree - 37' East, 475 feet, more or less, to an intersection with the Westerly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as shown on Plat recorded in Plat Book 17, Page 22, of the Public Records of said County; thence, along said Westerly Right-of-way line, South 21 degrees - 23' West 205 feet, more or less, to an intersection with the South Boundary of said N½ of NE½ of NE½; thence along said South Boundary, South 89 degrees - 28' West, 915 feet, more or less, to an intersection with the East edge of the cultivated fields; thence, in a general Northerly direction along East edge of said cultivated fields and following the meanders thereof, 675 feet, more or less, to an intersection with the North Boundary of said Section 17; thence along North Boundary of said Section, North 89 degrees - 24' East, 975 feet, more or less, to the point of beginning.

S/A Item 6253.

206 - That part of the N½ of S½ of S½ of NE½ of NE½ in Section 17, Township 47 South, Range 43 East, Palm Beach County, Florida; described as follows:

Beginning at the intersection of the North Boundary of said N½ of S½ of S½ of NE½ of NE½ and the Westerly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as shown on Plat recorded in Plat Book 17, Page 22, of the Public Records of said County; thence, along said Westerly Right-of-way line, South 21 degrees - 23' West 170 feet, more or less, to an intersection with the South Boundary of said N½ of S½ of S½ of NE½ of NE½; thence, along said South Boundary, South 89 degrees - 32' West, 740 feet, more or less, to an intersection with the East edge of the cultivated fields; thence in a general Northerly direction along the East edge of said cultivated fields and following the meanders thereof, 175 feet, more or less, to an intersection with the North Boundary aforesaid; thence, along said North Boundary, North 89 degrees - 31' East, 810 feet, more or less, to the point of beginning.

S/A Item 6255.

207 - That part of SE¼ of NE¼ in Section 17, Township 47 South, Range 43 East, Palm Beach County, Florida, described as follows:

Beginning at the intersection of the North Bound-

-23-

ary of said SE¼ of NE¼ and the Westerly Right-
of way line of the Intracoastal Waterway from
Jacksonville to Miami, Florida, as shown on
Plat recorded in Plat Book 17, page 22, of
the Public Records of said County; thence,
along said Westerly Right-of-way line, South
21 degrees 23' West 636 feet, more or less;
thence, South 86 degrees 23' West, 100 feet,
more or less, to an intersection with the West
bank or shore line of Lake Wyman; thence, in
a general Southerly direction along said West
bank or shore line and following the meanders
thereof, 750 feet, more or less, to an inter-
section with the South Boundary of said NE¼;
thence, along the South boundary of said NE¼ South
89 degrees - 42' West, 385 feet, more or less, to
an intersection with the East edge of the cultiva-
ted fields; thence, in a general Northerly direc-
tion along the East edge of said cultivated fields
and following the meanders thereof, 1339 feet,
more or less, to an intersection with the North
boundary of said SE¼ of NE¼; thence, along the
North Boundary of said SE¼ of NE¼, North 89
degrees - 33' East, 690 feet, more or less, to
the point of beginning.

S/A Item ███.

210 - That part of Government Lot 2 and that part of
the North 396 feet of Government Lot 3 in Section
20, Township 47 South, Range 43 East, Palm Beach
County, Florida, lying East of the Easterly Right-
of-way line of the Intracoastal Waterway from
Jacksonville to Miami, Florida, as shown on Plat
recorded in Plat Book 17, page 23-A, of the Pub-
lic Records of said County.

- 24 - 25 -

15 degrees - 12' West, 147 feet, more or less, to an intersection with the South Boundary of said N¼ of S½ of Government Lot 1, except the North 137 feet and the South 193 feet thereof; thence, along said South Boundary, South 89 degrees - 30' West, 260 feet, more or less, to an intersection with the East edge of the cultivated fields; thence, in a general Northeasterly direction along the East edge of said cultivated fields and following the meanders thereof, 330 feet, more or less, to an intersection with the North Boundary of said N¼ of S½ of Government Lot 1, except the North 137 feet and the South 193 feet thereof; thence, along said North Boundary, North 89 degrees - 25' East, 400 feet, more or less, to the point of beginning.

S/A Item 6270.

212 - That part of the South 1009 feet of the North 1405 feet of Government Lot 3 in Section 20, Township 47 South, Range 43 East, Palm Beach County, Florida; lying East of the Easterly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, said Easterly Right-of-way line being shown on Plat recorded in Plat Book 17, Page 23-B, of the Public Records of said County.

S/A Item 6278.

213 - That part of the North 410 feet of the S½ of Government Lot 3 in Section 20, Township 47 South, Range 43 East, Palm Beach County, Florida; lying East of the Easterly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, said Right-of-way line being shown on Plat recorded in Plat Book 17, Page 23-B, of the Public Records of said County.

S/A Item 6279.

214 - That part of a tract in Government Lot 3 in Section 20, Township 47 South, Range 43 East, Palm Beach County, Florida; described on Sheet 23-B, Plat Book 17, of the Public Records of said County, as "That part of the S½ of Government Lot 3 not included in adjoining descriptions"; lying East of the Easterly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, said Easterly Right-of-way line being shown on said Plat.

S/A Item 6284.

215 - That part of the North 675 feet of the South

-26-

900 feet of Government Lot 3 in Section 20,
Township 47 South, Range 43 East, Palm Beach
County, Florida; lying East of the Easterly
Right-of-way line of the Intracoastal Waterway
from Jacksonville to Miami, Florida, said East-
erly Right-of-way line being shown on Plat re-
corded in Plat Book 17, Page 30, of the Public
Records of said County.

S/A Item 6299.

216 - That part of Government Lot 3 in Section 20,
Township 47 South, Range 43 East, Palm Beach
County, Florida, included between the Easter-
ly Right-of-way line of the Intracoastal Water-
way from Jacksonville to Miami, Florida, and a
line 1000 feet Eastwardly from, and parallel
to, said Easterly Right-of-way line, which said
Easterly Right-of-way line is shown on Plat re-
corded in Plat Book 17, Page 28, of the Public
Records of said County.

S/A Item 6300.

217 - That part of the N½ of NW¼ of NE¼ and that part
of N½ of N½ of Government Lot 1 in Section 32,
Township 47 South, Range 43 East, Palm Beach
County, Florida, included between the Easterly
Right-of-way line of the Intracoastal Waterway
from Jacksonville to Miami, Florida, and a line
1000 feet Eastwardly from, and parallel to, said
Easterly Right-of-way line, which said Easterly
Right-of-way line is shown on Plat recorded in
Plat Book 17, Page 27, of the Public Records of
said County; also

Those portions of the S½ of NW¼ of NE¼, the SW¼ of
NE¼, and the S½ of said Section 32, included be-
tween the Easterly Right-of-way line of the In-
tracoastal Waterway from Jacksonville to Miami,
Florida and a line 600 feet Eastwardly from, and
parallel to, said Easterly Right-of-way line, which
said Easterly Right-of-way line is shown on Plat
Recorded in Plat Book 17, Page 27, of the Public
Records of said County.

-27-

- V -

That the aforesaid Florida Inland Navigation District has in its possession the moneys and funds necessary and proper to be used for the payment of aforesaid easements; which moneys and funds will be available at any time for those purposes when needed or required under and by virtue of these condemnation proceedings.

- VI -

That diligent search and inquiry has heretofore been made by and on behalf of this Petitioner for the purpose of ascertaining the names of all occupants of and upon the lands, properties and areas hereinabove mentioned and described, and also the names, places of residence, legal disabilities (if any), and the interests of all owners, mortgagees and other claimants in and to said lands, properties and areas; that by reason of said search and inquiry your Petitioner alleges it to be true:

1.  (R/W Item 6085, Parcel 8, Sheet 11, and Right-of-way Item 6086, Parcel 9, Sheet 11) - That the land, property or area described in sub-sections 1 and 2 of paragraph IV hereof is unoccupied, but respondent, James O'Conner, is, or claims to be, the owner of the same and entitled to possession thereof.

2.  (R/W Item 6088, Parcel 11, Sheet 11) - That the land, property or area described in sub-section 3 of paragraph IV hereof is unoccupied, but respondent, Dallas H. Miller, has, or claims to have, some interest therein under and by virtue of contract for deed with Lewis H. Howe, recorded in Deed Book 348, page 403, of the Public Records of Palm Beach County, Florida; that respondents W. B.

-28-

NOT A CERTIFIED COPY

Foorey, as Trustee, under deed of trust recorded in Deed
Book O, page 212, and individually, has, or claims to
have, some right, title or interest in and to said pro-
perty under and by virtue of said Deed recorded in Deed
Book O, page 212, Public Records of Dade County, Florida;
that the respondents Rachael Lyman, George R. Lyman,
M. B. Lyman, Lillian B. Bassett, as the sole and only
heirs at law of Morris K. Lyman, deceased, have, or claim
to have, some interest in said property under and by vir-
tue of trust deed recorded in Deed Book O, page 212, Pub-
lic Records of Dade County, Florida.

3.  (R/W Item S-6094, Parcel 3, Sheet 12-A; R/W
Item S-6095, Parcel 3-A, Sheet 12-A; R/W Item S-6096, Par-
cel 4, Sheet 12-A; R/W Item S-6098, Parcel 6, Sheet 12-A;
R/W Item S-6100, Parcel 8, Sheet 12-A; R/W Item S-6104,
Parcel 12, Sheet 12-A; R/W Item S-6106, Parcel 14, Sheet
12-A; and R/W Item S-6108, Parcel 16, Sheet 12-A) - That
the land, property or area described in sub-sections 4, 5,
6, 7, 9, 13, 15 and 18 of paragraph IV hereof, constitutes
portions of platted streets in the town of Boynton Beach;
that no one is in the actual possession of the same; that
said property was dedicated to public use as a street by
the owner thereof and that the respondent, Town of Boynton
Beach, has, or claims to have, some right, title or interest
in and to said areas; that the following named respondents
have certain interests, respectively, in certain of said
items as follows:

(a)  (R/W Item S-6094) - The respondent Rosa
P Hayes and the respondent, N. S. Boynton Estate Corporation,

-29-

a corporation under the laws of the State of Michigan, Harry
K. Noyes and Edith Noyes, his wife, each have, or claim to
have, some right, title or interest in this item because of
their ownership of, or some interest in, lands abutting upon
the same.

(b)  (R/W Item S-6095) - That the respondents,
R. T. Watts, Jr., individually and as Trustee, John L. Lougee
and N. S. Boynton Estate Corporation, a corporation under the
laws of the State of Michigan, each have, or claim to have,
some right, title or interest in and to this item because of
ownership of, or some interest in, lands abutting upon the
same.

(c)  R/W Item S-6096) - That the respondents,
John L. Howe, Dallas H. Miller, Rachael Lyman, George R.
Lyman, M. B. Lyman, Lillian B. Bassett, as sole and only
heirs at law of Morris T. Lyman, deceased, Harry K. Noyes
and Edith Noyes, his wife, each has, or claims to have, some
right, title or interest in and to this item because of owner-
ship of, or some interest in, lands abutting upon the same.

(d)  (R/W Item S-6098) - That the respondents,
Harry K. Noyes, Edith Noyes, his wife, and Walter N. Knauth,
each have, or claim to have, some right, title or interest
in and to this item because of ownership of, or some interest
in, lands abutting upon the same.

(e)  (R/W Item S-6100) - That the respondents,
Walter N. Knauth, Rosa P. Hayes and N. S. Boynton Estate Corpora-
tion, a Michigan corporation, each have, or claim to have, some
right, title and interest in and to this right-of-way item be-
cause of ownership of, or interest in, lands abutting upon the
same.

(f)  (R/W Item S-6104) - That the respondents,

-30-

R. T. Watts, Jr., individually, and as Trustee, and John L. Lougee, each have, or claim to have, some right, title or interest in and to this right-of-way item because of ownership of, or interest in, lands abutting upon the same.

(g) (R/W Item S-6106) - That the respondents, John L. Lougee and R. T. Watts, Jr., individually, and as Trustee, each have or claim to have, some right, title or interest in and to this right-of-way item because of ownership of, or interest in, lands abutting upon the same.

(h) (R/W Item S-6108) - That the respondent, R. T. Watts, Jr., individually, and as Trustee, has, or claims to have, some right, title or interest in and to this item because of ownership of, or interest in, lands abutting upon the same.

4. (R/W Item 6101 - Parcel 9, Sheet 12-A) - That the land, property or area described in sub-section 10 of paragraph IV hereof is unoccupied, but respondent, Rosa P. Hayes, is, or claims to be, the owner of the fee simple title thereto.

5. (R/W Item 6103, Parcel 11, Sheet 12-A; and R/W Item 6107, Parcel 15, Sheet 12-A) - That the land, property or area described in sub-section 11 of paragraph IV and sub-section 15 of paragraph IV hereof, is unoccupied but respondent, R. T. Watts, Jr., individually, and as Trustee, is, or claims to be the owner thereof.

6. (R/W Item 6105, Parcel 13, Sheet 12-A) - That the land, property or area described in sub-section 14 of paragraph IV hereof is unoccupied, but respondent, John L. Lougee is, or claims to be, the owner thereof; that the respondent, N. S. Boynton Estate Corporation, a corporation under the laws of the State of Michigan, has, or claims to have, some right, title and interest in and to said item, but the exact kind

-31-

NOT A CERTIFIED COPY

and extent of such interest is to petitioner unknown.

7.  (R/W Item S-6109, Parcel 17, Sheet 12-B; and R/W Item S-6111, Parcel 19, Sheet 12-B) - That the land, property or area described in sub-sections 17 and 19 of paragraph IV hereof constitute portions of a platted street in the town of Boynton Beach, Florida; that no one is in actual possession of the same and that said property was dedicated to public use as a street by the owner thereof; that respondent, Town of Boynton Beach, has, or claims to have, some right, title or interest in and to said right-of-way item because of their being platted as such public streets or highways and that the following respondents also have, or claim to have, some interest therein:

(a)  (R/W Item S-6109) - That respondents, N. S. Boynton Estate Corporation, a Michigan corporation, and Colorado-Florida Company, a corporation, each has, or claim to have, some interest in and to this right-of-way item because of ownership of, or interest in, land abutting upon the same.

(b)  (R/W Item S-6111) - That respondents, N. S. Boynton Estate Corporation, a Michigan corporation, and Colorado-Florida Company, a corporation, each has, or claim to have, some interest in and to this right-of-way item because of ownership of, or interest in, land abutting upon the same.

8.  (R/W Item 6110, Parcel 18, Sheet 12-B; and R/W Item 6112, Parcel 20, Sheet 12-B) - That the land, property or areas described in sub-sections 18 and 20 of paragraph IV hereof are unoccupied, but respondent N. S. Boynton Estate Corporation, a corporation under the laws of the State of Michigan, is, or claims to be, the owner thereof; that respondent, Colorado-

-32-

Florida Company, a corporation, has, or claims to have,
some interest in and to said property, the extend or kind
of which is to petitioner unknown.

9.   (R/W Item S-6113, Parcel 21, Sheet 12-B and R/W
Item S-6118, Parcel 26, Sheet 12-B) - That the land, property
or areas described in sub-sections 22 and 24 hereof consti-
tute portions of a platted street in the town of Boynton,
Florida; that no one is in actual possession of the same and
that said property was dedicated to public use as a street by
the owner thereof; that the respondent, Town of Boynton,
Florida, has, or claims to have, some right, title or interest
in and to these areas because of their being so platted as
such public street or highway; that respondent, N. S. Boynton
Estate Corporation, a corporation under the laws of the
State of Michigan, and Colorado-Florida Company, a corporation,
each has, or claims to have, some right, title or interest in
and to these two right-of-way items because of ownership of,
or some interest in, land abutting upon the same.

10.   (R/W Item 6117, Parcel 25, Sheet 12-B) - That the
land, property or area described in sub-section 23 of paragraph
IV hereof is unoccupied, but respondent, N. S. Boynton Estate
Corporation, a corporation under the laws of the State of
Michigan, is, or claims to be, the owner thereof.

11.   (R/W Item 6119, Parcel 27, Sheet 12-C) - That the
land, property or area described in sub-section 25 of paragraph
IV hereof is unoccupied, but respondent, Vera V. Webber, is,
or claims to be, the owner of the same.

12.   (R/W Item 6120, Parcel 28, Sheet 12-C) - That the
land, property or area described in sub-section 26 of paragraph
IV hereof is unoccupied, but respondent, J. Leonard Replogle,
is, or claims to be, the owner thereof.

-33-

NOT A CERTIFIED COPY

13.  (R/W Item 6121, Parcel 29, Sheet 12-C) - That the land, property or area described in sub-section 27 of paragraph IV hereof is unoccupied, but respondents, Charles L. Boynton, Annie Parker, Frances Patterson, Edith Wright and George H. Boynton, are, or claim to be, the owners thereof in fee simple.

14.  (R/W Item 6122, Parcel 30, Sheet 12-C) - That the land, property or area described in sub-section 28 of paragraph IV hereof is unoccupied, but respondent, Arthur McDermott, is, or claims to be, the owner of the fee simple title thereto; that respondent, General Improvement Corporation, a corporation, has, or claims to have, some interest in and to this area under and by virtue of judgment against Arthur McDermott, recorded in Chancery Order Book 89, page 448 of the Public Records of Palm Beach County, Florida.

15.  (R/W Item S-6123, Parcel 31, Sheet 12-C and R/W Item S-6126, Parcel 34, Sheet 12-C and R/W Item S-6129, Parcel 37, Sheet 12-C and R/W Item S-6130, Parcel 38, Sheet 12-C) - That the land, property or area described in sub-sections 29, 31, 33 and 34 of paragraph IV hereof constitutes a portion of a platted street in the Town of                  ; that no one is in actual possession of the same and that said property was dedicated to public use as a street by the owner thereof; that the following named respondents have, or claim to have, some interest in certain of said parcels, to-wit:

(a)  (R/W Item S-6123) - That respondent, Arthur McDermott, General Improvement Corporation, a corporation, and Swindell Holding Company, a corporation, each has, or claims to have, some right, title or interest in and to this

-34-

right-of-way item because of ownership of, or some interest
in, land abutting upon the same.

(b)  (R/W Item S-6126) - That respondents, Newmar
Corporation, a Florida corporation, John C. Newington and
N. S. Boynton Estate Corporation, a Michigan corporation,
each has, or claims to have, some right, title and interest
in and to this right-of-way item because of ownership of, or
some interest in, land abutting upon the same.

(c)  (R/W Item S-6129) - That respondents, Samuel
J. Blakely, Charles L. Boynton, George H. Boynton, Frances
Patterson, Edith Wright, joined by their respective wives
and husbands, as heirs at law of N. S. Boynton, deceased,
each has, or claims to have, some right, title and interest
in and to this right-of-way item because of ownership of, or
some interest in, land abutting the same.

(d)  (R/W Item S-6130) - That respondents, Invest-
ment Holding Company, a Florida corporation, Samuel J. Blake-
ley, and Charles L. Boynton, George H. Boynton, Frances Patter-
son, Edith Wright and Annie Parker,  as sole and only heirs
at law of N. S. Boynton, deceased, each has, or claims to have,
some right, title and interest in and to this right-of-way
item because of ownership of, or some interest in, land abutt-
ing upon the same.

16.  (R/W Item 6125, Parcel 33, Sheet 12-c) - That the
land, property or area described in sub-section 30 of para-
graph IV hereof is unoccupied, but respondent, Newmar Corpora-
tion, a Florida corporation, is, or claims to be, the owner
of the fee simple title thereto; that respondent, John C.
Newington, has, or claims to have some interest in said par-
cel because of mortgage in Mortgage Book 212, page 285, Public
Records of Palm Beach County, Florida.

17.   (R/W Item 6127, Parcel 35, Sheet 12-C) - That the land, property or area described in sub-section 32 of paragraph IV hereof is unoccupied, but respondent, N. S. Boynton Estate Corporation, a corporation of Michigan, is, or claims to be the owner of the fee simple title thereto.

18.   (R/W Item 6132, Parcel 40, Sheet 12-C) - That the land, property or area described in sub-section 35 of paragraph IV hereof is unoccupied, but respondent, First National Bank of Lake Worth, has, or claims to have, some right, title or interest therein under and by virtue of judgment against W. D. Sturrock, dated January 7th, 1927, and recorded in Circuit Court Minute Book 18, page 20, of the Public Records of Palm Beach County, Florida; that respondent, Wertheimer Bros. Ribbons, Inc., a corporation, has, or claims to have, some right, title and interest in and to this item under and by virtue of judgment against W. D. Sturrock, dated March 7th, 1927, and recorded in Circuit Court Minute Book 18, page 164, of the Public Records of Palm Beach County, Florida.

19.   (R/W Item 6134, Parcel 42, Sheet 12-C) - That the land, property or area described in sub-section 36 of paragraph IV hereof is unoccupied, but respondent, Higgins-Beall Corporation, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondents, R. C. Higgins and Kate Higgins, have, or claim to have, some right, title or interest in and to this item, but the exact extent or kind of such interest is to petitioner unknown; that respondent, Frank Nutting, has, or claims to have, some interest in said item under option purchase from R. C. Higgins, dated March 24th, 1924, recorded in Deed Book 205, page 223, of the Public Records of Palm Beach County, Florida; that respondent, W. D. Sturrock, has, or claims to have, some interest in said

-36-

item under option purchase from Frank Nutting, dated October
7th, 1924, and recorded in Deed Book 238, page 399, of the
Public Records of Palm Beach County, Florida; that respondent,
G. R. Ackerman, has, or claims to have, some interest in said
item under and by virtue of mortgage dated July 20, 1926,
recorded in Mortgage Book 193, page 516 of the Public Records
of Palm Beach County, Florida.

20.  (R/W Item 6135, Parcel 1, Sheet 13-A) - That the
land, property or area described in sub-section 37 of paragraph
IV hereof is unoccupied, but respondent, Boynton Nurseries,
Inc., a Florida corporation, is, or claims to be, the owner
of the fee simple title thereto; that respondents, C. H. Hamre
and James D. Sturrock, have, or claim to have, some interest
in and to this item under and by virtue of mortgage recorded
in Mortgage Book 231, page 145 of the Public Records of Palm
Beach County, Florida.

21.  (R/W Item 6136, Parcel 2, Sheet 13-A) - That the
land, property or area described in sub-section 38 of paragraph
IV hereof is unoccupied, but respondent, Mutual Holdings Com-
pany, a Florida corporation, is, or claims to be, the owner
of the fee simple title thereof; that respondent, M. A. Smith,
Liquidator, Farmers Bank & Trust Company, a banking corporation
under the laws of the State of Florida, has, or claims to have,
some interest in said item under and by virtue of mortgage in
Mortgage Book 95, page 532, Public Records of Palm Beach County,
Florida.

22.  (R/W Item 6137, Parcel 3, Sheet 13-A) - That the
land, property or area described in sub-section 39 of paragraph
IV hereof is unoccupied, but respondent, B. F. Evans, is, or
claims to be, the owner of the fee simple title thereto; that
respondent, R. C. Roper, individually and as Trustee, has, or

-37-

claims to have, some interest in said item under mortgage in Mortgage Book 195, page 1, Public Records of Palm Beach County, Florida; that respondent, M. A. Smith, Liquidator, Bank of Boynton, a banking corporation under the laws of the State of Florida, has, or claims to have, some interest in said item under judgment against B. F. Evans, recorded in Circuit Court Minute Book 26, page 399, of the Public Records of Palm Beach County, Florida; that respondent, C. C. Keichline, has, or claims to have, some right, title or interest in and to this item, but the exact kind or extent of such interest is to petitioner unknown.

23. (R/W Item 6138, Parcel 4, Sheet 13-A) - That the land, property or area described in sub-section 40 of paragraph IV hereof is unoccupied, but respondent, Nanna F. Rasmussen, is, or claims to be, the owner of the fee simple title thereto.

24. (R/W Item 6140, Parcel 6, Sheet 13-A) - That the land, property or area described in sub-section 41 of paragraph IV hereof is unoccupied, but respondent, Henry Siebrecht, is, or claims to be, the owner of the fee simple title thereto.

25. (R/W Item 6141, Parcel 7, Sheet 13-A) - That the land, property or area described in sub-section 42 of paragraph IV hereof is unoccupied, but respondent, Julia H. Glidden, individually and as Trustee under the last Will and Testament of Frederick A. Glidden, deceased, recorded in Deed Book 469, page 98 of the Public Records of Palm Beach County, Florida, and all of the heirs at law, devisees, legatees and creditors of Frederick A. Glidden, deceased, are, or claim to be, the owners of the fee simple title to said item; that respondent, Atlantic Mortgage Company, a Florida corporation, is, or claims to be, the owner of some interest in said item under and by

-38-

virtue of warranty deed recorded in Deed Book 469, page 54, Public Records of Palm Beach County, Florida.

26. (R/W Item R-6142, Parcel 8, Sheet 13-A) - That the land, property or area described in sub-section 43 of paragraph IV hereof is unoccupied, but respondents, Austin A. Stone and Louise J. Stone, his wife, are, or claim to be, the owners of the fee simple title to said item; that respondent, Merchants Banking Trust Company, a corporation, has, or claims to have, some interest in said item as assignee of mortgage given by D. E. Griffin and Gertrude L. Griffin to H. W. Thurber, recorded in Mortgage Book 50, page 38 of the Public Records of Palm Beach County, Florida; that respondent, L. C. Swain, has, or claims to have, some interest in said item as owner of mortgage from D. E. Griffin and Gertrude L. Griffin, recorded in Mortgage Book 75, page 49; that respondent, Gertrude L. Griffin, has, or claims to have, some interest in said item as present owner and holder of mortgage by Austin A. Stone and Louise J. Stone to D. E. Griffin and Gertrude L. Griffin, recorded in Mortgage Book 88, page 54, Public Records of Palm Beach County, Florida.

27. (R/W Item 6143, Parcel 9, Sheet 13-A)  That the land, property or area described in sub-section 44 of paragraph IV hereof is unoccupied, but respondents, Austin A. Stone and Louise J. Stone, his wife, are, or claim to be, the owners of the fee simple title thereto; that respondent, Merchants Banking Trust Company, a corporation, has, or claims to have, some interest in said item as assignee of mortgage by D. E. Griffin and Gertrude L. Griffin, recorded in Mortgage Book 50, page 38 of the Public Records of Palm Beach County, Florida; that respondent, L. C. Swain, has, or claims to have, some interest in said item as mortgagee under mortgage by D. E. Griffin, et al,

-39-

to him, recorded in Mortgage Book 75, page 49 of the Public Records of Palm Beach County, Florida; that respondent, Gertrude L. Griffin,has, or claims to have, some interest in said item, as present owner and holder of mortgage from Austin A. Stone and Louise J. Stone, to her, recorded in Mortgage Book 88, page 54 of the Public Records of Palm Beach County, Florida.

28.  (R/W Item 6145, Parcel 11, Sheet 31) - That the land, property or area described in sub-section 45 of paragraph IV hereof is unoccupied, but respondent, Harry A. Seibrecht and Paul Garrett, are, or claim to be, the owners of the fee simple title thereto.

29.  (R/W Item 6146, Parcel 12, Sheet 31) - That the land, property or area described in sub-section 46 of paragraph IV hereof is unoccupied, but respondents, Beatrice I. Benson and Harry Benson, her husband, are, or claim to be, the owners of the fee simple title thereto; that respondent, Fred G. Benson, claims to have some interest in said property under mortgage in Mortgage Book 128, page 486, Public Records of Palm Beach County, Florida; that respondent, Hubert F.Krantz, has, or claims to have, some interest in said item as assignee of judg- ment recorded in Judgment Book 1, page 447 of the Public Records of Palm Beach County, Florida.

30.  (R/W Item 6147, Parcel 13, Sheet 31) - That the land, property or area described in sub-section 47 of paragraph IV hereof is unoccupied, but respondents Oscar R. Winchester and August Gammert, have, or claim to have, some interest in the same, but the exact kind or extent of such interest is to petitioner unknown.

31.  (R/W Item 6148, Parcel 14, Sheet 31) - That the land, property or area described in sub-section 48 of paragraph IV

-40-

hereof is unoccupied, but respondent, William Bonner, is, or claims to be the owner of the fee simple title thereto; that respondent E. L. Winchester and respondent H. & W. B. Drew Company, a Florida corporation, each has, or claims to have, some right, title or interest in and to said item, but the kind or extent of such interest or title of each is to petitioner unknown.

32. (R/W Item 6149, Parcel 15, Sheet 13-A) - That the land, property or area described in sub-section 49 of paragraph IV hereof is unoccupied, but respondents, Ward B. Miller, Inc., a corporation, and Howard E. Roberts, are, or claim to be, the owners of the fee simple title thereto; that respondents, Ward B. Miller and Agnes C. Miller, are, or claim to be, the owners of mortgage by Ward B. Miller, Inc., a corporation, recorded in Mortgage Book 212, page 80, of the Public Records of Palm Beach County, Florida; that respondent, Alice C. Krah, is, or claims to be, the owner of mortgage by H. Estelle Coons, recorded in Mortgage Book 182, page 296, of the Public Records of Palm Beach County, Florida; that respondents, Ward B. Miller and Agnes C. Miller, have, or claim to have, some interest in said item as assignees of mortgage to Ward B. Miller, Inc., recorded in Mortgage Book 208, page 503, of the Public Records of Palm Beach County, Florida; that the respondent, Town of Boynton, has, or claims to have, some interest in said property for the reason that the same is part of a public street in the town of Boynton; that respondent, H. E. Roberts, has, or claims to have, some interest in said item under and by virtue of judgment recorded in Foreign Judgment Book 4, page 37 of the Public Records of Palm Beach County, Florida.

33. (R/W Item 6152, Parcel 22, Sheet 13) - That the

-41-

land, property or area described in sub-section 50 of paragraph IV hereof is unoccupied, but respondent, Boynton Nurseries, Inc., a corporation of Florida, is, or claims to be, the owner of the fee simple title thereto; that respondent, C. H. Hamre, has, or claims to have, some interest in said item as assignee of mortgage by Boynton Nurseries, Inc., to Florida Nurseries, Inc., recorded in Mortgage Book 231, page 68, Public Records of Palm Beach County, Florida.

34.   (R/W Item 6155, Parcel 25, Sheet 31) - That the land, property or area described in sub-section 53 of paragraph IV hereof is unoccupied, but respondent, The Palm Beach Company, a Delaware corporation, is, or claims to be, the owner of a portion of the area embraced within this right-of-way item, and that the respondent, The Gulf Stream Company, a Florida corporation, is the owner of the balance or remainder of the area contained within said right-of-way item; that respondent, Gulf Stream Company, has, or claims to have, some interest in and to said property as assignee of mortgage recorded in Mortgage Book 205, page 189, of the Public Records of Palm Beach County, Florida; that respondent, East Shore Company, a corporation, has, or claims to have, some interest in said item as assignee of Tax Sale Certificate No. 7680, recorded in State and County Tax Sale Book 10, page 222, of the Public Records of Palm Beach County, Florida.

35.   (R/W Item 6156, Parcel 1, Sheet 14-A) and (R/W Item 6157, Parcel 2, Sheet 14-A) - That the land, property or areas described in sub-sections 54 and 55 of paragraph IV hereof is unoccupied, but respondent, The Gulf Stream Company, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, James McKay, has, or claims to have, some interest in said right-of-way item, but

-42-

NOT A CERTIFIED COPY

the kind or extent of such interest or claim is to petitioner unknown.

36. (R/W Item 6158, Parcel 3, Sheet 14-A) - That the land, property or area described in sub-section 56 of paragraph IV hereof is unoccupied, but respondent, Boynton Nurseries, Inc., a Florida corporation, is, or claims to be, the owner of the fee simple title thereto.

