UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-cv-80728-AMC

SOUTH SPANISH TRAIL, LLC,

    Plaintiff,

v.

LITTLE CARDINAL, LLC, JOHN FEROLITO SR., JOHN FEROLITO JR, and ALL OTHERS IN POSSESSION BY AND THROUGH LITTLE CARDINAL, LLC AND/OR JOHN FEROLITO JR.,

    Defendants.
_____/

LITTLE CARDINAL, LLC,

    Counter/Third-Party Plaintiff,

v.

SOUTH SPANISH TRAIL, LLC, and BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND OF THE STATE OF FLORDA,

    Counter/Third-Party Defendants.
_____/

SOUTH SPANISH TRAIL, LLC,

    Cross- Plaintiff,

v.

BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND OF THE STATE OF FLORDA, FLORIDA INLAND NAVIGATION DISTRICT, and UNITED STATES OF AMERICA (ARMY CORPS OF ENGINEERS),

    Cross-Defendants.
_____/

1

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Plaintiff, South Spanish Trail, LLC ("SST"), by and through undersigned counsel, hereby replies in support of its Motion for Reconsideration of Order on LCL's and John Ferolito Jr.'s Motion for Summary Judgment ("Motion"), and states:[1]

### I.  SST'S MOTION IS PROCEDURALLY PROPER, AND INDEED NECESSARY TO CORRECT CLEAR ERROR AND PREVENT MANIFEST INJUSTICE

Defendants make a number of meritless, misleading, and outright false assertions in an effort to persuade this Court not to consider SST's Motion on the merits. The Court should reject these procedural arguments out of hand and consider the Motion on the merits so that the clear error described in the Motion can be corrected, and to prevent further manifest injustice to SST.

First, Defendants argue that SST's Motion should not be considered because the proceedings are presently stayed. This is simply not true. Discovery is stayed, and the Court has ordered that no "other motions to dismiss or motions for summary judgment" be filed until after the Court decides whether to remand this matter. SST's instant Motion is not a motion to dismiss or motion for summary judgment, nor is it related to discovery. Accordingly, there is no blanket stay of these proceedings, and the Motion does not violate any Order of this Court.

Moreover, in an abundance of caution, SST felt compelled to file the Motion within ten (10) days of the date of removal of this action, as depending upon how the Court views the Summary Judgment Ruling (and which federal rule applies to SST's Motion – 54(b), 59(e), or 60(b)), the Motion was required to be filed within ten (10) days of removal. As explained in *Resolution Tr. Corp. v. Bakker*, 51 F.3d 242, 244 (11th Cir. 1995) (emphasis added):

> *Jackson* mandates that before this Court will review a state court order or judgment in a case that has been removed to federal court, the party seeking appeal must first file a Rule 59 motion to modify or vacate the judgment in the district court. **Moreover, the motion**

---

[1] Capitalized terms have the meaning ascribed to them in SST's Motion unless otherwise defined herein.

> **must be filed within ten days from the date of removal of the case to federal court**.  If this procedure is complied with, the district court is to consider and decide all issues raised in the Rule 59 motion, and the dissatisfied party may then appeal the district court's decision to this Court.  We will review the district court's decision to grant or deny the Rule 59 motion, not the underlying state court judgment per se.

Second, Defendants argue that the Motion merely recycles arguments that have been rejected "numerous times."  This argument is misleading in that it is based on a procedural history that mischaracterizes the extent to which the arguments raised have been previously considered.  It is true the State court judge denied a prior motion to reconsider his Oct. 5, 2020 Order (in the Caribbean Case), but the other events Defendants misleadingly characterize as motions for reconsideration related to the issues raised herein are not fairly characterized as such.

Specifically, the motions filed on January 19, 2021 (which Defendants define as the "Second Motion for Reconsideration") were, rather, motions for rehearing, clarification, and to amend the Final Judgment entered by the Court in the three related cases to include factual findings and conclusions of law. These motions were necessary because, candidly, the Court's ruling in the Final Judgment was internally inconsistent and unclear in various respects.  Unfortunately, the Court did not hear argument on these motions, and the same were summarily denied.

Meanwhile, the motion for rehearing and/or clarification filed March 11, 2021 in the appellate proceeding (which Defendants define as the "Third Motion for Reconsideration") was simply a 3-page filing that did not discuss the lower Court's ruling on the statute of limitations, and was instead directed to the issues of the appellate court's jurisdiction.  It is patently absurd for Defendants to characterize the March 11th jurisdictional motion as a motion for reconsideration of the Court's Summary Judgment Ruling concerning the statute of limitations.

