**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NOS:  21-80728-CIV-CANNON**
**21-81206-CIV-CANNON**
**21-81207-CIV-CANNON**
**21-81208-CIV-CANNON**

**SOUTH SPANISH TRAIL, LLC,**

   **Plaintiff,**

**v.**

**GLOBENET CABOS SUBMARINOS**
**AMERICA, INC., CARIBBEAN CROSSINGS**
**LTD., INC., and JOHN DOES 1-100,**

   **Defendants.**
_____/

**SOUTH SPANISH TRAIL, LLC,**

   **Plaintiff,**

**v.**

**GLOBENET CABOS SUBMARINOS**
**AMERICA, INC., and ALL OTHERS IN POSSESSION,**

   **Defendants.**
_____/

**SOUTH SPANISH TRAIL, LLC,**

   **Plaintiff,**

**v.**

**CARIBBEAN CROSSINGS, LTD., INC.**
**and ALL OTHERS IN POSSESSION,**

   **Defendants.**
_____/

**SOUTH SPANISH TRAIL, LLC,**

   **Plaintiff,**

**v.**

**LITTLE CARDINAL, LLC, JOHN FEROLITO, SR.,**

**JOHN FEROLITO JR., and ALL OTHERS IN**
**POSSESSION BY AND THROUGH LITTLE**
**CARDINAL, LLC and/or JOHN FEROLITO, JR.,**

   **Defendants.**
_____/

**CROSS-DEFENDANT UNITED STATES ARMY CORPS OF**
**ENGINEERS' OMNIBUS MOTION TO BE DROPPED AS A PARTY, OR**
**IN THE ALTERNATIVE, TO DISMISS CROSS-PLAINTIFF'S FIRST AMENDED**
<u>**CROSS-COMPLAINT AND COMPANION CROSS-COMPLAINTS**</u>

## <u>TABLE OF CONTENTS</u>

Introduction ..................................................................................................................1

I.      SUMMARY OF THE CORPS' ARGUMENT ...............................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.......................................2

III.    MEMORANDUM OF LAW ...........................................................................5

    A.    The Corps Is Misjoined In This Action As A Cross-Defendant,
        And Therefore Should Be Dropped Or Dismissed As A Party .......................5
        1.   Legal Standard Under Rule 13 And Rule 21 ........................................5
        2.   Pursuant To Rule 13, A Crossclaim Cannot Be Brought Solely
             Against A Stranger To The Litigation ...................................................7
    B.    The Court Lacks Subject Matter Jurisdiction ...............................................9
        1.   Legal Standard Under Rule 12(b)(1) ....................................................9
        2.   SST Lacks Article III Standing Because It Cannot Allege A
             Case Or Controversy Against The Corps.............................................10
             a.   There Is No Injury In Fact To SST ...........................................11
             b.   SST's Claimed Injuries Were Not Caused By The Corps .................15
             c.   The Requested Relief Will Not Remedy the Alleged Injury .............16
        3.   Plaintiff May Not Evade the Strictures Of The QTA By Seeking
             Review Of Their Quiet Title Action Under Some Other Statute............17
        4.   The Waiver Of Sovereign Immunity Contained Within The
             QTA Proscribes Relief Under the APA .................................................18
        5.   The Statute of Limitations Has Expired On Any Possible Claim
             To Quiet Title To The United States' 1935 Easement On The Property.................19
        6.   SST's Taking Clause Claim Is Premature, As SST Has Failed
             To First Seek Just Compensation In The Court Of Federal Claims ........22
    C.    The Cross-Complaints Are "Classic Examples" Of A Pleading's
        Allegations Being Directly Contradicted By Its Exhibits, Thereby
        Failing To State A Cause of Action ...............................................................23
        1.   Legal Standard Under Rule 12(b)(6) ..................................................23
        2.   Count I Fails To State A Claim Under The QTA Based On
             The Plain Language Of The 2020 Corrective Consent To Easement.....................24
        3.   Counts II And III Fail To State A Cause of Action, Because
             The Exhibits Establish That No "Taking" Occurred .............................26
        4.   Count IV Fails To State A Claim Because The Plaintiff
             Has Not Stated a Violation Of The Rivers & Harbors Act......................28
        5.   Count V ("Permanent Mandatory Injunction") Is Not a
             Valid Cause of Action............................................................................31

IV.     CONCLUSION...............................................................................................32

Cross-Defendant, United States of America Army Corps of Engineers ("Corps") respectfully files the instant omnibus motion,[1] seeking to be dropped as a party from South Spanish Trail, LLC's ("SST") First Amended Cross-Complaint and Cross-Complaints in the above four cases pursuant to Rules 13(g) and 21 for improper joinder.  Should the Court determine that the Corps is properly joined as a party, the Corps moves for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction over all the asserted crossclaims.  Alternatively, should the Court determine it does have jurisdiction, dismissal is still appropriate pursuant to Rule 12(b)(6), as SST has failed to state a single viable crossclaim against the Corps.

## I.   SUMMARY OF THE CORPS' ARGUMENT

SST's pleadings defy the Federal Rules of Civil Procedure by impermissibly asserting independent crossclaims against the Corps, a third-party.  Rule 13 provides supplemental jurisdiction to join third-parties in conjunction with a crossclaim only when each crossclaim is asserted against ***both*** an already named "coparty" and the new third-party.  As a stranger to the litigation, the Corps cannot be joined via independent crossclaims.  On this ground alone, the Corps should be dropped as a party and Counts II–V of the cross-complaints should be dismissed.  If the Court also dismisses Count I as to the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida ("Trustees") (or severs this claim against the Trustees and remands it to state court along with the corresponding counterclaims), then the Corps should be dismissed altogether as an improperly joined party, because Count I is the only common crossclaim against both the Corps and the original third-party defendant – the Trustees.

---

[1] The Corps files the instant motion pursuant to the Court's orders consolidating the four related cases [Dkt. 132] and permitting a single, omnibus motion to dismiss SST's four cross-complaints. [Dkt. 136] The four operative cross-complaints can be found at Case Nos. 21-cv-80728 Dkt. 106; 21-cv-81206 Dkt. 8-3; 21-cv-81207 Dkt. 7-4; and 21-cv-81208 Dkt. 7-5. Unless otherwise noted, all references to specific portions of SST's pleadings come from the First Amended Cross-Complaint filed in Case No. 21-c'v-80728, Dkt. 106.

Should the Court proceed to its determination of jurisdiction, SST has failed to allege a case or controversy sufficient to invoke this Court's jurisdiction.  Additionally, Count I of the cross-complaints seeks to quiet title to four parcels of land pursuant to the Quiet Title Act, 28 U.S.C. § 2409a ("QTA").  The QTA has an express 12-year statute of limitations that accrues when the plaintiff, or the plaintiff's predecessor in interest, knows, or should have known, of the claim of the United States. The QTA's statute of limitations is a jurisdictional bar to suit. Accordingly, any claim that accrued prior to 1960—12 years before the passage of the QTA—is forever foreclosed.  As the pleadings establish that SST's predecessor in interest knew or should have known of the United States' claim to an easement interest in the property at issue as early as 1935, any action to quiet title as to those easements is in violation of the QTA's 12-year statute of limitations and forever foreclosed.  The QTA further preempts SST's cause of action asserted pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 ("APA").

In the alternative, the Court should dismiss the cross-complaints in their entireties for failing to state a claim.  SST's allegation that "by issuing the 2020 [Corrected] Consent [to Easement] to Globenet," the Corps has "assert[ed] a new or expanded interest in the SST property beyond the scope of the [original 1935] Federal Easement" [Dkt. 106, ¶111] is a manufactured controversy that is directly refuted by the pleadings' exhibits and controlling law.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

This is a dispute over who owns certain real property submerged beneath the Intracoastal Waterway.[2]  As described within SST's pleadings against the original defendants, the real property at issue is four parcels of land located in Palm Beach County, FL (collectively, the "Property"). *Compare* Case Nos. 21-cv-80728 Dkt. 46-1, ¶¶42-47; 21-cv-81206 Dkt. 8-1, ¶¶7-

---

[2] The Intracoastal Waterway is a navigable waterway that runs the length of the eastern seaboard. It was constructed in the mid-1930s and 1940s by the United States through the Corps.