37. (R/W Item 6159, Parcel 4, Sheet 14-A) - That the land, property or area described in sub-section 57 of paragraph IV hereof is unoccupied, but respondent, Bertanna Farms, Inc., a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, West Palm Beach Atlantic National Bank, has, or claims to have some interest or title to said right-of-way item as assignee of mortgage from Bertanna Farms, Inc., to A. E. Parker, recorded in Mortgage Book 242, page 192, Palm Beach County Records.

38. (R/W Item 6160, Parcel 5, Sheet 14-B) and (R/W Item 6175, Parcel 14, Sheet 15) - That the land, property or area described in sub-sections 58 and 70 of paragraph IV hereof is unoccupied, but respondent, Gulf Stream Golf Club, a Florida corporation not for profit, is, or claims to be, the owner of the fee simple title thereto.

39. (R/W Item R-6161, Parcel 6, Sheet 14-B) - That the land, property or area described in sub-section 59 of paragraph IV hereof is unoccupied, but respondent, The Gulf Stream Company, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto.

40. (R/W Item 6162, Parcel 1, Sheet 15) - That the land, property or area described in sub-section 60 of paragraph IV

-43-

hereof is unoccupied, but respondent, Gulf Stream Golf Club, a corporation of Florida not for profit, is, or claims to be, the owner of the fee simple title thereto.

41.  (R/W Item 6164, Parcel 5, Sheet 15) - That the land, property or area described in sub-section 62 of paragraph IV hereof is unoccupied, but respondent, Gulf Stream Golf Club, a corporation of Florida not for profit, is, or claims to be, the owner of the fee simple title thereto.

42.  (R/W Item 6167, Parcel 6, Sheet 15) - That the land, property or area described in sub-section 64 of paragraph IV hereof is unoccupied, but respondent, Monarch Development Corporation, a corporation, is, or claims to be the owner of fee simple title thereto; that respondent, Margaretha Doyle, is, or claims to be, the owner of some interest or title to said item under mortgage of J. B. Hancock and wife, dated March 22nd, 1926, and recorded in Mortgage Book 148, page 314, Public Records of Palm Beach County, Florida, to secure the principal amount of $30,000.00.

43.  (R/W Item 6171, Parcel 10, Sheet 15) - That the land, property or area described in sub-section 66 of paragraph IV hereof is unoccupied, but respondent, Hoffman & Heffman, Inc., a corporation, is, or claims to be, the owner of the fee simple title thereto.

44.  (R/W Item S-6172, Parcel 11, Sheet 15) - That the land, property or area described in sub-section 67 of paragraph IV hereof is unoccupied, but respondents, Maria Haller, Clayton L. Andrews, David R. Lippincot, The Bilt-Rite Company, Inc., a corporation, each own, or claim to own, a portion or undivided interest in and to the said item; that the area embraced within

-44-

said item is a platted street in the Town of
and that said property was dedicated to public use as a street
by the owner thereof; that the respondents, W. C. Fountain,
Julia M. Fountain, Gleason Land Corporation, a corporation;
Gleason Land Company, a corporation; Vernon Hopkins and Ellen
Hopkins, Otto A. Seestedt and Lucile Seestedt, Gracey Realty
Company, Inc., a corporation, Frank C. Davis, H. O. Michael,
Wm. L. Rairigh and Julia B. Rairigh, and M. A. Smith as Li-
quidator of the Bank of Boca Ratone, a banking corporation
under the laws of the State of Florida, and the City of
Delray, each has, or claims to have, some interest in said
property, but the extent or kind of such interest is to
petitioner unknown.

45.   (R/W Item 6173, Parcel 12, Sheet 15) - That the
land, property or area described in sub-section 68 of para-
graph IV hereof is unoccupied, but respondent, Hoffman &
Hoffman, Inc., a corporation, is, or claims to be, the owner
of the fee simple title thereto.

46.   (R/W Item 6174, Parcel 13, Sheet 15) - That the
land, property or area described in sub-section 69 of para-
graph IV hereof is unoccupied, but respondent, Everglades
Realty and Investment Company, a corporation under the laws
of the State of Florida, is, or claims to be, the owner of
the fee simple title thereto.

-45-

48.  (R/W S-6177, Parcel 2, Sheet 16-A) - That the
land, property or area described in sub-section 72 of paragraph
IV hereof constitutes a portion of a platted street in the
Town of                    and was dedicated to public use
as a street by the owner thereof; that the respondents, F.
N. Brown, B. B. Raulerson, W. J. Schoonover Glass Company,
a corporation, Gleason Land Company, a corporation, Gleason
Land Corporation, a corporation, W. C. Fountain and Julia M.
Fountain, Vernon Hopkins and Ellen Hopkins, Otto A. Seestedt
and Lucile Seestedt, his wife, Gracey Realty Company, Inc.,
a corporation, Frank C. Davis, H. Q. Michael, Wm. L. Rairigh
and Julia B. Rairigh, his wife, M. A. Smith, as Liquidator
of Bank of Boca Ratone, Florida, a banking corporation
under the laws of the State of Florida, each have or claim
to have some right, title or interest in and to this area
because of ownership of, or some interest in, land abutting
upon the same; that the City of Delray has, or claims to have,
some interest in and to said area because of the same being a
platted and dedicated public street in said municipality.

49.  (R/W Item S-6178, Parcel 3, Sheet 16-A) - That
the land, property or area described in sub-section 73 of para-
graph IV constitutes a portion of a platted street in the
Town of                    and that no one is in the
actual possession of the same; that said property was dedi-
cated to public use as a street by the owner thereof and
that the respondents, Hoffman & Hoffman, Inc., a corporation,
Anna Waters, Gleason Land Company, a corporation of Florida,
and Gleason Land Corporation, a corporation of Florida,
Amceac Holding Company, a corporation, Ethel S. Williams and

-46-

W. C. Williams, her husband, Mary H. Gleason and W. H. H.
Gleason, individually and as Executors of the Last Will and
Testament of Sarah G. Gleason, deceased, each has, or claims
to have, some interest in and to the area contained within
this right-of-way item because of ownership of, or some
interest in, land abutting upon the same.

50.  (R/W Item S-6181, Parcel 6, Sheet 16-A) — That the
land, property or area described in sub-section 74 of para-
graph IV hereof constitutes a portion of a platted street in
the town of                    ; that no one is in actual pos-
session of the same and that said property was dedicated to
public use as a street by the owner thereof; that the respond-
ents, Hoffman & Hoffman, Inc., a corporation, Anna Waters,
Mary H. Gleason and W. H. H. Gleason, individually and as
Executors of the last Will and Testament of Sarah G. Gleason,
deceased, each has, or claims to have, some right, title or
interest in and to the area covered by this right-of-way item
because of ownership of, or some interest in, land abutting upon
the same.

51.  (R/W Item 6182, Parcel 7, Sheet 16-A) - That the land,
property or area described in sub-section 75 of paragraph IV
hereof is unoccupied, but the respondent, Anna Waters, is, or
claims to be, the owner of the fee simple title thereto; that
respondent, F. L. Tenbrook, has, or claims to have, some interest
in and to said item under tax deed recorded in Deed Book 46,
page 74, Dade County Public Records; that Mary H. Gleason and
W. H. H. Gleason, individually and as Executors of last Will
and Testament of Sarah G. Gleason, deceased, have, or claim to
have, some right, title or interest in and to said item, but

-47-

NOT A CERTIFIED COPY

petitioner is without knowledge as to the exact kind or extent of such interest or claim; that respondent, Emmett C. Hall, has, or claims to have, some right, title or interest in said item under deed of record in Deed Book 228, page 472, of the Public Records of Palm Beach County, Florida.

52. (R/W Item S-6183, Parcel 8, Sheet 16-A) - That the land, property or area described in sub-section 76 of paragraph IV hereof constitutes a portion of a platted street in the Town of _____; that no one is in actual possession of the same; that the same was dedicated to public use as a street by the owner thereof; that the respondent, Anna Gleason Land Corporation, a corporation of Florida, Waters, Gleason Land Company, a corporation of Florida, and Mary H. Gleason and W. H. H. Gleason, individually and as Executors of last Will and Testament of Sarah G. Gleason, deceased, each has, or claims to have, some right, title or interest in and to said item because of ownership of, or some interest in, land abutting upon the same.

53. (R/W Item 6184, Parcel 9, Sheet 16-A) - That the land, property or area described in sub-section 77 of paragraph IV hereof is unoccupied, but respondents, Mary H. Gleason and W. H. H. Gleason, individually and as Executors of last Will and Testament of Sarah G. Gleason, deceased, and Gleason Gleason Land Corporation, a Florida corporation, Land Company, a corporation of Florida, are, or claim to be, the owners of the fee simple title thereto.

54. (R/W Item 6188, Parcel 13, Sheet 16-A) - That the land, property or area described in sub-section 79 of paragraph IV hereof is unoccupied, but respondent, Ethel S. Williams, is, or claims to be, the owner of the fee simple title thereto.

55. (R/W Item 6190, Parcel 15, Sheet 16-B) - That the land, property or area described in sub-section 81 of paragraph IV hereof is unoccupied, but

-48-

(a)  As to that portion of said Item which lies in the South quarter of Section 16-46-43, being Block 128, Delray:

The respondents, Mike L. Blank and Martha Blank, his wife, Frank Thompson, J. W. Sutton, C. D. Yates, Frank Hand and Lottie C. Hand, his wife, Clayton L. Andrews, are, or claim to be, the owners of the fee simple title thereto; the respondent, Frank Thompson, has, or claims to have, some interest in said portion of said item under mortgage recorded in Mortgage Book 6, page 185, and mortgage recorded in Mortgage Book 8, page 193, of the Public Records of Palm Beach County Florida; that respondents, John L. Harsford and _____ Harsford, his wife, and R. M. Banker and ___Ethel___ Banker, his wife, each has, or claims to have, some right, title or interest in and to said portion of said item under mortgage recorded in Mortgage Book 132, page 239, of the Public Records of Palm Beach County, Florida.

(b)  As to that portion of said Item which lies in the N$\frac{1}{2}$ of the S$\frac{1}{2}$ of Section 16-46-43 - being Block 127, Delray:

The respondents, Emily Blank, Leona Blank and R. W. Blank, sole and only heirs at law of John Blank, deceased; John A. Polley, Simeon Brinson, Mike L. Blank and Martha Blank, his wife, C. Y. Byrd, are, or claim to be, the owners of the fee simple title thereto.  That respondent, Frank Thompson, has, or claims to have, some interest in said portion of said area under mortgage recorded in Mortgage Book 8, page 193, of the Public Records of Palm Beach County, Florida; that respondent, C. Y. Byrd, has, or claims to have, some right, title or interest or claim in said portion of said item under mortgage recorded in Mortgage Book 185, page 260, of the Public Records of Palm Beach County, Florida.

-49-

NOT A CERTIFIED COPY

Florida; that respondent, City of Delray Beach, has, or claims to have, some right, title or interest in and to said item because of the fact that it has been dedicated to use as a public street or highway and lies within said municipality.

57.   (R/W Item 6192, Parcel 17, Sheet 16-B; R/W Item 6194, Parcel 19, Sheet 16-B; R/W Item 6196, Parcel 21, Sheet 16-B, and R/W Item 6199, Parcel 24, Sheet 16-B) - That the land, properties or areas described in sub-sections 83, 85, 87, and 90 of paragraph IV hereof are unoccupied, but respondent, Zook Palm Nurseries, Inc., a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondents, John A. Wuepper, Charles S. McBee and M. A. Smith, as Liquidator Farmers Bank & Trust Company, a banking corporation under the laws of the State of Florida, each has, or claims to have, some right, title or interest or claim in and to said items, but petitioner is without knowledge as to the kind, extent or amount of any of such claims; that respondent, Carrol B. LaPlace, has, or claims to have, some title or interest in or to said items under deed in Deed Book 169, page 407 of the Public Records of Palm Beach County, Florida, and otherwise, the exact amount or extent of which claim or interest is to petitioner unknown; that respondent, M. P. Moeller, has, or claims to have, some title, or interest in and to said items under and by virtue of mortgage in Mortgage Book 236, page 95 of the Public Records of Palm Beach County, Florida.

58.   (R/W Item 8-6193, Parcel 18, Sheet 16-B, and R/W Item 8-6195, Parcel 20, Sheet 16-B) - That the land, properties or areas described in sub-sections 84 and 86 of paragraph IV hereof constitutes a portion of a platted street in the City of Delray Beach, Florida; that no one is in actual

-51-

(c)  As to that portion of said item which is contained in the S½ of N½ of Section 16-46-43 – being Block 134, West of Canal, Delray:

That respondent, Zook Palm Nurseries, Inc., a Florida corporation, is, or claims to be the owner of the fee simple title thereto.

(d)  As to that portion of said item which is contained in Palm Square Subdivision facing Canal Avenue:

That respondent, William T. Noble, Emma J. Noble, Elizabeth J. Noble, Emma W. Allen, Charlotte E. Frazer, as the sole and only heirs at law of Frank T. Noble, deceased, and respondent, Harvey L. Smith, W. H. Johnson and Mary J. Johnson, Edith M. Lash, Robert A. Davis, Dora B. Pratt, Eva B. Allen, and J. H. Adams, are, or claim to be, the owners of the fee simple title to said portion of said item.  That respondent, City or Town of Delray Beach, has, or claims to have, some right, title or interest in and to said item because said area has been dedicated for use as a public street or highway.

56.  (R/W Item S-6191, Parcel 18, Sheet 16-B) – That the land, property or area described in sub-section 82 of paragraph IV hereof constitutes a portion of a platted street in the Town or City of Delray Beach; that no one is in actual possession of same, but it was dedicated to public use as a street by the owner thereof; that the respondent, Zook Palm Nurseries, Inc., a Florida corporation, and respondent, Albert Gregerson, are, or claim to be, the owners of the fee simple title thereto; that M. P. Moeller, has, or claims to have, some title or interest in and to said item because of mortgage in Mortgage Book 236, page 95, of the Public Records of Palm Beach County,

- 50 -

possession of the same, but that it was dedicated to public
use as a street by the owner thereof; that the respondent,
Zook Palm Nurseries, Inc., a corporation of Florida, is, or
claims to be, the owner of the fee simple title thereto; that
the respondent, M. T. Moeller, has, or claims to have, some
title or interest in and to said areas because of mortgage
recorded in Mortgage Book 236, page 95, of the Public Records
of Palm Beach County, Florida.

59.  (R/W S-6197, Parcel 22, Sheet 16-B) - That the land,
property or area described in sub-section 88 of paragraph IV
hereof, constitutes a portion of a platted street in the City
of Delray Beach, Florida; that no one is in the actual posses-
sion of the same, but it has been dedicated to public use as
a street by the owner thereof; that respondents, John E. Means
and Albert Gregerson, are, or claim to be, the owners of the
fee simple title thereto, and that respondent, M. T. Moeller,
has, or claims to have, some right or interest therein under
and by virtue of mortgage recorded in Mortgage Book 236, page
95 of the Public Records of Palm Beach County, Florida.

60.  (R/W Item 6198, Parcel 23, Sheet 16-B) - That the
land, property or area described in sub-section 89 of paragraph
IV hereof is unoccupied, but respondent, Albert Gregerson, is,
or claims to be, the owner of the fee simple title thereto;
that respondent, C. A. B. Zook, has, or claims to have, some
right, title, interest or claim in and to said item, but that
petitioner does not know the kind, extent or amount of such
claim or title or interest.

61.  (R/W Item S-6200, Parcel 25, Sheet 16-B) - That the
land, property or area described in sub-section 91 of paragraph
IV hereof, constitutes a portion of a platted street in the City

-52-

of Delray Beach, Florida; that no one is in the actual posses-
sion of the same but that the same was dedicated to public
use as a street by the owner thereof; that Zook Nurseries,
Inc., a Florida corporation, Frank Hand and Frank Thompson,
are, or claim to be, the owners of the fee simple title there-
to; that respondent M. P. Moeller, has, or claims to have
some title or interest in and to said item under and by
virtue of mortgage recorded in Mortgage Book 236, page 95,
of the Public Records of Palm Beach County, Florida.

61. (R/W Item S-6201, Parcel 1, Sheet 17-A) – That the
land, property or area described in sub-section 92 of paragraph
IV hereof constitutes a portion of a platted street in the
City of Delray Beach, Florida; that no one is in actual pos-
session of the same but it was dedicated to public use as a
street by the owner thereof; that the respondents, Frank Hand
and Lottie C. Hand, his wife, are, or claim to be, the owners
of the fee simple title thereto.

63. (R/W Item S-6204, Parcel 4, Sheet 17-A) – That the
land, property or area described in sub-section 93 of paragraph
IV hereof constitutes a portion of a platted street in the
City of Delray Beach, Florida; that no one is in actual pos-
session of the same but it was dedicated to public use as a
street by the owner thereof; that the respondents, Lillian
M. McDermott and Arthur McDermott, her husband, are, or claim
to be, the owners of an undivided interest in and to the fee
simple title thereto by virtue of their ownership of land
abutting upon the same.

64. (R/W Item 6205, Parcel 5, Sheet 17-A) – That the
land, property or area described in sub-section 94 of paragraph
IV hereof is unoccupied, but respondents, Lillian M. McDermott
and Arthur McDermott, her husband, are, or claim to be, the

NOT A CERTIFIED COPY

owners of the fee simple title thereto.

65.  (R/W Item 6207, Parcel 7, Sheet 17-A) - That the land, property, or area described in sub-section 95 of paragraph IV hereof is unoccupied, but respondent, Theodore Moeller, is, or claims to be, the owner of the fee simple title thereto; that respondents, C. D. Yates and Mary R. Taylor, sole and only heir at law of M. G. Taylor, deceased, have, or claim to have, some title or interest in said item under mortgage of the Dominick Holding Company, a corporation, dated July 29th, 1925, and recorded in Mortgage Book 124, page 72, of the Public Records of Palm Beach County, Florida; that respondent, Theodore Moeller, has, or claims to have some additional interest in said item as assignee of mortgage of John T. Geisler and Libbie K. Geisler, his wife, to A. G. Evans, dated March 2, 1926, and recorded in Mortgage Book 149, page 349, of the Public Records of Palm Beach County, Florida.

66.  (R/W Item 6208, Parcel 8, Sheet 17-A) - That the land, property or area described in sub-section 96 of paragraph IV hereof is unoccupied, but respondent, Theodore Moeller, is, or claims to be, the owner of the fee simple title thereto.

67.  (R/W Item 6209, Parcel 9, Sheet 17-A) - That the land, property or area described in sub-section 97 of paragraph IV hereof is unoccupied, but respondent, William Mayer, is, or claims to be, the owner of the fee simple title thereto; that respondents, C. D. Yates and Mary R. Taylor, sole and only heir at law of M. G. Taylor, deceased, have, or claim to have, some interest or title in and to said item under mortgage from the Dominick Holding Company, Inc., dated July 29th, 1925, and recorded in Mortgage Book 124, page 72; that respondent, A. G. Evans, has, or claims to have, some title or

-54-

interest under mortgage from William Mayer, dated January 6th, 1927, and recorded in Mortgage Book 128, page 322, and under mortgage dated March 2, 1926, recorded in Mortgage Book 147, page 408, Public Records of Palm Beach County, Florida.

68.   (R/W Item 6211, Parcel 11, Sheet 17-A) - That the land, property or area described in sub-section 98 of paragraph IV hereof is unoccupied, but respondents, B. C. Goodnough and Mrs. B. C. Goodnough, his wife, and Howard N. Goodnough, are, or claim to be, the owners of the fee simple title thereto.

69.   (R/W Item 6212, Parcel 12, Sheet 17-A) - That the land, property or area described in sub-section 99 of paragraph IV hereof is unoccupied, but respondents, James B. Maher and Nellie Maher, his wife, are, or claim to be, the owners of the fee simple title thereto.

70.   (R/W Item 6214, Parcel 14, Sheet 17-A) - That the land, property or area described in sub-section 100 of para- graph IV hereof is unoccupied, but respondent, Edith Englehart, is, or claims to be, the owner of the fee simple title thereto.

71.   (R/W Item 6216, Parcel 16, Sheet 17-A) - That the land, property or area described in sub-section 101 of para- graph IV hereof is unoccupied, but respondent, Sarah Vinson, as legatee and devisee under the last will and testament of George Vinson, deceased, and respondent, Maggie LaFranz, the heirs at law, legatees and devisees, all of whom are to petitioner unknown, of Charlie Vinson, deceased, Annie Jenkins, Starr Vinson, Eliza Daniel, the heirs at law, legatees and devisees (all of whom are to petitioner unknown) of George T. Vinson, deceased, Emma Jones, Mary Nicademus, and the heirs at law, legatees and devisees of Maude Clark Williams, deceased, (being all of the heirs at law, legatees and devisees of George Vinson, deceased), are, or claim to be, the owners of

-55-

the fee simple title to the above described item.

72.  (R/W Item S-6217, Parcel 17, Sheet 17-A) - That the land, property or area described in sub-section 102 of paragraph IV hereof constitutes a portion of a platted street in the City of Delray Beach, Florida; that no one is in actual possession of the same but that it was dedicated to public use as a street by the owner thereof.

(a)  As to the N½ of said Item:  That respondent, Sarah Vinson, as legatee and devisee under the last will and testament of George Vinson, deceased, and respondent, Maggie La-Franz, the heirs at law, legatees and devisees (all of whom are to petitioner unknown) of Charlie Vinson, deceased, Annie Jenkins, Starr Vinson, Eliza Daniel, the heirs at law, devisees and legatees (all of whom are to petitioner unknown) of George T. Vinson, deceased, Emma Jones, Mary Nicademus, and the heirs at law, legatees and devisees of Maude Clark Williams, deceased, (being all of the heirs at law, legatees and devisees of George Vinson, deceased), are, or claim to be, the owners of the fee simple title to the above described portion of this right-of-way item.

(b)  As to the S½ of said Item:  That the respondent, Bennett Jacob, is, or claims to be the owner of the fee simple title to the above portion of said item.

(73)  (R/W Item 6218, Parcel 18, Sheet 17-A) - That the land, property or area described in sub-section 103 of paragraph IV hereof is unoccupied, but respondent, Bennett Jacobs, is, or claims to be, the owner of the fee simple title thereto.

(74)  (R/W Item S-6219, Parcel 19, Sheet 17-A) - That the land, property or area described in sub-section 104 of paragraph IV hereof constitutes a portion of a platted street in

-56-

the City of Delray Beach, Florida; that no one is in actual possession of the same but that said property was dedicated to public use as a street by the owner thereof; that the respondent, Bennett Jacobs, is, or claims to be, the owner of the fee simple title thereto.

75. (R/W Item S-6220, Parcel 20, Sheet 17-B) - That the land, property or area described in sub-section 105 of paragraph IV hereof constitutes a portion of a platted street in the City of Delray Beach, Florida; that no one is in actual possession of the same but it was dedicated to public use as a street by the owner thereof; that the respondents, Mattie E. McLaren, L. H. Hobart, E. W. Hobart, Michael Nagle and Louis J. Leturmy, are, or claim to be, the owners of the fee simple title thereto; that respondent, Frank Dean, is, or claims to be, the owner of some right, title or interest or claim in and to said item under mortgage to him from Charles N. McLaren and wife, dated August 7, 1925, and recorded in Mortgage Book 137, page 310, Public Records of Palm Beach County, Florida.

76. (R/W Item 6225, Parcel 25, Sheet 17-B) - That the land, property or area described in sub-section 106 of paragraph IV hereof is unoccupied, but respondent, Hortense Harris, Marie Sheffield and M. C. Sheffield, her husband, as sole and only heirs at law of Henry T. Harris, deceased, are, or claim to be, the owners of the fee simple title thereto.

77. (R/W Item 6226, Parcel 26, Sheet 17-B) - That the land, property or area described in sub-section 107 of paragraph IV hereof is unoccupied, but respondent, Morris Lavene, is, or claims to be, the owner of the fee simple title thereto; that respondent, Mrs. R. A. Butler and R. A. Butler, her husband, have, or claim to have, some title or claim to said item

-57-

under mortgage from Morris Lavene, dated December 29th, 1925, and recorded in Mortgage Book 178, page 31, of the Public Records of Palm Beach County, Florida; that respondent, , as Secretary of Agriculture of the United States of America, has, or claims to have, some title or interest in and to said item or area under crop mortgage from M. F. Walker, dated March 27th, 1931, and recorded in Mortgage Book 228, page 67, of the Public Records of Palm Beach County, Florida.

78.  (R/W Item 6228, Parcel 28, Sheet 17-B) - That the land, property or area described in sub-section 108 of paragraph IV hereof is unoccupied.

(A)  As to that part of said item in Government Lots 2 and 3, Section 21-46-43:

As to this part of said item respondents, S. Fahs Smith and Neville Mitchell Smith, his wife, and Seaboard Realty Company, a Florida corporation, and Adam J. Glossbrenner, are, or claim to be, the owners of the fee simple title thereto.

(B)  As to that part of said item in W½ of Section 21-46-43:

As to this part of said item, the respondents, E. Jennie H. Richardson and _____ Richardson, her husband, have or claim to have, some right, title or interest in said property under and by virtue of assignment to said E. Jennie H. Richardson of mortgage from S. Fahs Smith to Arthur J. Richardson, dated May 29th, 1923, and recorded in Mortgage Book 58, page 463; that respondent, S. Fahs Smith, has, or claims to have, some title, interest or claim in and to said area under and by virtue of mortgage recorded in Mortgage Book 236, page 67, Public Records of Palm Beach County, Florida.

-58-

80.  (R/W Item 6231, Parcel 3, Sheet 18) – That the land,
property or area described in sub-section 110 of paragraph
IV hereof is unoccupied, but respondent, L. R. Benjamin, is,
or claims to be, the owner of the fee simple title thereto;
that respondent, Jessie C. Love, has, or claims to have, some
title or claim in and to said area as assignee of mortgage dated
May 1st, 1925, by Alexander Wilson to J. L. Love, recorded
May 2nd, 1925, in Mortgage Book 114, page 147, of the Public
Records of Palm Beach County, Florida; that respondent,
Alexander Wilson, has, or claims to have, some claim or title
to said area under and by virtue of mortgage from L. R. Benjam-
in and Ella L. Benjamin, his wife, dated May 26th, 1925, and
recorded June 2nd, 1925, in Mortgage Book 112, page 186, of
the Public Records of Palm Beach County, Florida; that respond-
ent, M. A. Smith, as Liquidator of Commercial Bank and Trust
Company of West Palm Beach, a banking corporation under the
laws of the State of Florida, has, or claims to have, some
title or interest in said area as assignee of mortgage from
L. R. Benjamin and wife to Alexander Wilson, dated May 26th,
1925, and recorded June 8th, 1925, in Mortgage Book 115,
page 321 of the Public Records of Palm Beach County, Florida;
that respondent, Delray Properties, Inc., a Florida corpora-

-59-

tion, has, or claims to have, some title or interest in said
area under and by virtue of mortgage to it from L. R. Ben-
jamin and Ella L. Benjamin, his wife, dated May 28, 1925,
and recorded June 8th, 1925, in Mortgage Book 111, page 494,
of the Public Records of Palm Beach County, Florida; that res-
pondent, W. G. Mathes, has, or claims to have, some title,
interest or claim upon said area unader and by virtue of an
agreement to purchase from Alexander Wilson, dated April 2nd,
1925, and recorded April 2nd, 1925, in Deed Book 260, page
280 of the Public Records of Palm Beach County, Florida; that
respondent, Samuel A. Stephan, has, or claims to have, some
title, interest or claim upon said area under and by virtue
of a certain agreement for deed, dated March 20, 1927, from
L. R. Benjamin and wife, and recorded in Deed Book 415, page
414 of the Public Records of Palm Beach County, Florida; that
respondent, George W. Jonas, has, or claims to have, some
title, interest or claim upon said area under and by virtue of
Judgment against James E. Chambers, dated April 26, 1916, and
recorded in Foreign Judgment Book 1, page 214, of the Public
Records of Palm Beach County, Florida, and also has a claim
against said George W. Jonas under and by virtue of a judgment
against said James E. Chambers, dated April 26, 1916, and
recorded in Foreign Judgment Book 1, page 212, of the Public
Records of Palm Beach County, Florida; that respondents, Mose-
ley Investment Company and Garva M. Gatlin, have, or claim to
have, some title, interest or claim upon said area under and
by virtue of a Deficiency Judgment against L. R. Benjamin,
dated November 17th, 1927, and recorded in Chancery Order
Book 36, page 487 of the Public Records of Palm Beach County,
Florida; that respondent, Kathleen E. Tharin, has, or claims

-60-

to have, some right, title, interest or claim upon said area
under and by virtue of a Final Judgment dated October 12, 1927,
against L. R. Benjamin, recorded in Foreign Judgment Book 3,
page 15, of the Public Records of Palm Beach County, Florida;
that the respondent, M. A. Smith, as Liquidator of Farmers Bank
and Trust Company, a banking corporation under the laws of the
State of Florida, has, or claims to have, some title, interest
or claim upon said area under and by virtue of a Final Judgment
dated May 10th, 1928, against L. R. Benjamin, recorded in Cir-
cuit Court Minute Book 21, page 348 of the Public Records of
Palm Beach County, Florida; that respondent, C. Y. Byrd, has,
or claims to have, some right, title, interest or claim upon
said area as assignee of that certain Final Judgment of
National City Bank of New York against L. R. Benjamin, dated
August 24th, 1928, and recorded in Circuit Court Minute Book
22, page 219 of the Public Records of Palm Beach County,
Florida.

81.  (R/W Item 6232, Parcel 4, Sheet 18) – That the land,
property or area described in sub-section 111 of paragraph
IV hereof is unoccupied but respondents, S. Fahs Smith and
Neville Mitchell Smith, his wife, and Seaboard Realty Company,
a corporation, are, or claim to be, the owners of the fee
simple title thereto; that respondents, E. Jennie H. Richard-
son and Arthur J. Richardson, have, or claim to have, some
right, title, interest or claim in and to said area under
and by virtue of mortgage recorded in Mortgage Book 58, page
463 of the Public Records of Palm Beach County, Florida; that
respondent, S. Fahs Smith, has, or claims to have, some in-
terest in and to said area under mortgage from Bassett W.
Mitchell, dated November 30th, 1928, and recorded in Mortgage

-61-

Book 214, Page 543 of the Public Records of Palm Beach County, Florida; that respondent, S. Fahs Smith, has, or claims to have, some further right, title, interest or claim upon said area under and by virtue of mortgage recorded in Mortgage Book 236, page 67, of the Public Records of Palm Beach County, Florida.

82.  (R/W Item 6233, Parcel 5, Sheet 18 and R/W Item 6234, Parcel 6, Sheet 18) - That the land, properties, or areas described in sub-sections 112 and 113 of paragraph IV hereof is unoccupied, but respondent, Ward B. Miller, Inc., a corporation, is, or claims to be, the owner of the fee simple title thereto; that respondents, Ward B. Miller and Agnes P. Miller, have, or claim to have, some interest in said areas as assignees of mortgage of Mathis Properties Addition, Inc., to Ward B. Miller, Inc., dated October 24th, 1925, and recorded in Mortgage Book 164, page 243; that respondent, Mathis Properties Addition, Inc., a corporation, has, or claims to have, some interest in said areas for the reason that its deed to Ward B. Miller, Inc., covering said property, did not have attached thereto the seal of the Notary Public taking the acknowledgment of the corporate officers of said corporation executing said deed.