The reality is that the State court judge made a ruling in his Oct. 5, 2020 Order, and at most substantively reconsidered the merits of that ruling only once, and only in the Caribbean Case. Regardless, and more importantly, however, the Court's ruling in the Oct. 5, 2020 Order, and in the Summary Judgment Ruling (which was based on the Oct. 5, 2020 Order), was **clear error** which has caused, and continues to cause, manifest injustice to SST, and thus SST has every right to, and indeed **must**, ask this Court to reconsider the Summary Judgment Ruling so to prevent further manifest injustice to SST.

Further, Defendants' reliance on the *Rooker-Feldman* doctrine is likewise frivolous. That doctrine bars "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994); *see also Behr v. Campbell*, 18-12842, 2021 WL 3559339, at *1 (11th Cir. Aug. 12, 2021) ("Though one might not always know it from reading federal cases, *Rooker-Feldman* is a narrow jurisdictional doctrine. It simply establishes that a party who loses a case in state court cannot appeal that loss in a federal district court."); *accord Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

The *Rooker-Feldman* doctrine simply does not apply here. There is no appealable Final Judgment in this case and multiple claims remain pending as explained in the Motion. Indeed, SST's attempt to appeal the Summary Judgment Ruling was denied because the State appellate court did not find such ruling to be a final appealable order, or a non-final order subject to appeal. Nor is SST arguing in the Motion that the Summary Judgment Ruling violated its federal rights.

Moreover, even if there were an appealable final judgment, this Court would still be entitled to reexamine such judgment pursuant to a motion brought under Federal Rule of Civil

Procedure 59 and/or 60, and if such a motion was denied, it would be appealable to the Eleventh Circuit Court of Appeals.  *See Jackson v. Am. Sav. Mortg. Corp.*, 924 F.2d 195, 198 (11th Cir. 1991) ("After removal, state court proceedings are treated as those of the district court, *Savell v. Southern Ry.*, 93 F.2d 377, 379 (5th Cir.1937), and the district court naturally is able to reexamine its own proceedings.  As we recognized in regard to a district court's authority to rule on a claim despite the state court's summary judgment, 'a state court judgment in a case removed to federal court does not foreclose subsequent proceedings in the case in federal court.'  *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1252 (11th Cir.1988) (citations omitted).  '[A] federal district court may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal.'"); *accord Bakker*, 51 F.3d 242; *Aurora Loan Services, LLC v. Allen*, 762 Fed. Appx. 625, 628 (11th Cir. 2019).

In sum, the Motion is procedurally proper, and is indeed the only procedural vehicle presently available to remedy the State court's clear error.  Accordingly, Defendants' procedural arguments are meritless, and the Court should consider SST's Motion on its merits.

**II.    THE STATE COURT COMMITTED CLEAR ERROR THAT MUST BE CORRECTED TO PREVENT FURTHER MANIFEST INJUSTICE**

Defendants make several fundamental errors and misstatements in trying to defend the State court's clearly erroneous Summary Judgment Ruling.  As a threshold matter, Defendants effectively seek to ignore the actual statute under which SST brought its unlawful detention claim.  The Defendants do this because they cannot otherwise avoid the plain fact that SST validly pled all the elements of an unlawful detention claim as set forth in Chapter  82, Florida Statutes ("Chapter 82").

As explained in the Motion, and contrary to the Summary Judgment Ruling and Defendants' argument, there is no requirement in Chapter 82 that the initial entry onto the subject

land be with the consent of the property owner and that this be followed by a subsequent withdrawal of consent to state a claim for unlawful detention.  Rather, to state a claim for unlawful detention, the plaintiff need merely allege that the defendant is (1) possessing real property (2) without the consent of a person entitled to possession **or** after withdrawal of consent by such person.  *See* Fla. Stat., § 82.01(4), § 82.03(1).  Here, **that is precisely what SST alleged** – namely, that Defendants are possessing SST's Property without SST's consent.  As such, SST stated a valid claim for unlawful detention, and Defendants' (and the State court's) focus on whether SST and/or its predecessors had ever given consent to Defendants (such that it could be withdrawn) is merely a red herring.

Further, even if prior consent of the landowner followed by withdrawal of such consent *were* a requirement for stating a claim for unlawful detention (which it is not), there is, at minimum, an issue of fact as to whether or not SST's predecessor-in-title gave consent to Defendants.  While Defendants stated in their MSJ (at p. 8) that "Plaintiff alleges that no purported prior owner has provided consent," citing to paragraph 27 of the Amended Complaint, this is not accurate.  Paragraph 27 merely states that "[t]here is no evidence in the public record showing that any predecessor in title or interest to SST authorized Little Cardinal and/or Ferolito Jr. to install, maintain, use and/or enjoy the Docks upon any portion of the Property."  This allegation does not preclude the possibility that Defendants obtained consent for the Docks from SST's predecessor-in-title, and Defendants did not produce any evidence in support of the MSJ establishing that they did not have such consent.  Therefore, even if Chapter 82 required a withdrawal of consent to state an unlawful detention claim (which it does not by its plain language), Defendants failed to meet their burden on this issue so as to entitle them to summary judgment.[2]