10; 21-cv-81207 Dkt. 7-1, ¶¶7-12; and 21-cv-81208 Dkt. 7-3, ¶¶9-12.  SST claims to be the fee-simple record title holder to the Property, alleging the Trustees conveyed the Property to the private ownership of SST's predecessors via an 1883 deed.  [Dkt. 106, ¶¶10, 26, 27].  The other defendants, including Globenet Cabos Submarinos America, Inc. ("Globenet"), Caribbean Crossings, LTD, Inc. ("Caribbean"), Little Cardinal, LLC ("Little Cardinal"), John Ferolito Sr. and Jr. (the "Ferolitos"), and the Trustees dispute this, and assert that the Property is actually sovereign land held by the Trustees in trust for the people of the State of Florida.

Approximately twenty years ago, Globenet laid telecommunication cables beneath the Property.  [Dkt. 66-1, ¶61].  Approximately sixteen years ago, Little Cardinal installed docks on the Property.  In November 2018, SST filed its first lawsuit against Globenet in Palm Beach County Court for unlawful detainer.  [Case No. 21-cv-81206 Dkt. 8-1].  Over the next two years, SST proceeded to file three additional state court lawsuits against Globenet, Caribbean, Little Cardinal, and the Ferolitos.  [*See* Case Nos. 21-cv-81207 Dkt. 7-1; 21-cv-81208 Dkt. 7-3; and 21-cv-80728 Dkt. 66-1].  In each of these four lawsuits, SST demanded the defendant's ejectment from the property under claims of trespass, unlawful detainer, and slander of title.  The defendants responded in each lawsuit with a counterclaim against SST and a third-party complaint against the Trustees, seeking a declaration as to the Property's true owner.  In response, SST filed a cross-complaint against the Corps in each of the state court cases,[3] asserting five identical crossclaims: Declaratory Relief under the Quiet Title Act (Count I); Violation of the Takings Clause of the Fifth Amendment, U.S. Constitution (Count II); Violation

---

[3] The United States timely removed SST's original cross-complaint to federal court, and then moved to dismiss for lack of subject matter jurisdiction.  [Case No. 21-cv-80728 Dkt. 67].  In response, SST amended its cross-complaint by substituting the Corps for the United States, adding cross-defendant Florida Inland Navigation District ("FIND"), and asserting five new crossclaims.  [Dkt. 106].  SST then simultaneously filed three additional cross-complaints against the Corps in the related state court litigation.  The Corps timely removed each of these three cases to federal court.

of SST's Procedural Due Process Rights (Count III); Violation of the Rivers & Harbors Act under the Administrative Procedure Act (Count IV); and Permanent Mandatory Injunction (Count V).  [*Compare* 21-cv-80728 Dkt. 106; 21-cv-81206 Dkt. 8-6; 21-cv-81207 Dkt. 7-4; and 21-cv-81208 Dkt. 7-5].

As all the entities who claimed title to the Property were already parties to the state court cases, one might reasonably wonder, "Why did SST sue the Corps?"  The answer is SST's misunderstanding of the United States' easement over the Property and applicable federal law. In 1935, the United States obtained, via condemnation action, a "perpetual right and easement . . . for the construction and maintenance of the aforesaid Intracoastal Waterway, or any enlargement thereof" over the Property in question. [Dkt. 106-5, page 45, § 2].  Between 2000 and 2020, the Corps issued several permits and consents to easement to Globenet, Caribbean, and their predecessors related to the cables.  [*Id.*, § III.B. and ¶67].  SST frames its dispute against the Corps entirely as a conflict over "the scope of the federal easement over, and [the Corps'] interest in, the Intracoastal Waterway. . . ." [*Id.*, ¶¶7, 101, 103].  SST's crossclaims all rest on the spurious contention that the 2020 Corrective Consent to Easement issued by the Corps somehow expanded or "overburdened" the scope of the Corps' property rights.  [*Id.*, ¶¶7, 76, 86, 87 111, 112].

SST's cross-complaint against the Corps in the *Little Cardinal* litigation is even more attenuated, as SST claims that Little Cardinal "relies on the 2020 Consent and on the quit claim easements granted by the BOT to Globenet as purported authorization for [Little Cardinal's] Docks."  [Case No. 21-cv-81208, Dkt. 7-5, ¶77]  SST complains that "despite [the Corps] being aware that [Little Cardinal] has no consent from [the Corps] to be on the SST Property or in the Federal Easement, [the Corps] has not required [Little Cardinal] to remove its Docks."  [*Id.*, ¶92].  Indeed, SST's entire cross-complaint is predicated on the vague supposition of "to the

4

extent the 2020 Consent were deemed applicable to [Little Cardinal]," an entity not mentioned once in the document.  [*Id.*, ¶140, 154, 158, 168].

SST's pleadings are replete with other similarly outlandish claims, such as "by issuing and failing to enforce the terms of the 2020 Consent, the [Corps] may be indirectly aiding and abetting foreign adversaries of the United States who may be engaged in governmental and/or commercial espionage, or even endangering homeland security, including "Chinese companies with ties to the Chinese military." [Dkt. 106, ¶90-91].  SST also complains that the Corps "may be indirectly aiding and abetting Big Tech in engaging in censorship, which appears to be contrary to Presidential Executive Order 13925, dated May 28, 2020 (signed by President Trump)."[4]  [*Id.* ¶93].  These false premises and unsubstantiated accusations form the central basis of each and every crossclaim asserted against the Corps. [*Id.*, ¶¶99, 128, 142, 150, 164].

### III. MEMORANDUM OF LAW

#### A. The Corps is Misjoined In This Action As A Cross-Defendant, And Therefore Should Be Dropped Or Dismissed As A Party.

##### 1. Legal Standard Under Rule 13 And Rule 21.

SST asserts that it joined the Corps and FIND to its cross-complaints "pursuant to Rules 1.170(h) and 1.210(a) of the Florida Rules of Civil Procedure and Rules 13(h), 19(a), and 20(a) of the Federal Rules of Civil Procedure."[5]  [*Id.*, ¶ 4].  Rule 13(g) allows a defendant or counter-defendant to crossclaim "against a coparty" any claim "arising out of the transaction or

---

[4] Executive Order 13925 was revoked effective May 14, 2021 (prior to the filing of SST's cross-complaints).  *See* https://www.whitehouse.gov/briefing-room/presidential-actions/2021/05/14/executive-order-on-the-revocation-of-certain-presidential-actions-and-technical-amendment/

[5] SST's reference to the Florida Rules of Civil Procedure is misguided, as the Federal Rules of Civil Procedure exclusively govern procedural matters in federal court. *See* Rule 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81.") *and* Rule 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.")

occurrence that is the subject matter of either the original action or of a counterclaim therein" and then join a nonparty to that crossclaim. Rule 13(h), entitled "Joining Additional Parties," permits a defendant to join both indispensable parties (under Rule 19) and permissible parties (under Rule 20) to counterclaims or crossclaims. In other words, through Rule 13(h) there is a mechanism for a defendant to join an absent party who the defendant thinks should be a crossclaim co-defendant but only to a crossclaim sounding against an existing coparty. The leading treatise on federal procedure explains that the rules do not permit a defendant to assert a crossclaim "solely against persons who are not already parties to the original action, but must involve at least one existing party." 6 Wright, Miller & Kane, *Federal Prac. & Proc.* § 1435 (3d ed.).