83.  (R/W Item 6235, Parcel 7, Sheet 18) - That the land, property or area described in sub-section 114 of paragraph IV hereof is unoccupied, but respondent, Boca Ratone Company, a corporation of Florida, is, or claims to be, the owner of the fee simple title thereto.

84.  (R/W Item 6236, Parcel 1, Sheet 19) - That the land, property or area described in sub-section 115 of paragraph IV hereof is unoccupied, but respondents, Ward B. Miller and Agnes P. Miller, his wife, are, or claim to be, the owners

-62-

of the fee simple title thereto.

85.  (R/W Item 6239, Parcel 4, Sheet 19) - That the land,
property, or area described in sub-section 116 of paragraph
IV hereof is unoccupied, but respondents, Phyllis M. Bradner,
and Burke C. Bradner, her husband, are, or claim to be, the
owners of the fee simple title thereto.

86.  (R/W Item 6240, Parcel 5, Sheet 19) - That the land,
property, or area described in sub-section 117 of paragraph
IV hereof is unoccupied, but respondent, Charles Gehlhaus, is,
or claims to be, the owner of the fee simple title thereto;
that respondent, Edward T. Page, is, or claims to be, the
owner of some interest in said area under mortgage from Doern
& Webb, Inc., dated October 30th, 1925, and recorded in Mort-
gage Book 159, page 58 of the Public Records of Palm Beach
County, Florida; that respondent, F. W. Spencer, has, or claims
to have, some title or interest in said area under agreement
to convey from Edward T. Page and wife, dated August 8th, 1925,
and recorded in Mortgage Book 298, page 40, of the Public Re-
cords of Palm Beach County, Florida; that
as Secretary of Agriculture of the United States of America,
has, or claims to have, some title or interest in said area
under crop mortgage from Crispian Johnson, dated August 4th,
1929 and recorded in Mortgage Book 217, page 384, Public Records
of Palm Beach County, and under crop mortgage from J. W. Wallace,
dated August 25th, 1930, and recorded in Mortgage Book 228, page
318 of the Public Records of Palm Beach County, Florida.

87.  (R/W Item 6243, Parcel 1, Sheet 20) - That the land,
property or area described in sub-section 118 of paragraph IV
hereof is unoccupied, but M. A. Smith, as Liquidator of Farmers
Bank and Trust Company, a banking corporation under the laws
of the State of Florida, as Trustee, is, or claims to be, owner

-63-

of the fee simple title thereto; that respondents, Vesta J.
Kubin, Otto Kubin, Jr., Chas. J. Kubin, Caroline V. Southard
and D. L. Southard, her husband, and Adelaide J. Kubin, have,
or claim to have, some right, title or interest in said area un-
der deed from Robert J. Kubin and wife, dated May 8th, 1931, and
recorded in Deed Book 467, page 150, of the Public Records of
Palm Beach County, Florida; that respondent, Jacob G. Grossberg
and respondent David H. Brill, co-partners doing business under
the firm name of Grossberg, Lyon and Brill, have, or claim to
have, some interest or title in said area under agreement from
Robert J. Kubin and wife, dated April 28th, 1930, and recorded
in Deed Book 468, page 172, Palm Beach County Public Records;
that respondent, Mrs. Grady H. Brantley, has, or claims to have,
some interest or title in said area under mortgage recorded
in Mortgage Book 234, page 447, Public Records of Palm Beach
County, Florida.

88.  (R/W Item 6244, Parcel 2, Sheet 20) - That the land,
property or area described in sub-section 119 of paragraph IV
hereof is unoccupied, but respondent, Boca Ratone Company, a
corporation of Florida, is, or claims to be, the owner of the
fee simple title thereto.

89.  (R/W Item 6246, Parcel 2, Sheet 21) - That the land,
property or area described in sub-section 120 of paragraph IV
hereof is unoccupied, but respondents, W. W. Burgiss and Etta
R. Burgiss, his wife, are, or claim to be, the owners of the fee
simple title thereto.

90.  (R/W Item R-6247, Parcel 3, Sheet 21) - That the land,
property or area described in sub-section 121 of paragraph IV
hereof is unoccupied, but respondents, Frank H. Parsons, W. W.
Burgiss and Etta R. Burgiss, his wife, are, or claim to be, the
owners of the fee simple title thereto; that the area included

-64-

within said item constitutes a portion of a platted street in the Town of Boca Ratone, Florida; that said property was dedicated to public use as a street by the owner thereof and that by reason thereof said town of Boca Ratone, Florida, has, or claims to have, some right, title, interest or claim therein and thereto.

91.  (R/W Item R-6248, Parcel 1, Sheet 22) - That the land, property or area described in sub-section 122 of paragraph IV hereof constitutes a part of a platted street in the Town of Boca Ratone, Florida, that no one is in the actual possession of the same and that said property was dedicated to public use as a street by the owner thereof; that the respondent, Peter Brodt, is, or claims to be, the owner of the fee simple title thereto; that respondent, Eastern States Land Company, a corporation, has, or claims to have, some title or interest in and to said area because of improper execution of assignment of mortgage from said company to John H. Johnson and V. C. Wetmore, covering mortgage from George W. Harvey Trust to said company, dated May 27, 1926, and recorded in Mortgage Book 172, page 471 of the Public Records of Palm Beach County, Florida; that respondent, Boca Ratone Company, a corporation, has, or claims to have, some title or interest in and to said area, but that the exact interest, kind and extent of such interest, is to petitioner unknown.

92.  (R/W Item 6249, Parcel 2, Sheet 22) - That the land, property or area described in sub-section 123 of paragraph IV hereof is unoccupied, but respondent, Peter Brodt, is, or claims to be, the owner of the fee simple title thereto; that respondent, Eastern States Land Company, a corporation, has, or claims to have, some right, title or interest in said area because of improper execution of assignment of mortgage

-65-

from said company to John H. Johnson and V. C. Bruce Wetmore,
covering mortgage from George W. Harvey Trust to said company,
dated May 27th, 1928, and recorded in Mortgage Book 172, page 471,
Public Records of Palm Beach County, Florida; that respondent,
Boca Ratone Company, has, or claims to have, some title or in-
terest in and to said area, but that the amount, extent and
kind of such interest is to petitioner unknown.

93.  (R/W Item 6250, Parcel 3, Sheet 22) - That the land,
property, or area described in sub-section 124 of paragraph
IV hereof is unoccupied, but respondent, Peter Brodt, is, or
claims to be, the owner of the fee simple title thereto.

94.  (R/W Item 6251, Parcel 4, Sheet 22) - That the land,
property, or area described in sub-section 125 of paragraph
IV hereof is unoccupied, but respondent, Marie Stedronski, has,
or claims to have, some title or interest therein as assignee
of mortgage from George Stedronski and Marie Stedronski, his
wife, to P. D. Kinney and wife, recorded in Mortgage Book 100,
page 59 of the Public Records of Palm Beach County, Florida;
that respondent, George Stedronski, has, or claims to have,
some title, interest or claim in and to said area under mortgage
of George W. Harvey and wife, recorded in Mortgage Book 125,
page 73, of the Public Records of Palm Beach County, Florida;
that respondents, John H. Johnson and V. C. Bruce Wetmore, have,
or claim to have, some title, interest or claim in said area as
assignees of mortgage from George W. Harvey Trust to Eastern
States Land Company, recorded in Mortgage Book 172, page 471,
of the Public Records of Palm Beach County, Florida; that res-
pondent, Eastern States Land Company, a corporation, has, or
claims to have, some right, title or interest in and to said
area because of the defective execution of assignment to John
H. Johnson and V. C. Wetmore, of the mortgage recorded in

-66-

Mortgage Book 172, Page 471, Public Records of Palm Beach County, Florida, above mentioned.

95. (R/W Item 6253, Parcel 6, Sheet 22) – That the land, property or area described in sub-section 126 of paragraph IV hereof is unoccupied, but respondents, John H. Johnson and V. C. Bruce Wetmore, have, or claim to have, some title, interest or claim in said area as assignees of mortgage from George W. Harvey Trust to Eastern States Land Company, recorded in Mortgage Book 172, page 471, of the Public Records of Palm Beach County, Florida; that respondent, Eastern States Land Company, a corporation, has, or claims to have, some title, interest or claim in and to said area because of the defective execution of the assignment of mortgage above mentioned.

96. (R/W Item 6255, Parcel 8, Sheet 22) – That the land, property or area described in sub-section 127 of paragraph IV hereof is unoccupied, but respondent, Raymond Lipscomb, is, or claims to be, the owner of the fee simple title thereto; that respondent, H. Kobayashi Company, Inc., a corporation of Florida, has, or claims to have, some title, interest or claim in said area under and by virtue of mortgage recorded in Mortgage Book     , page 292, Public Records of Palm Beach County, Florida; that respondent, Walker Lipscomb, has, or claims to have, some title, interest or claim in said area under and by virtue of mortgage recorded in Mortgage Book 128, page 285, of the Public Records of Palm Beach County, Florida.

97. (R/W Item 6256, Parcel 1, Sheet 23-A) – That the land, property or area described in sub-section 128 of paragraph IV hereof is unoccupied, but respondents, Virginia L. Mitchell, Bassett W. Mitchell and Seaboard Realty Company, are, or claim to be, the owners of the fee simple title to all of said area

or parcel except that which is West of meander line of Government Lot 1, Section 21; that respondent, Virginia L. Mitchell, has, or claims to have, some right, title, interest or claim in and to said area because of defective description in deed from her to Bassett W. Mitchell, dated August 4, 1926, and recorded in Deed Book 341, page 402, Public Records of Palm Beach County, Florida, wherein Lot 1, Section 21 is described as Lot 1, Section 31.

98.  (R/W Item 6257, Parcel 2, Sheet 23-A) - That the land, property or area described in sub-section 129 of paragraph IV hereof is unoccupied, but respondents, Joseph P. Sauer, Bassett W. Mitchell, Virginia L. Mitchell and Seaboard Realty Company are, or claim to be, the owners of the fee simple title thereto.

99.  (R/W Item 6258, Parcel 3, Sheet 23-A) - That the land, property or area described in sub-section 130 of paragraph IV hereof is unoccupied, but respondent, Joseph P. Sauer, Bassett W. Mitchell, Seaboard Realty Company and Virginia L. Mitchell and Boca Ratone Company, a corporation, are, or claim to be, the owners of the fee simple title thereto.

100.  (R/W Item 6259, Parcel 4, Sheet 23-A and R/W Item 6260, Parcel 5, Sheet 23-A) - That the land, property or area described in sub-sections 131 and 132 of paragraph IV hereof is unoccupied, but respondents, Maurice W. Stokes and Helen I. Stokes, his wife, and J. W. Moore and Bessie Moore, his wife, are, or claim to be, the owners of the fee simple title thereto; that respondent, E. S. Johnson, has, or claims to have, some title, interest or claim in and upon said area under agreement from Maurice W. Stokes and wife, recorded in Miscellaneous Book 5, page 458 of the Public Records of Palm Beach County, Florida;

NOT A CERTIFIED COPY

that respondent, George J. Cranston, has, or claims to have, some title, interest or claim in said area under mortgage from C. O. Scott, recorded in Mortgage Book 58, page 8 of the Public Records of Palm Beach County, Florida; that respondent, J. W. Moore, has, or claims to have, some title, interest or claim in said area as assignee of mortgage from Chas. W. Brown to C. O. Scott, recorded in Mortgage Book 65, page 377 of the Public Records of Palm Beach County, Florida; that respondent, Boca Ratone Company, a corporation, has, or claims to have, some right, title and interest in such part of said area as may lie east of the existing East Coast Canal, but that the amount, extent or kind of such interest is to petitioner unknown.

101.  (R/W Item 6262, Parcel 7, Sheet 23-A) - That the land, property or area described in sub-section 133 of paragraph IV hereof is unoccupied, but respondents, Maurice W. Stokes and Helen I. Stokes, his wife, are, or claim to be, the owners of the fee simple title thereto; that respondent, E. S. Johnson, has, or claims to have, some title, interest or claim upon said area under contract to purchase recorded in Miscellaneous Book 5, page 458 of the Public Records of Palm Beach County, Florida.

102.  (R/W Item 6263, Parcel 8, Sheet 23-A) and (R/W Item 6265, Parcel 10, Sheet 23-A) - That the land, property or areas described in sub-sections 134 and 136 of paragraph IV hereof is unoccupied, but respondent, George J. Cranston, has, or claims to have, some title, interest or claim thereon because of mortgage recorded in Mortgage Book 58, page 81 of the Public Records of Palm Beach County, Florida; that            , as Secretary of Agriculture of United States of America, has, or claims to have, some title, interest or claim in said areas, because of crop mortgage, recorded in Mortgage Book 228, page 38 of the Public Records of Palm Beach County, Florida; that res-

-69-

pondent, Peter P. Coppell, has, or claims to have, some title, interest or claim in said area because of delinquent tax certificate No. 3080, recorded in Tax Sale Book 6, page 176, Public Records of Palm Beach County, Florida.

103.  (R/W Item 6264, Parcel 9, Sheet 23-A) - That the land, property or area described in sub-section 135 of paragraph IV hereof is unoccupied, but respondent, Boca Ratone Company, a corporation, is, or claims to be, the owner of the fee simple title thereto.

104.  (R/W Item 6266, Parcel 11, Sheet 23-A) - That the land, property or area described in sub-section 137 of paragraph IV hereof is unoccupied, but respondents, Hideo Kobayashi and U. Kobayashi, his wife, and H. Kobayashi Company, Inc., a Florida corporation, are, or claim to be, the owners of the fee simple title thereto.

105.  (R/W Item 6269, Parcel 14, Sheet 23-B) - That the land, property or area described in sub-section 138 of paragraph IV hereof is unoccupied, but respondent, H. Kobayashi Company, Inc., a corporation of Florida, is, or claims to be, the owner of the fee simple title thereto.

106.  (R/W Item 6270, Parcel 15, Sheet 23-B) - That the land, property or area described in sub-section 139 of paragraph IV hereof is unoccupied, but respondent, Osborn Corporation, a corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, Amelia Investment Company, Inc., a corporation, is, or claims to be, the owner of some right, title, claim or interest in and to said area because of apparent overlap of Parcel 23, Sheet 23, according to map of record at page 23, Plat Book 17 of the Public Records of Palm Beach County, Florida, on this parcel or area; that the respondents, Charles A. Baird and David Baird, Jr., have, or claim to have, some title, interest or claim in said area as assignees of mortgage from Wise Perry

-70-

and wife to John H. Baird, Chas. A. Baird and David Baird, Jr., recorded in Mortgage Book 40, page 131, of the Public Records of Palm Beach County, Florida.

107.   (R/W Item 6272, Parcel 17, Sheet 23-B and R/W Item 6277, Parcel 22, Sheet 23-B) - That the land, property or area described in sub-section 140 and sub-section 142 of paragraph IV hereof is unoccupied, but respondents, P. D. Kinney and Virginia Kinney, his wife, are, or claim to be, the owners of the fee simple title thereto.

108.   (R/W Item 6278, Parcel 23, Sheet 23-B) - That the land, property or area described in sub-section 143 of paragraph IV hereof is unoccupied, but Amelia Investment Company, Inc., a corporation, is, or claims to be, the owner of the fee simple title thereto; that respondents, Charles A. Baird and David Baird, Jr., have, or claim to have some title, interest or claim in said area as present owners of the mortgage from Wise Perry and wife to John H. Baird, Chas. A. Baird and David Baird, Jr., recorded in Morggage Book 40, page 131 of the Public Records of Palm Beach County, Florida; that respondent, Osborn Corporation, a corporation, has, or claims to have some title, interest or claim to said area because of apparent overlap of said parcel on R/W Parcel 15, Sheet 23, according to Map in Map Book 17, Public Records of Palm Beach County, Florida.

109.   (R/W Item 6279, Parcel 24, Sheet 23-B) - The land, property or area described in sub-section 144 of paragraph IV hereof is unoccupied, but respondent, Amelia Investment Company, Inc., a corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, Chas. A. Baird and David Baird, Jr., are, or claim to be, the

-71-

owners of some right, title and interest in said area as
owners of mortgage of Wise Perry and wife to John H. Baird,
Chas. A. Baird and David Baird, Jr., recorded in Mortgage
Book 40, page 131, of the Public Records of Palm Beach County,
Florida; that respondent, Henry H. Benjamin, as Administrator
cum testamento annexo of the last will and testament of
John E. Nelson, deceased, has, or claims to have, some title,
interest or claim in and to said area, but that petitioner
does not know the kind, extent or amount thereof.

110.   (R/W Item 6280, Parcel 25, Sheet 23-B) - That
the land, property or area described in sub-section 145 of
paragraph IV hereof is unoccupied, but respondents, Theo D.
Luff and Hariette Belle Luff, his wife, are, or claim to be,
the owners of the fee simple title thereto; that respondents,
the unknown heirs at law, devisees and legatees (all of whom
are unknown to Petitioner) of George H. Rahles, deceased,
and respondent, Virginia Rahles, each have, or claim to have,
some right, title, interest or claim in said area, the
amount, extent or kind of which is to petitioner unknown.

111.   (R/W Item 6281, Parcel 25, Sheet 23-B) - That
the land, property or area described in sub-section 146 of
paragraph IV hereof is unoccupied, but respondents, Theo D.
Luff and Hariette B. Luff, and Addie Crawford, are, or claim
to be, the owners of the fee simple title thereto.

112.   (R/W Item 6284, Parcel 3, Sheet 30, and
R/W Item 6289, Parcel 8, Sheet 30) - That the land, proper-
ty or areas described in sub-sections 147 and 149 of para-
graph IV hereof is unoccupied, but respondent, Henry H.
Benjamin, as Administrator cum testamento annexo of the last
will and testament of John E. Nelson, deceased, is, or claims
to be the owner of the fee simple title thereto.

-72-

113.  (R/W Item 6288, Parcel 7, Sheet 30) - That
the land, property or area described in sub-section 148
of paragraph IV hereof is unoccupied, but respondents,
Philip B. Jennings and Inez Jennings, his wife, are, or
claim to be, the owners of the fee simple title thereto.

114.  (R/W Item 6292, Parcel 10, Sheet 30) - That
the land, property or area described in sub-section 152 of
paragraph IV hereof is unoccupied, but respondents, Floy C.
Mitchell and J. C. Mitchell, her husband, are, or claim to
be, the owners of the fee simple title thereto.

115.  (R/W Item 6294, Parcel 11, Sheet 30) - That
the land, property or area described in sub-section 153 of
paragraph IV hereof is unoccupied, but respondent, Wm. J.
Southam, is, or claims to be, the owner of the fee simple
title thereto.

116.  (R/W Item 6295, Parcel 12, Sheet 30) - That
the land, property or area described in sub-section 154 of
paragraph IV hereof is unoccupied, but respondents, Harry M.
Chesebro and Ethyl B. Chesebro, his wife, are, or claim to
be, the owners of the fee simple title thereto.

117.  (R/W Item 6296, Parcel 6, Sheet 24-A) - That
the land, property or area described in sub-section 155 of
paragraph IV hereof is unoccupied, but respondents, J. E.
Nelson and Gretchen M. Nelson, his wife, are, or claim to be,
the owners of the fee simple title thereto.

118.  (S/A Item 6087) - That the land, property
or area described in sub-section 156 of paragraph IV here-
of is unoccupied, but respondents, Ralph L. Wade and Cora
Wade Whitehead, are, or claim to be, the owners of the fee
simple title thereto.

119.  (S/A Item 6088) - That the land, property
or area described in sub-section 157 of paragraph IV here-
of is unoccupied, but that respondents, John L. Howe and
Ada Howe, his wife, are, or claim to be the owners of the
fee simple title thereto.

120.  (S/A Item 6097) - That the land, property
or area described in sub-section 158 of paragraph IV here-
of is unoccupied, but that respondent, Harry K. Noyes, is,
or claims to be, the owner of the fee simple title thereto.

121.  (S/A Item 6097-A) - That the land, property
or area described in sub-section 159 of paragraph IV here-
of is unoccupied, but that respondent, Walter N. Knauth and
Edna A. Knauth, his wife, are, or claim to be, the owners of
the fee simple title thereto.

122.  (S/A Item 6110) - That the land, property or
area described in sub-section 160 of paragraph IV herein is
unoccupied, but respondent, N. S. Boynton Estate Corporation,
a Michigan corporation, is, or claims to be, the owner of the
fee simple title thereto; that respondent, Town of Boynton
Beach, has, or claims to have, some right, title, interest or
claim in and to said area inasmuch as the same is a part of a
public street in said town, having been dedicated by the owner
thereof as such.

123.  (S/A Item 6122) - That the land, property or
area described in sub-section 161 of paragraph IV herein is

-74-

unoccupied, but respondent, Arthur McDermott, is, or claims
to be, the owner of the fee simple title thereto; that res-
pondent, General Improvement Corporation, a Florida corpora-
tion, has, or claims to have, some title, interest or claim
in said area because of judgment for costs, dated October
20th, 1931, in the amount of $44.37 held by it against res-
pondent, Arthur McDermott, recorded in Chancery Order Book
89, at page 448, Public Records of Palm Beach County,
Florida; that respondent, Town of Boynton Beach, has, or
claims to have some title, interest or claim in said area
inasmuch as the same constitutes a part or portion of a
dedicated public street or highway in said city or town.

124.  (S/A Item 6125) - That the land, property
or area described in sub-section 164 of paragraph IV herein
is unoccupied, but respondent, Newmar Corporation, a Florida
corporation, is, or claims to be, the owner of the fee simple
title thereto; that respondent, John C. Newington, is, or
claims to be the owner of some title, interest or claim in
the said area under mortgage dated March 14th, 1928, to him
by said Newmar Corporation to secure payment of one promis-
sory note in the sum of $75,000.00 cash, and recorded March
17th, 1928, in Mortgage Book 212, page 285, of the Public
Records of Palm Beach County, Florida; that respondent, Town
of Boynton Beach, has, or claims to have, some title, interest
or claim in said area because the same is a part of a public
dedicated highway or street in said town.

125.  (P/F 6146) - That the land, property or area
described in sub-section 165 of paragraph IV herein is unoc-
cupied, but respondents, Beatrice I. Benson, Harry Benson and
Robert Benson, are, or claim to be, the owners of the fee
simple title thereto; that respondent, Fred G. Benson, has,

-75-

or claims to have, some title, interest or claim to said area under and by virtue of mortgage to him from Beatrice I. Benson and Harry Benson, her husband, dated March 25th, 1931, and recorded in Mortgage Book 128, page 486 of the Public Records of Palm Beach County, Florida; that respondent, Hubert F. Krantz, has, or claims to have, some right, title interest or claim in said area under and by virtue of judgment recorded in Judgment Book 1, page 447 of the Public Records of Palm Beach County, Florida, same having been assigned to him by A. A. Hews and Company, Incorporated, on February 17th, 1928.

126.  (S/A Item 6147) - That the land, property or area described in sub-section 166 of paragraph IV hereof is unoccupied, but as to the following portion thereof: all thereof except the East 501.99 feet, respondent, Oscar H. Winchester, is, or claims to be, the owner of the fee simple title thereto; that respondent, August Gammert, has, or claims to have, some title or interest in the said portion of said area under and by virtue of a mortgage thereon of record in the Public Records of Palm Beach County, Florida; and as to the following portion of said area:  The East 501.99 feet thereof, the respondents, Harry Benson and Robert Benson, are, or claim to be, the owners of the fee simple title thereto.

127.  (S/A 6147-A) - That the land, property or area described in sub-section 167 of paragraph IV hereof is unoccupied, but respondent, Seaboard Realty Company, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto.

128.  (S/A 6147-C) - That the land, property or area described in sub-section 168 of paragraph IV hereof is

unoccupied, but respondent, Bassett W. Mitchell, is, or
claims to be, the owner of the fee simple title thereto.

129. (P/F 6148) - That the land, property or area
described in sub-section 169 of paragraph IV hereof is unoc-
cupied, but respondents, William Bonner and E. L. Winchester,
are, or claim to be, the owners of the fee simple title
thereto; that respondent, H. & W. B. Drew Company, has or
claims to have, some title, interest or claim in said area
under and by virtue of judgment against J. R. Bullock, for-
mer owner of said property, recorded in               Book,
page            , Public Records of Palm Beach County, Florida.
(The right, title and interest of the respondents above men-
tioned as to this area relate only to all of said area except
the East 501.99 feet thereof); as to the East 501.99 feet of
said area, the respondents, Harry Benson and Robert Benson,
are, or claim to be, the owners of the fee simple title there-
to.

130. (P/F 6149) That the land, property or area
described in sub-section 170 of paragraph IV hereof is unoc-
cupied, but respondents, Ward B. Miller, Inc., a Florida cor-
poration, William R. Jackson, Clarence G. Perkins, Howard
E. Roberts, Ernest Lewis, Robert Grace, Mrs. J. W. Bigelow
and J. W. Bigelow, her husband, Ella S. Boland and Anna L.
Hart, are, or claim to be, the owners of the fee simple title
thereto; that respondents, Mrs. B. Pullum and B. Pullum, her
husband, and Michael Flood, have, or claim to have, some
title, interest or claim in said area under a certain agree-
ment for deed recorded November 18th, 1925, from Ward B.
Miller, Inc., on Lots 38, 39 and 40, Briny Breezes Addition,
recorded in Miscellaneous Book 17, page 363; that respondent,
Frances L. Gugenheim, has some title, interest or claim in

said area under an agreement for deed from Ward B. Miller, Inc., recorded in Deed Book 378, page 185 of the records of Palm Beach County, Florida; that respondent, Mrs. Mary Hatfield, has, or claims to have, some title, interest or claim in said area, under agreement for deed recorded in Miscellaneous Book 16, page 304 of the Public Records of Palm Beach County, Florida; that respondent, Ward B. Miller and respondent, Agnes P. Miller, his wife, have, or claim to have some interest in said area under mortgage recorded in Mortgage Book 212, page 80 of the Public Records of Palm Beach County, Florida; that respondent, Alice G. Krah, has, or claims to have, some right, title, interest or claim in said area under mortgage recorded in Mortgage Book 182, page 296 of the Public Records of Palm Beach County, Florida; that respondents, Ward B. Miller and Agnes P. Miller, have, or claim to have, some interest in said area as assignees of mortgage from Howard E. Roberts and Helen R. Roberts, his wife, to Ward B. Miller, Inc., recorded in Mortgage Book 208, page 503 of the Public Records of Palm Beach County, Florida; that respondent, Lewis-Chitty, Consolidated, a corporation under the laws of the State of Florida, has, or claims to have, some title, interest or claim in said area under judgment recorded in Foreign Judgment Book 4, page 37 of the Public Records of Palm Beach County, Florida; that respondent, Antietam Paper Company, Inc., a corporation, has, or claims to have, some right, title, interest or claim in said area under judgment recorded in Foreign Judgment Book 2, page 274, of the Public Records of Palm Beach County, Florida; that respondent, Mergenthaler Linotype Co., a New York Corporation, has, or claims to have some title, interest or claim in said area under judg-

ment recorded in Equity Journal Book 1, page 392, in United
States District Court, Southern District of Florida, at Jack-
sonville, Florida; that respondent, United States of America,
has, or claims to have, some title, interest or claim in said
area under and by virtue of judgment recorded in Judgment
Record 2, page 231, in United States District Court, Southern
District of Florida; that respondent, Town of Boynton Beach,
has, or claims to have, some title, interest or claim in
said area because the same constitutes a part of a public
dedicated street or highway in said town.

131.  (P/F 6150) - That the land, property or area
described in sub-section 171 of paragraph IV herein is unoc-
cupied, but respondents, George F. Bensel, L. Belle Masters,
Emma A. Griswold, Martha D. Stauffer, Ethel Lichtentag, Flo-
rence R. Hopkinson and Elwood W. Stitzel, are, or claim to
be, the owners of the fee simple title thereto; that respond-
ent, Town of Boynton Beach, is, or claims to be, the owner of
some right, title or interest in said area because the same
constitutes a part of a public dedicated street or highway in
said town.

133.  (S/A 6155) - That the land, property or area
described in sub-section 173 of paragraph IV herein is unoccu-
pied, but respondent, Palm Beach Company, a Delaware corporation,
and Gulf Stream Company, a Florida corporation, are, or claim to
be, the owners of the fee simple title to the area described in
sub-paragraph/of sub-section 173; and that respondent, Howard

-79-

Phipps and Gulf Stream Company, a Florida corporation, are, or
claim to be, the owners of the fee simple title to that portion
of said area described in sub-paragraph 2 of said sub-section
173;

134.  (S/A 6155-A) - That the land, property, or area
described in sub-section 174 of paragraph IV hereof is unoccupi-
ed, but respondent, S. Fahs Smith, is, or claims to be, the
owner of an undivided one-half interest therein and respondent,
Peter F. Lebkuecher, is, or claims to be, the owner of an undivided
one-fourth interest therein, and respondent, Seaboard Realty Com-
pany, a Florida corporation, is, or claims to be, the owner of an
undivided one-fourth interest therein; that respondent, County of
Palm Beach, Florida, has, or claims to have, some title, interest
or claim in said area because the same constitutes a part of a
public dedicated highway or street within said county.

135.  (S/A 6155-B) - That the land, property, or area
described in sub-section 175 of paragraph IV hereof is unoccupi-
ed, but respondent S. Fahs Smith is, or claims to be, the owner
of an undivided one-half interest therein; that respondent,
Peter F. Lebkuecher, is, or claims to be, the owner of an un-
divided one-fourth interest therein; that respondent, Seaboard
Realty Company, a Florida corporation, is , or claims to be, the
owner of an undivided one-fourth interest therein; that respond-
ent, County of Palm Beach, Florida, has, or claims to have, some
title, interest or claim in said area because the same constitutes
a part of a public dedicated highway or street in said County.

136.  (S/A 6159) - That the land, property or area
described in sub-section 176 of paragraph IV hereof is unoccupi-
ed, but respondent, Bertanna Farms, Inc., a Florida corporation,
is, or claims to be, the owner of the fee·simple title thereto;
that respondent, West Palm Beach Atlantic National Bank, is, or

NOT A CERTIFIED COPY

claims to be, the owner of some title, interest or claim upon said area as assignee of mortgage from Bertanna Farms, Inc., a Florida corporation, to A. E. Parker, to secure a note in the amount of $50,048.85, recorded in Mortgage Book 242, page 142 of the Public Records of Palm Beach County, Florida.

137.  (S/A 6160) - That the land, property or area described in sub-section 177 of paragraph IV herein is unoccupied, but respondent, Gulf Stream Golf Club, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto.

138.  (S/A 6174) - That the land, property or area described in sub-section 178 of paragraph IV herein is unoccupied, but respondent, Everglades Realty and Investment Company, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto.

139.  (S/A 6182) - That the land, property or area described in sub-section 179 of paragraph IV hereof is unoccupied, but respondents, Anna Waters and W. W. Waters, are, or claim to be, the owners of the fee simple title thereto; that respondent, Town of Delray Beach, has, or claims to have, some right, title or interest in said area because a portion thereof is a public street or highway in said town.

140.  (S/A 6184) - That the land, property or area described in sub-section 180 of paragraph IV hereof is unoccupied, but respondent, Gleason Land Corporation, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, Town of Delray Beach, has, or claims to have, some title, interest or claim therein because a portion thereof consists of a public dedicated street or highway in said town.

141.  (S/A 6185) - That the land, property or area described in sub-section 181 of paragraph IV hereof is unoccupied,

NOT A CERTIFIED COPY

but respondent, Amceac Holding Company, a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, Town of Delray Beach, has, or claims to have, some title or interest in said area because a portion thereof constits of a public street or highway in said town.