---

[2] In their response to the Motion ("Resp."), Defendants argue that the State court's ruling was based on several undisputed facts, including that neither SST nor any of its predecessors-in-interest consented to the Docks, citing to

Related to Defendants' failure to respect the plain language of Chapter 82, the Defendants also mistakenly suggest that an unlawful detention claim accrues when the plaintiff is deprived of possession, citing to *Florida Athletic & Health Club v. Royce*, 33 So. 2d 222 (Fla. 1948). Resp., p. 14. But *Florida Athletic* was an unlawful ***entry*** case, not an unlawful ***detention*** case, and of course moreover was decided prior to the current version of Chapter 82. As such, Defendants' argument that SST's claim accrued at the time the Docks were constructed is inapposite, to the extent the concept of accrual is even relevant in this context (as discussed below). If anything, SST's unlawful detention claim accrued when SST made clear to Defendants that they did not have SST's consent to be on the Property, yet Defendants failed to remove themselves and the Docks from the Property, resulting in this lawsuit. Regardless, the date the Docks were constructed **is entirely irrelevant** to the statute of limitations analysis.

Defendants also attempt to rely upon one sentence in a Staff Analysis to suggest the Court should ignore the plain and unambiguous wording of Chapter 82. Defendants' argument is wholly unpersuasive, and to elevate this Staff Analysis, let alone one sentence thereof, above the clear and unambiguous language of the statute would be error:

> It is a fundamental principle of statutory interpretation that legislative intent is the "polestar" that guides this Court's interpretation. We endeavor to construe statutes to effectuate the intent of the Legislature. **To discern legislative intent, we look "primarily" to the actual language used in the statute. Further, "[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language** for legislative intent or resort to rules of statutory construction to ascertain intent."

*Whynes v. Am. Sec. Ins. Co.*, 240 So. 3d 867, 869 (Fla. 4th DCA 2018) (quoting *Borden v. East–European Ins. Co.*, 921 So.2d 587, 595 (Fla. 2006)); *see also Searcy, Denney, Scarola, Barnhart*

---

SST's initial Complaint. Resp., p. 15. **This is wrong**, as SST had filed an Amended Complaint, which is the pleading to which Defendants' MSJ was directed, and as discussed above, SST made no such allegation in that pleading.

*& Shipley, etc. v. State*, 209 So. 3d 1181, 1189 (Fla. 2017) ("When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.") (internal citations and quotations omitted).

Moreover, "[e]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." *State v. Peraza*, 259 So. 3d 728, 733 (Fla. 2018) (quoting *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So.2d 1071, 1073 (Fla. 1982) (internal quotations omitted)). As the Florida Supreme Court aptly stated in *Peraza*, "[b]ecause even a clearly discernible Legislative intent cannot change the meaning of a plainly worded statute, it would only confuse matters to focus on what the Legislature might have intended rather than what the statute actually says." 259 So. 3d at 733 (emphasis added).

Further, even if the Court were to give any consideration to the Staff Analysis, the single sentence therein relied upon cannot overcome the plain language of the statute, and/or does not necessarily conflict with such plain language. The subject sentence merely says that the definitions created by the bill are consistent with current common law but does not speak to the elements required to plead and prove a claim for unlawful detention (or for forcible or unlawful entry). As such, Defendants' argument that this single sentence in the Staff Analysis overcomes the plain language of the statute confers far more meaning to this sentence than is justified. *See, e.g., Jimenez v. State*, 246 So. 3d 219, 229 (Fla. 2018) (rejecting attempt to rely on single sentence in staff analysis to determine the meaning of a word in a statute).

In sum, the current statute did not displace common law, but rather amended the existing statute governing causes of action for forcible/unlawful entry and unlawful detention. Thus, the

new statute merely displaced the prior version of the statute. Specifically, the prior version of Section 82.04 required, for an unlawful detention claim, peaceable and lawful entry followed by a withdrawal of consent, and the current version of the statute no longer requires those elements for an unlawful detention claim. Moreover, even if the July 2018 revision of Chapter 82 could be viewed as changing the common law by removing certain previously required elements of an unlawful detention action, the revised statute must be deemed to have changed the common law because the amended statute cannot coexist with the common law. *See Wyche v. State*, 232 So. 3d 1117, 1119 (Fla. 1st DCA 2017) ("Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.") (quoting *Thornber v. City of Fort Walton Beach*, 568 So.2d 914, 918 (Fla. 1990) (internal quotations omitted)).