Rule 21 describes the remedy for misjoinder of parties: "On motion . . . the court may at any time, on just terms, . . . drop a party." Fed.R.Civ.P. 21. Although a court may not dismiss an action altogether for misjoinder, there are two remedial alternatives available: (1) "drop" misjoined parties "on just terms" or (2) "sever any claim against a party." *Id*. "Drop[ping]" a defendant under Rule 21 amounts to dismissal without prejudice. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Travelers Indem. Co. v. Attorneys Title Ins. Fund, Inc.*, No. 13-cv-670, 2013 U.S. Dist. LEXIS 178163, at *1, 2013 WL 6768216 at *1 (M.D. Fla. Dec. 18, 2013) ("District Courts are authorized to dismiss any misjoined party or claim at any stage of a lawsuit."); *Coleman v. Frost*, No. 18-14180-CIV, 2018 U.S. Dist. LEXIS 118207, at *21-22 (S.D. Fla. July 13, 2018) ("While it is true that 'misjoinder of parties is not a ground for dismissing an action,' pursuant to Fed.R.Civ.P. 21, it is proper to dismiss these Defendants from this action based on improper joinder and the claims related thereto."). Implementation of Rule 21 is left to the sound discretion of the trial court. *Lampliter Dinner Theater, Inc. v. Mutual Ins. Co.*, 792 F.2d 1036, 1045-46 (11th Cir. 1986); *see also Fritz v. American Home Shield Corp.*,

751 F.2d 1152, 1154 (11th Cir. 1985) (reviewing district court's failure to dismiss a nondiverse party from a lawsuit under Rule 21 for an abuse of discretion).

> **2.    Pursuant To Rule 13, A Crossclaim Cannot Be Brought Solely Against A Stranger To The Litigation.**

Rule 13 only permits joinder of nonparties to a crossclaim when *each* individual crossclaim is *also* asserted against an existing coparty to the suit.   *United States Agric. Processors Mktg. Serv., Inc. v. Quinonez Hermanos, S.A.*, 73 F.R.D. 87, 89-90 (S.D. Fla. 1976) ("The language of 13(g) is clear that any cross-claim must be in part 'against a co-party.' Rule 13(h) can only be used to bring in *additional* parties to an existing cross-claim. Rule 13 authorize[s] the assertion of . . . cross-claims against opposing parties or co-parties, but not against strangers to the litigation.") (emphasis original, citations omitted); *Brown v. Int'l Union, UAW*, 85 F.R.D. 328, 333 (W.D. Mich. 1980) ("It is well established, however, that the cross-claim must include as cross-defendant at least one existing co-party. An additional party . . . may not be brought in where the cross-claim is directed solely against the new party."); *City of Tampa v. Fourth Tug/Barge Corp.*, 163 F.R.D. 622, 624 (M.D. Fla. 1995) ("[I]n interpreting Rule 13(g), . . . the limitation on a party's right to assert a cross-claim is that the claim must be against a party to the action."); *CreditMax Holdings, LLC v. Kass*, No. 11-81056, 2012 U.S. Dist. LEXIS 195357, 2012 WL 12854879, at *2-3 (S.D. Fla. July 24, 2012) ("Joinder of third parties under Rule 13(h) is permissible only to adjudicate a counterclaim or cross-claim against an existing party. . . . This means that *a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action*, but must involve at least one existing party," and granting motion to dismiss third-party counterclaim defendants) (citations and internal quotation marks omitted, emphasis original); *Incarcerated Entm't, LLC v. Cox*, No. 18-21991, 2019 U.S. Dist. LEXIS 231297 at *7; 2019 WL 8892619 (S.D. Fla. Apr. 17, 2019)

(dropping improperly joined counter-defendant and dismissing all counterclaims asserted solely against counter-defendant who was not an original party to the action); *Gen. Prop. Constr. Co. v. Empire Office, Inc.*, No. 18-23688, 2019 U.S. Dist. LEXIS 113452 at *4; 2019 WL 2992172 (S.D. Fla. July 9, 2019) (same); *AllTech Commc'ns, LLC v. Bros.*, 601 F. Supp. 2d 1255, 1261 n.3 (N.D. Ok. 2008) (collecting cases and summarizing that the "weight of authority holds that Rule 13(h) cannot be used to assert a counterclaim solely against an unnamed party. . . . each individual counterclaim against a non-party must also be asserted against an existing party, rather than merely asserted in the same pleading as those asserted against existing parties."); *B&D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, No. 16-62364, 2017 U.S. Dist. LEXIS 220974, 2017 WL 8751751, *2 (S.D. Fla. Jan 25, 2017) (same and dismissing claims against improperly joined third-party counterclaim defendants); *NatureSweet, Ltd. v. Mastronardi Produce, Ltd.*, No. 3:12-CV-1424-G, 2013 U.S. Dist. LEXIS 16178, at *6 (N.D. Tex. Feb. 6, 2013) ("[Rule 13] does not contemplate a party making a counterclaim or cross-claim solely against a person not currently a party to the litigation and then adding that person as a third-party defendant via Rule 19 or 20."); *Owners Ins. Co. v. Gordon*, Case No. 1:07-CV-0369-JFK, 2007 U.S. Dist. LEXIS 105488, 2007 WL 9702209 at *5 (N.D. Ga. June 27, 2007) (denying motion for joinder of non-parties on the basis that "Rule 13(h) only permits the joinder of additional parties to a cross-claim that is already before the court. The problem for the Chesapeake Defendants is that they have asserted their cross-claims . . . *solely* against Taylor and Verbeke, who are not parties to the original action. This is not permitted under Rule 13(h).") (citations omitted, emphasis original).

Counts II – V of the Cross-Complaints are asserted solely against the Corps. Because "there are no common claims asserted against" both non-party Corps and a coparty, Counts II – V are "procedurally infirm" and subject to dismissal. *AllTech*, 601 F. Supp. 2d at 1261;

*cf. Microsoft Corp. v. Ion Techs. Corp.*, 484 F. Supp. 2d 955, 965 (D. Minn. 2007) (chiding defendants for "improperly assert[ing] counterclaims" that were "solely against persons who are not parties to the original action.").

      This leaves Count I ("Declaratory Relief Under the Quiet Title Act"), which is brought jointly against the Trustees, FIND, and the Corps. As persuasively argued by the Trustees and FIND in their motions to dismiss the first amended cross-complaint [Dkts. 115, 116] and their subsequent motion to remand [Dkt. 141], SST cannot maintain this cause of action against these defendants, either on Eleventh Amendment sovereign immunity grounds or pursuant to the QTA which by its own terms only permits that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." *See also Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 281-82 (1997) (holding that "the Tribe could not maintain a quiet title suit against Idaho in federal court, absent the State's consent. The Eleventh Amendment would bar it."). If the Court dismisses Count I either as to the Corps (pursuant to Rules 12(b)(1) or 12(b)(6)), or as to the Trustees (or severs and remands this crossclaim and the related counterclaims to state court), then the Corps should be dismissed altogether as an improperly joined party, as Count I is the only common crossclaim against both the Corps and the Trustees (the original third-party defendant). *See Incarcerated Entm't, LLC*, 2019 U.S. Dist. LEXIS 231297 at *7-8 (dismissing all remaining counterclaims against non-party Warner Bros. pursuant to Rule 13(h) as "not one of them asserts a claim against both the original plaintiffs and the new Counter-Defendant Warner Bros." after dismissing for failure to state a claim the civil conspiracy counterclaim brought jointly against original plaintiffs and non-party Warner Bros.).

    **B. The Court Lacks Subject Matter Jurisdiction.**

      **1. Legal Standard Under Rule 12(b)(1).**

Plaintiff bears the burden of establishing jurisdiction. *Thompson v. McHugh*, 388 F. App'x 870, 872 (11th Cir. 2010). In moving to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), a defendant may attack the complaint facially or it may mount a factual challenge. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his Complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted) (alterations in original). In contrast, a factual attack contests the existence of subject matter jurisdiction in fact, regardless of the allegations in the complaint. *Id.* This motion presents a facial challenge to the Court's subject matter jurisdiction.