142.  (S/A 6188) - That the land, property or area described in sub-section 182 of paragraph IV herein is unoccupied, but respondent, Ethel S. Williams, is, or claims to be, the owner of the fee simple title thereto.

143.  (S/A 6228) - That the land, property or area described in sub-section 183 of paragraph IV herein is unoccupied, but respondent, Adam J. Glossbrenner, is, or claims to be, the owner of the North 100 feet thereof; that respondent, S. Fahs Smith, is, or claims to be, the owner of an undivided one-half interest in all thereof except the North 100 feet thereof; and that respondent Seaboard Realty Company, a Florida corporation, is, or claims to be, the owner of an undivided one-half interest in all thereof except the North 100 feet thereof; that respondent, E. Jennie H. Richardson, has, or claims to have, some title, interest or claim in said area as assignee of mortgage recorded in Mortgage Book 58, page 463 of the Public Records of Palm Beach County, Florida; that respondent, S. Fahs Smith, has, or claims to have, some interest, title or claim in said area under mortgage recorded in Mortgage Book 214, page 543 of the Public Records of Palm Beach County, Florida; that respondent, S. Fahs Smith, has, or claims to have, some title, interest or claim in said area under mortgage recorded in Mortgage Book 236, page 67 of the Public Records of Palm Beach County, Florida.

144.  (S/A 6288-A) - That the land, property or area described in sub-section 184 of paragraph IV hereof is unoccupied, but respondent, Adam J. Glossbrenner, is, or claims to be, the

-82-

owner of the North 100 feet thereof; that respondent, S. Fahs
Smith, is, or claims to be, the owner of an undivided one-half
interest in and to all of said area except the North 100 feet
thereof; that Respondent, Seaboard Realty Company, a Florida
corporation, is, or claims to be, the owner of an undivided one-
half interest in and to all of said area except the North 100
feet thereof; that respondent, S. Fahs Smith, has, or claims to
have, some title, interest or claim in said area under mortgage
from Seaboard Realty Company to him recorded January 27th,
1932, in Mortgage Book 236, page 67 of the Public Records of
Palm Beach County, Florida.

145.  (S/A 6235) - That the land, property or area
described in sub-section 185 of paragraph IV hereof is unoccu-
pied, but respondent, Boca Ratone Company, a Delaware Corpora-
tion, is, or claims to be, the owner of the fee simple title
thereto.

146.  (S/A 6241-B) - That the land, property or area
described in sub-section 186 of paragraph IV hereof is unoccu-
pied, but respondent, Interstate Trust & Banking Company,
Trustee, a corporation, has, or claims to have, some title or
interest in said area under judgment by it against Hubert F.
Krantz, former owner of said property; that respondent, H. W.
Roberts, has, or claims to have, some title, interest or claim
in said area under judgment against Hubert F. Krantz, recorded
July 9th, 1930, in Circuit Court Minute Book 25, page 334 of
the Public Records of Palm Beach County, Florida; that respond-
ent, M. A. Smith, as Liquidator of Farmers Bank and Trust Com-
pany, a banking corporation under the laws of the State of
Florida, has, or claims to have, some title, interest or claim
in said area, under judgment against Hubert F. Krantz, recorded
July 20th, 1931 in Circuit Court Minute Book 29, page 197 of

-83-

the Public Records of Palm Beach County, Florida.

147.  (S/A 6295-X-A) - That the land, property or area described in sub-section 187 of paragraph IV hereof is unoccupied, but respondent, Mary S. Brown, is, or claims to be the owner of the fee simple title thereto.

148.  (S/A 6295-X-B) - That the land, property or area described in sub-section 188 of paragraph IV hereof is unoccupied, but respondent, Mary S. Brown, is, or claims to be, the owner of an undivided one-half interest in the fee simple title thereto, and the respondents, John McL. Stevens and Cornelia B. Stevens, are, or claim to be, the owners of an undivided one-half interest in the fee simple title thereto.

149.  (S/A 6295-X-C) - That the land, property or area described in sub-section 189 of paragraph IV hereof is unoccupied, but respondent, Jack T. Kinsman and respondent, Alpha  Kinsman, his wife, are, or claim to be, the owners of the fee simple title thereto.

151.  (S/A 6295-X-E; S/A 6295-X-F; S/A 6295-X-H) - That the land, property or area described in sub-sections 194, 191 and 193, is unoccupied, but respondent, Tesdem, Inc., a Florida corporation, is, or claims to be, the owner of the fee simple title thereto.

152.  (S/A Item 6295-X-G) - That the land, property or area described in sub-section 192 of paragraph IV hereof is unoccupied, but respondent, Charl Ormond Williams, is, or claims to be the owner of the fee simple title thereto.

153.  (S/A Item 6295-X-I) - That the land, property or area described in sub-section 195 of paragraph IV hereof is unoccupied, but respondent, Tesdem, Inc., a Florida corporation, is, or claims to be the owner of the fee simple title thereto; that respondent, H. A. Hunt and respondent, Nannie G. Hunt, his wife, have, or claim to have, some title, interest or claim in said area under mortgage from Harry Oakes, recorded in Mortgage Book 153, page 57, of the Public Records of Palm Beach County, Florida.

154.  (S/A Item 6295-X-J) - That the land, property or area described in sub-section 196 of paragraph IV hereof is unoccupied, but respondent, H. A. Hunt and respondent, N. G. Hunt, his wife, are, or claim to be, the owners of the fee simple title thereto; that respondent, The Boca Ratone Lake and Beach Development Company, a Florida corporation, is, or claims to be, the owner of that portion of said parcel which lies within Government meander of Government Lot 1, Section 29, Township 47 South, Range 43 East.

155.  (S/A Item 6296-X) - That the land, property or area described in sub-section 197 of paragraph IV herein is unoccupied, but respondent, Boca Ratone Company, a Delaware corporation, is, or claims to be, the owner of the fee simple title thereto.

156.  (S/A Item 6243) - That the land, property or area described in sub-section 198 of paragraph IV herein is unoccupied, but respondent, M. A. Smith, as Liquidator of Farmers

Bank and Trust Company, Trustee, is, or claims to be, the owner
of the fee simple title thereto; that respondents, Vlasta J.
Kubin, Otto Kubin, Jr., Charles J. Kubin, Caroline V. Southard,
and Adelaide J. Kubin, have, or claim to have, some title or
interest or claim in said area under and by virtue of deed from
Robert J. Kubin and Gretchen Kubin, his wife, dated May 8th,
1931, and recorded in Deed Book 467, page 150, Public Records
of Palm Beach County, Florida; that respondents Jacob G. Gross-
berg and David H. Brill, co-partners doing business under the
firm name of Grossberg, Lyon and Brill, have, or claim to have,
some title, interest or claim upon said area under agreement
from Robert J. Kubin and Gretchen Kubin, his wife, dated April
28th, 1930 and recorded in Deed Book 458, page 172, of the Public
Records of Palm Beach County, Florida; that respondent, Mrs.
Grady H. Brantley and respondent Grady H. Brantley, her husband,
have, or claim to have, some title, interest or claim in said
area under mortgage recorded in Mortgage Book 234, page 447 of
the Public Records of Palm Beach County, Florida.

157.  (S/A Item 6243-A) – That the land, property or
area described in sub-section 199 of paragraph IV herein is un-
occupied, but respondent, Allan B. Walsh, is, or claims to be,
the owner of the fee simple title thereto.

158.  (S/A Item 6244) – That the land, property or
area described in sub-section 200 of paragraph IV hereof is un-
occupied, but respondent, Boca Ratone Company, a Delaware Cor-
poration, is, or claims to be, the owner of the fee simple title
thereto.

159.  (S/A Item 6245) – That the land, property or
area described in sub-section 201 of paragraph IV hereof is un-
occupied, but respondent George W. Harvey, individually and as

-86-

Trustee under George W. Harvey Trust, is, or claims to be, the owner of the fee simple title thereto; that respondents, J. S. Rhine and J. L. Holmberg, are, or claim to be, the owners of some right, title or interest or claim to said area under mortgage recorded in Mortgage Book 113, page 3, of the Public Records of Palm Beach County, Florida; that respondent, George W. Harvey Realty Company, a Florida corporation, has, or claims to have, some title, interest or claim to said area under agreement from George W. Harvey Trust recorded in Deed Book 273, page 340, Public Records of Palm Beach County, Florida.

160. (S/A Item 6246) - That the land, property or area described in sub-section 202 of paragraph IV hereof is unoccupied but respondent, Franklin P. Smith, is, or claims to be, the owner of the fee simple title to that part of said item which lies within the N$\frac{1}{2}$ of N$\frac{1}{2}$ of Government Lot 1, except the South 200 feet thereof; that respondents, Vlasta J. Kubin, Charles Kubin, Adelaide Kubin, Carolyn Southard, Theresa Van Buren Hillhouse, are, or claim to be, the owners of the South 200 feet of the N$\frac{1}{2}$ of the N$\frac{1}{2}$ of Government Lot 1, Section 9, Township 47 South, Range 43 East; that respondent, Chicago Title and Trust Company, an Illinois corporation, Trustee, has, or claims to have, some title, interest or claim in said area under the provisions of a trust Agreement known as Trust No. 5944 (the exact details, terms and conditions of which are to the petitioner unknown) as to the South one-half of the North one-half of Government Lot 1; that respondent, W. W. Burgiss, is, or claims to be, the owner of the fee simple title to that part of said area which is included within Government Lot 4, and the South one-half of Government Lot 1 thereof; that respondents,

-87-

Mrs. Grady H. Brantley and Grady H. Brantley, her husband, have, or claim to have, some title, interest or claim to said area under mortgage recorded in Mortgage Book 234, page 447 of the Public Records of Palm Beach County, Florida; that respondent, Chrisbar Corporation, a Florida corporation, has, or claims to have, some interest, title or claim to said area under judgment against Charles J. Kubin, recorded in Foreign Judgment Book 3, page 579 of the Public Records of Palm Beach County, Florida; that respondent, B. L. Holman, has, or claims to have, some title, interest or claim in said area under judgment against Charles J. Kubin recorded in Foreign Judgment Book 3, page 583, Public Records of Palm Beach County, Florida; that respondent, M. A. Smith, as Liquidator of Farmers Bank & Trust Company, a banking corporation under the laws of the State of Florida, has, or claims to have, some title, interest or claim against said area under judgment against Charles J. Kubin recorded in Circuit Court Minute Book 25, page 485 of the Public Records of Palm Beach County, Florida; that respondents Jacob G. Grossberg and David H. Brill, co-partners doing business under the firm name of Grossberg, Lyon and Brill, have, or claim to have, some title, interest or claim in said area under agreement recorded in Deed Book 468, page 172 of the Public Records of Palm Beach County, Florida.

161. (S/A Item 6246-A) - That the land, property or area described in sub-section 203 of paragraph IV hereof is un-occupied, but respondents George W. Harvey and George W. Harvey, as Trustee, and George W. Harvey Trust, a trust under declaration of trust dated February 16, 1925, on file in the office of the Secretary of State, State of Florida; Julia C. King; Llewella E. Woodward; Evelyn L. Batchelle and Frank H. Parsons, are, or claim to be, the owners of the fee simple title thereto; that respond-

-88-

ent, D. J. Morrison, is, or claims to be, the owner of some title, interest or claim in and to said area under mortgage recorded in Mortgage Book 132, page 58 of the Public Records of Palm Beach County, Florida; that respondent, George W. Harvey Realty Company, a Florida corporation, has, or claims to have, some title, interest or claim in and to said area under agreement recorded in Deed Book 373, page 340 of the Public Records of Palm Beach County, Florida.

162.  (S/A Item 6250) - That the land, property or area described in sub-section 204 of paragraph IV hereof is unoccupied, but respondent, Peter Brodt, is, or claims to be, the owner of the fee simple title thereto.

163.  (S/A Item 6251) - That the land, property or area described in sub-section 205 of paragraph IV hereof is unoccupied, but respondent, Marie Stedronski, has, or claims to have, some title, interest or claim therein as assignee of mortgage record-ed in Mortgage Book 100, page 59 of the Public Records of Palm Beach County, Florida; that respondent, George Stedronski, has, or claims to have, some title, interest or claim in said area under mortgage recorded in Mortgage Book 125, page 73 of the Public Records of Palm Beach County, Florida.

164.  (S/A Item 6255) - That the land, property or area described in sub-section 207 of paragraph IV hereof is unoccupied, but respondent, T. W. Lipscomb, is, or claims to be, the owner of the fee simple title thereto; that respondent, H. Kobayashi Company, Inc., a Florida corporation, has, or claims to have some title, interest or claim in said area under mortgage deed of record in Mortgage Book            , page            , Public Records of Palm Beach County, Florida; that respondent, Walker Lipscomb, has, or claims to have, some title, interest or claim in said area under mortgage of record in Mortgage Book            ,

-89-

page          , of the Public Records of Palm Beach County,
Florida.

165.   (S/A Item 6264) - That the land, property or
area described in sub-section 210 of paragraph IV hereof is
unoccupied, but respondent, Boca Ratone Company, a Delaware
Corporation, is, or claims to be, the owner of the fee simple
title thereto.

166.   (S/A Item 6270) - That the land, property or
area described in sub-section 212 of paragraph IV hereof is
unoccupied, but respondent, Osborn Corporation, a Florida cor-
poration, is, or claims to be, the owner of the fee simple title
thereto; that respondent, David Baird, Jr., is, or claims to be,
the owner of some title, interest or claim in said area as as-
signee of mortgage recorded in Mortgage Book 40 at page 131 of
the Public Records of Palm Beach County, Florida; that respond-
ent, Amelia Investment Company, Inc., a Florida corporation,
is, or claims to be, the owner of some title, right, claim or
interest to said area, the exact kind or extent of which is to
petitioner unknown.

167.   (S/A Item 6278) - That the land, property or area
described in sub-section 213 of paragraph IV hereof is unoccupied,
but respondent, Amelia Investment Company, Inc., a Florida cor-
poration, is, or claims to be, the owner of the fee simple title
thereto; that respondent, David Baird, Jr., has, or claims to
have, some title, interest or claim in said area as assignee of
mortgage recorded in Mortgage Book 40, page 131 of the Public
Records of Palm Beach County, Florida; that Osborn Corporation,
a Florida corporation, has, or claims to have, some title, inter-
est or claim to said area, but that the extent, kind or amount
of such title, interest or claim is to petitioner unknown.

168.   (S/A Item 6279) - That the land, property or area described in sub-section 214 of paragraph IV hereof is unoccupied, but respondent, Amelia Investment Company, Inc., a Florida corporation, is, or claims to be, the owner of the fee simple title thereto; that respondent, David Baird, Jr., has, or claims to have, some title, interest or claim to said area as assignee of mortgage in Mortgage Book 40, page 131 of the Public Records of Palm Beach County, Florida; that respondent, Henry H. Benjamin, as Administrator Cum Testamento Annexo, has, or claims to have, some title, interest or claim in said area, but that the exact kind, extent or amount of said claim is to petitioner unknown.

169.   (S/A Item 6284) - That the land, property or area described in sub-section 215 of paragraph IV hereof is unoccupied, but respondent, Henry H. Benjamin, as Administrator Cum Testamento Annexo of the last will and testament of John E. Nelson, deceased, is, or claims to be, the owner of the fee simple title thereto.

-91-

VII.

And generally, your petitioner says that the present legal status of all agreements for deed, mortgages and judgments hereinabove referred to, are to petitioner unknown, except as hereinabove stated, but that the same do not appear as satisfied or discharged on the Public Records of Palm Beach County, Florida.

VIII.

Petitioner further says that notwithstanding the claims of respondents, and each of them, in and to the lands hereinabove described, as hereinabove set forth, it is the owner of and entitled to possession of, a right-of-way two hundred (200) feet wide, that is to say, one hundred (100) feet on each side of the center line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as the same passes through the lands hereinabove described, said canal or waterway being generally known as the Florida East Coast Canal; that petitioner bases its claim to such right-of-way upon a certain deed from the Florida Canal & Transportation Company, a corporation, to it, dated October

NOT A CERTIFIED COPY

-92-

15th, A. D. 1929, and now of record in the Public Records of
Palm Beach County, Florida, and upon the rights and title accru-
ing to said Florida Canal & Transportation Company by virtue
of Section 6320, Compiled General Laws of Florida, the pro-
visions of which section your petitioner alleges said Florida
Canal & Transportation Company, and its predecessors in interest
and title, complied with by and through the construction of
said canal or waterway and the filing of a plat as required by
said section; that petitioner therefore says that it, as succes-
sor in interest to said Florida Canal & Transportation Company,
owns and is entitled to possession of the aforesaid right-of-way
two-hundred (200) feet in width as aforesaid, through all the
lands hereinabove described, abutting on said waterway, and that
its title to said right-of-way should be established in this
proceeding.

IX.

That your petitioner, by and through its representatives,
attorneys and agents, has made diligent search, effort and in-
quiry to ascertain the status, legal disabilities, if any, places
of residence of individual respondents, and principal places
of business of corporations named above as respondents; that
the marital status of the various respondents, except as herein
stated, is to petitioner unknown; that as a result of the afore-
said diligent search, effort and inquiry, and upon the infor-
mation, knowledge and belief derived therefrom, your petitioner
says that the following respondents are believed to be residents
of the State of Florida, residing in the Judicial District of
Florida known as the Southern District of Florida, to-wit: Anna
Parker, residing at West Palm Beach, Florida; Frances Patterson,

-93-

residing at West Palm Beach, Florida; Samuel J. Blakely,
residing at Kelsey City, Florida; Louise J. Stone, residing
at Boynton, Florida; Paul Garrett, residing at Boynton,
Florida; Ward B. Miller and Agnes C. Miller, residing at
Boynton Beach, Florida; C. H. Hamre, residing at Boynton
Beach, Florida, Margaretha Doyle, residing at Lake Worth,
Florida; Maria Haller, residing at 409 North Poinsettia
Avenue, West Palm Beach, Florida; F. N. Brown and Mary Brown,
his wife, residing at Delray Beach, Florida; B. B. Raulerson,
residing at Boca Raton, Florida; W. C. Fountain and Julia
M. Fountain, residing at Delray Beach, Florida; Otto A.
Sestedt and Lucile Seestedt, residing at Delray Beach,
Florida; W. W. Waters and Anna Waters, residing at Delray
Beach, Florida; Ethel S. Williams and W. C. Williams, her
husband, residing at Delray Beach, Florida; Mike L. Blank
and Martha Blank, his wife, residing at Delray Beach, Florida;
Frank Hand and Lottie C. Hand, his wife, residing at Delray
Beach, Florida; R. M. Banker and Ethel Banker, his wife,
residing at Delray Beach, Florida; C. Y. Byrd, residing at
Delray Beach, Florida; J. H. Adams, residing at Delray Beach,
Florida; Theodore Moeller, residing at Delray Beach, Florida;
C. D. Yates and Cora B. Yates, his wife, residing at Delray
Beach, Florida; William Mayer, residing at Delray Beach, Flo-
rida; A. G. Evans, residing at Delray Beach, Florida; Louis
J. Leturmy, residing at Delray Beach, Florida; Caroline V.
Southard and D. L. Southard, her husband, residing at West
Palm Beach, Florida; Maurice W. Stokes and Helen I. Stokes,
his wife, and J. W. Moore, residing at Boca Ratone, Florida;
Walter N. Knauth, residing at Boynton, Florida; Vera V.

-94-

NOT A CERTIFIED COPY

Webber, residing at Boynton, Florida; Ralph Wade, residing
at West Palm Beach, Florida; Harry Benson, Beatrice I. Benson
and Robert Benson, residing at Boynton, Florida; Oscar R.
Winchester, residing at Boynton, Florida; Bassett W. Mitchell,
residing at Palm Beach, Florida; William Bonner, residing at
Boynton, Florida; Peter F. Lebkuecher, residing at West Palm
Beach, Florida; Allen B. Walsh and Anna V. Walsh, his wife,
residing at Delray Beach, Florida; Edward T. Page, residing
at Delray Beach, Florida; John A. Polley, residing at Lake
Worth, Florida; James O'Conner, residing at West Palm Beach,
Florida; James D. Sturrock, residing at West Palm Beach,
Florida; B. F. Evans, residing at Boynton, Florida; C. C.
Keichline, residing at West Palm Beach, Florida; Hubert F.
Krantz, residing at West Palm Beach, Florida; E. L. Winchester,
residing at Boynton, Florida; Mary H. Gleason and W. H. H.
Gleason, residing at Eau Gallie, Florida; P. D. Kinney and
Virginia Kinney, residing at Boca Ratone, Florida; Theodore
D. Luff and Hariette Belle Luff, residing at Boca Ratone,
Florida; Addie Crawford, residing at Lake Worth, Florida; Floy
C. Mitchell and J. C. Mitchell, residing at Boca Ratone, Flo-
rida; Harry M. Chesebro and Ethyl B. Chesebro, residing at
Boca Ratone, Florida.

That the following corporations are corporations or-
ganized or authorized to do business under the laws of the
State of Florida, with their principal places of business in
the places shown, as follows: Lewis-Chitty, Consolidated, a
Florida corporation, at Jacksonville, Florida; Boynton Nurser-
ies, Inc., a Florida corporation, at Boynton, Florida; Gulf
Stream Golf Club, a corporation not for profit, under the
laws of the State of Florida, at West Palm Beach, Florida;
Everglades Realty and Investment Company, a corporation of

-95-

Florida, at West Palm Beach, Florida; Gleason Land Corporation, a Florida corporation, at Eau Gallie, Florida; Gracey Realty Company, Inc., a corporation of Florida, at Delray Beach, Florida; Amceac Holding Company, a Florida corporation, at West Palm Beach, Florida; Boca Ratone Company, a Delaware corporation, at Palm Beach, Florida; Osborn Corporation, a Florida corporation, at Miami, Florida; Amelia Investment Company, a Florida corporation, at West Palm Beach, Florida; General Improvement Corporation, a Florida corporation, at West Palm Beach, Florida; Newmar Corporation, a Florida corporation, at West Palm Beach, Florida; Mutual Holdings Company, a Florida corporation at West Palm Beach, Florida; the Palm Beach Company, a Delaware corporation, at Palm Beach, Florida; Gulf Stream Company, a Florida corporation, at Palm Beach, Florida; East Shore Company, a Florida corporation, at Palm Beach, Florida; West Palm Beach Atlantic National Bank, at West Palm Beach, Florida; Zook Palm Nurseries, Inc., a Florida corporation, at Boynton, Florida; H. Kobayashi Company, Inc., a Florida corporation, at Boca Ratone, Florida; Atlantic Mortgage Company, a Florida corporation, at Boynton, Florida; Bertanna Farms, Inc., a Florida corporation, at West Palm Beach, Florida.

That the following respondent is believed to be a resident of the State of Florida, residing in the Judicial Circuit of Florida known as the Northern District of Florida: H. A. Smith, as Liquidator of certain banks or banking corporations of the State of Florida, named in this petition, residing at Tallahassee, Florida.

That the following respondents are believed to be residents of a State or Country other than the State of Florida, their names and places of residence being as follows:  Dallas

H. Miller, residing at Elwood, Indiana; Harry K. Noyes and
Edith Noyes, his wife, residing at 857 Commonwealth Avenue,
Boston, Massachusetts; John L. Howe, residing at Loop City,
Nebraska; Charles L. Boynton, residing at Port Huron, Michigan;
George H. Boynton, residing at Hotel Lennox, Detroit, Michigan;
Edith Wright, Port Huron, Michigan; Harry A. Seibrecht, c/o
Rose Hill Nurseries, 38 Perth Avenue, New Rochelle, New York;
Clayton L. Andrews, residing at 624 Main Street, Moorestown,
New Jersey; David L. Lippincot, 15 East Oak Street, Moorestown,
New Jersey; The Bilt-Rite Company, Inc., at 136 Mountain Ave-
nue, New Rochelle, New York; W. J. Schoonover Glass Company,
at Scranton, Pennsylvania; H. O. Michael, 1640 Vermont Street,
McKeesport, Pennsylvania; William T. Noble, Emma J. Noble,
Elizabeth J. Noble, at Augusta, Maine; Emma W. Allen at
Waltham, Massachusetts; Charlotte E. Frazer, at Medford, Mas-
sachusetts; Harvey L. Smith, at 249 Union Street, Springfield,
Massachusetts; Edith M. Lash, Merrick, L. I., New York; Robert
A. Davis, at 9 State Avenue, Northfield, Vermont; Eva B. Allen,
c/o Baltimore Trust Company, Ridgewood, New Jersey; Albert
Gregerson, Foster, Nebraska; M. P. Moeller, at Hagerstown,
Maryland; John E. Means, Lancaster, Pennsylvania; Lillian M.
McDermott and Arthur McDermott, her husband, at Bay Boulevard,
Laurel, Long Island, New York; James B. Maher and Nellie Maher,
his wife, at 70 Atlantic Street, Keyport, New Jersey; Edith
Englehart, at Iron River, Michigan; Bennett Jacob, 601 Washing-
ton Street, Boston, Massachusetts; L. H. Hobart and E. W.
Hobart, at Pemberville, Ohio; Michael Nagle, at 618 Dora Street,
Toledo, Ohio; Rosa P. Hayes, 7007 Hampden Lane, Bethesda,
Maryland; N. S. Boynton Estate Corporation, a corporation, c/o
A. E. Parker, Comeau Building, West Palm Beach, Florida; R. T.
Watts, Lynchburg, Virginia; John L. Lougee, 7 Dexter Road,

-97-

Newtonville, Massachusetts; John C. Newington, 280 Park Avenue, New York City, New York; Wertheimer Brothers Ribbons, Inc., a corporation, 102 Madison Avenue, New York, New York; Nanna F. Rasmussen, 100 Crosby Street, Chicago, Illinois; Peter Brodt, Martin Creek, Pennsylvania; Raymond Lipscomb and Walter Lipscomb, 207 Taylor Building, Asheville, North Carolina; Phillip B. Jennings and Inez Jennings, Carmel, New York; William J. Southam, c/o "The Spectator", Hamilton, Ontario, Canada; Maggie LaFranz, Tekemah, Nebraska; Annie Jenkins, St. Joseph, Missouri; Starr Vinson, Verdel, Missouri; Cora Buckley, Norfolk, Nebraska; Eliza Daniel, St. Joseph, Missouri; Emma Jones, Norfolk, Nebraska; Mary Nicademus, Genoa, Nebraska; Morris Lavene, 523 Main Street, Springfield, Massachusetts; S. Fahs Smith and Neville Mitchell Smith, his wife, York, Pennsylvania; Secretary of Agriculture of the United States at Washington, D. C.; Charles Gehlhaus, Atlantic Highlands, New Jersey; W. W. Burgiss and Etta R. Burgiss, his wife, at Greenville, South Carolina; Joseph P. Sauer at 293 Washington Street, New York, New York.

That by diligent search and inquiry petitioner has been unable to ascertain or learn the place or places of residences of the other respondents.

That it is the belief of petitioner that none of the respondents herein named is under legal disability except as above indicated and stated; that in the cases of female married respondents, their respective husbands have been joined as respondents insofar as they are known to petitioner and petitioner hereby joins and makes parties respondent any and all husbands of any of said respondents unknown to petitioner and unnamed herein.

- 98-

X.

That for the purpose of setting forth a particular
description of the lands, properties and areas or area
selected for the aforesaid purposes, and in, through and
over which the easement or easements is or are, in
these proceedings, sought to be acquired, with the names
and residences of the owners thereof, and those persons
having or claiming to have some right, title, interest or
estate therein, your Petitioner and its representatives
has and have also made and caused to be made diligent
search upon and through the public records of the State
of Florida, and particularly among those of the County of
Palm Beach aforesaid, wherein the aforesaid lands, proper-
ties and areas are located, and has and have made diligent
inquiry of all persons likely to have knowledge concerning
the description, bounds and location of said lands, prop-
erties and areas, to ascertain the names of the occupants
(if any), and also the names and residences of the owners
and other persons interested therein; and Petitioner has
used every reasonable effort and has faithfully attempted
heretofore to ascertain and set forth the interest, title,
estate, and also the claims, of all persons and corpora-
tions in and to said lands, properties and areas, and has
made all such persons and corporations, so far as ascer-
tained, parties to this proceeding, and has set forth their
respective interests insofar as the same are known to Peti-
tioner, but notwithstanding such searches and inquiries
and the statements and information so obtained, and the
allegations hereinabove made, it is deemed advisable and
necessary that all persons and corporations herein named
be and they are made parties to these proceedings generally,

-99-

insofar as they have or claim any interest in and to any of
the lands above named, not particularly described or set
forth herein by Petitioner, or if they claim an interest
different from that herein set forth, together with all un-
known persons and corporations owning or claiming to own
any right, title, interest or estate in, or lien, incumbrance,
servitude, easement, charge, demand, claim or covenant on or
in respect to the hereinbefore described lands, properties
and areas, to the end that the said easements for the deposit
of dredged material or spoil and/or for rights-of-way, as the
case may be, may be vested in the United States of America,
free, clear of and discharged from all liens, incumbrances,
servitudes, easements, charges, demands, claims and covenants
whatsoever, so far as may be necessary or proper in view of
the easements and/or rights-of-way herein sought.

XI.

That the aforesaid easements to be taken and had
in these proceedings to and over the aforesaid described
lands, properties and areas, are to be for governmental
purposes and uses, which are of superior public need and
use and will more efficiently and advantageously serve the
best interests of the public generally than the purposes for
which same are now used, and the same are needed and neces-
sary for the use and uses herein mentioned and set forth:

WHEREFORE, your Petitioner, the United States of
America, for the uses and purposes aforesaid, brings this
action against the aforesaid respondents, and also against
all persons and corporations having or claiming to have

-100-

NOT A CERTIFIED COPY

any right, title, interest or estate whatsoever, in, or having mortgages or other liens upon, said lands, properties and areas, and hereby prays as follows:

(a)  That the easement or easements in, over and upon the lands, properties and areas hereinbefore specifically described, to be used for spoil disposal, and the deposit of dredged material thereon, and for rights-of-way, in connection with the construction of said Intracoastal Waterway, and as hereinafter more particularly set forth and prayed, may be declared proper or necessary, and said lands, properties and areas may be condemned, taken and held, so far as may be necessary or proper in these proceedings, free of all liens, incumbrances, charges, easements, servitudes, restrictions and covenants whatsoever by your Petitioner, the United States of America, for the uses and purposes herein set forth, and not otherwise.

That over and upon those lands, properties and areas, and each of them, hereinbefore referred to and described in sub-sections 156 to 218, both inclusive, except sub-sections 165, 166, 169, 170 and 171, of paragraph IV, there be condemned, fixed and declared, in favor of your Petitioner, its officers, agents, servants, contractors and representatives, the right, privilege, power and authority to enter and deposit thereon such earth, spoil and/or other material excavated in the construction and/or maintenance during the time of said construction, of the waterway mentioned and referred to herein;

While as to the lands, properties and areas, and each of them, hereinbefore referred to and described in sub-sections 1 to 155, both inclusive, of the aforesaid paragraph IV there be condemned, fixed and declared, in favor of your Petitioner,

its agents, representatives and assigns, the perpetual right
and easement to enter thereon, and to excavate, cut away and
remove any part or all thereof, from time to time, as may
be required at any time for the construction and maintenance
of the aforesaid Intracoastal Waterway, or any enlargement
thereof, and to maintain the portions so excavated and the
channel thereby created as a part of the navigable waters
of the United States of America; and the further perpetual
right and easement to enter upon, occupy and use any portion
of said tract of land, not so cut away and converted into
public navigable waters as aforesaid, for the deposit of
dredged material, and for such other purposes as may be need-
ful in the preservation and maintenance of the Intracoastal
Waterway:  RESERVING, HOWEVER, to the owner or owners, his
or their heirs and assigns, all such rights and privileges
in said tract or tracts of land as may be used and enjoyed
without interfering with or abridging the rights and ease-
ments hereby condemned, fixed and declared in favor of your
Petitioner.