Not surprisingly, Defendants also repeatedly seek to blur the distinction between unlawful entry claims and unlawful detention claims (both of which are governed by the unlawful detainer statute). They do this because they wish to tie SST's unlawful detention claim to the date that the Docks were constructed for purposes of their faulty statute of limitations analysis. But for the reasons explained herein, and in the Motion, that date is irrelevant. SST is not suing for Defendants' unlawful entry onto the Property, but rather for their unlawful detention.

**Related, and most importantly, however**, Defendants' entire argument is premised on the date the Docks were constructed, combined with their misreading and/or misapplication of Chapter 95, Florida Statutes, which sets forth the applicable statute of limitations for claims concerning possession of real property, such as SST's unlawful detention claim. As explained in the Motion, Chapter 95 provides that, as long as the plaintiff in an action to recover real property

or its possession brings such action within seven (7) years of the plaintiff (or its predecessor) having title to (*i.e.*, seized) or being in possession of the property, the action is timely.

Thus, Chapter 95 does not look at when a claim "accrued" *per se* for purposes of applying a statute of limitations, which is why Defendants' (and the State court's) focus on the time SST's claim purportedly accrued is entirely misplaced. Rather, Chapter 95 looks at whether the plaintiff has had title to and/or been in possession of the subject property within the past seven (7) years, and if so, then the action is timely. It is as simple as that.

And it is also for this reason, including the fact that *when* the Docks were constructed on the Property is wholly irrelevant to the statute of limitations analysis applicable to a claim for possession of real property, that of course the current version of Chapter 82 applies. There is simply no basis to apply the version of Chapter 82 in place in 2005. SST sued in 2020, under the current version of Chapter 82, and thus it is <u>that</u> statute which applies, and the statute of limitations analysis applicable to SST's claim is necessarily governed by Chapter 95.[3]

Accordingly, Defendants' argument that, even if the seven-year limitations period of Chapter 95 applied (and Defendants never explain why it would not apply), SST's claim would have expired in 2012 (seven years after the Docks were constructed in 2005), **is meritless**. Again, Chapter 95 does not look at when a claim accrued, and then count seven years from then to apply a statute of limitations. Chapter 95 looks at whether, at the time a plaintiff files suit, the plaintiff has had title to or been in possession of the subject property within the **past** seven (7) years. Here,

---

[3] Notably, even if the prior unlawful detainer statute applied (which it does not), the three-year deadline therein relied upon by the State court and by Defendants only applies to the ability of a plaintiff to invoke the summary procedure and is not a deadline by which a plaintiff can bring an unlawful detainer claim. Indeed, this is clear because Chapter 95 also existed at the time of the prior unlawful detainer statute, and it was, and still is, the statute that governs the statute of limitations for claims for possession of real property.

of course SST is the undisputed record titleholder of the Property, and thus is clearly entitled under Chapter 95 to bring an action for possession of the Property, such as an unlawful detention claim.

Finally, **it is critical that the State court's clear error be corrected, as such error has caused and continues to cause manifest injustice to SST**. SST was, and still is, entitled to bring an unlawful detention claim against Defendants based upon them unlawfully possessing and detaining SST's Property by virtue of the existence of the Docks on the Property and/or by Defendants' use and enjoyment of the Docks/Property. Moreover, by dismissing SST's unlawful detention claim, the Court deprived SST of the ability to utilize the summary procedure set forth in Section 51.011, Florida Statutes, designed to quickly adjudicate such disputes. *See* Fla. Stat. § 82.03(4) ("All actions under this chapter must be brought by summary procedure as provided in s. 51.011, and the court shall advance the cause on the calendar."). Thus, as a consequence of the State court's clear error, this matter has been subjected to significant motion practice and procedural gamesmanship by Defendants that would not have been possible (or at least would have been far less detrimental) had the summary procedure been followed. This has already caused the action to drag on for well over a year, and to now have found its way to this federal Court. This is manifestly unjust to SST, and thus the State court's clear error must be corrected.

Accordingly, for the reasons set forth herein, and in the Motion, reconsideration is warranted, and the Court should vacate the Summary Judgment Ruling and enter an Order denying Defendants' MSJ.

Respectfully submitted,

s/Sacha A. Boegem
Ricardo A. Reyes, FBN 864056
Sacha A. Boegem, FBN 0024930
Carrie S. Robinson, FBN 354030
TOBIN & REYES, P.A.
*Attorneys for South Spanish Trail, LLC*
Mizner Park Office Tower
225 N. E. Mizner Blvd., Suite 510
Boca Raton, FL 33432
Phone: (561) 620-0656
Fax:    (561) 620-0657
eservice@tobinreyes.com
rar@tobinreyes.com
sboegem@tobinreyes.com
csrobinson@tobinreyes.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of said filing to all CM/ECF participants.

s/Sacha A. Boegem
Sacha A. Boegem, FBN 0024930