### 2. SST Lacks Article III Standing Because It Cannot Allege A Case Or Controversy Against The Corps.

Article III of the Constitution extends the jurisdiction of federal courts to "Cases" and "Controversies" only. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992) (citation omitted). Among other requirements, the case-or-controversy restriction demands that litigants before the court have standing to pursue the claims they press. *See id.* at 559-60. At an "irreducible constitutional minimum," constitutional standing requires a showing of injury in fact, causation, and redressability. *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (citation and quotation marks omitted). This means (1) "'injury in fact' — a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical;'" (2) "causation — a 'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant;" and (3) "redressability — a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155

(1990) and *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)).  SST cannot demonstrate any of these factors.

### a.  There Is No Injury In Fact To SST.

SST's claimed "injury in fact" – that the Corps' issuance of the 2020 Corrective Consent to Easement somehow expanded or "overburdened" the Corps' existing right-of-way easement over the Property [Dkt. 106, ¶¶7, 76, 86, 87, 99, 111, 112, 128, 142, 150, 164] – fundamentally misinterprets both the documents in question and the applicable law.  As explained below, the Corps has taken no action which either harms SST or influences the real dispute of this lawsuit – who owns the Property. The complained of conduct – the Corps' issuance of the 2020 Corrective Consent to Easement – did not alter or expand anyone's pre-existing property rights.  Stated differently, the Corps' established easement for the Intracoastal Waterway has no bearing on a property ownership dispute between a private party and the State of Florida, and the question of the Property's ownership is irrelevant to the United States' right-of-way easement.  Because SST cannot show injury attributable to the Corps, let alone injury that is concrete, actual, and imminent, it lacks standing to assert its crossclaims. *See Vermont Agency*, 529 U.S. at 771.

First, by its very nature, a consent to easement ***cannot*** grants real property interests, because that is not what a consent to easement does. *See* Army Regulation 405-80 Chapter 4, § I, ¶4-27, *Consent to Easement or to Structure within Easement* ("A consent is not an outgrant. A consent merely approves or consents to a use where the estate held by the United States is less than fee."); *and* Glossary § II (defining "outgrant" as "A legal document which conveys or grants the right to use Army-controlled real property." ) (Attached hereto as Exhibit 1)[6]  Indeed, the 2020 Corrective Consent to Easement itself unambiguously states that the Corps could not, and

---

[6] Available at https://armypubs.army.mil/ProductMaps/PubForm/Details.aspx?PUB_ID=3254

did not, grant any rights greater than what the Corps already possessed.   The document accurately describes the United States' easement over the Property as:

> "right-of-way easements over the above-numbered tract of land, which easement, by its terms, reserves to the Government, in perpetuity, the right to use said easements for the construction, improvement, and maintenance of the Intracoastal Waterway. . . ."

[Dkt. 106-8, ¶ 2].   These are the same right-of-way easements described in the 1935 Federal Judgment and the 1942 Easement [Dkt. 106-5 and 106-7].   The scope of the 2020 Corrective Consent to Easement is self-limiting:

> "NOW THEREFORE, this consent is granted and accepted under the following conditions: . . . . That it is understood that ***this consent is effective only insofar as the property rights of the Government in the land to be occupied are concerned***, and that it does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests, therein, nor does it obviate the requirement that the Grantee obtain State or local assent required by law for the activity authorized herein."

2020 Corrective Consent to Easement [Dkt. 106-8, § 2, emphasis added].   The document's clear language directly refutes SST's baseless assertion that "[the Corps] is violating the terms of, exceeding the scope of, and/or overburdening the Federal Easement by granting consents to use, or otherwise allowing the use of, the Federal Easement for purposes well beyond the limited scope of the easement." [Dkt. 106, ¶87].

This is equally true for any permits issued by the Corps pursuant to the Rivers & Harbors Act, 33 U.S.C. §§ 401, et. seq. ("RHA").   SST alleges that any such permits are invalid based on Globenet's purportedly false representation to the Corps that the Trustees owned the submerged Property in question.   [Dtk. 106, ¶¶82, 83, 86, 106, 107].   This is a curious assertion in light of the pleading's citation to 32 C.F.R. § 320.4 [*Id.*, ¶¶5, 78, n. 6].   These regulations explicitly remove the Corps from property ownership disputes, as a Corps' RHA permit conveys no property rights, but merely licenses the activity described in the permit:

12

> A DA ["Department of the Army"] permit does not convey any property rights, either in real estate or material, or any exclusive privileges. Furthermore, a DA permit does not authorize any injury to property or invasion of rights or any infringement of Federal, state or local laws or regulations. The applicant's signature on an application is an affirmation that the applicant possesses or will possess the requisite property interest to undertake the activity proposed in the application. The district engineer will not enter into disputes but will remind the applicant of the above. The dispute over property ownership will not be a factor in the Corps public interest decision.

33 C.F.R. § 320.4(g)(6); *see also* 33 C.F.R. § 320.4(g) ("Consideration of property ownership. Authorization of work or structures by DA does not convey a property right, nor authorize any injury to property or invasion of other rights."); *Buchanan Marine Inc. v. McCormack Sand Co.*, 743 F. Supp. 139, 142 (E.D.N.Y. 1990) (stating that Section 10 of the RHA "does not purport to alter state created property rights between private parties."); *Alliance to Protect Nantucket Sound v. U.S. Dept. of Army*, 398 F.3d 105, 112 (1st Cir. 2005) (holding that "Appellants' argument that the regulations impose an obligation on the Corps in a Section 10 case to resolve disputes over the ownership of public (or private) property is simply wrong."); *O'Connor v. Smith*, 427 F. App'x 359, 366 (5th Cir. 2011) (noting that the Corps granted a permit to an applicant even though the Corps did not believe the applicant possessed the requisite property interest while noting the applicant's affirmation that he possessed or would possess the necessary property interest). "The face of § 320.4(g)(6) evidences the Corps' intent not to be involved in private property disputes." *Alliance to Protect Nantucket Sound*, 398 F.3d at 112. "[T]he regulation does not purport to address disputes . . . , but rather attempts to insulate the Corps from addressing those disputes." *Id*. "[T]he goal of preventing the Corps from expending its resources on evaluating the legal question of the sufficiency of property interests is a

reasonable one." *Id*. at 113.  Simply put, the Corps is not an arbiter of a property dispute

between SST, Globenet, Caribbean, Cardinal and the Trustees.[7]

Finally, SST incorrectly concludes that if the Property is actually sovereign-owned by the

Trustees, this would invalidate the federal easement over the Property for the construction and

maintenance of the Intracoastal Waterway. [Dkt. 106, ¶114].   This conclusion reveals a

fundamental misunderstanding of both the regulations governing the Intracoastal Waterway and

condemnation law in general.