That as to the land, property and area hereinabove
described in sub-sections 165, 166, 169, 170 and 171 of afore-
said paragraph IV, there be condemned, fixed and declared,
in favor of your Petitioner, its officers, agents, servants,
contractors and representatives, the right, privilege, power
and authority to enter upon said tract and to use so much
thereof as shall be necessary or proper for laying down,
operating and/or maintaining pipes, pipe-lines and/or other
dredging equipment and paraphernalia used or to be used in
transferring dredged material resulting from the excavation
of the aforesaid Intracoastal Waterway and depositing the

same upon a certain other tract in the vicinity of the tract
hereinabove described, and for the further right, privilege,
power and authority to use said tract of land in such manner
as shall be necessary, advisable or expedient to accomplish
the return of water discharged by said pipe, pipeline and/or
other dredging equipment and paraphernalia upon the said
other tract in the vicinity of the tract above described,
and to that end Petitioner is further authorized, empowered
and permitted to construct and build upon said tract such
ditches, dykes and/or other works as will effect, facilitate
and/or assist in the return of said water.

(b)   That such notice or notices, as required by
law, and in proper form and substance, be issued by the
Clerk of this Court, under the seal of the Court, upon the
filing of this petition, requiring the appearance therein
of the aforesaid respondents mentioned and named in paragraph
VI hereof as residents of the State of Florida, and who may
be served by the proper officer of this Court, on a day in
said notice or notices named, not less than thirty days from
date thereof, and show what interest, right, title or estate
(if any) they and each of them, respectively, have or claim
to have in and to the lands, properties and areas hereinbe-
fore mentioned and described, and also show cause, if any
there be, why sama should not be taken by the United States
of America for the uses and purposes in this petition here-
tofore mentioned, and such notice or notices may be served
as required by law upon respondents;

While as to those defendants who are heretofore al-
leged to be non-residents of the State of Florida, if any,
that the Clerk of this Court shall, within two days after

-103-

issuing of notice, or notices, mail a certified copy there-
of to such respondents, respectively, as required by law,
and that he file a certificate of such constructive service
of record herein.

(c)  That after issuing the aforesaid notice or
notices, the Clerk of this Court shall forthwith publish
once a week, for four consecutive weeks, in the *Palm
Beach Post*      , a newspaper of general circulation in
Palm Beach County, State of Florida, a notice directed to
all persons interested in, or having liens upon, the afore-
said property or any part thereof, which said notice shall
include the names of all the respondents heretofore named
in paragraph VI hereof, commanding them and each of them,
on a day mentioned and stated in said notice, not less than
thirty days from date thereof, to show what right, title
or interest they and each of them, respectively, have or
claim to have in and to the lands, properties and areas here-
inbefore described, and to show cause, if any they have, why
said easement or easements in said lands, properties and
areas hereinbefore described should not be taken by said United
States of America, for the uses and purposes set forth in
this petition, or else stand forever barred from so doing;
and that said Clerk file a certificate of publication of ser-
vice in the cause, as in and by the statute required.

(d)  That in any case or event where it may seem
to be in the interests of justice and of more effective
notice, the Court may cause additional notice or service to
be made upon any or all parties defendant hereto, such Notice
or service to be made as in said order directed.

-104-

(e)  That as soon as practicable after the return day of said notice, this Honorable Court cause a jury of twelve men to be empanelled and sworn to try what compensation, if any, shall be made to the respondents herein named, or who shall hereafter become such, and each of them, respectively, for said easement and/or easements in and over said lands, properties and areas hereby sought to be appropriated and condemned as aforesaid, and that where a part only of any parcel, lot or tract of land is taken, the jury or other tribunal awarding the just compensation or assessing the damages to the owner, whether for the value of the part taken, or for an injury to the part not taken, be directed and required to take into consideration by way of reducing the amount of compensation or damages, any special and direct benefits to the remainder arising from and by reason of the improvements, and that they render, and be required to render, their award or verdict accordingly, as in and by the Federal Statute in such cases made and provided.

(f)  That this Honorable Court ascertain and fix the extent of the right-of-way now owned by Petitioner through the lands above described, and that due consideration be given to Petitioner's said existing right-of-way through said lands in awarding just compensation, if any is found to be due, to respondents claiming to own, or who are in possession of, lands abutting upon said canal or waterway.

(g)  That this Honorable Court, by its judgment, shall adjudge such easement or easements in and upon the lands hereinabove described, be given and allowed to this Petitioner for the purposes and uses herein set forth, upon

-105-

the deposit in the registry of this Court of the amount of money found by the verdict of the jury due for just compensation to said defendants and each of them.

(h)  That on filing this petition an order may be entered herein by the Court providing for the taking of immediate possession of said lands, properties, areas, easements and/or rights-of-way, by your Petitioner, for such improvement as hereinbefore mentioned, to the extent of the interest or easement to be acquired in these proceedings, and fixing the amount and form of certain and adequate security to be given for the payment of such just compensation as may be awarded to the party or parties justly entitled thereto, and for the taking of such easement or easements in, over and upon such lands, properties and areas hereinbefore mentioned.

(i)  That the property hereinbefore referred to and described herein may be condemned for the uses and purposes set forth herein.

And, that this Court grant unto your Petitioner such other and further general relief in the premises as may be lawful, just and proper.

UNITED STATES OF AMERICA

By _____

Special Assistant to the Attorney General of the United States of America.

NOT A CERTIFIED COPY

STATE OF FLORIDA,     )
                   : ss.
COUNTY OF VOLUSIA.   )

    Before me, the undersigned authority, personally ap-
peared Alfred A. Green, who, being first duly sworn, de-
poses and says;

    That he is the Attorney for the Petitioner, United
States of America, in the above entitled cause, and its
agent in this behalf; that he has read the allegations
contained in the foregoing petition and that he knows
the contents thereof, and that the matters and things
alleged therein are true.

                                 Special Assistant to Attorney
                                 General of the United States.

Sworn to and subscribed before
me this 13 day of July, A.D.
1933.

Notary Public, State of Florida.
My commission expires:

Chief Deputy Clerk
U.S. District Court.

NOT CERTIFIED COPY

STATE OF FLORIDA,  )
                   : ss.
COUNTY OF VOLUSIA. )

On this day personally appeared before me, the
undersigned authority, Alfred A. Green, to me well known,
who, being by me first duly sworn, deposes and says:
That he has been duly appointed a Special Assistant to
the Attorney General of the United States for the purpose
of instituting these proceedings, and that as such Special
Assistant to the Attorney General he is authorized to make
this affidavit; that diligent search and inquiry has been
made by the affiant, as Attorney for the Petitioner, to
ascertain the names, places of residence, legal disabili-
ties, if any, and interests of the owners, mortgagees,
lienors and all others claiming any right, title or inter-
est in and to the within described property, and that those
ascertained are set forth in the foregoing petition; and
that the undersigned, as Attorney for the Petitioner, does
not know the name of any person having any interests in,
or lien upon the property described in the foregoing peti-
tion, other than the corporations and individuals therein
described.

_____
Special Assistant to the At-
torney General of the United
States.

Sworn to and subscribed before
me this 13 day of July, A.D.
1933.

_____
Notary Public, State of Florida.
My commission expires:

Chief Deputy Clerk
U.S. District Court

NOT A CERTIFIED COPY

# EXHIBIT E

117

Miami, Florida, May 3, 1935.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

NO. 793-M.   U. S. CIVIL

UNITED STATES OF AMERICA,

          Petitioner,

   vs.

Parcel 8, Sheet 11, of the
Right-of-way of the Intra-
coastal Waterway from Jack-
sonville, Florida, to Miami,
Florida, through Section 22,
Township 45 South, Range 43
East, in Palm Beach County,
Florida, according to plat
thereof of record in the cur-
rent Public Records in the
office of the Clerk of the
Circuit Court in and for said
Palm Beach County, in Plat
Book 17, page 11, of the Pub-
lic Records of said County,
and other parcels of land in
Palm Beach County, Florida,
specifically described in the
Petition filed herein;

JAMES O'CONNER, and other res-
pondents specifically named
in the Petition filed herein,

        Respondents.

PETITION IN CONDEMNATION
AS TO CERTAIN PROPERTIES
IN PALM BEACH COUNTY.
(SOUTH PALM BEACH)

FINAL   JUDGMENT
————————————

       This cause came on regularly to be heard, and
the following jury:

-1-

Rex D. Kaufman                          Cecil W. VanLandingham
Arthur C. Bennett                       A. B. Wilson
K.  B. Moody                            Donald C. Lainhart
H. P. Brown                             Clifton D. Coleman
Arthur B. Commons                       Frank McGinnis
Frank Swanson                           Edison Kipp

after being duly impanelled and sworn and after having viewed

the premises, and having heard the evidence and the instructions

of the Court, returned into Court its several verdicts as

follows:

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA.

CASE No. 793-M. U. S. Civil

UNITED STATES OF AMERICA
            Petitioner,
      vs.                               VERDICT OF VERA V. WEBER
JAMES O'CONNOR, et al.,
            Respondents

WE THE JURY FIND,

First: That a correct description of the property taken
is as follows:  Parcel No. 27, Sheet No. 12-C, each and all
according to the plat thereof of record in the public records of
Palm Beach County, Florida in Plat Book 17, pages 11 to 31
inclusive, (R/W-6119).

Second: That the compensation to be made the defendant
Vera V. Weber by the petitioner is One Hundred Dollars, plus
interest at the rate of six per cent. (6%) per annum from
July 13, 1933 to the date hereof.

So say we all.

Dated at Miami, Florida this 5th day of April, A.D. 1935.

                              F. M. Swanson
                                   Foreman.

-2-

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA
        Petitioner
    vs
JAMES O'CONNOR, et al.,
        Respondents

VERDICT OF LOUISE J. STONE

WE THE JURY FIND:

    **First:**  That a correct description of the property taken is as follows:  Parcels No. 8 & 9, Sheet No. 13-A, each and all according to the plat thereof of record in the public records of Palm Beach County, Florida in Plat Book 17, pages 11 to 31 inclusive, (R/W 6142 & 6143).

    **Second:**  That the compensation to be made the defendant Louise J. Stone by the petitioner is One hundred thirty-six Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

    So say we a 11.

    Dated at Miami, Florida this 5th day of April, A. D. 1935.

                      F. M. Swanson
                         Foreman.

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA,
        Petitioner,
    vs.
JAMES O'CONNOR, et al.,
        Respondents.

WE THE JURY FIND:

-3-

**First:**   That a correct description of the property taken is as follows:  Parcel No. 4, Sheet No. 14-A, each and all according to the plat thereof of record in the public records of Palm Beach County, Florida, in Plat Book 17, Pages 11 to 31 both inclusive, (R/W 6159).   That a correct description of the property used as a spoil area  is as follows:  "That part of Government Lot 1 and that part of the SE¼ of the NE¼ of Section 4, Township 46 South, Range 43 East, Palm Beach County, Florida, embraced in a zone 500 feet wide measured at the right-angles to and lying West of and immediately adjoining the Westerly Right-of-Way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as that right-of-way line is shown on the Plat recorded in Plat Book 17, at Page 14-A of the Public Records of said County; excluding therefrom the North 1400 feet of said Government Lot 1, (S/A 6159).

**Second:**   That the compensation to be made the defendant Bertanna Farms, Inc. and West Palm Beach Atlantic National Bank by the petitioner is Thirty-five hundred dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

So say we all.

Dated at Miami, Florida, this 5th day of April, A.D. 1935.

F. M. Swanson
Foreman

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA,
Petitioner,
vs.
JAMES O'CONNOR, et al.,
Respondents.

WE THE JURY FIND:

**First:**   That a correct description of the property taken is as follows:  Parcel 13, Sheet No. 16-A, each and all according to the plat thereof of record in the public records of Palm Beach

-4-

County, Florida, in Plat Book 17, Pages 11 to 31, both
inclusive, (R/W-6188). That a correct description of the
property used as a spoil area is as follows: That part of
the S½ of Block 140 of the City of Delray Beach, formerly
Town of Linton, in Section 16, Township 46 South, Range 43
East, Palm Beach County, Florida, according to plat recorded
in Plat Book 1 at Page 3 of the Public Records of said County,
lying East of the Easterly right-of-way line of the Intra-
coastal Waterway from Jacksonville to Miami, Florida, as that
right-of-way line is shown on the plat recorded in Plat Book
17 at Page 16-A of the Records aforementioned, (S/A-6188).

    **Second:** That the compensation to be made the
defendant Ethel   S. Williams, by the Petitioner, is Eight
Hundred Seventy-Five Dollars, plus interest at the rate of
six per cent. (6%) per annum from July 13, 1933 to the date
hereof.

    So say we all.

    Dated at Miami, Florida, this 8th day of April,
A. D. 1935.

                    F. M.   Swanson
                    Foreman

         IN THE UNITED STATES DISTRICT COURT
      IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

          CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA,
         Petitioner,
   vs.
JAMES O'CONNER, et al.,
         Respondents.

         WE THE JURY FIND:

    **First:** That a correct description of the property
taken is as follows: Parcel Nos. 7 & 8, Sheet No. 17-A, each
and all according to the plat thereof of record in the public
records of Palm Beach County, Florida in Plat Book 17, pages

11 to 31, both inclusive, (R/W-6207 and R/W-6208).

Second: That the compensation to be made the defendant T. Moeller by the petitioner is One Hundred Sixteen Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

So say we all.

Dated at Miami, Florida, this 9th day of April, A.D. 1935.

F.M. Swanson
Foreman.

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA,
             Petitioner,
  vs.
JAMES O'CONNER, et al.,
             Respondents.

WE THE JURY FIND:

First: That a correct description of the property taken is as follows: Parcel No. 18, Sheet No. 17-A, each and all according to the plat thereof of record in the public records of Palm Beach County, Florida in Plat Book 17, pages 11 to 31, both inclusive, (R/W-6249).
(R/W-6218)

Second: That the compensation to be made the defendant Bennett Jacobs by the petitioner is Eighty & no/100 Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

So say we all.

Dated at Miami, Florida, this 9th day of April, A.D. 1935.

F. M. Swanson
Foreman

-6-

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.  U. S. Civil

UNITED STATES OF AMERICA,
                    Petitioner
        vs
JAMES O'CONNER, et al.,
                    Respondents.

WE THE JURY FIND:

First:  That a correct description of the property
used as a spoil area is as follows:  All of the S½ of Govern-
ment Lot 3 in Section 9, Township 47 South, Range 43 East,
Palm Beach County, Florida, and that part of the SE¼ of SE¼
in Section 8, of said Township and Range; lying east of a line
500 feet Westwardly from and parallel to, the East boundary of
said Section 8, (S/A-6246-A).

Second:  That the compensation to be made the defen-
dant D. J. Morrison by the petitioner is Two Hundred Fifteen
Dollars, plus interest at the rate of six per cent. (6%) per
annum from July 13, 1933 to the date hereof.

So say we all.

Dated at Miami, Florida, this 9th day of April,
A. D. 1935.

                              F. M. Swanson
                                  Foreman

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.  U. S. Civil

UNITED STATES OF AMERICA,
                    Petitioner,
        vs.
JAMES O'CONNER, et al.,
                    Respondents.

WE THE JURY FIND:

-7-

**First:**  That a correct description of the property taken is as follows:  Parcel No. 8, Sheet No. 22, each and all according to the plat thereof of record in the public records of Palm Beach County, Florida, in Plat Book 17, pages 11 to 31, both inclusive, (R/W-6255).  That a correct description of the property used as a spoil area is as follows:  That part of SE¼ of NE¼ in Section 17, Township 47 South, Range 43 East, Palm Beach County, Florida, described as follows:  Beginning at the intersection of the North Boundary of said SE¼ of NE¼ and the Westerly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as shown on Plat recorded in Plat Book 17, page 22, of the Public Records of said County; thence, along said Westerly Right-of-Way line, south 21 degrees 23' West, 636 feet, more or less; thence,  South 86 degrees 23' West, 100 feet, more or less, to an intersection with the West bank or shore line of Lake Wyman; thence, in a general Southerly direction along said West bank or shore line and following the meanders thereof, 750 feet, more or less, to an intersection with the South boundary of said NE¼; thence, along the South boundary of said NE¼ South 89 degrees – 43' West, 385 feet, more or less, to an intersection with the East edge of the cultivated fields; thence, in a general Northerly direction along the East edge of said cultivated fields and following the meanders thereof, 1330 feet, more or less, to an intersection with the north boundary of said SE¼ of NE¼; thence, along the North Boundary of said SE¼ of NE¼, North 89 degrees, 33' East, 690 feet, more or less, to the point of beginning, (S/A-6255)

**Second:**  That the compensation to be made to the defendant T. W. Lipscomb by the petitioner is Seven Hundred Fifty-One Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933, to the date hereof.

So say we all.

Dated at Miami, Florida, this 9th day of April, A. D. 1935.

F. M. Swanson
Foreman

-8-

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA,
       Petitioner,

   vs.

JAMES O'CONNER, et al.,
       Respondents.

WE THE JURY FIND:

    **First:** That a correct description of the property
taken is as follows: Parcel 28, Sheet No. 17-B; (R/W-6228);
Parcel 4, Sheet No. 18, (R/W-6232); each and all according to
the plat thereof of record in the public records of Palm
Beach County, Florida, in Plat Book 17, pages 11 to 31, both
inclusive.   That a correct description of the property used
as a spoil area is as follows: (1)  All that certain area in
Section 21, Township 46 South, Range 43 East, Palm Beach
County, Florida, lying between the Easterly Government meander
line of Boca Ratone's Lagoon, according to  Government Survey
of A. D. 1870, and the Easterly right-of-way line of the
Intracoastal Waterway from Jacksonville to Miami, Florida,
as that right-of-way line is shown on the Plat recorded in
Plat Book 17 at Page 17-B of the Public Records of said County,
said area containing portions of Government Lots 2 and 3 and
the submerged and/or semi-submerged and unsurveyed lands in
said Section 21, known as Boca Ratone's Lagoon; and (2)  That
certain area in Section 28, Township 46 South, Range 43 East,
Palm Beach County,  Florida, lying between the Ocean Boulevard,
a Palm Beach County Highway, as that highway is now constructed,
and the Easterly right-of-way line of aforementioned Intra-
coastal Waterway, as that right-of-way line is shown on the
Plat recorded in Plat Book 17  at Page 18 of the aforementioned
records, said area containing portions of Government Lots 1,
2 and 3 and a portion of the submerged and/or semi-submerged
and unsurveyed lands in said Section 28, known as Boca Ratone's
Lagoon, (S/A-6228); and Those portions of Government Lots 1
and 4, in Section 21, Township 46 South, Range 43 East, Palm
Beach County, Florida, lying West of the Ocean Boulevard, a
Palm Beach County highway,  as that highway is now constructed,
(S/A-6228-A).

-9-

Second:   That the compensation to be made the defendant Seaboard Realty Company and S. Fahs Smith by the Petitioner, is One Dollar, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

So say we all.

Dated at Miami, Florida, this 11th day of April, A. D. 1935.

F. M. Swanson
Foreman

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S.   Civil

UNITED STATES OF AMERICA,
                Petitioner
        vs.
JAMES O'CONNER, et al.,
                Respondents.

WE THE JURY FIND:

First:   That a correct description of the property taken is as follows:   Parcel 11, Sheet No. 23-A (R/W-6266), and Parcel 14,   Sheet No. 23-B (R/W-6269), each and all according to the plat thereof of record in the public records of Palm Beach County, Florida, in Plat Book 17, pages 11 to 31, both inclusive.

Second:   That the compensation to be made the defendant H. Kobayaski Company, Inc., by the Petitioner, is Two Hundred Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933, to the date hereof.

So say we all.

Dated at Miami, Florida, this 12th day of April, A. D. 1935.

F. M. Swanson
Foreman

-10-

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M. U. S. Civil

UNITED STATES OF AMERICA,
          Petitioner,

   vs.
JAMES O'CONNER, et al.,
          Respondents.

WE THE JURY FIND:

      **First:** That a correct description of the property taken is as follows: Parcel 15, Sheet No. 23-B, (R/W-6270), each and all according to the plat thereof of record in the public records of Palm Beach County, Florida, in Plat Book 17, pages 11 to 31, both inclusive, That a correct description of the property used as a spoil area is as follows: That part of the South 1009 feet of the North 1405 feet of Government Lot 3, in Section 30, Township 47 South, Range 43 East, Palm Beach County, Florida; lying East of the Easterly right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, said Easterly Right-of-way line being shown on Plat recorded in Plat Book 17, Page 23-B, of the Public Records of said County, (S/A-6270).

      **Second:** That the compensation to be made the defendant Osborn Company, by the Petitioner, is Fifteen Hundred Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

      So  say we all.

      Dated at Miami, Florida, this 12th day of April, A. D. 1935.

                          F. M. Swanson
                          Foreman

-11-

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.   U. S. Civil

UNITED STATES OF AMERICA
                Petitioner
    vs.
JAMES O'CONNER, et al.,
              Respondents.

WE THE JURY FIND:

**First:**  That a correct description of the property taken is as follows:  Parcel 23, Sheet No. 23-B, (R/W-6278), and Parcel 24, Sheet No. 23-B, (R/W-6279), each and all according to the plat thereof of record in the public records of Palm Beach County, Florida, in Plat Book 17, pages 11 to 31, both inclusive.  That a correct description of the property used as a spoil area is as follows:  That part of the North 410 feet of the S½ of Government Lot 3, in Section 20, Township 47 South, Range 43 East, Palm Beach County, Florida, lying East of the Easterly Right-of-Way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, said Right-of-way line being shown on plat recorded in Plat Book 17, Page 23-B, of the public records of said County, (S/A-6278); and That part of a tract in Government Lot 3 in Section 20, Township 47 South, Range 43 East, Palm Beach County, Florida; described on Sheet 23-B, Plat Book 17, of the Public Records of said County, as "That part of the S½ of Government Lot 3 not included in adjoining descriptions"; lying East of the Easterly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, said easterly Right-of-way line being shown on said Plat. (S/A-6279)

**Second:**  That the compensation to be made the defendant Amelia Investment Company, by the Petitioner, is Twelve Hundred Fifty Dollars, plus interest at the rate of six per cent. (6%) per annum from July 13, 1933 to the date hereof.

So say we all.

Dated at Miami,  Florida, this 12th day of April, A. D. 1935.

                           F. M. Swanson
                           Foreman

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE No. 793-M.  U. S. Civil

UNITED STATES OF AMERICA,
    Petitioner,
 vs.
JAMES O'CONNER, et al.,
    Respondents.

WE THE JURY FIND:

  First: That a correct description of the property taken
is as follows:  Parcel 3, Sheet No. 30, (R/W-6284), and
Parcel 8, Sheet No. 30, (R/W-6289), and Parcel 6, Sheet No. 24-A,
(R/W-6296), each and all according to the plat thereof of record
in the public records of Palm Beach County, Florida, in Plat
Book 17, Pages 11 to 31, both inclusive.  That a correct descrip-
tion of the property used as a spoil area is as follows:  That
part of the North 675 feet of the South 900 feet of Government
Lot 3 in Section 20, Township 47 South, Range 43 East, Palm Beach
County, Florida; lying East of the Easterly Right-of-way Line of
the Intracoastal Waterway from Jacksonville to Miami, Florida, said
Easterly Right-of-way Line being shown on Plat recorded in Plat
Book 17, Page 30 of the Public Records of said County (S/A-6284).

  Second: That the compensation to be made the defendant
First National Bank of Chicago, as Trustee under the Will of John
E. Nelson, Deceased, by the Petitioner, is Twenty-five Hundred
Dollars, plus interest at the rate of six per cent. (6%) per
annum, from July 13, 1933 to the date hereof.

  So say we all.

  Dated at Miami, Florida, this 12th day of April, A. D. 1935.

       F. M. Swanson
       Foreman

-13-

I.

An accurate description of the property taken here-
in is as follows:

(Areas to be used for spoil disposal, and
the deposit of dredged material thereon,
and for rights-of-way in connection with
the construction of the Intracoastal Water-
way from Jacksonville, to Miami, Florida).

| Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|---|---|---|---|---|---|
| (3) - 6088 | 11 | 11 | 22 | 45 S. | 43 E. |
| (4) - S-6094 | 3 | 12-A | 27 | " | " |
| (5) - B-6095 | 3-A | " | " | " | " |
| (6) - S-6096 | 4 | " | " | " | " |
| (7) - S-6098 | 6 | " | " | " | " |
| (9) - S-6100 | 8 | " | " | " | " |
| (10)- 6101 | 9 | " | " | " | " |
| (12)- 6103 | 11 | " | " | " | " |
| (13)- S-6104 | 12 | " | " | " | " |
| (14)- 6105 | 13 | " | " | " | " |
| (15)- S-6106 | 14 | " | " | " | " |
| (17)- S-6108 | 16 | " | " | " | " |
| (18)- S-6109 | 17 | 12-B | " | " | " |
| (19)- 6110 | 18 | " | " | " | " |
| (20)- S -6111 | 19 | " | " | " | " |
| (21)- 6112 | 20 | " | " | " | " |

-14-

| Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|----------|-----------|-----------|------|------|------|
| (22) - S-6113 | 21 | 12-B | 27 | 45 S. | 43 E. |
| (23) - 6117 | 25 | 12-B | " | " | " |
| (24) - S-6118 | 26 | 12-B | " | " | " |
| (26) - 6120 | 28 | 12-C | " | " | " |
| (27) - 6121 | 29 | 12-C | " | " | " |
| (28) - 6122 | 30 | 12-C | " | " | " |
| (29) - S-6123 | 31 | 12-C | " | " | " |
| (30) - 6125 | 33 | 12-C | " | " | " |
| (31) - S-6126 | 34 | 12-C | " | " | " |
| (32) - 6127 | 35 | 12-C | " | " | " |
| (33) - S-6129 | 37 | 12-C | " | " | " |
| (34) - S-6130 | 38 | 12-C | " | " | " |
| (35) - 6132 | 40 | 12-C | " | " | " |
| (36) - 6134 | 42 | 12-C | " | " | " |
| (38) - 6136 | 2 | 13-A | 34 | " | " |
| (39) - 6137 | 3 | 13-A | " | " | " |
| (40) - 6138 | 4 | 13-A | " | " | " |
| (41) - 6140 | 6 | 13-A | " | " | " |
| (42) - 6141 | 7 | 13-A | 34 | " | " |
| (45) - 6145 | 11 | 31 | 33 & 34 | " | " |
| (49) - 6149 | 15 | 13-A | " | " | " |
| (53) - 6155 | 25 | 31 | 34 | " | " |
| (59) - 6161 | 6 | 14-B | 4 | 46 | " |
| (61) - 6163 | 2 | 15 | 9 | " | " |

| Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|----------|-----------|-----------|------|------|------|
| (64) - 6167 | 6 | 15 | 9 | 46 S. | 43 E. |
| (67) - S-6172 | 11 | 15 | " | " | " |
| (72) - S-6177 | 2 | 16-A | 16 | " | " |
| (73) - S-6178 | 3 | 16-A | " | " | " |
| (75) - 6182 | 7 | 16-A | " | " | " |
| (76) - S-6183 | 8 | 16-A | " | " | " |
| (81) - 6190 | 15 | 16-B | " | " | " |
| (89) - 6198 | 23 | 16-B | 16 | 46 S. | 43 E. |
| (91) - S-6200 | 25 | 16-B | " | " | " |
| (92) - S-6201 | 1 | 17-A | 21 | " | " |
| (93) - S-6204 | 4 | 17-A | 21 | " | " |
| (94) - 6205 | 5 | 17-A | " | " | " |
| (98) - 6211 | 11 | 17-A | " | " | " |
| (99) - 6212 | 12 | 17-A | " | " | " |
| (100)- 6214 | 14 | 17-A | " | " | " |
| (101)- 6216 | 16 | 17-A | " | " | " |
| (102)- S-6217 | 17 | 17-A | " | " | " |
| (105)- S-6220 | 20 | 17-B | " | " | " |
| (106)- 6225 | 25 | 17-B | " | " | " |
| (107)- 6226 | 26 | 17-B | " | " | " |
| (110)- 6231 | 3 | 18 | 28 | " | " |
| (114)- 6235 | 7 | 18 | " | " | " |
| (112)- 6233 | 5 | 18 | " | " | " |
| (113)- 6234 | 6 | 18 | " | " | " |

-16-

| Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|---|---|---|---|---|---|
| (115)- 6236 | 1 | 19 | 33 | 46 S. | 43 E. |
| (116)- 6239 | 4 | 19 | " | " | " |
| (117)- 6240 | 5 | 19 | " | " | " |
| (118)- 6243 | 1 | 20 | 4 | 47 S. | 43 E. |
| (119)- 6244 | 2 | 20 | " | " | " |
| (120)- 6246 | 2 | 21 | 9 | " | " |
| (121)- R-6247 | 3 | 21 | " | " | " |
| (122)- R-6248 | 1 | 22 | 16 | " | " |
| (123)- 6249 | 2 | 22 | " | " | " |
| (124)- 6250 | 3 | 22 | " | " | " |
| (125)- 6251 | 4 | 22 | 17 | " | " |
| (126)- 6253 | 6 | 22 | " | " | " |
| (128)- 6256 | 1 | 23-A | 21 | " | " |
| (129)- 6257 | 2 | 23-A | " | " | " |
| (130)- 6258 | 3 | 23-A | " | " | " |
| (131)- 6259 | 4 | 23-A | " | " | " |
| (132)- 6260 | 5 | 23-A | " | " | " |
| (135)- 6264 | 9 | 23-A | 20 & 21 | " | " |
| (140)- 6272 | 17 | 23-B | 20 | " | " |
| (142)- 6277 | 22 | 23-B | " | " | " |
| (145)- 6280 | 25 | 23-B | " | " | " |
| (146)- 6281 | 26 | 23-B | " | " | " |
| (153)- 6294 | 11 | 30 | 29 | " | " |
| (154)- 6295 | 12 | 30 | " | " | " |

-17-

each and all according to plat thereof of record in the Public
Records of Palm Beach County, Florida, In Plat Book 17, pages
11 to 31, both inclusive.

### S/A Item 6087.

156 - That part of the S½ of the N½ of the S½ of the SE¼
of the SW¼ of Section 22, Township 45 South, Range
43 East, Palm Beach County, Florida, lying East of
the Easterly right-of-way line of the Intracoastal
Waterway from Jacksonville to Miami, Florida, as
that right-of-way line is shown on the plat re-
corded in Plat Book 17, at page 11.

### S/A Item 6088.

157 - That part of the South 2.53 chains of Government
Lot 5, Section 22, Township 45 South, Range 43
East, Palm Beach County, Florida, lying West of
Spanish Creek; and that part of the S½ of the S½
of the SE¼ of the SW¼ of said Section 22, lying
East of the Easterly right-of-way line of the
Intracoastal Waterway from Jacksonville to Miami,
Florida, as that right-of-way line is shown on the
plat recorded in Plat Book 17, at page 11, of the
Public Records of said Palm Beach County.