The United States' rights relating to the Intracoastal Waterway emanate from the United

States Constitution, which provides that the United States has the right to regulate navigable

waters, independent of the ownership of the underlying submerged lands.  *Zabel v. Tabb*, 430

F.2d 199, 203 (5th Cir. 1970) (describing the paramount federal easement right in navigable

waters of the United States deriving from Commerce Clause of the United States Constitution

and Section 1314(a) of the Submerged Lands Act, 43 U.S.C. §§1301-1315).   Importantly, the

Corps' regulations also provide that "[o]wnership of a river or lake bed or of the lands between

high and low water marks will vary according to state law; however, private ownership of the

underlying lands has no bearing on the existence or extent of the dominant Federal jurisdiction

over a navigable waterbody." 33 C.F.R. § 329.11(a)(2).  Accordingly, the Corps has jurisdiction

---

[7] When this case was previously removed to federal court, SST explicitly conceded this point, when it argued that "**the U.S. simply has 'no dog in this fight,'**" (emphasis original) and "how this Court (or any court) rules on Globenet's claim for declaratory relief [as to ownership of the property] will not, and cannot, implicate or affect the rights, obligations, or interests of the U.S., nor is the U.S. required to be a party in order for a court to grant complete relief with respect to Globenet's claim for declaratory relief." *See* SST's Motion For Remand, *S. Spanish Trail v. Globenet, et. al.*, S.D. FL Case No. 9:19-cv-80240 [Dkt. 19, page 7-8].  SST went on to argue that "While the U.S. could theoretically be sued under the federal Quiet Title Act, . . . such a claim would be in bad faith and lack any factual support because, for the reasons discussed herein, this dispute does not involve a title dispute (SST holds title to the Property), and certainly not a title dispute involving the U.S., but rather concerns Globenet's unlawful possession of SST's Property by Globenet's unauthorized use of a portion of such Property for its fiber optic cables." *Id*., page 8, fn. 4.

over the navigable waters of the United States, defined as all land and waters below the ordinary high water mark, regardless of who owns the underlying land. *Id*. at § 329.11(a)(2).

Independent of these regulations, the United States' 1935 right-of-way easement survives any disputed claim of the Property's ownership, as it was obtained via condemnation of the Property. "[A] condemnation action is brought by the Government and proceeds *in rem* against the property itself. As an exercise of eminent domain, condemnation extinguishes all previous rights, and gives the United States title to the entire condemned property good against the world. Condemnation secures better title, in fact, than may be obtained through voluntary conveyance." *Cadorette v. United States*, 988 F.2d 215, 217 (1st Cir. 1993) (internal citations omitted). "Since a condemnation proceeding is *in rem*, there are no indispensable parties, and the weight of authority holds that failure to join a necessary party does not defeat the condemnor's title to the land . . . ." *Sabal Trail Transmission, LLC v. 7.72 Acres in Lee Cty.*, No. 3:16-CV-173-WKW, 2016 U.S. Dist. LEXIS 79697, at *20 (M.D. Ala. June 20, 2016); *see also Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003) (holding, post condemnation, that "the Quiet Title Act does not afford appellants a vehicle to recover for the loss of their alleged interest in the property. The QTA's plain language covers only cases in which title itself is disputed. Title here indisputably lies with the United States.")

### b.  SST's Claimed Injuries Were Not Caused By The Corps.

The "fairly traceable" element explores the causal connection between the challenged conduct and the alleged harm. *Federal Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1388 (11th Cir.), *cert. denied*, 493 U.S. 819 (1989). Essentially, "this requirement focuses on whether the line of causation between the illegal conduct and injury is too attenuated." *Morley*, 867 F.2d at 1388 (internal quotation marks and citations omitted). The causal link may become "too

attenuated" if the injury is "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and alterations omitted).

The Eleventh Circuit has made clear that the traceability requirement is less stringent than proximate cause: "[e]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). Thus, "for standing purposes [a plaintiff] is not required to prove causation beyond a reasonable doubt or by clear and convincing evidence." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003) (emphasis omitted). Even so, "the indirectness of the injury . . . may make it substantially more difficult to meet the minimum requirement of Art. III. . . ." *Warth* v. *Seldin*, 422 U.S. 490, 505 (1975)

SST has not alleged either direct or indirect causation between the alleged injury (trespass on the Property) and the Corps' conduct. Rather, the harm SST alleges stems from the other parties' conduct, namely the laying of cables beneath or building of docks on the Property. The Corps is not responsible for these purported trespasses onto the Property, as the 2020 Corrective Consent to Easement, by its very terms, grants no property rights and "does not relieve the Grantee from the necessity of obtaining grants from the owners of the fee and/or other interests…" [Dkt. 106-8, § 2] SST's attempt to manufacture standing against the Corps via trespasses by third-parties must fail. *See Hartz Mt. Indus., Inc. v. Polo*, Case No. 05-2530 (JAP), 2005 U.S. Dist. LEXIS 25411, at *29 (D.N.J. Oct. 25, 2005) (dismissing complaint for lack of Article III standing on the basis that plaintiffs' claimed injuries of increased traffic from third-parties were not fairly traceable to the Army Corps' alleged illegal approval to fill wetlands.)

### c.  The Requested Relief Will Not Remedy The Alleged Injury.

Finally, SST cannot allege an injury that would be remedied if the Court grants the requested relief. To demonstrate redressability, SST must establish "that a decision in [its] favor

16

'will produce tangible, meaningful results in the real world.'"  *See Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001) (quoting *Common Cause v. Dep't of Energy,* 702 F.2d 245, 254 (D.C. Cir. 1983)).  But a revocation or nullification of the 2020 Corrective Consent to Easement would not redress any of SST's claimed injuries (or resolve the litigation's central dispute over the Property's ownership) because the document, by its own terms, "is effective only insofar as the property rights of the Government in the land to be occupied are concerned." Because SST has not alleged an injury that the requested relief would remedy, it lacks standing.

### 3.   Plaintiff May Not Evade The Strictures Of The QTA By Seeking Review Of Their Quiet Title Action Under Some Other Statute.

If the Court takes SST's pleading at face value (i.e. that Count I is brought pursuant to the Declaratory Judgment Act [Dkt. 106, ¶¶ 6, 100, 101]), it fails to state a claim.  "When the United States has an interest in the disputed property the waiver of sovereign immunity must be found, if at all, within the QTA."  *State of Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994); *see also Block*, 461 U.S. at 286 (holding that the QTA is "the exclusive means by which adverse claimants [can] challenge the United States' title in real property").  It follows, therefore, that a plaintiff who disputes the United States' claim of interest in title and who cannot meet the requirements of the QTA is simply without recourse.  *See Southwest Four Wheel Drive Ass'n v. BLM*, 363 F.3d 1069, 1071 (10th Cir. 2004).  Because SST directly attacks the United States' property interest in its easement over the Property, their failure to meet the requirements of the QTA requires dismissal of the Cross-Complaints.  Allowing a party to maintain a declaratory judgment action would "undermine the policies set forth in *Block* and would render the Quiet Title Act's statute of limitations meaningless."  *Rosette, Inc. v. United States*, 141 F.3d 1394, 1397 (10th Cir. 1998); *see also Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d 1165, 1178 (E.D. Cal. 2007) ("Plaintiffs' second claim seeks to quiet title through declaratory

relief, . . . [but a] claim that seeks a title determination against the United States can only be brought under the Quiet Title Act, not the Declaratory Judgment Act or any other law."); *McMaster v. United States*, 731 F.3d 881, 883 (9th Cir. 2013) (affirming *sua sponte* dismissal of Declaratory Judgment Act and APA claims on the basis that the QTA was the exclusive means to challenge the United States' title to real property); *Legends v. United States Army Corps of Eng'rs*, Case No. 4:19-CV-00524-BSM, 2021 U.S. Dist. LEXIS 62246, 2021 WL 1230399 at *5 (E.D. Ark. Mar. 31, 2021) (Denying request for declaration of the rights granted by Corps' consent to easement, on basis that a consent to easement is not a contract and recipient of consent to easement gave no consideration to the Corps in exchange for the consent to easement).

### 4. The Waiver Of Sovereign Immunity Contained Within The QTA Proscribes Relief Under The APA.

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *McMaster v. United States*, 177 F.3d 936, 939 (11th Cir. 1999)"The terms 'upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.'" *Id.* (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)). The QTA provides the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota,* 461 U.S. 273, 286 (1983). The statute waives the United States' sovereign immunity but only to the extent expressly identified in the statute. 28 U.S.C. § 2409a(a); *see also Warren v. United States*, 234 F.3d 1331, 1335 (D.C. Cir. 2000). The express waiver of sovereign immunity delineated in the QTA "define[s] the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986).