### S/A Item 6110.

160 - (1) - All of Lots 23, 24, 27, 28, 32, 33, 34, 35,
those portions of Lots 25, 26, "B" and "C", of
Boynton's Subdivision in Section 27, Township 45
South, Range 43 East, Palm Beach County, Florida,
according to Amended Plat thereof, recorded in
Plat Book 12, at page 45 of the Public Records of
said Palm Beach County, lying East of the Easterly
Right-of-way line of the Intracoastal Waterway
from Jacksonville to Miami, Florida, as that right-
of-way line is shown on the plat recorded in Plat
Book 17, at page 12-B of the records aforementioned,
and those portions of Edith Street, Anna Street,
Corbine Street and George Street, adjoining the areas
hereinabove described, and

(2) - That part of Lot 54 of Boynton's Subdivision in said Section 27, according to plat thereof, recorded in Plat Book 1, at page 29 of the records aforementioned, lying East of and adjoining Parcel No. 35 of the right-of-way of said Intracoastal Waterway as that right-of-way is shown on the plat recorded in Plat Book 17, at page 12-C of said Palm Beach County Records, the prolongation of the North and South lines of said Parcel No. 35 forming the North and South lines respectively of said part of Lot 54 hereinabove described; and that part of Porter Street adjoining the area hereinabove described.

### S/A Item 6122.

161 - (1) - Lots 40, 41, 42 and 43 and those portions of Lots "D" and "E" of Boynton's Subdivision in Section 27, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Amended Plat thereof, recorded in Plat Book 12, at page 45, of the Public Records of said Palm Beach County, lying East of the Easterly right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as that right-of-way line is shown on the plat recorded in Plat Book 17, at page 12-C of the records aforementioned, and

(2) - Those portions of Corbine Street, Thompson Street and George Street adjoining the areas hereinabove described.

### S/A Item 6125.

164 - (1) - All of Lots 50 and 51 and that part of Lot "G" of Boynton's Subdivision in Section 27, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Amended Plat thereof, recorded in Plat Book 12, at page 45 of the Public Records of said Palm Beach County, lying East of the Easterly right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as that right-of-way line is shown on the Plat recorded in Plat Book 17, at Page 12-C of the records aforementioned; and

-19-

(2) - Those portions of Porter Street and George Street adjoining the areas hereinabove described.

### S/A Item 6147-A.

167 -  (1)  Lots 1 to 9, both inclusive, and the North 59 feet of Lot 10, all in Block Z of Palm Beach Shore Acres in Section 34, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Plat recorded in Plat Book 7, at page 15 of the Public Records of said County; and

(2) - That part of that certain 10 foot roadway lying immediately west of and adjoining the areas hereinabove described.

### S/A Item 6147-C.

168 -  That part of the South 508 feet of the North 924 feet of Government Lot 2 in Section 34, Township 45 South, Range 43 East, Palm Beach County, Florida, lying West of the Ocean Boulevard, a Palm Beach County highway, as that boulevard is now constructed, and lying East of a line that is parallel to the West line of said Government Lot 2 and 165 feet Eastwardly therefrom as measured at right-angles to said West line of Government Lot 2.

### P/F 6148.

169 -  The South 25 feet of Lot 11 of "Plat of Lands Owned by Benson Bros." in Section 34, Township 45 South, Range 43 East, Palm Beach County, Florida, according to Plat recorded in Plat Book 5, at page 27 of the Public Records of said County, lying East of the Easterly right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as that right-of-way line is shown on the Plat recorded in Plat Book 17, at page 13-A of the records aforementioned.

P/F 6149.

170 — Marine Way, Briny Breezes Boulevard, Ruthmary
Avenue, Cordova Avenue, Seneca Avenue, Seminole
Avenue, Cherokee Avenue, Lots 244, 245, 255 &
256 and that part of Banyan Boulevard and Ser-
vice Lane embraced in a zone formed by prolong-
ing said Seneca Avenue and Seminole Avenue
Eastward for their full width to an intersec-
tion with the East line of said Service Lane,
all in Briny Breezes, a subdivision in Section
34, Township 45 South, Range 43 East, Palm
Beach County, Florida, according to Plat there-
of recorded in Plat Book 3 at page 46 of the
Public Records of said County.

S/A Item 6155-A.

174 — The South 41 feet of Lot 10 and all of Lots
11 to 26, both inclusive, in Block Z of Palm
Beach Shore Acres in Section 34, Township 45
South, Range 43 East, Palm Beach County,
Florida, according to Plat recorded in Plat
Book 7 at Page 15 of the Public Records of
said County, and that part of that certain
10 foot road lying immediately West of and
adjoining the areas hereinabove described.

S/A Item 6155-B.

175 — That part of the South 1666.4 feet of Govern-
ment Lot 2 in Section 34, Township 45 South,
Range 43 East, Palm Beach County, Florida,
lying West of the Ocean Boulevard, a Palm
Beach County highway, as that highway is now
constructed; excluding therefrom the West 165
feet of said Government Lot 2, said 165 feet
measured at right-angles to the West line of
said Government Lot 2.

S/A Item 6174.

178 — Lots 22, 23, 24, 25, 30, 31, 32, 33 and those
portions of Lots 10, 11, 12 and 13 of Model
Land Company's Subdivision of Section 9, Town-
ship 46 South, Range 43 East, Palm Beach County,
Florida, according to Plat recorded in Plat Book
8 at page 40 of the Public Records of said County,
lying East of the Easterly right-of-way line of

-21-

the Intracoastal Waterway from Jacksonville to
Miami, Florida, as that right-of-way line is shown
on the Plat recorded in Plat Book 17 at Page 15 of
the records aforementioned.

S/A Item 6185.

181 -(1) - The S½ of Blocks 147, 155 and 163, and that
part of the S½ of Block 139, and that part of the
N½ of Block 140,  City of Delray Beach, formerly
Town of Linton, in Section 16, Township 46 South,
Range 43 East, Palm Beach County, Florida, accord-
ing to Plat recorded i n Plat Book 1 at page 3 of
the Public Records of said County, lying East of
the Easterly right-of-way line of the Intracoas-
tal Waterway from Jacksonville to Miami, Florida,
as that right-of-way line is shown on the Plat
recorded in Plat Book 17 at page 16-A, of the
Records aforementioned; and

(2) - That part of Lowry Street adjoining the
areas hereinabove described.

S/A Item 6241-B.

186 - That part of Government Lot 4, Section 33, Town-
ship 46 South, Range 43 East, Palm Beach County,
Florida, lying West of the Ocean Boulevard, a
Palm Beach County highway, as that highway is
now constructed, and lying South of a line that
is 3,920 feet South of the North line of said
Section 33, and lying North of a line that is 870
feet North of the South line of said Section 33.

S/A Item 6295-X-A.

187 - That part of the south 65 feet of South half of
north half and of the north ten feet of N½ of
S½ of Government Lot 1 in Section 28, T. 47 S.,
R. 43 E., Palm Beach County, Florida; included
between the easterly shore line of Lake Boca Ratone
and the Ocean Boulevard County Road as the same
is located and constructed this March 1, 1933.

### S/A Item 6295-X-B.

188 – That part of the south seventy feet of the north
80 feet of N½ of N½ of S½ of Government Lot 1 in
Section 28, T. 47 S., R. 43 E., Palm Beach County,
Florida; included the easterly shore
line of Lake Boca Ratone and the Ocean Boulevard
County Road as the same is located and constructed
this March 1, 1935.

### S/A Item 6295-X-C.

189 – That part of the North 100 feet of the South 200
feet of the North 280 feet of S½ of Government Lot
1 in Section 28, T. 47 S., R. 43 East, Palm Beach
County, Florida; included between the Easterly
Shore line of Lake Boca Ratone and the Ocean Boulevard
County Road as the same is located and constructed
this March 1, 1933.

### S/A Item 6243.

198 – That part of the North 40 acres of Government
Lots 2 and 3 in Section 4, Township 47 South,
Range 43 East, Palm Beach County, Florida; ly-
ing East of the Easterly Right-of-way Line
of the Intracoastal Waterway from Jacksonville
to Miami, Florida, as shown on Plat recorded in
Plat Book 17, Page 20, of the Public Records of
said County.

### S/A Item 6243-A.

199 – That part of the North 450 feet of Government
Lot 1 in Section 4, Township 47 South, Range
43 East, Palm Beach County, Florida; described
as follows:

Beginning at the Northwest corner of said Govern-
ment Lot 1; thence, along the North Boundary of
said Section, North 89 degrees – 54' East, 750
feet, more or less, to an intersection with the
West edge of the high ground or edge of beach
ridge; thence, in a general Southerly direction
along the West edge of said beach ridge and
following the meanders thereof, 460 feet, more
or less, to an intersection with the South
Boundary of said North 450 feet of Government
Lot 1; thence, along said South Boundary, South

89 degrees - 54' West, 755 feet, more or less,
to an intersection with the West Boundary of
said Government Lot 1; thence, along the West
Boundary of said Government Lot 1, North 28 de-
grees - 37' West, 102 feet, more or less; thence,
continuing along the West Boundary of said Govern-
ment Lot 1, North 7 degrees - 34' East, 364 feet,
more or less, to the point of beginning.

### S/A Item 6245.

301 — That part of Government Lot 2 in Section 9,
Township 47 South, Range 43 East, Palm Beach
County, Florida; lying East of the Easterly
Right-of-way line of the Intracoastal Water-
way from Jacksonville to Miami, Florida, as
shown on Plat recorded in Plat Book 17, Page
21, of the Public Records of said County.

### S/A Item 6246.

202 — Those parts of Government Lots 1 and 4 in
Section 9, Township 47 South, Range 43 East,
Palm Beach County, Florida, included between
the West edge of the high ground or beach
ridge and the Easterly Right-of-way line of
the Intracoastal Waterway from Jacksonville
to Miami, Florida, said Easterly Right-of-way
line being shown on Plat recorded in Plat
Book 17, Page 21, of the Public Records of
said County.

### S/A Item 6250.

204 — That part of Government Lot 2 in Section 16,
Township 47 South, Range 43 East, Palm Beach
County, Florida; lying West of the Westerly
Right-of-way line of the Intracoastal Waterway
from Jacksonville to Miami, Florida, as shown
on Plat recorded in Plat Book 17, Page 22, of
the Public Records of said County.

### S/A Item 6251.

205 — That part of the N½ of NE¼ of NE¼ in Section
17, Township 47 South, Range 43 East, Palm
Beach County, Florida; described as follows:

Beginning at the Northeast corner of said Section 17; thence, along the East Boundary of said Section, South 1 degree - 37' East, 475 feet, more or less, to an intersection with the Westerly Right-of-way line of the Intracoastal Waterway from Jacksonville to Miami, Florida, as shown on Plat recorded in Plat Book 17, page 22, of the Public Records of said County; thence, along said Westerly Right-of-way line, South 21 degrees - 23' West 206 feet, more or less, to an intersection with the South Boundary of said N½ of NE¼ of NE¼; thence along said South Boundary, South 89 degrees - 28' West, 915 feet, more or less, to an intersection with the East edge of the cultivated fields; thence, in a general Northerly direction along East edge of said cultivated fields and following the meanders thereof, 675 feet, more or less, to an intersection with the North Boundary of said Section 17; thence along North Boundary of said Section, North 89 degrees - 24' East, 975 feet, more or less, to the point of beginning.

## II.

The amount of compensation to be allowed for the taking of the respective easements over the respective parcels or areas above described, and the owner or owners to whom such compensation as to each parcel or area shall be paid, insofar as such ownership was proven, is as follows:

R/W 6088, being Parcel 11, Sheet 11, described above, and S/A 6088 described above:

$37.50. No ownership proven.

R/W S-6094, being Parcel 3, Sheet 12-A, described above:

$1.00. No ownership proven.

R/W S-6095, being Parcel 3-A, Sheet 12-A, described above:

$1.00. No ownership proven.

R/W S-6096, being Parcel 4, Sheet 12-A, described above:

$1.00. No ownership proven.

R/W S-6098, being Parcel 6, Sheet 12-A, described above:

$1.00. No ownership proven.

R/W S-6100, being Parcel 8, Sheet 12-A, described above:

$1.00. No ownership proven.

R/W 6101, being Parcel 9, Sheet 12-A, described above:

$250.00 to Rosa P. Hayes.

R/W 6103, being Parcel 11, Sheet 12-A, described above:

$1.00. No ownership proven.

R/W S-6104, being Parcel 12, Sheet 12-A, described above:

  $1.00.  No ownership proven.

R/W 6105, being Parcel 13, Sheet 12-A, described above:

  $50.00 to John F. Lougee.

R/W S-6106, being Parcel 14, Sheet 12-A, described above:

  $1.00.  No ownership proven.

R/W S-6108, being Parcel 16, Sheet 12-A, described above:

  $1.00.  No ownership proven.

R/W S-6109, being Parcel 17, Sheet 12-B, described above:

  $1.00.  No ownership proven.

R/W 6110, being Parcel 18, Sheet 12-B, described above:

  R/W 6112, being Parcel 20, Sheet 12-B,

  described above, and S/A 6110 (1) described above:

  $1.00 to N. S. Boynton Estate Corporation.

R/W S-6111, being Parcel 19, Sheet 12-B, described above:

  $13.00.  No ownership proven.

R/W S-6113, being Parcel 21, Sheet 12-B, described above:

  $2.00.  No ownership proven.

R/W 6117, being Parcel 25, Sheet 12-B, described above:

  $90.00 to N. S. Boynton Estate Corporation.

R/W S-6118, being Parcel 26, Sheet 12-B, described above:

  $2.50.  No ownership proven.

R/W 6120, being Parcel 28, Sheet 12-C, described above:

  $330.00 to J. Leonard Replogle.

R/W 6121, being Parcel 29, Sheet 12-C, described above:

    $1.00.  No ownership proven.

R/W 6122, being Parcel 30, Sheet 12-C, described above;

    and S/A 6122, described above:

    $1.00.  No ownership proven.

R/W S-6123, being Parcel 31, Sheet 12-C, described above:

    $1.00.  No ownership proven.

R/W 6125, being Parcel 33, Sheet 12-C, described above,

    and S/A 6125, described above:

    $1.00.  No ownership proven.

R/W S-6126, being Parcel 34, Sheet 12-C, described above:

    $1.00.  No ownership proven.

R/W 6127, being Parcel 35, Sheet 12-C, described above,

    and S/A 6110 (2), described above:

    $1.00 to N. S. Boynton Estate Corporation.

R/W S-6129, being Parcel 37, Sheet 12-C, described above:

    $1.00.  No ownership proven.

R/W S-6130, being Parcel 38, Sheet 12-C, described above:

    $1.00.  No ownership proven.

R/W 6132, being Parcel 40, Sheet 12-C, described above:

    $1.00.  No ownership proven.

R/W 6134, being Parcel 42, Sheet 12-C, described above:

    $250.00 to Higgins-Beall Corporation.

R/W 6136, being Parcel 2, Sheet 13-A, described above:
$225.00 to Mutual Holdings Company.

R/W 6137, being Parcel 3, Sheet 13-A, described above:
$140.00.  No ownership proven.

R/W 6138, being Parcel 4, Sheet 13-A, described above:
$450.00 to Hanna F. Rasmussen.

R/W 6140, being Parcel 6, Sheet 13-A, described above:
$600.00 to Henry Seibrecht.

R/W 6141, being Parcel 7, Sheet 13-A, described above:
$200.00 to Atlantic Mortgage Company.

R/W 6145, being Parcel 11, Sheet 31, described above:
$225.00 to Harry A. Siebrecht.

R/W 6149, being Parcel 15, Sheet 13-A, described above:
$75.00.  No ownership proven.

R/W 6155, being Parcel 25, Sheet 31, described above:
$1.00.  No ownership proven.

R/W 6161, being Parcel 6, Sheet 14-B, described above:
$1.00.  No ownership proven.

R/W 6163, being Parcel 2, Sheet 15, described above:
$1.00.  No ownership proven.

R/W 6167, being Parcel 6, Sheet 15, described above:
$10.00.  No ownership proven.

R/W S-6172, being Parcel 11, Sheet 15, described above:
$1.00.  No ownership proven.

R/W S-6177, being Parcel 2, Sheet 16-A, described above:

      $1.00.  No ownership proven.

R/W S-6178, being Parcel 3, Sheet 16-A, described above:

      $1.00.  No ownership proven.

R/W 6182, being Parcel 7, Sheet 16-A, described above:

      $1.00.  No ownership proven.

R/W S-6183, being Parcel 8, Sheet 16-A, described above:

      $1.00.  No ownership proven.

R/W 6190, being Parcel 15, Sheet 16-B, described above:

      $1.00.  No ownership proven.

R/W 6198, being Parcel 23, Sheet 16-B, described above:

      $25.00.  No ownership proven.

R/W S-6200, being Parcel 25, Sheet 16-B, described above:

      $1.00.  No ownership proven.

R/W S-6201, being Parcel 1, Sheet 17-A, described above:

      $20.00 to Frank Hand and Lottie C. Hand.

R/W S-6204, being Parcel 4, Sheet 17-A, described above:

      $1.00 to Lillian M. McDermott and Arthur McDermott.

R/W 6305, being Parcel 5, Sheet 17-A, described above:

      $20.00 to Lillian M. McDermott and Arthur McDermott.

R/W 6211, being Parcel 11, Sheet 17-A, described above:

      $10.00.  No ownership proven.

R/W 6212, being Parcel 12, Sheet 17-A, described above:

      $10.00 to James B. Maher and Nellie Maher.

R/W 6214, being Parcel 14, Sheet 17-A, described above:

      $10.00 to Edith Englehart.

R/W R-6216, being Parcel 16, Sheet 17-A, described above:
$10.00. No ownership proven.

R/W S-6217, being Parcel 17, Sheet 17-A, described above:
$1.00. No ownership proven.

R/W S-6220, being Parcel 20, Sheet 17-B, described above:
$15.00. No ownership proven.

R/W 6225, being Parcel 25, Sheet 17-B, described above:
$15.00. No ownership proven.

R/W 6226, being Parcel 26, Sheet 17-B, described above:
$25.00. No ownership proven.

R/W 6231, being Parcel 3, Sheet 18, described above :
$100.00. No ownership proven.

R/W 6233, being Parcel 5, Sheet 18, described above:
$106.00. No ownership proven.

R/W 6234, being Parcel 6, Sheet 18, described above:
$57.00. No ownership proven.

R/W 6235, being Parcel 7, Sheet 18, described above:
$1.00. No ownership proven.

R/W 6236, being Parcel 1, Sheet 19, described above:
$300.00 to Ward B. Miller and Agnes P. Miller.

R/W 6239, being Parcel 4, Sheet 19, described above:
$25.00 to Phyllis M. Brudner

R/W 6240, being Parcel 5, Sheet 19, described above:
$25.00. No ownership proven.

R/W 6243, being Parcel 1, Sheet 20, described above;

        and S/A 6243, described above:

        $75.00.  No ownership proven.

R/W 6244, being Parcel 2, Sheet 20, described above:

        $1.00.  No ownership proven.

R/W 6246, being Parcel 2, Sheet 21, described above;

        and S/A 6246, Described above:

        $1.00 to W. W. Burgiss and Etta R. Burgiss.

R/W R-6247, being Parcel 3, Sheet 21, described above:

        $1.00.  No ownership proven.

R/W R-6248, being Parcel 1, Sheet 22, described above:

        $1.00.  No ownership proven.

R/W 6249, being Parcel 2, Sheet 22, described above:

        $69.00.  No ownership proven.

R/W 6250, being Parcel 3, Sheet 22, described above;

        and S/A 6250, described above:

        $45.00 to Peter Brodt.

R/W 6251, being Parcel 4, Sheet 22, described above,

        and S/A 6251, described above:

        $1.00.  No ownership proven.

R/W 6253, being Parcel 6, Sheet 22, described above:

        $1.00.  No ownership proven.

R/W 6256, being Parcel 1, Sheet 23-A, described above:

        $1.00.  No ownership proven.

R/W 6257, being Parcel 2, Sheet 23-A, described above:

        $1.00.  No ownership proven.

R/W 6258, being Parcel 3, Sheet 23-A, described above:

  $1.00.  No ownership proven.

R/W 6259, being Parcel 4, Sheet 23-A, described above:

  $5.00.  No ownership proven.

R/W 6260, being Parcel 5, Sheet 23-A, described above:

  $12.00.  No ownership proven.

R/W 6264, being Parcel 9, Sheet 23-A, described above:

  $1.00.  No ownership proven.

R/W 6272, being Parcel 17, Sheet 23-B, described above:

  $10.00 to P. D. Kinney and Virginia Kinney.

R/W 6277, being Parcel 22, Sheet 23-B, described above:

  $10.00 to P. D. Kinney and Virginia Kinney.

R/W 6280, being Parcel 25, Sheet 23-B, described above:

  $1.00.  No ownership proven.

R/W 6281, being Parcel 26, Sheet 23-B, described above:

  $1.00 to Theo D. Luff and Hariette B. Luff.

R/W 6295, being Parcel 12, Sheet 30, described above:

  $300.00 to Harry M. Chesebro and Ethyl B. Chesebro.

S/A 6087, described above:

  $1.00 to Ralph L. Wade and Cora Wade Whitehead.

S/A 6147-A, described above:

  $1.00 to Seaboard Realty Company.

S/A 6147-C, described above:

  $1.00 to Bassett W. Mitchell.

P/F 6148, described above:

      $1.00.  No ownership proven.

P/F 6149, described above:

      $1.00.  No ownership proven.

S/A 6155-A, described above:

      $1.00.  No ownership proven.

S/A 6155-B, described above:

      $1.00.  No ownership proven.

S/A 6174, described above:

      $1.00 to Everglades Realty and Investment Company.

S/A 6185, described above:

      $1.00.  No ownership proven.

S/A 6241-B, described above:

      $1.00.  No ownership proven.

S/A 6243-A, described above:

      $1.00 to Allen B. Walsh.

S/A 6245, described above:

      $1.00.  No ownership proven.

S/A 6295-X-A, described above:

      $1.00 to Mary S. Brown.

S/A 6295-X-B, described above:

      $1.00 to Mary S. Brown and John McL. Stevens,

      and Cornelia B. Stevens.

S/A 6295-X-C, described above:

$1.00 to Jack T. Kinsman and Alpha Kinsman.

R/W 6294, being Parcel 11, Sheet 30, described above:

$1.00 to W. J. Southam.

So say we all,

F. M. Swanson
Foreman

And Petitioner herein having appeared by its
attorneys, Alfred A. Green, as Special Assistant to the
Attorney General of the United States, and by B. F.
Paty and C. N. McCune; and Respondents, Seaboard Realty
Company, S. Fahs Smith and Zook Palm Nurseries, Inc.,
having appeared by their attorney Marshall B. Wood; and
Respondents, Bertanna Farms, Inc., Vera Weber and Louise
Stone, having appeared by their attorney Edwin T. Osteen;
and Respondents, Hideo Kobayaski Company, Inc., and Hideo
Kobayaski, having appeared by their attorney Sydney J.
Catts, Jr.; and Respondent, Higgins-Beale Corporation,
having appeared by its attorney P. C. Williams; and
Respondent, Amelia Investment Company, having appeared by
its attorney J. Stockton Bryan; and Respondents, Osborn
Company and W. J. Southam, having appeared by their
attorneys Rasco & Moore; and Respondents, Morris Levine,
Lewis Laturmey, Theo. Moeller, T. W. Lipscomb, D. J.
Morrison, Michael Nagle, Ethel S. Williams and Bennett
Jacobs, having appeared by their attorney J. H. Adams; and
Respondent, First National Bank of Chicago as Trustee under
the Will of John E. Nelson, having appeared by its attorney
Lilburn R. Railey; and Respondent, Peter Brodt, having
appeared in person;  and no other Respondents being present,
either by attorneys or in person, Attorneys for Petitioner

-36-

moved for a default judgment against all such other Respondents, and it appearing to the Court from the records and files of this cause that all such Respondents had been duly and regularly served with process, either in person or by publication, and were in default, and the Court having considered the pleadings and the verdict of the jury and being fully advised in the premises, this cause having been continued as to the following items, or parcels, to-wit:

| Item No. | Parcel No. | Sheet No. | Sec. | Twp. | Rge. |
|----------|-----------|-----------|------|------|------|
| S-6191 | 16 | 16-B | 16 | 46 S. | 43 E. |
| 6192 | 17 | 16-B | " | " | " |
| S-6193 | 18 | 16-B | " | " | " |
| 6194 | 19 | 16-B | " | " | " |
| S-6195 | 20 | 16-B | " | " | " |
| 6196 | 21 | 16-B | " | " | " |
| S-6197 | 22 | 16-B | " | " | " |
| 6199 | 24 | 16-B | " | " | " |
| S-6219 | 19 | 17-A | 21 | " | " |

each and all according to plat thereof of record in the Public Records of Palm Beach County, Florida, in Plat Book 17, pages 11 to 31, both inclusive.

IT IS THEREUPON ORDERED AND ADJUDGED as follows:

-37-

I.

That a judgment by default is hereby entered against each and all Respondents in this cause other than those named above as having appeared personally, or by attorneys, and those Respondents interested in the aforesaid parcels as to which this cause is continued, that is to say, against the following Respondents:

Dallas H. Miller; W. B. Foorey, as Trustee; John L. Howe, Dallas H. Miller, Rachael Lyman, George R. Lyman, M. B. Lyman, Lillian B. Bassett, as sole and only heirs at law of Morris K. Lyman, deceased; Town of Boynton, also known as Town of Boynton Beach; Rosa P. Hayes, and, if married, _____ Hayes, her husband; N. S. Boynton Estate Corporation; Harry K. Noyes and Edith Noyes, his wife; R. T. Watts, Jr., individually and as Trustee; John L. Lougee; Walter N. Kneuth; Colorado-Florida Company; J. Leonard Replogle; Charles L. Boynton; Annie Parker and, if married, _____ Parker, her husband; Frances Patterson and, if married, _____ Patterson, her husband; Edith Wright and, if married, _____ Wright, her husband; George H. Boynton; General Improvement Corporation; Swindell Holding Company; Newmar Corporation; John G. Newington; Samuel J. Blakely, Charles L. Boynton, George H. Boynton, Frances Patterson, Edith Wright and Annie

-38-

Parker, joined by their respective wives and husbands, as
heirs at law of H. S. Boynton, deceased; Investment Hold-
ing Company; First National Bank of Lake Worth; Wertheimer
Bros. Ribbons, Inc.; Frank Nutting; W. D. Sturrock; G. R.
Ackerman; Mutual Holdings Company; M. A. Smith, Liquidator,
Farmers Bank & Trust Company; B. F. Evans; R. C. Roper,
individually and as Trustee; C. C. Keichline; Nanna F.
Rasmussen and, if married, _____ Rasmussen, her
husband; Henry Siebrecht; Julia H. Glidden, individually
and as Trustee under the last Will and Testament of
Frederick A. Glidden, deceased, and all of the heirs at
law, devisees, legatees and creditors of Frederick A.
Glidden, deceased; R. C. Higgins and Kate Higgins; Atlantic
Mortgage Company; Harry A. Selbrecht; Paul Garrett; Ward
B. Miller, Inc.; Howard B. Roberts; Ward B. Miller and
Agnes P. Miller, his wife; Alice C. Krah and, if married,
_____ Krah, her husband; H. E. Roberts; The Palm
Beach Company; The Gulf Stream Company; East Shore Company;
West Palm Beach Atlantic National Bank; Monarch Development
Corporation; Margaretha Doyle and, if married, _____
Doyle, her husband; Maria Haller and, if married, _____
Haller, her husband; David R. Lippincot; The Bilt-Rite
Company, Inc.; W. C. Fountain and Julia M. Fountain;
Gleason Land Corporation; Gleason Land Company; Vernon
Hopkins and Ellen Hopkins; Otto A. Seestedt and Lucile

-39-

Seestedt; Gracey Realty Company, Inc.; Frank C. Davis;
H. O Michael; Wm. L. Rairigh and Julia B. Rairigh; M. A.
Smith as Liquidator of the Bank of Boca Ratone; City of
Delray Beach, also known as City of Delray; F. N. Brown;
B. B. Raulerson; W. J. Schoonover Glass Company; Hoffman
& Hoffman, Inc.; Anna Waters and, if married _____
Waters, her husband; Amoeac Holding Company; W. C.
Williams; Mary H. Gleason and W. H. H. Gleason, individu-
ally and as Executors of the Last Will and Testament of
Sarah G. Gleason, deceased; F. L. Tenbrook; Franc?? C.
Hall; Mike L. Blank and Martha Blank, his wife; Frank
Thompson; J. W. S utton; C. D. Yates; Frank Hand and
Lottie C. Hand, his wife; Clayton L. Andres; John L.
Harsford and _____ Harsford, his wife; R. M.
Banker and Ethel Banker, his wife; Emily Blank, Leona
Blank and R. W. Blank, sole and only heirs at law of John
Blank, deceased; John A. Folley; Simeon Brinson; C. Y.
Byrd; William T. Noble, Emma J. Noble, Elizabeth J. Noble,
Emma W. Allen, Charlotte E. Frazer,as the sole and only
heirs at law of Frank T. Noble, deceased; Harvey L. Smith;
Edith M. Lash and, if married, _____ Lash, her
husband; Robert A. Davis; Dora B. Pratt, and, if married,
_____ Pratt, her husband; Eva B. Allen, and

-40-

if married, _____ Allen, her husband; J.  H.
Adams; Albert Gregerson; C. A. B. Zook; M. P. Moeller;
Lillian M. McDermott and Arthur McDermott, her husband;
C. D. Yates and Mary R. Taylor, sole and only heir at law
of M. G. Taylor, deceased; B. C. Goodnough and Mrs. B. C.
Goodnough, his wife; Howard N. Goodnough; James B. Maher
and Nellie Maher, his wife; Edith Englehart and, if
married, _____ Englehart, her husband; Sarah
Vinson, as legatee and devisee under the last will and
testament of George Vinson, deceased; Maggie LaFranz, the
unknown heirs at law, legatees and devisees of Charlie
Vinson, deceased, Annie Jenkins, Starr Vinson, Eliza
Daniel, the unknown heirs at law, legatees and devisees
of George T. Vinson, deceased, Emma Jones, Mary Nicademus,
and the unknown heirs at law, legatees and devisees of
Maude Clark Williams, deceased; Mattie E. McLaren and, if
married, _____ McLaren, her husband; L. H. Hobart;
E. W. Hobart; Frank Dean; Hortense Harris, Marie Sheffield
and M. C. Sheffield, her husband, as sole and only heirs
at law of Henry T. Harris, deceased; Mrs. R. A. Butler and
R. A. Butler, her husband; _____,
Secretary of Agriculture of the United States of America;
Neville Mitchell Smith; Adam J. Glossbrenner; E. Jennie

-41-

H. Richardson and Arthur J. Richardson, her husband; L. R.
Benjamin; Jessie C. Love and, if married, _____
Love, her husband; Alexander Wilson; M. A. Smith, as
Liquidator of Commercial Bank and Trust Company of West
Palm Beach; Delray Properties, Inc.; W. G. Mathes; Samuel
A. Stephan; George W. Jonas; Moseley Investment Company;
Garva A. Gatlin; Kathleen E. Tharin, and, if married,
_____ Tharin, her husband; Mathis Properties
Addition, Inc.; Boca Ratone Company; Phyllis M. Bradner
and Burke C. Bradner, her husband; Charles Gehlhaus;
Edward T. Page; F. W. Spencer; Vesta J. Kubin; Otto Kubin, Jr.;
Chas. J. Kubin; Caroline V. Southard and D. L. Southard,
her Husband; Adelaide J. Rubin and, if married, _____
Kubin, her husband; Jacob G. Grossberg and David H. Brill,
co-partners doing business under the firm name of Gross-
berg, Lyon and Brill; W. W. Burgiss and Etta R. Burgiss,
his wife; Frank H. Parsons; Town of Boca Ratone; Eastern
States Land Company; Marie Stedronski and George Stedronski;
John H. Johnson; V. C. Bruce Wetmore; Raymond Lipscomb;
Walker Lipscomb; Bassett W. Mitchell and Virginia L.
Mitchell; Joseph P. Sauer; Maurice W. Stokes and Helen I.
Stokes, his wife; J. W. Moore and Bessie Moore, his wife;
E. S. Johnson; George J. Cranston; Charles A. Baird; David
Baird, Jr.; P. D. Kinney and Virginia Kinney, his wife;

Henry H. Benjamin, as Administrator cum testamento annexo
of the last will and testament of John E. Nelson, deceased;
Theo D. Luff and Hariette Belle Luff, his wife; The
unknown heirs at law, devisees and legatees of George H.
Rahles, deceased; Virginia Rahlfs and, if married, _____
Rahlfs, her husband; Addie Crawford and, if married,
_____ Crawford, her husband; Harry M. Chesebro
and Ethyl B. Chesebro, his wife; J. E. Nelson and Gretchen
M. Nelson, his wife; Ralph L. Wade; Cora Wade Whitehead and,
if married, _____ Whitehead, her husband; John
L. Howe and Ada Howe, his wife; William Bonner; E. L.
Winchester; H. & W. B. Drew Company; Harry Benson; Robert
Benson; William R. Jackson;  Clarence G. Perkins; Howard
E. Roberts; Ernest Lewis; Robert Grace; Mrs. J. W. Bigelow
and J. W. Bigelow, her husband; Ella S. Boland and, if
married, _____ Boland, her husband; Anna L. Hart
and, if married, _____ Hart, her husband; Mrs.
B. Pullum and B. Pullum, her husband; Michael Flood; Frances
L. Gugenheim and, if married, _____ Gugenheim,
her husband; Mrs. Mary Hatfield and _____
Hatfield, her husband; Lewis-Chitty, Consolidated; Antietam
Paper Company, Inc.; Mergenthaler Linotype Co.; United
States of America; Peter F. Lebkuecher; County of Palm
Beach, Florida; Everglades Realty and Investment Company;

-43-

Interstate Trust & Banking Company, Trustee; H. W. Roberts;
Mary S. Brown and, if married, _____ Brown, her
husband; John McL. Stevens and Cornelia B. Stevens; Jack
T. Kinsman and Alpha Kinsman, his wife; Vlasta J. Kubin
and, if married, _____ Kubin, her husband; Mrs.
Grady H. Brantley and Grady H. Brantley, her husband;
Allan B. Walsh; George W. Harvey, individually and as
Trustee under George W. Harvey Trust; J. S. Rhine; J. L.
Holmberg; George W. Harvey Realty Company; Franklin P.
Smith; Theresa Van Buren Hillhouse and, if married, _____
Hillhouse, her husband; Chicago Title and Trust Company;
Chrisbar Corporation; B. L. Holman; George W. Harvey Trust;
Julia C. King and, if married, _____ King,
her husband; Llewella E. Woodward and, if married,
_____ Woodward, her husband; Evelyn L.
Batchelle and, if married, _____ Batchelle, her
husband; each and every husband or wife, respectively, as
the case may be, of each and every Respondent not appear-
ing, whose respective husband or wife was not specifically
named; and all other persons and corporations, known or
unknown, whether specifically named or not named, and
not appearing, who own or claim to own any right, title,
interest or estate in, or lien, encumbrance, servitude,

-44-

easement, charge, demand, claim or covenant, upon or in respect to any of the lands embraced in this proceeding, excepting only those as to which this cause is continued.