Once the "United States claims an interest" in land, 28 U.S.C. § 2409a(a), there is one way—and only one way—to disturb federal possession: by bringing a QTA suit. *Block*, 461

U.S. at 286.  The Supreme Court declined to consider the APA waiver of sovereign immunity as a supplemental remedy to the extent that the QTA would forbid the relief sought, invoking the exception to the APA waiver where another statute forbids the relief sought.  *Id*. at 299, n.22.; *see also Gov. of Kansas v. Kempthorne*, 516 F.3d 833, 842 (10th Cir. 2008)  (finding that an APA suit alleging that a governmental decision is arbitrary and capricious can be "a 'quiet title' action sufficient to invoke the Quiet Title Act.")  The Supreme Court's analysis in *Block* that the QTA preempts review under the APA was adopted by the Eleventh Circuit in *Florida v. U.S. Dep't of Interior*, 768 F.2d 1248 (11th Cir. 1985), *cert. denied*, 475 U.S. 1011 (1986).  SST cannot escape the QTA's limits on suits against the United States via "artful pleading." *See Block*, 461 U.S. at 284-85.  Because the application of the QTA preempts application of the APA, this Court is without jurisdiction over SST's APA claim

### 5.   The Statute Of Limitations Has Expired On Any Possible Claim To Quiet Title To The United States' 1935 Easement On The Property.

SST's QTA claim ultimately arises from the United States' original easement obtained via condemnation judgment in 1935.  [*See* Dkt. 106, ¶7, ("this Court has subject matter jurisdiction over the Cross-Claims and related defenses because their disposition requires resolving. . . the scope of a federal easement over, and the [Corps'] interest in, the Intracoastal Waterway."); *see also* ¶¶11, 12, 24, 35-39; Dkt. 106-4, 106-5].  It is undisputed that SST's predecessor-in-interest either knew or should have known of the claim of the United States since at least 1935.  As such, any claim premised upon the United States' 1935 Easement is foreclosed by the QTA's 12-year statue of limitations.  Under the QTA, a party wishing to challenge a claim to title made by the United States must commence that challenge "within twelve years of the date upon which it accrued."  28 U.S.C. § 2409a(g).  "A QTA action accrues when 'the plaintiff or his predecessor in interest knew or should have known of the claim of the United States' to the real

property at issue." *F.E.B. Corp. v. United States*, 818 F.3d 681, 685 (11th Cir. 2016) (quoting 28 U.S.C. § 2409a(g)).   Moreover, the QTA, which took effect in 1972, applies retroactively. *Block*, 461 U.S. at 284.  Accordingly, any claim that accrued prior to 1960 is forever foreclosed. *Id*. at 287 n.23 ("The legislative history is clear that Congress intended to foreclose totally any suit on claims that accrued more than twelve years prior to the effective date of the QTA."); *Knapp v. United States*, 636 F.2d 279, 282 (10th Cir. 1980) ("Thus, no cause of action was created for any title claim that accrued earlier than 1960."); *Kingman Reef Atoll Investment, LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) ("The QTA's statute of limitations applies retroactively").

"The Supreme Court has twice concluded that, because the statute of limitations circumscribes the scope of the QTA's waiver of sovereign immunity, compliance with the limitations period is jurisdictional." *F.E.B.*, 818 F.3d at 685 (citing *Mottaz*, 476 U.S. at 841 and *Block*, 461 U.S. at 292).  "For the same reason, the limitations period must be strictly observed, and courts must be careful not to interpret it in a manner that would extend the waiver beyond that which Congress intended." *Id*. at 685-86 (quoting *Block*, 461 U.S. at 287) (internal quotations omitted).

As the QTA statute of limitations accrued by this notice to Plaintiff's predecessor in interest in 1935—well before the 1960 retroactive applicability of the QTA—Plaintiff's suit on that claim is foreclosed totally by the QTA's 12-year statute of limitations. 28 U.S.C. § 2409a(g). *See, e.g., F.E.B.*, 818 F.3d at 686- 87 ("Because [plaintiff's] predecessor in interest had actual knowledge of the United States' claim to real property at issue in 1951, [plaintiff's] QTA claim expired in 1963—well before initiation of this suit.").

To the extent SST tries to circumvent the statute of limitations through artful pleadings, this attempt must fail.  SST artfully frames its QTA cause of action as first arising when the

20

Corps issued the 2020 Corrective Consent to Easement, alleging that this constitutes "the first time that the [Corps] has issued a consent to use the Federal Easement over the SST Property for the Globenet Cable System, as the consent that the 2020 Consent purportedly replaced involved different land (with different Tract Numbers), not the SST Property." [Dkt. 106, ¶72] Accordingly, SST contends that until the Corps' issuance of the 2020 Corrective Consent to Easement, SST and the Corps "did not have a dispute over the scope of the federal easement over the SST Property." [Id. ¶ 108].

This is precisely the same argument—seeking to circumvent the QTA's statute of limitations based upon the availability, or lack thereof, of a cause of action—that the Eleventh Circuit has twice rejected: first in *F.E.B.*, 818 F.3d at 691 ("The QTA's statute of limitations accrues upon notice of the *United States*' claim—not upon the creation of an adverse claimant's potential cause of action.") (emphasis in original), and again in *NE 32nd St., LLC v. United States*, 896 F.3d 1240, 1244 (11th Cir. 2018) (affirming dismissal of QTA action on statute of limitations grounds, and rejecting plaintiff's theory that the government's issuance of a 2013 conservation permit restarted the statute of limitations that had begun to run when the government acquired its spoilage easement in 1938).

Moreover, to the extent Plaintiff is attempting to argue that the statute of limitations does not accrue until the government expresses an intent to enforce its property interest in light of changed circumstances, that argument fails as well. "It is [the] interest [of the United States]—not 'the subjective intent of the government to enforce the interest in the face of changed conditions'—that constitutes the government's 'claim' for purposes of the QTA's statute of limitations." *F.E.B.*, 818 F.3d at 691 (quoting *Vincent Murphy Chevrolet Co. v. United States*, 766 F.2d 449, 451 (10th Cir. 1985)) (internal alterations accepted). Regardless of how the SST

frames its cause of action in Count I, that cause of action is totally foreclosed by the QTA's 12-year statute of limitations.  Count I must be dismissed for lack of subject matter jurisdiction.

> **6.  SST's Taking Clause Claim Is Premature, As SST Has Failed to First Seek Just Compensation In The Court of Federal Claims.**

The Takings Clause proscribes the government from taking private property "for public use, without just compensation."  U.S. Const. amend. V, cl. 4.  Under the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim against the United States for money damages in excess of $10,000 that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. 1491(a)(1).  Thus, "a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress had withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 520 (1998).

SST alleges that "through the 2020 Consent, [the Corps] has unlawfully taken the portion of the SST Property occupied by the Globenet Cable System for a public purpose…." [Dkt 106, ¶139].  SST identifies this as a "breach[] of the Federal Easement" and demands "compensation for such unlawful taking." [*Id.*, ¶141]  SST values its damages in excess of $75,000.  [*Id.*, ¶2]. Because SST did not first seek "just compensation" in the Court of Federal Claims, its Takings Clause claim is premature and must be dismissed.  *Cf.  S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, No. 19-80240-CIV-RKA, 2019 U.S. Dist. LEXIS 121498, at *14 (S.D. Fla. July 22, 2019)*; Ungaro-Benages v. Dresdner Bank AG*, No. 01-2547-CIV, 2003 U.S. Dist. LEXIS 27693, 2003 WL 25729923, at *2 n.9 (S.D. Fla. Feb. 20, 2003) (holding that the proper

remedy for a Takings Clause violation is to seek just compensation in the Court of Federal Claims), *aff'd*, 379 F.3d 1227 (11th Cir. 2004)

### C. The Cross-Complaints Are "Classic Examples" Of A Pleading's Allegations Being Directly Contradicted By Its Exhibits, Thereby Failing To State A Cause of Action.