## II.

That the use or easement which the Petitioner seeks to condemn over and upon the property described in Petition filed herein and the verdicts as Right-of-Way Items (R/W Items), to-wit, the perpetual right and easement in favor of Petitioner, its agents, representatives and assigns to enter thereon, and to excavate, cut away and remove any part or all thereof, from time to time, as may be required at any time for the construction and maintenance of the aforesaid Intracoastal Waterway, or any enlargement thereof, and to maintain the portions so excavated and the channel thereby created as a part of the navigable waters of the United States of America; and the further perpetual right and easement to enter upon, occupy and use any portion of said tract of land, not so cut away and converted into public navigable waters as aforesaid, for the deposit of dredged material, and for such other purposes as may be needful in the preservation and maintenance of the Intracoastal Waterway:  RESERVING, HOWEVER, to the owner or

owners, his or their heirs and assigns, all such rights
and privileges in said tract or tracts of land as may be
used and enjoyed without interfering with or abridging
the rights and easements hereby condemned, fixed and
declared in favor of your Petitioner; and the use for
which Petitioner seeks to condemn easements over and upon
the property described in the petition and verdicts filed
herein as Spoil Areas (S/A Items), to-wit, the right,
privilege and authority in favor of Petitioner, its
officers, agents, servants, contractors and representatives
to enter and deposit thereon such earth, spoil and/or
other material excavated in the construction and/or
maintenance during the time of said construction, of the
waterway mentioned and referred to in said petition; and
the use for/which Petitioner seeks to condemn easements over
and upon the property described in the petition and
verdicts filed herein for pipe and flood purposes (P/F Items),
to-wit, the right, privilege, power and authority in favor
of Petitioner, its officers, agents, servants, contractors
and representatives, to enter upon said tracts and to use
so much thereof as shall be necessary or proper for laying
down, operating and/or maintaining pipes, pipe-lines and/or
other dredging equipment and paraphernalia used or to be

-46-

used in transferring dredged material resulting from the
excavation of the aforesaid Intracoastal Waterway and
depositing the same upon a certain other tract in the
vicinity of the tract hereinabove described, and for the
further right, privilege, power and authority to use said
tract of land in such manner as shall be necessary,
advisable or expedient to accomplish the return of water
discharged by said pipe, pipeline and/or other dredging
equipment and paraphernalia upon the said other tract in
the vicinity of the tract above described, and to  that
end to construct and build upon said tract such ditches,
dykes and/or other works as will effect, facilitate and/or
assist in the return of said water, - are public uses
authorized by law, and are superior public uses, and will
more efficiently and advantageously serve the best interests
of the public than the purposes for which the said property
is now being used, and that such public use required the
condemnation of said easements over the said property
sought by Petitioner and described in the verdicts of
the jury set out above, and that said easements are
necessary and required by Petitioner for the public uses
set out in its petition herein, and that the taking
thereof is necessary to such uses.

### III.

That the aforesaid easements sought to be con-
demned over the lands described in the verdicts of the
jury set out above, be appropriated to and vested in the
United States of America, free and clear of all liens,
encumbrances, charges, easements, servitudes, restrictions
and covenants whatsoever, of, under, through or by the
Respondents herein or any person whomsoever, upon the
payment into the registry of this Court by the Petitioner
herein, of the compensation found by the verdicts of the
jury in the total sum of Fifteen Thousand Six Hundred
Thirty-four ($15634.00) Dollars, together with interest
at the rate of six per cent. (6%) per annum from July 13,
1933, and said sum is hereby ordered paid into said
registry within ninety (90) days from the date of this
judgment, unless further time is allowed by this Court
in which to pay said sum of money; that there is hereby
awarded as compensation to the owner or owners of each of
the parcels of property above described, over which an
easement or easements are hereby appropriated, the
respective amounts set out in the said verdicts of the
jury above set forth; that upon receipt of the aforesaid
total sum by the Clerk of this Court, said Clerk is hereby

-48-

authorized and directed, in those cases where awards are
made to named persons or corporations, to pay said awards,
on proper application therefor, to such named persons or
corporations, and in all other cases to hold the respective
awards until ordered by this Court to pay such awards to
those who, under appropriate proceedings, are found to be
entitled to receive the same; that upon payment to the
Clerk of this Court of the award set forth in said verdicts,
to-wit, the sum of Fifteen Thousand Six Hundred Thirty-four
($15634.00) Dollars, together with interest at the rate of
six per cent. (6%) per annum from July 13, 1933, said Clerk
is hereby authorized and directed to return to the Florida
Inland Navigation District, a special taxing district under
the laws of the State of Florida, the balance then in his
hands of all moneys paid and deposited by it on the 13th
day of July, A. D. 1933, with the Clerk of this Court,
pursuant to order of this Court in this cause, dated
_July 13, 1933_____, authorizing the United
States immediately to take possession of the easements sought
to be taken and condemned by it upon the lands and premises
involved in this suit, said Order being recorded in Miami
Minute Book _9_, at page _214_, of the records of this
Court.

-49-

IV.

That upon payment of the said sum of Fifteen
Thousand Six Hundred Thirty-four ($15634.00) Dollars,
together with interest at the rate of six per cent. (6%)
per annum from July 13, 1933, into the registry of this
Court as above ordered, Petitioner herein shall be deemed
to have had the right, from the date of the order author-
izing immediate possession entered herein, to take and use
the property set out and described in said verdicts for the
uses and purposes set forth in the petition filed herein
and hereinabove enumerated.

V.

Attorneys for Petitioner having announced in
open Court that the construction of said Waterway through
the lands involved in this suit has been completed, and
that Petitioner, therefore, claims no further right to use
the lands upon which easements were sought for the deposit
of spoil (S/A Items) and for pipe and flood purposes (P/F
Items), it is ordered that the Notice of Lis Pendens filed
herein be cancelled and discharged as to said lands, and
that said lands be fully released and discharged of any
further claim by Petitioner herein or by anyone claiming
or to claim through or under it.

-50-

DONE  AND  ORDERED at Miami, Florida, this
_____3rd_____ day of _____May_____, A. D. 1935.


Halsted L. Ritter
_____
Judge

# EXHIBIT F



POOR COPY

# EXHIBIT G

# Internal Improvement Fund—State of Florida.

Deed No. 12041

**Know all Men by these Presents,** That the undersigned, the Trustees of the Internal Improvement Fund of the State of Florida, under an act of the General Assembly of said State, entitled "An Act to Provide for and Encourage a Liberal System of Internal Improvements in this State," approved January 6, 1855, for and in consideration of the sum of _One_ _dollar_ per acre, to them in hand paid by _Arthur D_ _Williams_ of the county of _Duval_, State of _Florida_, have granted, bargained and sold, and do by these presents grant, bargain, sell and convey unto the said _Arthur D Williams_ and _his_ heirs and assigns, forever, the following described Lands, to-wit: _Lot number One (10) of Section One and Lot number Eight (8) of Section Twelve in Township Fifty South of Range Forty two East Lot number Nine (9) of Section nine in Township Fifty two South of Range Forty two East and Lot number One (1) of Section Twenty nine in Township Forty seven South of Range Forty three East_ containing _Seventy seven_ 60/100 acres, and lying and being in the county of _Dade_, in said State of Florida;

**To Have and To Hold** unto the said _Arthur D Williams_ and _his_ heirs and assigns, forever.

**In Testimony Whereof.** The said Trustees have hereunto subscribed their names and affixed their seals, and have caused the seal of " THE FLORIDA STATE LAND OFFICE " to be hereunto affixed, at the Capitol, in the City of Tallahassee, on this, the _Twenty fifth_ day of _April_ A. D. eighteen hundred and eighty-_three_.

W. D. Bloxham [SEAL]
Governor.

W. D. Barnes [SEAL]
Comptroller.

Henry A. L'Engle [SEAL]
Treasurer.

Geo. P. Raney [SEAL]
Attorney-General.

P. W. White [SEAL]
Commissioner of Lands and Immigration.

# EXHIBIT H



U.S.COAST AND GEODETIC SURVEY

LAKES BOCA RATONE AND WYMAN
HILLSBORO RIVER AND INLET
AND NORTH'N PART OF NEW RIVER
FLORIDA



U.S. COAST AND GEODETIC SURVEY

J.E. HILGARD SUPT.

# LAKES BOCA RATONE AND WYMAN
## HILLSBORO RIVER AND INLET
## AND NORTH'N PART OF NEW RIVER
### FLORIDA

By the party under the charge of B.A. Colonna, Assistant, in

Sloop Steadfast.

1884

Scale ⅟₁₀₀₀₀

Reg. No. 1605-a

# EXHIBIT I

Sep-28-2000 12:04pm 00-371721
ORB 12043 Pg 365

Return To:
Wil Snyder
Michael Baker, Jr., Inc.
4301 Dutch Ridge Road
Beaver, PA 15009

This Instrument Prepared By:
Deborah Trim
Recurring Revenue Section
Bureau of Public Land Administration
3900 Commonwealth Boulevard
Mail Station No. 125
Tallahassee, Florida 32399

BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND
OF THE STATE OF FLORIDA

SOVEREIGN SUBMERGED LANDS EASEMENT

NO. 30537
BOT FILE NO. 500221236
PA NO. 50-0163252-001

THIS EASEMENT is hereby granted by the Board of Trustees of the Internal Improvement Trust Fund of

the State of Florida, hereinafter referred to as the Grantor.

WITNESSETH: That for the faithful and timely performance of and compliance with the terms and

conditions stated herein, the Grantor does hereby grant to Atlantica USA LLC, a Delaware limited liability company,

hereinafter referred to as the Grantee, a nonexclusive easement on, under and across the sovereign lands described as follows:

A parcel of sovereign submerged land in Sections 28 and 29,
Township 54 South, Range 43 East, in the Atlantic Ocean,
Palm Beach County, as is more particularly described
and shown on Attachment A, dated April 17, 2000.

TO HAVE THE USE OF the hereinabove described premises for a period of 25 years from July 11, 2000,

the effective date of this easement. The terms and conditions of and for which this easement is granted are as

follows:

1. EASEMENT CONSIDERATION. The Grantee hereby agrees to pay to the Grantor, prior to commencement of
activities authorized herein and within 30 days of the date of receipt of the invoice, the sum of $2,389.94, based upon 419,288
square feet at $0.0057 per square foot (appraised value) as specified in paragraph 20c. of this Easement. The Grantee further
agrees to pay to the Grantor a sum of $150.75, based upon 67 cubic yards at $2.25 per cubic yard for the severance fees.
Upon installation of each cable, the Grantee agrees to pay the Grantor $5.00 per linear foot as specified in paragraph 20c. of
this Easement within 30 days of the date of receipt of the invoice. All of the foregoing subject to the remaining conditions of
this Easement.

2. USE OF PROPERTY. The above described parcel of land shall be used solely for the installation of four
conduits and two fiber optic cables and Grantee shall not engage in any activity except as described in the Department of
Environmental Protection, Environmental Resource Permit No. 50-0163252-001, dated August 9, 2000, incorporated herein
and made a part of this easement by reference.

[53]

ORB 12043 Pg 366

3. RIGHTS GRANTED: The rights hereby granted shall be subject to any and all prior rights of the United States and any and all prior grants by the Grantor in and to the submerged lands situated within the limits of this easement.

4. DAMAGE TO EASEMENT PROPERTY AND INTERFERENCE WITH PUBLIC AND PRIVATE RIGHTS: Grantee shall not damage the easement lands or unduly interfere with public or private rights therein.

5. GRANTOR'S RIGHT TO GRANT COMPATIBLE USES OF THE EASEMENT PROPERTY: This easement is nonexclusive, and the Grantor, or its duly authorized agent, shall retain the right to enter the property or to engage in management activities not inconsistent with the use herein provided for and shall retain the right to grant compatible uses of the property to third parties during the term of this easement.

6. RIGHT TO INSPECT: Grantor, or its duly authorized agent, shall have the right at any time to inspect the works and operations of the Grantee in any matter pertaining to this easement.

7. INDEMNIFICATION/INVESTIGATION OF ALL CLAIMS: The Grantee shall investigate all claims of every nature at its expense, and shall indemnify, defend and save and hold harmless the Grantor and the State of Florida from all claims, actions, lawsuits and demands arising out of this easement.

8. VENUE: Grantee waives venue as to any litigation arising from matters relating to this easement and any such litigation between Grantor and Grantee shall be initiated and maintained only in Leon County, Florida.

9. ASSIGNMENT OF EASEMENT: This easement shall not be assigned or otherwise transferred without prior written consent of the Grantor or its duly authorized agent. Any assignment or other transfer without prior written consent of the Grantor shall be null and void and without legal effect.

10. TERMINATION: The Grantee, by acceptance of this easement, binds itself, its successors and assigns, to abide by the provisions and conditions herein set forth, and said provisions and conditions shall be deemed covenants of the Grantee, its successors and assigns. In the event the Grantee fails or refuses to comply with the provisions and conditions herein set forth or in the event the Grantee violates any of the provisions and conditions herein, this easement may be terminated by the Grantor upon 30 days written notice to Grantee. If terminated, all of the above-described parcel of land shall revert to the Grantor. All costs, including attorneys' fees, incurred by the Grantor to enforce the provisions of this easement shall be paid by the Grantee. All notices required to be given to Grantee by this easement or applicable law or administrative rules shall be sufficient if sent by U.S. Mail to the following address:

Atlantica USA LLC
c/o 360 Network
14500 Avion Parkway, Suite 130
Chantilly, Virginia 20151

The Grantee agrees to notify the Grantor by certified mail of any changes to this address at least ten (10) days before the change is effective.

11. TAXES AND ASSESSMENTS: The Grantee shall assume all responsibility for liabilities that accrue to the subject property or to the improvements thereon, including any and all drainage or special assessments or taxes of every kind and description which are now or may be hereafter lawfully assessed and levied against the subject property during the effective period of this easement which result from the grant of this easement or the activities of Grantee hereunder.

12. RENEWAL PROVISIONS: Renewal of this easement is at the sole option of the Grantor. Such renewal shall be subject to the terms, conditions and provisions of current management standards, easement fees, and applicable laws, rules and regulations in effect at that time. In the event that Grantee is in full compliance with the terms of this easement, the Grantee may apply in writing for a renewal. Such application for renewal must be received by Grantor no later than six months prior to the expiration date of this easement. The term of any renewal granted by the Grantor shall commence on the last day of the previous easement term. If the Grantee fails to apply for a renewal, or in the event the Grantor does not grant a renewal, the Grantee shall vacate the easement premises and remove all structures and equipment occupying and erected thereon at its expense.

Page _2_ of _13_ Pages
Easement No. 30537

13. REMOVAL OF STRUCTURES/ADMINISTRATIVE FINES: If the Grantee does not remove said structures and equipment occupying and erected upon the premises after expiration or cancellation of this easement, such structures and equipment will be deemed forfeited to the Grantor, and the Grantor may authorize removal and may sell such forfeited structures and equipment after ten (10) days written notice by certified mail addressed to the Grantee at the address specified in Item 10 or at such address on record as provided to the Grantor by the Grantee. However, such remedy shall be in addition to all other remedies available to Grantor under applicable laws, rules and regulations including the right to compel removal of all structures and the right to impose administrative fines.

14. ENFORCEMENT OF PROVISIONS: No failure, or successive failures, on the part of the Grantor to enforce any provision, nor any waiver or successive waivers on its part of any provision herein, shall operate as a discharge thereof or render the same inoperative or impair the right of the Grantor to enforce the same upon any renewal thereof or in the event of subsequent breach or breaches.

15. RECORDATION OF EASEMENT: The Grantee, at its own expense, shall record this fully executed easement in its entirety in the public records of the county within which the easement site is located within fourteen (14) days after receipt, and shall provide to the Grantor within ten (10) days following the recordation a copy of the recorded easement in its entirety which contains the O.R. Book and pages at which the easement is recorded.

16. AMENDMENTS/MODIFICATIONS: This easement is the entire and only agreement between the parties. Its provisions are not severable. Any amendment or modification to this easement must be in writing and must be accepted, acknowledged and executed by the Grantee and Grantor.

17. ACOE AUTHORIZATION: Prior to commencement of construction and/or activities authorized herein, the Grantee shall obtain the U.S. Army Corps of Engineers (COE) permit if it is required by the COE. Any modifications to the construction and/or activities authorized herein that may be required by the COE shall require consideration by and the prior written approval of the Grantor prior to the commencement of construction and/or any activities on sovereign, submerged lands.

18. ADDITIONAL STRUCTURES OR ACTIVITIES/EMERGENCY STRUCTURAL REPAIRS: No additional structures shall be erected and/or activities undertaken, including but not limited to, dredging, relocation/realignment or major repairs or renovations made to authorized structures, on, in or over sovereignty, submerged lands without the prior written consent of the Grantor, with the exception of emergency repairs. Unless specifically authorized in writing by the Grantor, such activities or structures shall be considered unauthorized and a violation of Chapter 253, Florida Statutes, and shall subject the Grantee to administrative fines under Chapter 18-14, Florida Administrative Code. If emergency repairs are required to be undertaken in the interests of public health, safety or welfare, the Grantee shall notify the Grantor of such repairs as quickly as is practicable; provided, however, that such emergency activities shall not exceed the activities authorized by this easement.

19. UPLAND RIPARIAN PROPERTY INTEREST: During the term of this easement, Grantee, pursuant to section 18-21.010, Florida Administrative Code, must either be the record owner of the riparian upland property or have the written consent of the riparian upland property owner(s) to conduct the activity described in this easement. If at any time during the term of this easement, Grantee fails to comply with this requirement, use of sovereignty, submerged lands described in this easement shall immediately cease and this easement shall terminate and title to this easement shall revert to and vest in the Grantor immediately and automatically.

20. SPECIAL EASEMENT CONDITIONS:

a. The Grantee shall provide the Grantor acceptable "as-built" survey(s) and legal description(s) within sixty (60) days of completion of each phase of the project in accordance with DEP permit 50-0163252-001.

b. The Grantee shall submit an easement fee within thirty (30) days of receipt of an invoice from the Grantor for each phase of the project at the established easement rate.

c. The fee shall consist of an initial one-time easement fee to be determined by a real property appraisal provided by Atlantica and an interim "enhanced value or profit gained" fee of $5.00 per linear foot of cable.

d. In the event that the Board of Trustees revises current rules related to private easement fees, any additional fees due under the amended rule shall be assessed from the effective date of the amended rule.

Page _3_ of _13_ Pages
Easement No. 30537

WITNESSES:

_Evlyn A Turner_
Original Signature
(SEAL)

_Evlyn A. Turner_
Print/Type of Witness

_Lanette Radel_
Original Signature

LANETTE RADEL
Print/Type Name of Witness

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE STATE OF
FLORIDA

BY: _Kirb B. Green III_
Kirby B. Green III, Deputy Secretary,
Department of Environmental Protection, as agent for
and on behalf of the Board of Trustees of the Internal
Improvement Trust Fund of the State of Florida

"GRANTOR"

STATE OF FLORIDA
COUNTY OF LEON

The foregoing instrument was acknowledged before me this __25__ day of __September__, 20_00_, by
Kirby B. Green III, Deputy Secretary, Department of Environmental Protection, as agent for and on behalf of the Board of
Trustees of the Internal Improvement Trust Fund of the State of Florida. He is personally known to me.

APPROVED AS TO FORM AND LEGALITY:

_Suzy L. Volta_
DEP Attorney

_Kathrine Hazli Goletz_
Notary, State of Florida, Hazli Goletz
MY COMMISSION # CC939286 EXPIRES
May 22, 2004
BONDED THRU TROY FAIN INSURANCE, INC

Printed, Typed or Stamped Name

My Commission Expires:
__May 22, 2004__
Commission/Serial No. _CC 939286_

WITNESSES:

_M L_
Original Signature

PETER MARTIN
Typed/Printed Name of Witness

_Michelle Rody_
Original Signature

MICHELLE RODY
Typed/Printed Name of Witness

STATE OF HAMILTON
COUNTY OF DEVONSHIRE

Atlantica USA LLC,
a Delaware limited liability company          (SEAL)

BY: Atlantica Network (Bermuda) Ltd., a Bermuda company,
as Managing Member

BY: _L. Gentemann_
Original Signature of Executing Authority

Lin Gentemann
Typed/Printed Name of Executing Authority

Vice President
Title of Executing Authority

"GRANTEE"

The foregoing instrument was acknowledged before me this __15th__ day of __September__, 20_00_, by
Lin Gentemann as Vice President of Atlantica Network (Bermuda) Ltd., a Bermuda company, Managing Member for and on
behalf of Atlantica USA LLC, a Delaware limited liability company. He is personally known to me or who has produced
_____, as identification.

My Commission Expires

UNLIMITED

Commission/Serial No. _____

Notary Public, State of BERMUDA

PETER MARTIN
Printed, Typed or Stamped Name

Page _4_ of _13_ Pages
Easement No. 30537

Attachment A
Page 5 of 13 Pages
Easement No. 30537

ORB 12043 Pg 370

**DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA**
**FOR THE ATLANTICA-1**
**FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM**

**BENEATH THE ATLANTIC INTRACOASTAL WATERWAY**

Located in the waters of the Atlantic Intracoastal Waterway, east of Silver Palm Park, City of

Boca Raton, County of Palm Beach, State of Florida and being more particularly described as

follows:

Commencing at the north quarter corner of Section 29, Township 47 South, Range 43 East;

thence N 88° 16' 56" E along the north line of said section and the centerline of Palmetto Park

Road, a distance of 659.08 feet to a point of intersection with the centerline Southeast 5th Avenue;

thence S 03° 23' 27" E along said centerline, a distance of 305.60 feet; thence N 89° 56' 43" E, a

distance of 39.91 feet, to a point of intersection with the east right-of-way line of Southeast 5th

Avenue; thence continuing along the easement through Silver Palm Park between the City of

Boca Raton and Atlantica USA LLC at a bearing of  S 85° 44' 40" E, a distance of 184.87 feet to

a point of intersection; thence S 78° 49' 12" E, a distance of 201.86 feet to a point of intersection;

thence N 83° 29' 23" E, a distance of 169.55 feet to a point on the seawall on the western edge of

the Atlantic Intracoastal Waterway, the True Point of Beginning of the Easement; said Easement

Area extending 5 feet on either side of the centerline; thence N 83° 29' 23" E, a distance of

187.09 feet to a point of intersection; thence N 71° 06' 53" E, a distance of 24.24 feet to a point

on the seawall on the eastern edge of the Atlantic Intracoastal Waterway, the Terminus of the

Easement.

Said lands situate in the City of Boca Raton, Palm Beach County, Florida.

Said Easement being 211.33 feet in length and containing 2,113.3 square feet or 0.05 acre, more or less.

Subject to easements, restrictions, reservations, covenants, and rights-of-way of record.

Attachment A
Page 7 of 13 Pages
Easement No. 30537

ORB 12643 Pg 372

**DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA**
**FOR THE ATLANTICA-1**
**FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM**

**CONDUIT 1 / SEGMENT 1 CABLE**

**FROM THE MEAN HIGH WATER LINE OF THE ATLANTIC OCEAN TO THE**
**THREE NAUTICAL MILE LIMIT**

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line, the True Point of Beginning of Atlantica-1, Conduit 1/Cable Segment 1 Easement Area having a coordinate value of North 733,961.38 feet and East 960,917.76 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet; thence continuing along the centerline of Conduit 1/Segment 1 S 86° 01' 38.85" E, a distance of 2,433.30 feet to the end of Conduit 1, said point having a coordinate value of North 733, 801.87 feet and East 963,453.42 feet; thence continuing along the centerline of Segment 1 S 89° 08' 50.80" E for a distance of 3,821.87 feet, said point having a coordinate value of North 733,745.00 feet and East 967,274.87 feet; thence continuing along the centerline of

Attachment A
Page 8 of 13 Pages
Easement No. 30537

Segment 1 N 78° 03' 53.07" E for a distance of 12,133.58 feet to the Three Nautical Mile Limit, said point having a coordinate value of North 736,254.30 feet and East 979,146.15 feet.

Said Easement Area being 18,497.55 feet in length and containing an area of 184,975.50 square feet or 4.25 acres, more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

**DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM**

**CONDUIT 2 / SEGMENT 2 CABLE**

**FROM THE ANGLE POINT OF CONDUITS TO THE THREE NAUTICAL MILE LIMIT**

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic

Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat

thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm

Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of

Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range

43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;

thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N

85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along

said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True

Point of Beginning of Atlantica-1, Conduit 2/Segment 2 Cable Easement Area said point having a

coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State

Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area

extending 5 feet on either side of centerline; thence continuing along the centerline S 82° 12'

44.32" E, a distance of 2,451.25 feet to the end of Conduit 2, said point having a coordinate value

of North 733,638.29 feet and East 963,454.61 feet; thence continuing along the centerline of

Segment 2 S 84° 21' 18.02" E for a distance of 3,842.47 feet, said point having a coordinate value

of North 733,260.33 feet and East 967,278.44 feet; thence continuing along the centerline of

Segment 2 N 84° 15' 41.97" E for a distance of 11,927.48 feet to the Three Nautical Mile Limit,

said point having a coordinate value of North 734,452.90 feet and East 979,146.15 feet.

Said Easement Area being 18,221.20 feet in length and containing an area of 182,212.00 square feet or 4.18 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 11 of 13 Pages
Easement No. 30537

ORB 12043 Pg 376

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 3

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic

Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat

thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm

Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of

Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range

43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;

thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N

85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along

said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True

Point of Beginning of Atlantica-1, Conduit 3 Easement Area said point having a coordinate value

of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate

System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on

either side of centerline; thence continuing along the centerline S 78° 28' 08.17" E, a distance of

2,479.89 feet to the end of Conduit 3, said point having a coordinate value of North 733,474.71

feet and East 963,455.80 feet.

Said Easement Area being 2,479.89 feet in length and containing an area of 24,798.90 square feet

or 0.57 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001,

A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 12 of 13 Pages
Easement No. 30537

DOROTHY H. WILKEN, CLERK PB COUNTY, FL

## DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
### FOR THE ATLANTICA-1
### FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

#### CONDUIT 4

#### FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True Point of Beginning of Atlantica-1, Conduit 4 Easement Area said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along the centerline S 74° 49' 34.11" E, a distance of 2,518.84 feet to the end of Conduit 4, said point having a coordinate value of North 733,311.14 feet and East 963,456.99 feet.

Said Easement Area being 2,518.84 feet in length and containing an area of 25,188.40 square feet or 0.58 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 13 of 13 Pages
Easement No. 30537



I hereby certify the foregoing is a true copy of the record in my office with redactions, if any as required by law as of this day, Feb 27, 2020. Sharon R. Bock, Clerk and Comptroller, Palm Beach County, Florida BY _____ Deputy Clerk

# EXHIBIT J

This Instrument Prepared By:
Jeff Gentry
Recurring Revenue Section
Bureau of Public Land Administration
3900 Commonwealth Boulevard
Mail Station No. 125
Tallahassee, Florida 32399

*118-778*
Please Return To:
BRIDGE SERVICE CORP.
800-225-2736
277 Broadway #510
New York, NY 10007-2001

10/27/2003  14:35:12  20030660733
OR BK 16090 PG 1241
Palm Beach County, Florida

BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND
OF THE STATE OF FLORIDA

SOVEREIGN SUBMERGED LANDS EASEMENT
MODIFICATION TO REFLECT CHANGE IN OWNERSHIP

NO. 30537
BOT FILE NO. 500221236
PA NO. 50-0163252-001

THIS EASEMENT is hereby granted by the Board of Trustees of the Internal Improvement Trust Fund of

the State of Florida, hereinafter referred to as the Grantor.

WITNESSETH: That for the faithful and timely performance of and compliance with the terms and

conditions stated herein, the Grantor does hereby grant to Brasil Telecom of America Inc., a Delaware corporation,

hereinafter referred to as the Grantee, a nonexclusive easement on, under and across the sovereign lands described as

follows:

A parcel of sovereign submerged land in Sections 28 and 29,
Township 54 South, Range 43 East, in Atlantic Ocean,
Palm Beach, as is more particularly described
and shown on Attachment A, dated April 17, 2000.