#### 1. Legal Standard Under Rule 12(b)(6).

The standard of review for a motion to dismiss a crossclaim pursuant to Rule 12(b)(6) is the same standard of review as a motion to dismiss a complaint or any other "claim for relief:" A crossclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the district court must accept well-pled facts as true, it need not assume the truth of conclusory allegations, nor are plaintiffs entitled to have unwarranted deductions of fact or argumentative inferences viewed in their favor. *See, e.g., Twombly*, 550 U.S. at 555 (finding mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" insufficient to survive motion to dismiss). A claim is plausible on its face when the cross-plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the [cross-]defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court may properly consider documents attached to the complaint, answer, or motion so long as they are (1) central to the plaintiff's claim, and (2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134-1135 (11th Cir. 2002); *cf. Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (including exhibits among factual allegations to be considered on 12(b)(6) motion to dismiss, stating "when the exhibits contradict the . . . allegations of the pleading, the exhibits govern"). An attachment to a complaint generally becomes part of the pleading for all purposes, including for ruling on a motion to dismiss. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that a "court can

generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."); Fed. R. Civ. P. 10(c).

The rule that attached exhibits are to be considered part of the complaint usually benefits the plaintiff, but not always. "[A] litigant may be defeated by his own evidence, the pleader by his own exhibits" when "he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Hoefling*, 811 F.3d at 1277 (citing *Simmons*, 113 F.2d at 813).

### 2. Count I Fails To State A Claim Under The QTA Based On The Plain Language Of The 2020 Corrective Consent To Easement.

Count I is a claim for declaratory relief against the Trustees, FIND, and the Corps "pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the Quiet Title Act, 28 U.S.C. § 2409a and 28 U.S.C. § 1346(f)." [Dkt. 106, ¶100]. SST frames this count as a dispute over "the scope of the federal easement over, and [the Corps's] interest in, the Intracoastal Waterway. . . ." [*Id.*, ¶¶7, 101, 103].

Assuming that SST intended to state a claim under the QTA, a plaintiff must allege: (1) that the United States claims an interest in the real property at issue, and (2) that there is a disputed title to the property. 28 U.S.C. § 2409a(a), (d). To establish such a dispute, the plaintiff must "set forth with particularity the nature of the right, title, or interest which plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." *Id.* The exhibits attached to the pleadings show that no such dispute exits. There is no dispute that the United States has a right-of-way easement it obtained via the 1935 condemnation judgment. [Dkt. 106, ¶¶ 35, 36, 39-41]. The Court should reject

24

SST's transparent attempt to manufacture a dispute via the 2020 Corrective Consent to Easement or any permits issued by the Corps.

The 2020 Corrective Consent to Easement grants no property rights to the defendants; the Corps received no consideration in return for issuing the 2020 Corrective Consent to Easement; and the 2020 Corrective Consent to Easement itself states that it "is effective only insofar as the property rights of the Government in the land to be occupied are concerned . . . ." [Dkt. 106-8, § 4]. As explained in section III.B.2.a., *supra*, the Corps' actions are consistent with the applicable laws and regulations. *See* Army Regulation 405-80 Chapter 4, § I, ¶4-27 *and* 33 C.F.R. § 320.4(g). Thus, to the extent that Count I can be read to assert a claim under the QTA, the second element of such a cause of action is conclusively refuted by the pleadings' exhibits and applicable regulations, and thus should be dismissed for failing to state a cause of action. *See Rauterkus v. United States*, No. 1:19-CV-240, 2021 U.S. Dist. LEXIS 38451, at *18 (W.D. Pa. Mar. 2, 2021) (finding that landowners failed to state a claim under the QTA attacking validity of easement issued by the United States, as the unambiguous language of the easement created no dispute); *McMaster*, 731 F.3d at 897 (affirming dismissal with prejudice of QTA cause of action for failure to state a claim on the basis that plaintiff failed to establish dispute as to title to claimed property).

Finally, SST seeks relief that is simply not available under the QTA. Specifically, SST seeks injunctive relief and to compel certain agency actions. [Dkt. 106 at WHEREFORE clause following ¶ 127] These requests for relief go far beyond adjudication over the ownership of disputed property rights. SST is, in fact, seeking a much wider range of relief than is available under the QTA. In so doing, SST is seeking to avoid the limitations of the QTA. *See LaFarge v. United States*, 4 F. Supp. 2d 580, 588 (E.D. LA 1998) (finding that injunctive relief is not available under the QTA.)

25

**3.    Counts II And III Fail To State A Cause Of Action Because The Exhibits Establish That No "Taking" Occurred.**

A Takings Clause violation has two necessary elements. First, the government must take the property. Second, it must deny the property owner just compensation. *Horne v. Department of Agriculture,* 569 U.S. 513, 525-526 (2013) ("[A] Fifth Amendment claim is premature until it is clear that the Government has both taken property *and* denied just compensation.") (emphasis original). If the government has not done both, no constitutional violation has happened.

Similarly, a procedural due process claim has three elements: (1) deprivation of a constitutionally protected property interest; (2) governmental action; (3) and constitutionally inadequate process. *S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, No. 19-80240, 2019 U.S. Dist. LEXIS 121498, at *16 (S.D. Fla. July 22, 2019) (citing *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013)). However, the Constitution does not protect procedure for procedure's sake. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' . . . Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "Unless a person asserts some basis for contesting a governmental deprivation of life, liberty, or property, he is not injured by defective procedures he has no occasion to invoke." *Rector v. City & Cty. of Denver*, 348 F.3d 935, 943-44 (10th Cir. 2003).

In Count II, SST purports to assert a Fifth Amendment takings claims against the Corps. In support of this purported takings claim, SST alleges that the Corps "expanded the scope of the Federal Easement" when it issued the 2020 Consent. [*Id*. at ¶131]. Correspondingly, in Count III, which purports to assert a procedural due process violation against the Corps, SST alleges that the Corps' "issuance of the 2020 Consent has deprived SST of its constitutionally protected

property interest in the SST Property by allowing the Globenet Cable System to unlawfully use and occupy the SST Property without SST's consent, and without any compensation paid to SST for such use and occupation."  [*Id*. at ¶144.].

SST's Takings Clause claim and procedural due process claim both fail for the simple reason that the claimed deprivation – the 2020 Corrective Consent to Easement – does not constitute a taking.  SST argues it possessed a vested interest in the Property and that the Corps' issuance of the 2020 Corrective Consent Easement (or its nonregulation / failure to enforce the terms of the 2020 Corrective Consent Easement) constitutes permission to use the Property by third-parties Globenet and Caribbean.  First, to the extent that SST's "taking" is based on a purported failure to enforce a regulation or permit, it is well-settled law that the government's failure to act or to perform its duties, or the government's delay in acting, cannot constitute a taking.  As such, "[o]n a takings theory, the government cannot be liable for failure to act, but only for affirmative acts by the government." *Martell v. City of St. Albans, Vermont*, 441 F. Supp. 3d 6, 21–22 (D. Vt. 2020) (collecting cases).  Second, as discussed above, the plain language of the 2020 Corrective Consent to Easement does not purport to grant or expand any property rights greater than those already possessed by the United States.  This alone demonstrates that SST has failed to state a cause of action.