TO HAVE THE USE OF the hereinabove described premises from June 25, 2003, the effective date of this

modified easement, through July 11, 2025, the expiration date of this modified easement. The terms and conditions

on and for which this easement is granted are as follows:

1. EASEMENT CONSIDERATION: The Grantee has hereby paid to the Grantor, a one-time negotiated
sum of $185,706.55.

2. USE OF PROPERTY: The above described parcel of land shall be used solely for the installation of four
conduits and two fiber optic cables and Grantee shall not engage in any activity except as described in the Department
of Environmental Protection, Consolidated Environmental Resource Permit No. 50-0163252-001, dated August 9,
2000, and Modified Permit No 50-0163252-002, dated June 25, 2003, incorporated herein and made a part of this
easement by reference. All of the foregoing subject to the remaining conditions of this Easement.

3. RIGHTS GRANTED: The rights hereby granted shall be subject to any and all prior rights of the
United States and any and all prior grants by the Grantor in and to the submerged lands situated within the limits of
this easement.

4. DAMAGE TO EASEMENT PROPERTY AND INTERFERENCE WITH PUBLIC AND PRIVATE
RIGHTS: Grantee shall not damage the easement lands or unduly interfere with public or private rights therein.

5. GRANTOR'S RIGHT TO GRANT COMPATIBLE USES OF THE EASEMENT PROPERTY: This
easement is nonexclusive, and the Grantor, or its duly authorized agent, shall retain the right to enter the property or
to engage in management activities not inconsistent with the use herein provided for and shall retain the right to grant
compatible uses of the property to third parties during the term of this easement.

6. RIGHT TO INSPECT: Grantor, or its duly authorized agent, shall have the right at any time to inspect
the works and operations of the Grantee in any matter pertaining to this easement.

[53]

7. INDEMNIFICATION/INVESTIGATION OF ALL CLAIMS: The Grantee shall investigate all claims of every nature at its expense, and shall indemnify, defend and save and hold harmless the Grantor and the State of Florida from all claims, actions, lawsuits and demands arising out of this easement.

8. VENUE: Grantee waives venue as to any litigation arising from matters relating to this easement and any such litigation between Grantor and Grantee shall be initiated and maintained only in Leon County, Florida.

9. ASSIGNMENT OF EASEMENT: This easement shall not be assigned or otherwise transferred without prior written consent of the Grantor or its duly authorized agent. Any assignment or other transfer without prior written consent of the Grantor shall be null and void and without legal effect.

10. TERMINATION: The Grantee, by acceptance of this easement, binds itself, its successors and assigns, to abide by the provisions and conditions herein set forth, and said provisions and conditions shall be deemed covenants of the Grantee, its successors and assigns. In the event the Grantee fails or refuses to comply with the provisions and conditions herein set forth or in the event the Grantee violates any of the provisions and conditions herein, this easement may be terminated by the Grantor upon 30 days written notice to Grantee. If terminated, all of the above-described parcel of land shall revert to the Grantor. All costs, including attorneys' fees, incurred by the Grantor to enforce the provisions of this easement shall be paid by the Grantee. All notices required to be given to Grantee by this easement or applicable law or administrative rules shall be sufficient if sent by U.S. Mail to the following address:

> Brasil Telecom of America, Inc.
> 500 South Dixie Highway
> Boca Raton, Florida 33432

The Grantee agrees to notify the Grantor by certified mail of any changes to this address at least ten (10) days before the change is effective.

11. TAXES AND ASSESSMENTS: The Grantee shall assume all responsibility for liabilities that accrue to the subject property or to the improvements thereon, including any and all drainage or special assessments or taxes of every kind and description which are now or may be hereafter lawfully assessed and levied against the subject property during the effective period of this easement which result from the grant of this easement or the activities of Grantee hereunder.

12. RENEWAL PROVISIONS: Renewal of this easement is at the sole option of the Grantor. Such renewal shall be subject to the terms, conditions and provisions of current management standards, easement fees, and applicable laws, rules and regulations in effect at that time. In the event that Grantee is in full compliance with the terms of this easement, the Grantee may apply in writing for a renewal. Such application for renewal must be received by Grantor no later than six months prior to the expiration date of this easement. The term of any renewal granted by the Grantor shall commence on the last day of the previous easement term. If the Grantee fails to apply for a renewal, or in the event the Grantor does not grant a renewal, the Grantee shall vacate the easement premises and remove all structures and equipment occupying and erected thereon at its expense.

13. REMOVAL OF STRUCTURES/ADMINISTRATIVE FINES: If the Grantee does not remove said structures and equipment occupying and erected upon the premises after expiration or cancellation of this easement, such structures and equipment will be deemed forfeited to the Grantor, and the Grantor may authorize removal and may sell such forfeited structures and equipment after ten (10) days written notice by certified mail addressed to the Grantee at the address specified in Item 10 or at such address on record as provided to the Grantor by the Grantee. However, such remedy shall be in addition to all other remedies available to Grantor under applicable laws, rules and regulations including the right to compel removal of all structures and the right to impose administrative fines.

14. ENFORCEMENT OF PROVISIONS: No failure, or successive failures, on the part of the Grantor to enforce any provision, nor any waiver or successive waivers on its part of any provision herein, shall operate as a discharge thereof or render the same inoperative or impair the right of the Grantor to enforce the same upon any renewal thereof or in the event of subsequent breach or breaches.

15. RECORDATION OF EASEMENT: The Grantee, at its own expense, shall record this fully executed easement in its entirety in the public records of the county within which the easement site is located within fourteen (14) days after receipt, and shall provide to the Grantor within ten (10) days following the recordation a copy of the recorded easement in its entirety which contains the O.R. Book and pages at which the easement is recorded.

16. AMENDMENTS/MODIFICATIONS: This easement is the entire and only agreement between the parties. Its provisions are not severable. Any amendment or modification to this easement must be in writing and must be accepted, acknowledged and executed by the Grantee and Grantor.

Page _2_ of _13_ Pages
Easement No. _30537_

17. ACOE AUTHORIZATION: Prior to commencement of construction and/or activities authorized herein, the Grantee shall obtain the U.S. Army Corps of Engineers (COE) permit if it is required by the COE. Any modifications to the construction and/or activities authorized herein that may be required by the COE shall require consideration by and the prior written approval of the Grantor prior to the commencement of construction and/or any activities on sovereign, submerged lands.

18. ADDITIONAL STRUCTURES OR ACTIVITIES/EMERGENCY STRUCTURAL REPAIRS: No additional structures shall be erected and/or activities undertaken, including but not limited to, dredging, relocation/realignment or major repairs or renovations made to authorized structures, on, in or over sovereign, submerged lands without the prior written consent of the Grantor, with the exception of emergency repairs. Unless specifically authorized in writing by the Grantor, such activities or structures shall be considered unauthorized and a violation of Chapter 253, Florida Statutes, and shall subject the Grantee to administrative fines under Chapter 18-14, Florida Administrative Code. If emergency repairs are required to be undertaken in the interests of public health, safety or welfare, the Grantee shall notify the Grantor of such repairs as quickly as is practicable; provided, however, that such emergency activities shall not exceed the activities authorized by this easement.

19. UPLAND RIPARIAN PROPERTY INTEREST: During the term of this easement, Grantee must have satisfactory evidence of sufficient upland interest as defined in subsection 18-21.003(49), Florida Administrative Code, to the extent required by paragraph 18-21.004(3)(b), Florida Administrative Code, in order to conduct the activity described in this easement. If at any time during the term of this easement, Grantee fails to comply with this requirement, use of sovereignty, submerged lands described in this easement shall immediately cease and this easement shall terminate and title to this easement shall revert to and vest in the Grantor immediately and automatically.

20. SPECIAL EASEMENT CONDITIONS:

a. The Grantee shall provide the Grantor acceptable as-built survey(s) and legal description(s) within sixty (60) days of completion of each phase of the project in accordance with DEP permit 50-0163252-001.

b. The Grantee shall submit an easement fee within thirty (30) days of receipt of an invoice from the Grantor for each phase of the project at the established rate.

c. In the event that the Grantor revises current rules related to private easement fees, any additional fees due under the amended rule shall be assessed from the effective date of the amended rule.



Page _3_ of 13 Pages
Easement No. 30537

WITNESSES:

_____
Original Signature

_Glen Teal_
Print/Type Name of Witness

_____
Original Signature

_Brent Branning_
Print/Type Name of Witness

BOARD OF TRUSTEES OF THE INTERNAL
IMPROVEMENT TRUST FUND OF THE STATE
OF FLORIDA

(SEAL)

BY: _____
Ralph M. Perkins, Operations and Management Consultant
Manager, Bureau of Public Land Administration,
Division of State Lands, Department of Environmental
Protection, as agent for and on behalf of the Board of Trustees of
the Internal Improvement Trust Fund of the State of Florida

"GRANTOR"

STATE OF FLORIDA
COUNTY OF LEON

The foregoing instrument was acknowledged before me this _29th_ day of _September_, 20_03_ by Ralph M. Perkins, Operations and Management Consultant Manager, Bureau of Public Land Administration, Division of State Lands, Department of Environmental Protection, as agent for and on behalf of the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida. He is personally known to me.

APPROVED AS TO FORM AND LEGALITY:

_____
DEP Attorney

_____
Notary Public, State of Florida

_____
Printed, Typed or Stamped Name

My Commission Expires: _____

Florence L. Davis
MY COMMISSION # CC974560 EXPIRES
October 11, 2004
BONDED THRU TROY FAIN INSURANCE, INC.

Commission/Serial No. _____

WITNESSES:

_____
Original Signature

_SAMI ARAP SOBRINHO_  ×
Typed/Printed Name of Witness

_____
Original Signature

_MARINA LACERDA CHAVES_  ×
Typed/Printed Name of Witness

STATE OF_____

COUNTY OF_____

Brasil Telecom de America Inc.
a Delaware corporation                    (SEAL)

BY: _____
Original Signature of Executing Authority

Carla Cico
Typed/Printed Name of Executing Authority

President
Title of Executing Authority

"GRANTEE"

The foregoing instrument was acknowledged before me this _____ day of _____, 20____, by Carla Cico as President of Brasil Telecom of America Inc., a Delaware corporation, for and on behalf of the corporation. She is personally known to me or who has produced _____ as identification.

My Commission Expires: _____

Commission/Serial No. _____

_____ Stamped Name

Page _4_ of _13_ Pages
Easement No. _30537_



Attachment A
Page 5 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

BENEATH THE ATLANTIC INTRACOASTAL WATERWAY

Located in the waters of the Atlantic Intracoastal Waterway, east of Silver Palm Park, City of Boca Raton, County of Palm Beach, State of Florida and being more particularly described as follows:

Commencing at the north quarter corner of Section 29, Township 47 South, Range 43 East; thence N 88° 16' 56" E along the north line of said section and the centerline of Palmetto Park Road, a distance of 659.08 feet to a point of intersection with the centerline Southeast 5th Avenue; thence S 03° 23' 27" E along said centerline, a distance of 305.60 feet; thence N 89° 56' 43" E, a distance of 39.91 feet, to a point of intersection with the east right-of-way line of Southeast 5th Avenue; thence continuing along the easement through Silver Palm Park between the City of Boca Raton and Atlantica USA LLC at a bearing of S 85° 44' 40" E, a distance of 184.87 feet to a point of intersection; thence S 78° 49' 12" E, a distance of 201.86 feet to a point of intersection; thence N 83° 29' 23" E, a distance of 169.55 feet to a point on the seawall on the western edge of the Atlantic Intracoastal Waterway, the True Point of Beginning of the Easement; said Easement Area extending 5 feet on either side of the centerline; thence N 83° 29' 23" E, a distance of 187.09 feet to a point of intersection; thence N 71° 06' 53" E, a distance of 24.24 feet to a point on the seawall on the eastern edge of the Atlantic Intracoastal Waterway, the Terminus of the Easement.

Said lands situate in the City of Boca Raton, Palm Beach County, Florida.

Attachment A
Page 6 of 13 Pages
Easement No. 30537

Said Easement being 211.33 feet in length and containing 2,113.3 square feet or 0.05 acre, more or less.

Subject to easements, restrictions, reservations, covenants, and rights-of-way of record.

Attachment A
Page 7 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 1 / SEGMENT 1 CABLE

FROM THE MEAN HIGH WATER LINE OF THE ATLANTIC OCEAN TO THE
THREE NAUTICAL MILE LIMIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line, the True Point of Beginning of Atlantica-1, Conduit 1/Cable Segment 1Easement Area having a coordinate value of North 733,961.38 feet and East 960,917.76 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet; thence continuing along the centerline of Conduit 1/Segment 1 S 86° 01' 38.85" E, a distance of 2,433.30 feet to the end of Conduit 1, said point having a coordinate value of North 733, 801.87 feet and East 963,453.42 feet; thence continuing along the centerline of Segment 1 S 89° 08' 50.80" E for a distance of 3,821.87 feet, said point having a coordinate value of North 733,745.00 feet and East 967,274.87 feet; thence continuing along the centerline of

Segment 1 N 78° 03' 53.07" E for a distance of 12,133.58 feet to the Three Nautical Mile Limit, said point having a coordinate value of North 736,254.30 feet and East 979,146.15 feet.

Said Easement Area being 18,497.55 feet in length and containing an area of 184,975.50 square feet or 4.25 acres, more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003; "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 9 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 2 / SEGMENT 2 CABLE

FROM THE ANGLE POINT OF CONDUITS TO THE THREE NAUTICAL MILE LIMIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True Point of Beginning of Atlantica-1, Conduit 2/Segment 2 Cable Easement Area said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along the centerline S 82° 12' 44.32" E, a distance of 2,451.25 feet to the end of Conduit 2, said point having a coordinate value of North 733,638.29 feet and East 963,454.61 feet; thence continuing along the centerline of Segment 2 S 84° 21' 18.02" E for a distance of 3,842.47 feet, said point having a coordinate value of North 733,260.33 feet and East 967,278.44 feet; thence continuing along the centerline of Segment 2 N 84° 15' 41.97" E for a distance of 11,927.48 feet to the Three Nautical Mile Limit, said point having a coordinate value of North 734,452.90 feet and East 979,146.15 feet.

Attachment A
Page 10 of 13 Pages
Easement No. 30537

Said Easement Area being 18,221.20 feet in length and containing an area of 182,212.00 square feet or 4.18 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 11 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 3

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range 43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet; thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N 85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True Point of Beginning of Atlantica-1, Conduit 3 Easement Area said point having a coordinate value of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on either side of centerline; thence continuing along the centerline S 78° 28' 08.17" E, a distance of 2,479.89 feet to the end of Conduit 3, said point having a coordinate value of North 733,474.71 feet and East 963,455.80 feet.

Said Easement Area being 2,479.89 feet in length and containing an area of 24,798.90 square feet or 0.57 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001, A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 12 of 13 Pages
Easement No. 30537

DESCRIPTION OF A 10-FOOT WIDE EASEMENT AREA
FOR THE ATLANTICA-1
FIBER OPTIC TELECOMMUNICATIONS CABLE SYSTEM

CONDUIT 4

FROM THE ANGLE POINT OF CONDUITS TO THE END OF CONDUIT

A ten foot wide easement over, across and through a portion of submerged land of the Atlantic

Ocean, and lying east of Lots 137 and 138 of "Boca Ratone Por La Mar", according to the plat

thereof, as recorded in Plat Book 11, Page 67, of the Public Records of the County of Palm

Beach, State of Florida and being more particularly described as follows:

COMMENCING at the intersection of the centerline of Wave Crest Way and the centerline of

Palmetto Park Road, also being the Northwest corner of Section 28, Township 47 South, Range

43 East; thence N 88° 59' 00" E, on the north line of said Section 28, a distance of 400.57 feet;

thence S 02° 22' 25" W, on the centerline of State Route A1A, a distance of 301.73 feet; thence N

85° 12' 44" E, a distance of 291.2 feet to the Mean High Water Line; thence continuing along

said centerline N 85° 12' 44" E a distance of 108.8 feet to the Angle Point of Conduits, the True

Point of Beginning of Atlantica-1, Conduit 4 Easement Area said point having a coordinate value

of North 733,970.44 feet and East 961,025.96 feet based on the Florida State Plane Coordinate

System, East Zone, North American Datum of 1983; said Easement Area extending 5 feet on

either side of centerline; thence continuing along the centerline S 74° 49' 34.11" E, a distance of

2,518.84 feet to the end of Conduit 4, said point having a coordinate value of North 733,311.14

feet and East 963,456.99 feet.

Said Easement Area being 2,518.84 feet in length and containing an area of 25,188.40 square feet

or 0.58 acres; more or less.

The above description is based on the alignments shown on Drawing Numbers A1BR001,

A1BR002 and A1BR003, "Ocean Route to Three Nautical Mile Limit - Geometric Layout".

Attachment A
Page 13 of 13 Pages
Easement No. 30537

Book16090/Page1253                    Page 13 of 13

I hereby certify the foregoing is a true copy of the record in my office
with redactions, if any as required by law as of this day, Feb 27, 2020.
Sharon R. Bock, Clerk and Comptroller, Palm Beach County, Florida
BY _____ Deputy Clerk

# EXHIBIT K

# NasonYeager

### GERSON, HARRIS & FUMERO, P.A.
ATTORNEYS AT LAW    Est. 1960

MICHAEL H. NULLMAN

E-MAIL ADDRESS:
mnullman@nasonyeager.com

DIRECT DIAL:
(561) 471-3500

DIRECT FAX:
(561) 282-1096

January 8, 2021

**Via Fedex Overnight**
Office of Governor Ron DeSantis
Attn: Governor Ron DeSantis
State of Florida
The Capitol
400 S. Monroe St.
Tallahassee, FL 32399-0001
**And Via Email:**
GovernorRon.Desantis@eog.myflorida.com

**Via Fedex Overnight**
Office of the Attorney General
Attn: Attorney General Ashley Moody, Esq.
State of Florida
PL-01 The Capitol
Tallahassee, FL 32399-1050
**And Via Email:**
Ashley.moody@myfloridalegal.com

**Via Fedex Overnight**
Office of the Chief Financial Officer
Attn: CFO Jimmy Patronis
Plaza Level 11, The Capitol
Tallahassee, Florida 32399
**And Via Email:**
CFO.Patronis@MyFloridaCFO.com

**Via Fedex Overnight**
Florida Department of Environmental
Protection
Attn: Noah Valenstein, Secretary
3900 Commonwealth Boulevard M.S. 49
Tallahassee, FL 32399
**And Via Email:**
Noah.valenstein@dep.state.fl.us

**Via Fedex Overnight**
Office of the Commissioner of Agriculture
and Consumer Services
Attn: Commissioner Nicole "Nikki" Fried
Plaza Level 10
The Capitol
400 S. Monroe St.
Tallahassee, FL 32399-0800
**And Via Email:**
Nikki.Fried@FDACS.gov

**Via Fedex Overnight**
Board of Trustees of the Internal
Improvement Fund of the State of Florida
3900 Commonwealth Blvd., MS 100
Tallahassee, FL 32399-3000

Re:    **Notice of Potential National Security Threat and Endangerment of Homeland
Security in the Case of Foreign Powers Utilizing Private Property and Florida
State-Owned Properties**

Seacoast National Centre | 3001 PGA Boulevard | Suite 305 | Palm Beach Gardens, Florida 33410
Telephone (561) 686-3307 | Main Facsimile (561) 686-5442 | www.nasonyeager.com

PALM BEACH GARDENS | BOCA RATON

South Spanish Trail
January 8, 2021
Page 2 of 4

To Florida's State-owned Lands Board of Trustees and Fiduciaries:

Our firm represents South Spanish Trail, LLC, a Florida limited liability company ("SST"), which is the owner of real property appurtenant to the Intracoastal Waterway ("SST's Property") located in Palm Beach County, within the municipality of the City of Boca Raton (the "City"). SST discovered and notified the State Board of Trustees and their fiduciaries that an entity known as Globenet Cabos Submarinos America Inc. (formerly Atlantica USA LLC and/or Brasil Telecom of America, Inc.) along with other foreign owned affiliates (collectively, "Globenet") constructed and is maintaining conduits, cables and high voltage electricity transmission lines (the "Cable System") upon SST's Property, which the City purported to authorize by issuing permits to construct these facilities through SST's Property (without obtaining SST's or any of its predecessors in title consent) in the years 1999 to 2001. Similarly, the State of Florida (the "State") and Globenet are the "of record" parties in Board of Trustees of the Internal Improvement Trust Fund (the "BOT") sovereign land easements, and Florida Department of Transportation (the "FDOT") rights-of-way permits (the "State Agreements"), through which the State granted Globenet a non-exclusive right to occupy and maintain its Cable System across "sovereign land" and certain FDOT rights-of-ways, for which Globenet paid/pays compensation to the State. Another Cable System entity, Caribbean Crossings, Ltd., Inc. ("CC"), which, to our knowledge, never obtained any permits or usage or easement agreement from the State to occupy and/or use SST's Property or FDOT rights-of-ways, is utilizing at least one of Globenet's conduits, also without SST's consent.

SST provided official correspondence to the State giving notice of its claim pursuant to Fla. Stat. § 768.28(6)(a) (the "§768.28 Notice") that resulted from the Florida Department of Environmental Protection's (the "FDEP")[1] issuance of an Environmental Resource Permit, record number 50-0163252-001 (the "ERP"), ostensibly authorizing Globenet to construct and install the Cable System under and through SST's property, without SST's knowledge of or any form of consent, approval or authorization from the then-owner of SST's Property. Despite SST's giving formal notice of the alleged invalidity of the subject ERP, the State and the FDEP have done nothing, which is contrary to applicable law and certain permit conditions that are specified in the ERP. The State is aware that SST is engaged in active litigation[2] (the "Litigation") with Globenet and CC, regarding Globenet and CC's alleged unauthorized use and occupancy of SST's property.

SST has recently learned that not only are Globenet and CC utilizing and occupying SST's property without SST's consent or use authorization or lease agreement or any easement or other covenant running with the land, and also are knowingly and on notice they are not in compliance

---

[1] See South Spanish Trail, LLC's Notice of Claim Pursuant to Fla. Stat. §768.28(6)(a) dated January 29, 2020 attached hereto as *Exhibit 1*.

[2] *South Spanish Trail, LLC v. Globenet Cabos Submarinos America Inc. et al.*, Palm Beach County Circuit Court Case No. 50-2020-CA-002024

South Spanish Trail
January 8, 2021
Page 3 of 4

with the ERP, but Globenet[3] (and potentially CC as well) has leased, sold capacity and/or spectrum, and otherwise granted rights, licenses and/or permission to private companies (the "Agreements") to utilize the Cable System to transmit additional quantities  of data/spectrum/wavelength across the SST's property without SST's consent or compensation.

**Notably, some of the Agreements may involve officially identified adversary government-owned foreign companies that are currently "Blacklisted" and under federal investigation, including  the Federal Communications Commission, the U.S. Department of Defense, the U.S. Department of Homeland Security, and/or by the U.S. Department of Justice, for posing a significant threat to U.S. national security and law enforcement interests. Thus, not only is Globenet trespassing upon SST's Property, but it may be utilizing SST's Property through the use of the Cable System to aid and abet espionage and the endangerment of homeland security. In fact, some of these foreign companies are among dozens of foreign companies that have been added to a trade blacklist by the United States government, but are nevertheless operating in the United States indirectly through Globenet. Moreover, at least some of these foreign companies are subject to a Presidential Executive Order prohibiting United States acquiring products and services from, or making investments in these companies**. Globenet is both doing business with some of the prohibited foreign entities, and paying the State for the use of State lands to conduct these questionable commercial service relationships, possibly creating an inference that the State is condoning the compensation Globenet is receiving from these adversary state-owned foreign companies through the state-issued Agreements.

The contemporary presence of adversary state-owned or controlled carriers in American networks is a well-known public and government concern.  Certainly, SST does not want to be involved in any way, directly or indirectly, in subsidizing, aiding, and/or abetting a foreign company that may be engaging in espionage and endangering U.S. national security.  Presumably, the State does not want to be a third-party "unintentional participant" in any activity being conducted to circumvent the executive orders of the President of the United States.  Worth noting, a State of Florida fiduciary and BOT representative has confirmed, through deposition testimony, that Florida requires each company utilizing state property to obtain a separate individual agreement in order for that identified person or entity to occupy or traverse the State's property.

Considering the State is home to a concentrated hub of fiber-optic internet connections to the world, the State may want to order an investigation into these circumstances in order to protect the public from illegitimate access to private and personal data (including potentially data belonging to the State and its agencies), and the identified national privacy and intellectual property concerns as set out in the referenced Presidential Executive Order.  From our perspective, it seems crucial that a State law enforcement investigation of potential non-compliance by Globenet (and perhaps also CC) is initiated immediately, given the magnitude and parameters of

---

[3] Upon information and belief, CC never obtained any agreement to utilize State lands within the Intracoastal Waterway.

South Spanish Trail
January 8, 2021
Page 4 of 4

the homeland security concerns.  As such, please let us know whether there is anything we can do to assist with the process.

Kindly advise as soon as possible what steps the State is taking to address these concerns, and please contact me, or Ricardo Reyes of Tobin & Reyes, P.A., who is lead counsel in the Litigation, should you have any questions or desire any assistance from us and/or our client.

Very Truly Yours,

NASON, YEAGER, GERSON,
HARRIS & FUMERO, P.A.

Michael H. Nullman

cc:     South Spanish Trail, LLC (*via email*)
        Ricardo Reyes, Esq. (*via email*: rar@tobinreyes.com)

# EXHIBIT L



GERSON, HARRIS & FUMERO, P.A.
ATTORNEYS AT LAW    Est. 1960

MICHAEL H. NULLMAN

E-MAIL ADDRESS:
mnullman@nasonyeager.com

DIRECT DIAL:
(561) 471-3500

DIRECT FAX:
(561) 282-1096

January 14, 2021

**Via Fedex Overnight**
Office of Governor Ron DeSantis
Attn: Governor Ron DeSantis
State of Florida
The Capitol
400 S. Monroe St.
Tallahassee, FL 32399-0001
**And Via Email:**
GovernorRon.Desantis@eog.myflorida.com

**Via Fedex Overnight**
Office of the Chief Financial Officer
Attn: CFO Jimmy Patronis
Plaza Level 11, The Capitol
Tallahassee, Florida 32399
**And Via Email:**
CFO.Patronis@MyFloridaCFO.com

**Via Fedex Overnight**
Office of the Commissioner of Agriculture
and Consumer Services
Attn:  Commissioner Nicole "Nikki" Fried
Plaza Level 10
The Capitol
400 S. Monroe St.
Tallahassee, FL 32399-0800
**And Via Email:**
Nikki.Fried@FDACS.gov

**Via Fedex Overnight**
Office of the Attorney General
Attn: Attorney General Ashley Moody, Esq.
State of Florida
PL-01 The Capitol
Tallahassee, FL 32399-1050
**And Via Email:**
Ashley.moody@myfloridalegal.com

**Via Fedex Overnight**
Florida Department of Environmental
Protection
Attn: Noah Valenstein, Secretary
3900 Commonwealth Boulevard M.S. 49
Tallahassee, FL 32399
**And Via Email:**
Noah.valenstein@dep.state.fl.us

**Via Fedex Overnight**
Board of Trustees of the Internal
Improvement Fund of the State of Florida
3900 Commonwealth Blvd., MS 100
Tallahassee, FL 32399-3000

Re:    **Notice of Violation of Executive Order on Preventing Online Censorship Upon
and Through State Lands**

Seacoast National Centre | 3001 PGA Boulevard | Suite 305 | Palm Beach Gardens, Florida 33410
Telephone (561) 686-3307 | Main Facsimile (561) 686-5442 | www.nasonyeager.com

PALM BEACH GARDENS | BOCA RATON

South Spanish Trail
January 14, 2021
Page 2 of 3

To Florida's State-owned Lands Board of Trustees and Fiduciaries:

As you are aware from our prior correspondence, our firm represents South Spanish Trail, LLC, a Florida limited liability company ("SST"), which is the owner of real property appurtenant to the Intracoastal Waterway ("SST's Property") located in Palm Beach County, within the municipality of the City of Boca Raton (the "City"). As you are also aware, SST has discovered and notified the State Board of Trustees and their fiduciaries that an entity known as Globenet Cabos Submarinos America Inc. (formerly Atlantica USA LLC and/or Brasil Telecom of America, Inc.) along with other foreign owned affiliates (collectively, "Globenet") as well as Caribbean Crossings Ltd. ("CC") and other users of the various fiber optic cables constructed and is maintaining conduits, fiber optic cables and high voltage electricity transmission lines (the "Cable System") upon SST's Property. The State of Florida (the "State") and Globenet are the "of record" parties in Board of Trustees of the Internal Improvement Trust Fund (the "BOT") sovereign land easements, and Florida Department of Transportation (the "FDOT") rights-of-way permits (the "State Agreements"), through which the State granted Globenet a non-exclusive right to occupy and maintain its Cable System across "sovereign land" and certain FDOT rights-of-ways, for which Globenet paid/pays compensation to the State. CC is another cable system company, which, to our knowledge, never obtained any easement agreement from the State to occupy and/or use SST's Property, the State's sovereign land or FDOT rights-of-ways, yet is utilizing at least one of Globenet's conduits with their own cable system, also without SST's consent.

By and through the State Agreements, the State maintains direct and indirect agreements to use state lands with various private media, fiber optic cable companies, including, but not limited to Facebook, Twitter, Snap, Google/YouTube, Telxius, Liberty Media, Amazon and Apple (collectively, "Big Tech") which recently have been and continue to broadly wield their power to arbitrarily employ discriminatory practices against Florida's citizens, by ousting those citizens from its platforms who express social and/or political views that are inconsistent with their opinions. Each of the private cable companies, namely Globenet and CC (which are not telecommunication carriers) have subcontracts with virtually all of the country's largest corporations to use the Cable System, which daisy chain hundreds of additional contracts for the use of State lands for their messaging and free speech suppression. By allowing these companies to operate in and through State lands, the State is publicizing, monetizing and participating in a position that would appear be inconsistent with its bedrock principal of disallowing discrimination and free speech against its citizens, by allowing the use of State lands as a conduit for distribution and suppression of the alternate views of Big Tech.

Indeed, as set forth in the May 28, 2020 Executive Order 13925 on Preventing Online Censorship (the "Executive Order"), and as we know, "[f]ree speech is the bedrock of American democracy." The Executive Order goes on as follows:

In a country that has long cherished the freedom of expression, we cannot allow a limited number of online platforms to hand pick the speech that Americas may access and convey on the internet. This practice is fundamentally un-American and anti-democratic. When large, powerful social media companies censor opinions

South Spanish Trail
January 14, 2021
Page 3 of 3

with which they disagree, they exercise a dangerous power.  They cease functioning as passive bulletin boards, and ought to be viewed and treated as content creators.

Of late, the aforementioned companies, and many others, have not only "hand-picked the speech that Americans may access and convey on the internet," but they have gone as far as to completely oust millions of individuals from their platforms that express opinions inconsistent with their own alternative view.  If they can silence the President of the most powerful country in the world, who is next?  Irrespective of whether their actions are in violation of the law, the State should not be condoning, participating in, and monetizing such behavior by allowing this conduct to continue on and through State lands of all its citizens.  Accordingly, SST suggests and respectfully requests that the State consider immediately discontinuing the State Agreements so long as Globenet continues to allow this unsavory behavior to remain ongoing upon and through State lands, or in the alternative, amending the agreements to not allow the use of State lands by any of the companies suppressing free speech and/or discrimination of Florida's citizens.

Please feel free to conduct me should you require any additional information or if SST can assist in any way.

Very Truly Yours,

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.

Michael H. Nullman

cc:      South Spanish Trail, LLC (*via email*)