Moreover, there was no taking upon which SST may recover, because the interference complained of constituted acts of independent third parties.  It was Globenet, Caribbean, the Does, and Little Cardinal – independent third parties – who purportedly interfered with SST's use of the Property by laying subterranean cable, using said cable to transmit data, and erecting docks.  As such, there is no Fifth Amendment liability on the part of the United States. *See Minot* v. *United States*, 212 Ct. Cl. 154, 546 F.2d 378 (1976) (finding that the United States allowing a third party to enter upon its permanent easement on plaintiffs' properties for

27

installation of powerline facilities granted no more of a property interest in the easement than it had a common law right to do, and such action does not constitute a Government taking by inverse condemnation). In *Minot*, the United States had an electrical powerline easement over the plaintiff's property.  The United States entered into a powerline pooling agreement with the Guam Power Authority (GPA), a public corporation of the Government of Guam, possessing the power of eminent domain and the power to sue and be sued in its own name. This pooling agreement allowed GPA to use the easement possessed by the United States.  Subsequently, and without authorization, GPA erected on the plaintiff's property a new powerline involving much larger support towers.  Plaintiff argued GPA's action amounted to a taking by the United States. The court denied plaintiff's taking claim because: (1) the permit issued to GPA by the United States "did not authorize GPA to do anything that the Government had not the common law right to allow it to do," and (2) any "condemnation" of plaintiff's land by GPA's action was the result of independent local action for which the United States was not liable.  212 Ct. Cl. at 159; 546 F. 2d at 381.  Just as in the instant case, the facts do not reveal any interference or intrusion by the Corps in the Property.

### 4. Count IV Fails To State A Claim Because The Plaintiff Has Not Stated A Violation Of The Rivers & Harbors Act.

By way of Count IV, SST purports to assert a claim under the APA seeking, in relevant part, "revocation or enforcement of the 2020 Consent."  [Dkt. 106, page 31].  Effectively, SST alleges that the 2020 Corrective Consent to easement violates the RHA, 33 U.S.C. § 408(a), because the Corps issued it without requiring Globenet obtain and prove consent of the underlying property owner prior to the issuance of the Consent and/or because the Corps has not sought to revoke the Consent. [*Id.*, ¶¶64-68, 81, 158].  SST also complains that the Corps has not required Little Cardinal to remove its docks from the Property.  [Case No. 21-cv-81208, Dkt. 7-

5, ¶92].   Count IV fails to state a claim upon which relief can be granted because (1) actions taken pursuant to the RHA are entirely within the Secretary of the Army's "judgment" and there is no legal requirement for the Corps to obtain the consent of SST (or anyone else) prior to issuing a consent to easement, and (2) SST cannot bring an APA claim to compel the Corps to take affirmative action, i.e., revocation or enforcement, that is it not legally required to take.

Under the APA, a "[c]ourt may only compel action under the APA that is 'legally required.'" *Isernia v. Nielsen*, No. 5:18-cv-588, 2019 U.S. Dist. LEXIS 109705, 2019 WL 2746211, at *3 (M.D. Fla. June 14, 2019) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 109205, 2019 WL 2745066 (M.D. Fla. July 1, 2019)). "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* (internal quotation marks omitted, emphasis original).   Because the APA does not apply to agency action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA and the court will properly grant a motion to dismiss the complaint for failure to state a claim. When a plaintiff complains about an action that is committed to agency discretion by law, it does not mean that a court lacks subject matter jurisdiction over the claim.  Instead, it means that there is no law to apply because the court has no meaningful standard against which to judge the agency's unfettered exercise of discretion. *See, e.g., Ochoa v. Holder*, 604 F.3d 546, 546 (8th Cir. 2010).  An action is committed to agency discretion when there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830, (1985).

"[T]he purposes and extent of the Rivers and Harbors Act was to assist the federal government in insuring that our navigable waterways remain free of obstruction and to protect the special interest in freedom from such obstructions of those who use the nation's waterways

29

for purposes of navigation." *Guthrie v. Ala. By-Products Co.*, 328 F. Supp. 1140, 1145 (N.D.

Ala. 1971).  There is no private cause of action under in the RHA.  *See California v. Sierra Club,*

451 U.S. 287 (1981).  The relevant portion of the RHA at issue reads as follows:

> (a) *Prohibitions and permissions*. It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works: *Provided*, That the Secretary of War [Secretary of the Army] may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest: *Provided further*, That the Secretary may, on the recommendation of the Chief of Engineers, grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when in the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work.

33 U.S.C. § 408.  Absent from this regulation is any language requiring the Corps obtain

consent from the underlying landowner prior to issuing a consent to easement or permit.  The

regulation contains no requirement that the Secretary of the Army obtain the consent of the

landowner in determining what is "injurious to the public interest."  Because this requirement

does not exist, SST cannot assert a basis as to why the Corps' actions, or failure to act, violated

its purported duties under the RHA.  *See Consol. Grain & Barge, Inc. v. Anny*, No. 11-2204,

2012 U.S. Dist. LEXIS 20636, at *23-24, 2012 WL 530540, at *8 (E.D. La. Feb. 14, 2012)

(granting Corps' motion to dismiss APA challenge for failure to state a claim, on the basis that

"As the regulation explicitly states, any dispute regarding ownership of land is not factored into

the Corps' decision whether or not to issue a permit. Plaintiff was unable to provide any case

law contradicting this interpretation of the relevant regulations. The Court therefore finds that the Corps acted legally, in accordance with its regulations, and did not act arbitrarily or capriciously or abuse its discretion in issuing the . . . permits.").  While the Court must make reasonable inferences in Plaintiff's favor, it is not required to draw Plaintiff's inference.  "Bald assertions" will not overcome a Rule 12(b)(6) motion. *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55, 56 (1st Cir. 1999) (citation omitted) (affirming dismissal for failure to state a claim when complaint failed to allege "a factual predicate concrete enough to warrant further proceedings" and provided mere "speculations").  SST's demand that the Corps revoke its previously issued permits and consents to easement is similarly unavailing, as "an agency's decision not to take enforcement action is presumed immune from judicial review under § 701(a)(2)." *Heckler*, 470 U.S. at 823; *see also Conservancy of Sw. Fla. v. U.S. Fish & Wildlife Serv.*, 677 F.3d 1073, 1084 (11th Cir. 2012) (same).  SST simply cannot state a cause of action under the APA based upon the complained of conduct, i.e. the Corps' alleged failure to "revoke the 2020 Consent as an unauthorized and illegal taking of its property rights," [Dkt. 106, ¶ 81] or "failing to enforce its terms." [*Id.* ¶ 84].

### 5. Count V ("Permanent Mandatory Injunction") Is Not A Valid Cause Of Action.

The final crossclaim purports to assert a claim for "permanent mandatory injunction." Here, SST fails to state a cause of action for the fundamental reason that "an injunction is not a cause of action but a remedy." *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009) (collecting cases); *see also Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019, 2018 U.S. Dist. LEXIS 98488, 2018 WL 3730875, at *7 (S.D. Fla. June 11, 2018) (dismissing "injunctive relief" cause of action, noting that "there are an abundance of cases establishing that injunctive relief is a remedy, not a separate cause of

31

action."); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . . There is no such thing as a suit for a traditional injunction in the abstract.").

## IV. CONCLUSION

For the foregoing reasons, the Corps respectfully requests that this Court grant this motion in all respects, and drop or dismiss the Corps as a party due to improper joinder. Alternatively, the Corps respectfully requests that the Court dismiss SST's First Amended Cross-Complaint and three related Cross-Complaints in their entireties, either for lack of subject matter jurisdiction or for failure to state a claim.

Date: August 20, 2021                    Respectfully submitted,

                                         JUAN ANTONIO GONZALEZ
                                         ACTING UNITED STATES ATTORNEY

                              By:    */s/  John S. Leinicke*
                                     JOHN S. LEINICKE
                                     ASSISTANT UNITED STATES ATTORNEY
                                     Fla. Bar. 64927
                                     99 N.E. 4th Street, 3rd Floor
                                     Miami, Florida 33132
                                     Tel: (305) 961-9212
                                     Fax: (305) 530-7679
                                     Email: john.leinicke@usdoj.gov